IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MAX WARREN BARBER,<br><br>Plaintiff,<br><br>v.<br><br>DAVID KNUDSON,<br>*et al.*,<br><br>Defendants. | **MEMORANDUM DECISION<br>AND ORDER<br>DENYING MOTION FOR<br>TEMPORARY RESTRAINING ORDER**<br><br>Case No. 2:25-cv-681-HCN<br><br>Howard C. Nielson, Jr.<br>United States District Judge |

Plaintiff Max Warren Barber sues Defendants David Knudson, Jamis Johnson, Jared Anderson, Gravity Capital, LLC, and Gravity Funding, LLC (as well as unknown Defendant Does 1–10). Mr. Barber seeks declaratory relief; damages for alleged violations of the Truth in Lending Act, the Fair Debt Collection Practices Act, and the Sherman Antitrust Act; and a referral for criminal contempt. *See* Dkt No. 1 at 2–3 ¶ 3. He also moves for a temporary restraining order. *See* Dkt. No. 2. The court denies that motion.

I.

In March 2022, Mr. Barber entered into a loan agreement with Gravity Capital, secured by deeds of trust on two properties that he owned in Salt Lake City at that time. *See* Dkt. No. 1 at 2, 6 ¶¶ 1, 15. The loan agreement and Mr. Barber's properties became embroiled in Mr. Barber's subsequent bankruptcy proceedings. *See id.* at 7 ¶ 19. On June 11, 2025, the U.S. Bankruptcy Court for the District of Utah entered an order granting Gravity Capital limited relief from the automatic bankruptcy stay. *See* Dkt. No. 1-2 at 3 ¶ 2. That order imposed several conditions, including, as potentially relevant to Mr. Barber's motion, that "[a]ny Trustee's Sale set hereafter will be held after July 7, 2025," the "[p]arties agree to discuss in good faith the final payoff

amount due prior to July 7, 2025," and "[t]he recorded lien shall be amended to reflect the correct principal and/or balance owed." *Id.* at 3–4 ¶¶ 3–4, 8.

Mr. Barber alleges that the Defendants conducted a foreclosure sale on July 22, 2025, in violation of this order, and he seeks a temporary restraining order enjoining the Defendants from enforcing or acting upon the foreclosure sale. *See* Dkt. No. 2 at 2.

## II.

"Preliminary injunctive relief—whether a temporary restraining order or a preliminary injunction—'is an extraordinary remedy never awarded as of right.'" *Schiermeyer ex rel. Blockchain Game Partners, Inc. v. Thurston*, 697 F. Supp. 3d 1265, 1269 (D. Utah 2023) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). Such relief is "the exception rather than the rule" and will be granted only if "the movant's right to relief [is] clear and unequivocal." *Aposhian v. Barr*, 958 F.3d 969, 978 (10th Cir. 2020) (cleaned up). A party seeking such relief "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of the equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20; *see also Johnson v. Bowles*, 2022 WL 4109687, at *2 (D. Utah Sept. 8, 2022). "[E]ach of these elements is a prerequisite for obtaining" preliminary injunctive relief. *Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016).

## III.

The court concludes that Mr. Barber has failed to show a likelihood of success on the merits because he has not demonstrated that the foreclosure sale likely violated the bankruptcy court's order.

Mr. Barber's principal argument appears to be that the Defendants violated this order by failing to amend the recorded lien to reflect a debt of $332,000, which he represents was the amount of the principal he originally borrowed from Gravity Capital. *See* Dkt. No. 2 at 4; Dkt. No. 1-3 at 3. Mr. Barber seems to contend that because the Defendants did not reduce the amount of the lien to this amount, they defaulted under the order and were thus not authorized to proceed with the foreclosure sale. *See id.* But paragraph 8 of the bankruptcy court's order required that "[t]he recorded liens shall be amended to reflect the correct principal *and/or balance owed*." Dkt. No. 1-2 at 4 ¶ 8 (emphasis added). This provision on its face neither clearly nor obviously requires the Defendants to reduce the lien to reflect only the original principal borrowed, as Mr. Barber argues, as opposed to some other amount reflecting the "correct . . . balanced owed."

Further, the court concludes that it is unable to determine either the likely meaning of this provision as a factual matter or whether the Defendants complied with it based only on Mr. Barber's complaint and the evidence he has submitted so far. As the Supreme Court has explained, the issuance of *ex parte* temporary restraining orders is subject to "stringent restrictions" because "our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 438–39 (1974). In this *ex parte* posture, without the benefit of adversarial briefing, the court cannot conclude that Barber has shown a "clear and unequivocal" right to the "extraordinary remedy" of a temporary restraining order.[1]

---

[1] After he filed his *Ex Parte* Motion for Temporary Restraining Order, Mr. Barber submitted a declaration (which he subsequently amended) averring that the parties agreed at the bankruptcy hearing that the relief from the automatic stay would be conditioned on their stipulation. *See* Dkt. No. 9 at 2–3 ¶¶ 3–6; Dkt. No. 12 at 2–3 ¶¶ 3–6 (amended declaration). Further, the order entered by the bankruptcy court expressly grants this relief "pursuant to the

3

To the extent Mr. Barber argues that the Defendants violated the bankruptcy order based on the timing of the foreclosure sale, his argument clearly fails. The order provided that "[a]ny Trustee's Sale set hereafter will be held after July 7, 2025," Dkt. No. 2 at 4, and, according to Mr. Barber, the foreclosure sale did not take place until July 22, 2025—well after this date, *see, e.g.*, Dkt. No. 1-1 at 4 ¶ 8.

Finally, Mr. Barber represents that the foreclosure sale "was the product of a bid-rigging scheme where the only bidder was Defendant Jamis Johnson, a convicted felon and insider." Dkt. No. 2 at 2–3. It is not clear from his motion whether Mr. Barber relies on this representation in support of the merits of his request for an *ex parte* temporary restraining order. If he does, the court concludes that Mr. Barber has not provided sufficient factual support for this representation for the court to rule in his favor on this ground in this *ex parte* posture.[2]

\*   \*   \*

For the foregoing reasons, Docket Number 2, Plaintiff's Motion for a Temporary Restraining Order is **DENIED**.

**IT IS SO ORDERED.**

Dated this 27th day of August, 2025.
BY THE COURT:

_____
Howard C. Nielson, Jr.
United States District Judge

---

terms of the Stipulation." Dkt. No. 1-2 at 2. But as relevant here, the parties' stipulation contains the same ambiguous language, discussed above, that appears in the order. *See* Dkt. No. 1-2 at 11 ¶ 1.

[2] In his declaration, Mr. Barber includes averments that the underlying loan itself was unlawful. *See* Dkt. No. 9 at 4–5 ¶¶ 11–14; Dkt. No. 12 at 4–5 ¶¶ 11–14. But because he did not so much as mention that argument in his motion, the court declines to consider it at this time.