FILED
2025 SEP 17 AM 10:31
CLERK
U.S. DISTRICT COURT

MAX WARREN BARBER, Pro Se
1028 S. 1900 E. SLC, UT 84108
Email: 23blackbee@gmail.com
Ph: 1 (801) 518-1821
Plaintiff

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MAX WARREN BARBER, an individual; and MAX WARREN BARBER as Sole Trustee of the MSB TRUST, Plaintiff, V. | **FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**<br><br>**(Jury Trial Demanded)**<br><br>Case No. 2:25-cv-00681-HCN |
| **DAVID KNUDSON,** an individual; **JAMIS MELWOOD JOHNSON,** an individual; **ADRIAN ISAAC JOHNSON,** an individual; **KAREN SALAS,** an individual; **STACY ROBERTS JOHNSON,** an individual; **PACE WILLIAM JOHNSON,** an individual; **STEPHANIE STRASNICK JOHNSON,** an individual; **TAYTUM JORGENSEN,** an individual; **JARED L. ANDERSON,** an individual; **DASTAN M. D'O,** an individual; **DAVID GARDNER,** an individual; **JEREMY SHORT,** an individual; **GRAVITY CAPITAL, LLC,** a Utah limited liability company; **GRAVITY FUNDING, LLC,** a Utah limited liability company; **GRAVITY SEGREGATION, LLC,** a Utah limited liability company; **GRAVITY SEGREGATION II, LLC,** a Utah limited liability company; **1028 S 1900 E LLC,** a Utah limited liability company; **CR TRUE LLC,** a Utah limited liability company; and **DOES 1-10,** | **District Judge Howard C. Nielson, Jr.**<br><br>**Magistrate Judge Dustin B. Pead** |
| Defendants. | |

Plaintiff Max Warren Barber ("Plaintiff"), appearing pro se, for his First Amended Complaint against Defendants, alleges as follows. As a pro se litigant, Plaintiff requests liberal construction per Haines v. Kerner, 404 U.S. 519, 520 (1972), focusing on substance over form.

## NATURE OF THE ACTION

1.      This First Amended Complaint is filed as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1)(A), as no defendant has yet served a responsive pleading.

2.      This action seeks legal and equitable redress for a multifaceted scheme of racketeering, antitrust violations, and willful violations of federal bankruptcy law. The scheme was orchestrated by a multi-state criminal enterprise to unlawfully divest Plaintiff of more than $3.1 million in equity from his two residential properties located at 1028 South 1900 East and 1836 East Yale Avenue, Salt Lake City, Utah (the "Properties").

3.      The enterprise, led by a federally-enjoined lender (Defendant David Knudson) and a convicted mortgage fraud conspirator (Defendant Jamis Johnson),[1] systematically engaged in predatory lending, mail and wire fraud, bankruptcy fraud, and abuse of process as a cohesive and continuing criminal organization. The scheme culminated in a foreclosure sale conducted in knowing and willful violation of the automatic stay under 11 U.S.C. § 362(a), rendering the sale void *ab initio*.

4.      The scheme commenced in March 2022 when Knudson and his affiliated entities (the "Gravity Entities") knowingly mischaracterized a consumer loan as a "business purpose"

---

[1] *See FTC v. Wasatch Credit Corp.*, No. 2:99-cv-00579-JTG (D. Utah July 28, 1999) (Ex. H); *U.S. v. Johnson*, No. 2:09-cr-00133-CW (D. Utah Aug. 26, 2014) (Ex. G).

loan. This was done despite receiving pre-closing written notice that the Properties included Plaintiff's primary residence. This mischaracterization was intended to unlawfully evade the Truth in Lending Act ("TILA") and directly violated the express terms of Knudson's 1999 Federal Trade Commission injunction (Ex. H).[2]

5.      As part of this fraudulent scheme, on March 23, 2022, Defendants recorded liens of $1.2 million against each of the Properties (Ex. D), thereby creating a grossly inflated and fraudulent total encumbrance of $2.4 million based on an initial loan of only $332,000.

6.      Defendants subsequently breached a binding, court-approved Stipulation (Ex. B) in Plaintiff's first bankruptcy proceeding by refusing to correct these fraudulent liens. This malicious breach directly and foreseeably caused the failure of a pending $3.3 million sale of the Properties (Ex. X).

7.      Following a second bankruptcy petition filed by the MSB Trust (Case No. 25-23863) on July 8, 2025, which invoked a new automatic stay, Defendants proceeded with a foreclosure sale on July 22, 2025, despite receiving actual notice of the stay. The sale was void as a matter of law.[3]

8.      At the void sale, Defendants engaged in a conspiracy to restrain trade by rigging bids in *per se* violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. In furtherance of this conspiracy, Defendants transmitted a fraudulent interstate communication containing a false sale

---

[2] *See* Ex. H, at PageID.69 (prohibiting Knudson from "directing a consumer to falsely state the purpose of an extension of credit"

[3] *See In re Calder*, 907 F.2d 953, 956 (10th Cir. 1990) ("Actions taken in violation of the stay are void and of no effect.

date to a known potential bidder to eliminate competition (Ex. F).

9.    Following the void sale, Defendants engaged in a campaign of intimidation and unlawful self-help, including forcible entries, trespass (Ex. E, Ex. BB), and threats directed at Plaintiff and his family, which includes a special-needs child whose essential in-home therapies were disrupted.

10.    Defendants further abused the Utah state court system by initiating a fraudulent eviction action (Case No. 250906343 EV) based on the void foreclosure, intentionally concealing the bankruptcy stay from the state court to wrongfully obtain a default judgment.

## JURISDICTION AND VENUE

11.    This Court has federal question jurisdiction under 28 U.S.C. § 1331, as this action arises under the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1961 et seq.; the U.S. Bankruptcy Code, 11 U.S.C. § 362(k); the Sherman Act, 15 U.S.C. § 1; the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq.; and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.

12.    The Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367.

13.    This Court has personal jurisdiction over all Defendants, who are residents of Utah or entities conducting substantial business in Utah. Venue is proper in the District of Utah, Central Division, under 28 U.S.C. § 1391(b)(2), as a substantial part of the events giving rise to the claims occurred in this District.

14.    The conduct alleged herein has a substantial effect on interstate commerce. The

Enterprise and its members utilized instrumentalities of interstate commerce, including interstate wire communications (Ex. F, Ex. L, Ex. O), the U.S. Mail, and the interstate banking system (Ex. Q).

15.    The *Rooker-Feldman* doctrine is inapplicable. The state court's post-petition orders in the eviction action are void *ab initio* because they were issued in violation of the federal bankruptcy stay.[4] Actions taken in violation of the stay are without legal effect and are not valid final state-court judgments subject to *Rooker-Feldman* review.[5] Plaintiff brings independent federal claims for injuries caused by Defendants' misconduct, not by the state-court judgment.

## THE PARTIES

16.    Plaintiff **MAX WARREN BARBER** is an individual residing in Salt Lake City, Utah. He is the beneficiary and Sole Trustee of the MSB Trust, which holds legal title to the Properties, granting him equitable ownership and standing.[6]

17.    Defendant **DAVID KNUDSON** is an individual residing in Utah and the principal of the Gravity Entities. He is subject to a permanent FTC injunction for predatory lending

---

[4] *See Ellis v. Consol. Diesel Elec. Corp.*, 894 F.2d 371, 372-73 (10th Cir. 1990) (holding that a judgment entered in an action that violates the automatic stay is void

[5] *See In re C & M Properties, L.L.C.*, 563 F.3d 1156, 1166 (10th Cir. 2009) (reaffirming that actions taken in violation of the automatic stay are void, thus precluding application of the *Rooker-Feldman* doctrine)

[6] *See Redmond v. Kester*, 284 F. App'x 625, 627–28 (10th Cir. 2008) (unpublished) (recognizing trustee and beneficiary standing

practices (Ex. H).

18.     Defendants **GRAVITY CAPITAL, LLC; GRAVITY FUNDING, LLC; GRAVITY SEGREGATION, LLC;** and **GRAVITY SEGREGATION II, LLC** are Utah limited liability companies controlled by Knudson (the "Gravity Entities").

19.     Defendant **JAMIS MELWOOD JOHNSON** ("Jamis Johnson") is an individual residing in Utah. He is a disbarred attorney and a convicted felon in this District for money laundering, mortgage fraud, and wire and mail fraud (Ex. G).[7]

20.     Defendant **ADRIAN ISAAC JOHNSON** ("Adrian Johnson") is an individual residing in Utah who acted as the designated straw buyer at the void foreclosure sale.

21.     Defendant **JARED L. ANDERSON** ("Anderson") is an individual residing in Utah who acted as successor trustee and knowingly conducted the foreclosure sale in violation of the automatic stay.

22.     Defendant **1028 S 1900 E LLC** ("1028 LLC") is a Utah limited liability company controlled by Jamis Johnson and Pace Johnson, used to take title from the void sale.

23.     Defendant **PACE WILLIAM JOHNSON** ("Pace Johnson") is an individual residing in Utah and an attorney. He formed shell entities and prosecuted the wrongful eviction action.

24.     Defendant **CR TRUE LLC** is a Utah limited liability company controlled by Pace Johnson and Jamis Johnson, used to conceal the proceeds of the unlawful scheme.

---

[7] *See U.S. v. Johnson*, 639 F. App'x 481 (10th Cir. 2016) (unpublished) (affirming conviction) (Ex. G)

25.    Defendants **KAREN SALAS; STACY ROBERTS JOHNSON** ("S.R. Johnson"); **STEPHANIE STRASNICK JOHNSON;** and **TAYTUM JORGENSEN** are individuals residing in Utah who participated in the unlawful activities alleged herein.

26.    Defendant **DASTAN M. D'O** is an individual residing in Utah and an attorney who furthered the wrongful state court proceedings.

27.    Defendant **DAVID GARDNER** is an individual residing in Utah and an attorney who furthered the wrongful state court proceedings.

28.    Defendant **JEREMY SHORT** is an individual residing in Utah and an attorney who furthered the wrongful state court proceedings.

29.    Defendants **DOES 1-10** are individuals or entities whose identities are not yet known to Plaintiff but who participated in the unlawful conduct alleged herein.

## FACTUAL ALLEGATIONS

### A.    The RICO Enterprise: Structure, Purpose, and Continuity

31.    The association of all Defendants constitutes an "association-in-fact" Enterprise under 18 U.S.C. § 1961(4), with an ascertainable structure, a common purpose, and relationships among its associates sufficient to satisfy the standard of *Boyle v. United States*, 556 U.S. 938 (2009).

32.    The Enterprise functions as a continuing unit with a distinct structure separate from the pattern of racketeering activity. The Enterprise's common purpose is to unlawfully acquire equity from distressed property owners through a systematic, predatory lending scheme. This scheme follows a specific pattern::

a)     Equity Trapping: The Enterprise makes loans secured by high-equity properties and then records grossly artificially inflated liens (e.g., $2.4 million on a $332,000 loan) to make it impossible for the owner to refinance through traditional lenders.

b)     Forced Default: The Enterprise then engineers an artificial default by making sudden, extortionate demands for balloon payments and refusing tendered payments.

c)     In instances of bankruptcy fraud, when the property owner/Gravity Borrower seeks bankruptcy protection, the Enterprise's legal representatives utilize fraudulent liens to falsely assert to the court that no equity exists for reorganization. This action aims to lift the automatic stay to facilitate foreclosure or to compel a Chapter 7 liquidation, thereby forcing a sale. In either scenario, the enterprise benefits significantly: (1) through the trustee's actions and subsequent equity appropriation, or (2) by registering grossly inflated liens on the bankruptcy claims, resulting in substantial gross profit through a legitimate bankruptcy court decree and Chapter 7 Trustee sale of property of the estate.

33.    The Enterprise maintains a distinct division of labor:

a)     The "Bank": Defendant Knudson and the Gravity Entities provide capital and deploy fraudulent loan instruments.

b)     The "Operations Manager": Defendant Jamis Johnson, a disbarred Utah / New York attorney from prior criminal enterprise, coordinates the unlawful acquisition of properties in the  created foreclosure manipulation and straw buyers.

c)     The "Legal Arm": Defendants Pace Johnson, Dastan D'O, David Gardner, and Jeremy Short to facilitate the scheme by providing legal support, forming shell entities (e.g.,

1028 LLC, CR TRUE LLC), used to launder proceeds, and abusing the judicial process.

      d)    The "Associates": Karen Salas, Stacy R Johnson, Stephanie S Johnson and other individual defendants act at the direction of the leadership to execute specific tasks, such as acting as straw buyers (Adrian Johnson) and carrying out illegal self-help evictions (Salas, Jorgensen) aiding and abetting the functions of multiple shell entities comprising the organization.

      34.    The Enterprise exhibits open-ended continuity, posing a clear threat of continued criminal activity, as the scheme is the Defendants' "regular way of conducting business." This is demonstrated by Defendants' extensive history of utilizing the same modus operandi:

      a)    Knudson's History (FTC Injunction): Knudson operates under a permanent FTC injunction (Ex. H) prohibiting him from "directing a consumer to falsely state the purpose of an extension of credit."

      b)    Johnson's History (Criminal Conviction): Jamis Johnson was convicted in this District for a mortgage fraud conspiracy involving straw buyers and fraudulent documents (Ex. G).

      35.    The Enterprise's pattern of conduct is not isolated to Plaintiff but extends nationwide, confirming this is their regular method of business, with similar allegations of fraud and bankruptcy stay manipulation in California, Florida, and Texas.

### B.    The Fraudulent Loan and TILA Violations

      36.    On or about March 22, 2022, Knudson and the Gravity Entities provided a loan to

Plaintiff with a principal amount of $332,000.00 (Ex. J).

37.    The loan was a consumer transaction subject to TILA, as Plaintiff used the funds for personal, family, or household purposes, including renovating his primary residence (Ex. N).

38.    Defendants had actual, direct, and written knowledge of the loan's consumer purpose before closing. On March 21, 2022, Plaintiff explicitly informed Defendants' representative via email: "My residential homeowners policy, I live in the 1028 S 1900 E and the other is going to be renovated 1836 E." (Ex. N). The Loan Guaranty also explicitly lists Plaintiff's "home address" (Ex. J, at PageID.114).

39.    Despite this knowledge, Defendants knowingly mischaracterized the transaction as a "business purpose" loan to evade TILA's disclosure requirements. They directed Plaintiff to sign documents falsely stating the proceeds were "solely and exclusively for business and commercial purposes" (Ex. J, at PageID.102,    2.11). This conduct directly violates the permanent FTC Injunction against Knudson (Ex. H, at PageID.69).

40.    On March 23, 2022, in furtherance of the scheme, Defendants fraudulently recorded a lien of $1.2 million against each of Plaintiff's properties, for a total of $2.4 million (Ex. D).

41.    Plaintiff first discovered the grossly inflated liens in early 2025. The discovery was made when a prospective buyer for the Properties was informed by the title company of the excessive liens recorded by the Gravity defendants. Until this disclosure from an independent third party, Defendants' fraudulent concealment of the loan's true terms and their refusal to provide an accounting prevented Plaintiff from discovering the injury.

42.     Defendants' own sworn statements confirm the fraudulent nature of these liens. In the MSB Trust bankruptcy (Case No. 25-23863), Gravity Capital, LLC, filed a Proof of Claim under penalty of perjury asserting a secured debt of only $161,500.00 against each Property, an amount irreconcilable with the $1.2 million liens.

43.     The Gravity Entities actively concealed the TILA violations and committed subsequent, independent violations. Plaintiff exercised due diligence by repeatedly requesting an accounting. Plaintiff's diligence included repeated inquiries, but the fraud was concealed until the 2025 discovery. Plaintiff "asked more than four times for statement/payoff" (Ex. Q), including written requests in May and June 2025 (Ex. W). Defendants' refusal to provide this information constituted fraudulent concealment, which prevented Plaintiff from discovering the full scope of the TILA violations and equitably tolls the statute of limitations for the origination violations. Defendants failed to provide accurate payoff statements within seven business days as required by 15 U.S.C. § 1639g and Regulation Z, 12 C.F.R. § 1026.36(c)(3).

### C.     Personal Bankruptcy and Breach of the Court-Approved Stipulation

44.     During his first bankruptcy (Case No. 25-21749), Plaintiff executed contracts to sell the Properties for approximately $3.3 million (Ex. X).

45.     On June 11, 2025, the parties entered into a binding Stipulation, approved by and made an order of the Bankruptcy Court (the "June 11 Order") (Ex. B).

46.     A material term of the June 11 Order required the Gravity Entities to remove from the county record, the fraudulent $1.2 million dollar recorded lien on each parcel, to the correct amount of  consideration and provide plaintiff with the detailed accounting.

47.     The relief from stay granted to Gravity was expressly conditional upon this performance. The hearing transcript confirms this condition precedent. Judge Anderson stated: "I'm going to put in the order granting in rem relief that... it is pursuant to the terms and conditions of the stipulation" (Ex. S, 194).

48.     Defendants materially breached the June 11 Order by failing to provide the clear accounting and remove the fraudulent liens to not show $1.2M lien on each parcel,. Plaintiff sent a formal "notice of default" on June 13, 2025 (Ex. C). County records confirm the liens remained uncorrected (Ex. D).

49.     This breach was a deliberate act of sabotage, consistent with the Enterprise's modus operandi. The breach directly and proximately caused the failure of the $3.3 million sale contracts (Ex. X), as the clear title could not be delivered.

### D.      The Willful Violation of the Automatic Stay

50.     As a direct and foreseeable result of the Gravity Defendants' breach of the June 11th Order, the MSB Trust was forced to file a petition for Chapter 11 bankruptcy relief (Case No. 25-23863) on July 8, 2025, triggering a new automatic stay under 11 U.S.C. § 362(a).

51.     Defendants, as sophisticated and frequent participants in bankruptcy litigation (Ex. U), received actual notice of the bankruptcy filing and new stay on July 9, 2025 (Ex. T). This notice provided them with explicit knowledge of the stay's legal effect.

52.     On July 22, 2025, with full knowledge of the stay, Defendants willfully proceeded with the foreclosure sale. Defendants present at the auction (see Ex V), including Jamis Johnson

and Adrian Johnson, were personally informed of the active automatic stay before the sale

commenced. Despite this direct, contemporaneous notice, they and Defendant Anderson

knowingly chose to proceed. This action was void *ab initio* and without legal effect.[8]

### E.    The Sherman Act Conspiracy: Bid-Rigging at the Void Sale

53.    The relevant market is the competitive bidding market for distressed residential

real estate sold at public trustee auctions in Salt Lake County, Utah. Defendants Knudson

(through the Gravity Entities) and the Johnson group (Jamis, Adrian, S.R. Johnson) are

horizontal competitors in this market.

54.    In advance of the July 22 sale, these Defendants entered into a conspiracy to

suppress competition. They agreed to eliminate bidding against each other, utilize Adrian

Johnson as a single designated straw buyer, and suppress the final bid price to acquire the

Properties far below market value. This constituted a horizontal bid-rigging conspiracy, a *per se*

violation of Section 1 of the Sherman Act.

55.    In furtherance of this conspiracy, Defendant Knudson caused an interstate text

message to be sent to Larry Horton, a known potential bidder, containing the materially false

information that the sale date was "Aug 15th," not July 22, 2025 (Ex. F).

56.    The purpose and direct effect of this conspiracy was to eliminate competition.

Adrian Johnson purchased the Properties, valued at over $3.1 million (Ex. X), for the grossly

inadequate price of $650,001. This suppression of the sale price caused Plaintiff a direct antitrust

---

[8] *See In re Skinner*, 917 F.2d 444, 447 (10th Cir. 1990).

injury—the loss of his surplus equity.[9]

### F.    Post-Foreclosure Wrongful Acts and Abuse of the State Court System

57.    On July 23, 2025, Defendant Anderson knowingly used the U.S. Mail to cause the void Trustee's Deed to be recorded, creating a cloud on Plaintiff's title.

58.    On July 23, 2025, Defendants Jamis M. Johnson, Karen Salas, and Taytum Jorgensen forcibly broke into Plaintiff's  family residence, constituting a breach of the peace (Ex. E; Ex. BB).

59.    On July 24 and 25, 2025, Johnson and his associates trespassed and illegally rekeyed the doors.

60.    On August 1, 2025, the enterprise, through 1028 LLC, initiated a fraudulent eviction action (Case No. 250906343 EV), intentionally omitting any mention of the active bankruptcy case to deceive the state court.

61.    On August 27, 2025, Defendant Pace Johnson executed and electronically filed a "Declaration in Support of Default Judgment," a sworn statement that knowingly concealed the existence of the automatic stay from the state court.

62.    Relying on these fraudulent omissions, the state court entered a Default Judgment on September 3, 2025. This judgment was subsequently stayed upon Plaintiff's emergency motion (Ex. K).

### G.    Fraudulent Transfers and Alter Ego Liability

---

[9] *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977) (defining antitrust injury).

63.    The Gravity Entities are the alter egos of Defendant David Knudson. There is such a unity of interest and ownership that the separate personalities of the entities and Knudson no longer exist, and adherence to the fiction of separate existence would sanction a fraud and promote injustice.[10]

64.    Similarly, 1028 LLC and CR TRUE LLC are the alter egos of Jamis Johnson and Pace Johnson. They were created for the improper purpose of concealing the proceeds of the racketeering activity. The void Trustee's Deed first recorded title in the name of straw buyer Adrian I. Johnson, who then immediately transferred title to 1028 LLC. On August 26, 2025, after this lawsuit was initiated, 1028 LLC executed a further fraudulent transfer of title to the newly formed CR TRUE LLC. Upon information and belief, this chain of transfers was conducted without fair consideration and was designed to conceal and launder the proceeds of the fraudulent scheme (Ex. R).

## <u>CAUSES OF ACTION</u>

### COUNT I: Breach of Contract (Stipulation and Order)

### (Against Defendants Knudson and Gravity Entities)

65.    Plaintiff incorporates by reference all preceding paragraphs.

66.    The Stipulation (June 11 Order) constitutes a valid and enforceable contract, as well as a binding court order.

67.    Defendants materially breached the June 11 Order by failing to perform the

---

[10] *See Norman v. Nichiro Gyogyo Kaisha, Ltd.*, 645 P.2d 639, 641 (Utah 1982) (outlining the standard for alter ego liability).

condition precedent: correcting the inflated liens and providing an accounting.

68.     As a direct and proximate result of Defendants' breach, the pending $3.3 million sale of the Properties failed, causing Plaintiff substantial damages.

**COUNT II: Declaratory Judgment (28 U.S.C. § 2201)**

**(Against All Defendants)**

69.     Plaintiff incorporates by reference all preceding paragraphs.

70.     An actual controversy exists between the parties concerning the legal status of the Properties.

71.     The foreclosure sale of July 22, 2025, was conducted while the automatic stay under 11 U.S.C. § 362(a) was in effect.

72.     Actions taken in violation of the automatic stay are void *ab initio* and without legal effect under controlling Tenth Circuit law.[11]

73.     Plaintiff is entitled to a judicial declaration that the July 22, 2025 sale, the resulting Trustee's Deed, and all subsequent transfers are void as a matter of law.

**COUNT III: Willful Violation of the Automatic Stay (11 U.S.C. § 362(k))**

**(Against All Defendants)**

74.     Plaintiff incorporates by reference all preceding paragraphs.

75.     Defendants had actual knowledge of the automatic stay (Ex. T), including personal notice at auction. Their subsequent actions were therefore 'willful,' requiring only

---

[11] *See In re Calder*, 907 F.2d at 956; *Ellis*, 894 F.2d at 372-73.

intentional acts with knowledge of the stay.[12]

76.     Defendants intentionally committed numerous affirmative acts violating the stay, including conducting the foreclosure sale despite notice, recording the void Trustee's Deed, forcibly entering the Properties, and prosecuting a fraudulent eviction action with concealed stay facts.

77.     As a result, Plaintiff suffered actual damages, including loss of equity, emotional distress, and attorneys' fees. Defendants' conduct was malicious and egregious, warranting punitive damages.

## COUNT IV: Violation of the RICO Act (18 U.S.C. § 1962(c))

### (Against Individual Defendants Knudson, J. Johnson, A. Johnson, P. Johnson, Anderson, Salas, S.R. Johnson, S.S. Johnson, Jorgensen, D'O, Gardner, and Short)

78.     Plaintiff incorporates by reference all preceding paragraphs.

79.     The association of the Defendants constitutes an "Enterprise" affecting interstate commerce.

80.     The Individual Defendants conducted the Enterprise's affairs through a "pattern of racketeering activity." The predicate acts were related by their common purpose and were continuous, establishing the Enterprise's "regular way of conducting business."

81.     The predicate acts, pleaded with particularity in Exhibit DD, include multiple acts of Mail Fraud (§ 1341), Wire Fraud (§ 1343), and Money Laundering (§ 1956).

---

[12] *See In re Johnson*, 575 F.3d 1079, 1082 (10th Cir. 2009); *see also In re Johnson*, No. 23-4085, at 4 (10th Cir. 2024) (willfulness from notice alone).

82.    Plaintiff was injured in his business and property by reason of these violations and is entitled to treble damages under 18 U.S.C. § 1964(c).

## COUNT V: Conspiracy to Violate RICO (18 U.S.C. § 1962(d))

### (Against All Defendants)

83.    Plaintiff incorporates by reference all preceding paragraphs.

84.    All Defendants knowingly conspired and agreed to achieve the common unlawful objective of the Enterprise. Their precisely coordinated actions demonstrate a meeting of the minds to conduct the Enterprise's affairs through the pattern of racketeering activity.

## COUNT VI: Violation of the Sherman Act, § 1 (15 U.S.C. § 1)

### (Against Knudson, Gravity Entities, J. Johnson, A. Johnson, S.R. Johnson, and 1028 LLC)

85.    Plaintiff incorporates by reference all preceding paragraphs.

86.    Defendants are horizontal competitors in the market for distressed real estate at foreclosure auctions.

87.    Defendants entered into a conspiracy to unreasonably restrain trade by agreeing to rig the bidding process, a *per se* violation of the Sherman Act.[13]

88.    The conspiracy had the direct effect of suppressing the sale price, causing Plaintiff a direct antitrust injury.[14]

## COUNT VII: Violation of the Truth in Lending Act (TILA)

### (Against Defendants Knudson and Gravity Entities)

---

[13] *See United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 218 (1940).

[14] *See Asphalt Trader Ltd. v. Beall*, 83 F.4th 1291, 1296-97 (10th Cir. 2024) (recognizing injury from fraudulent transfers in bid contexts).

89.    Plaintiff incorporates by reference all preceding paragraphs.

90.    The loan was a consumer credit transaction. Defendants knowingly mischaracterized it to evade TILA, a violation at origination.

91.    Defendants committed separate violations in 2025 by failing to provide accurate payoff statements under 15 U.S.C. § 1639g.

92.    The statute of limitations for the origination damages is equitably tolled due to Defendants' active and fraudulent concealment. Plaintiff's diligence included repeated written requests for accounting (Ex. Q, W), but concealment delayed discovery until early 2025 via title company notification of a buyer. Alternatively, Plaintiff asserts his claim for TILA damages in recoupment against any debt claimed by Defendants.[15]

93.    Plaintiff is entitled to rescind the transaction,[16] recover statutory damages, actual damages, costs, and attorneys' fees.

**COUNT VIII: Violation of the FDCPA (15 U.S.C. § 1692f(6))**

**(Against All Defendants)**

94.    Plaintiff incorporates by reference all preceding paragraphs.

95.    Defendants' conduct constituted "something more" than mere nonjudicial foreclosure enforcement under *Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029 (2019). Their actions, including unlawful self-help measures involving a breach of the peace and

---

[15] *See Hoang v. Bank of Am., N.A.*, 910 F.3d 1096, 1101 (9th Cir. 2018) (equitable tolling for concealed payoff info); *Integrity Advance, LLC v. Consumer Fin. Prot. Bureau*, 48 F.4th 1161, 1170 (10th Cir. 2022) (tolling in lending concealment cases).

[16] *See Jesinoski v. Countrywide Home Loans, Inc.*, 574 U.S. 259 (2015).

prosecuting a fraudulent lawsuit for treble monetary damages, constitute affirmative "debt collection" activity

96.    Defendants violated 15 U.S.C. § 1692f(6) by taking nonjudicial action (forcible entry, rekeying) to effect dispossession when there was no present right to possession, as the foreclosure sale was void.

### COUNT IX: Wrongful Foreclosure (Utah Law)

### (Against Defendants Knudson, Gravity Entities, and Anderson)

97.    Plaintiff incorporates by reference all preceding paragraphs.

98.    Defendants had no lawful right to foreclose because the automatic stay was in effect and the conditional in rem relief from the prior bankruptcy was nullified by their own breach. Foreclosing without the legal right to do so constitutes wrongful foreclosure under Utah law.[17] Plaintiff has been damaged due to the wrongful foreclosure.

### COUNT X: Quiet Title (Utah Code Ann. § 78B-6-1301)

### (Against All Defendants)

99.    Plaintiff incorporates by reference all preceding paragraphs.

100.    Plaintiff holds equitable and superior title to the Properties. Because the foreclosure sale is void *ab initio*, the Trustee's Deed and all subsequent transfers are legal nullities that create a cloud on Plaintiff's title. Plaintiff is entitled to an Order quieting title to the name of the MSB Trust.

---

[17] *See Jones v. U.S. Bank Nat'l Ass'n*, 2021 UT App 60,  18, 492 P.3d 780.

## COUNT XI: Slander of Title (Utah Law)

### (Against All Defendants)

101.    Plaintiff incorporates by reference all preceding paragraphs.

102.    Defendants published a false statement by recording the void Trustee's Deed. The publication was made with malice, as Defendants' actual knowledge of the bankruptcy stay demonstrates reckless disregard for the truth.

103.    The recording of the void deed directly caused Plaintiff special pecuniary damages, including the loss of the $3.3 million sales contract and costs incurred to clear title.

## COUNT XII: Civil Conspiracy (Utah Law)

### (Against All Defendants)

104.    Plaintiff incorporates by reference all preceding paragraphs.

105.    Defendants formed a combination and had a meeting of the minds to unlawfully seize Plaintiff's properties. They committed numerous unlawful, overt acts in furtherance of their objective, proximately causing Plaintiff's damages.

## COUNT XIII: Abuse of Process (Utah Law)

### (Against Defendants Pace Johnson, Jamis Johnson, D'O, 1028 LLC, Gardner, and Short)

106.    Plaintiff incorporates by reference all preceding paragraphs.

107.    Defendants misused the state court eviction process (Case No. 250906343 EV) for an ulterior purpose: to enforce a void title and intimidate Plaintiff. They committed willful acts not proper in the regular proceeding, including filing a sworn declaration that intentionally concealed the bankruptcy stay to deceive the Court.

**COUNT XIV: Intentional Infliction of Emotional Distress (Utah Law)**

**(Against Defendants J. Johnson, K. Salas, T. Jorgensen, and 1028 LLC)**

108.    Plaintiff incorporates by reference all preceding paragraphs.

109.    Defendants engaged in extreme and outrageous conduct by repeatedly and forcibly entering Plaintiff's occupied family residence. This conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.[18]

110.    Defendants acted intentionally or with reckless disregard, knowing the property, being a family residence, with plaintiffs vulnerable, special-needs child. This conduct caused Plaintiff and his family severe emotional distress.

**COUNT XV: Tortious Interference with Economic Relations (Utah Law)**

**(Against All Defendants)**

111.    Plaintiff incorporates by reference all preceding paragraphs.

112.    Plaintiff had existing contractual relations for the $3.3 million sale of the Properties.

113.    Defendants intentionally interfered with these relations by "improper means," including breaching a court order and committing the numerous predicate acts of fraud and other unlawful conduct alleged herein.

114.    This interference caused the failure of the contracts and resulted in substantial damages.

---

[18] *See Retherford v. AT&T Commc'ns*, 844 P.2d 949, 974 (Utah 1992).

## COUNT XVI: Trespass (Utah Law)

### (Against Defendants J. Johnson, K. Salas, T. Jorgensen, and 1028 LLC)

115.    Plaintiff incorporates by reference all preceding paragraphs.

116.    Defendants intentionally and forcibly entered Plaintiff's property without authorization. The entry was unauthorized because the void foreclosure sale conferred no legal right of possession.

## COUNT XVII: Unjust Enrichment (In the Alternative)

### (Against All Defendants)

117.    Plaintiff incorporates by reference all preceding paragraphs.

118.    Due to their unlawful acts, Defendants conferred upon themselves the benefit of title to and equity in Plaintiff's Properties. It would be inequitable for Defendants to retain this benefit.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendants, jointly and severally, as follows:

A.    For a declaratory judgment that the July 22, 2025, foreclosure sale, the resulting Trustee's Deed, and all subsequent transfers are void ab initio;

B.    For a Decree Quieting Title to the Properties in the name of the MSB Trust;

C.    For an order directing the Salt Lake County Recorder to expunge the void Trustee's Deed and any subsequent related conveyances from the public record;

D.    For an award of actual damages, costs, attorneys' fees  defending all actions, and

punitive damages

    pursuant to 11 U.S.C. § 362(k);

E.   For an award of treble damages, costs, and attorneys' fees under the RICO Act,

    18 U.S.C. § 1964(c);

F.   For an award of treble damages, costs, and attorneys' fees under the Sherman

    Act, 15 U.S.C. § 15;

G.   For an order rescinding the loan transaction and awarding all applicable damages

    under TILA, or alternatively, for damages in recoupment;

H.   For an award of statutory damages, actual damages, costs, and attorneys' fees

    under the FDCPA;

I.   For compensatory, special, and punitive damages on all state law claims;

J.   For preliminary and permanent injunctive relief enjoining Defendants from

    transferring, encumbering, or otherwise disposing of the Properties;

K.   For restitution and disgorgement of all unjustly retained benefits;

L.   For an award of prejudgment and post-judgment interest at the maximum rate

    permitted by law; and

M.   For any other and further relief that the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

**DATED:** September 16, 2025.

Respectfully submitted,        /s/ Max Warren Barber
               Max Warren Barber, Pro Se

# EXHIBIT LIST

| EX | A | Declaration of Max W. Barber |
|----|----|------|
| EX | B | Order In Rem Relief Bankruptcy Court, Case No. 25-21749, June 11, 2025 |
| EX | C | Email to Kenyon Dove, June 13, 2025 (Notice of Default on Stipulation) |
| EX | D | Salt Lake County Recorder's Record of Liens |
| EX | E | Declaration of Nathan Barron (Regarding Forcible Entry |
| EX | F | Text Messages from L. Horton (Regarding False Sale Date) |
| EX | G | Judgment in a Criminal Case, United States v. Johnson |
| EX | H | FTC v. Wasatch Credit Corp. (Permanent Injunction against David Knudson) |
| EX | I | Complaint, Angulo v. Gravity Funding, LLC |
| EX | J | Gravity Capital Loan Documents (March 22, 2022) |
| EX | K | Emergency Motion to Stay Enforcement (3rd Dist. Ct. Case No. 250906343 EV) |
| EX | L | Email Correspondence (Referenced for Interstate Communications) |
| EX | M | Excerpts from MSB Trust Deed (Dec. 12, 2017) |
| EX | N | Pre-Closing Email Correspondence (Regarding Consumer Purpose of Loan) |
| EX | O | Notice of Appearance of Counsel (Dastan M. D'O) |
| EX | P | Complaint, Peña v. Gravity Segregation LLC |
| EX | Q | Communications and Wire Transfer Confirmations with David Knudson |
| EX | R | Enterprise Entity Formation and Transfer Documents |
| EX | S | Gravity Entities and documents |
| EX | T | Bankruptcy Case Filings & Transcripts for In Chpt 13, 11 |
| EX | U | Court Filings, In re Authentic Hospitality Group Inc. |
| EX | V | 22 July 2025 Photos of Participants and Notice Bankruptcy given |
| EX | W | Email Exchange Requesting Loan Payoff/Accounting (May-June 2025) |
| EX | X | Real Estate Purchase Contracts (REPCs) for Properties |
| EX | BB | Salt Lake City Police Report No. SL25-168227 (July 23, 2025) and others |
| EX | CC | Gravity Capital, LLC Proof of Claim (In re Barber, Case No. 25-23863) |
| EX | DD | Schedule of Predicate Acts |