EXHIBIT    G

# JAMIS MELWOOD JOHNSON





## Lawyer guilty in mortgage fraud scheme

*SLC • Attorney convicted on 27 counts of fraud, money laundering and conspiracy.*

By Tom Harvey The Salt Lake Tribune
• March 18, 2011 10:06 am

A federal jury found disbarred Salt Lake City attorney Jamis Melwood Johnson guilty Friday night on 27 federal charges related to a mortgage fraud scheme that used false loan documents and straw buyers to strip millions of dollars from lenders.

The jury returned the guilty verdicts after about eight hours of deliberation that started shortly after noon, following closing arguments of a two-week trial before U.S. District Judge Clark Waddoups.

The judge ordered Johnson taken into custody after the verdict was returned and set sentencing for July 18.

**BREAK IN PHOTO**



**DOOR RE-KEYED**



**POLICE AT SEEN**



**ILLEGAL AFFIXING CAMERA**



AO 245B    (Rev. 09/11) Judgment in a Criminal Case
Sheet 1

COURT, DISTRICT OF UTAH

FILED

**UNITED STATES DISTRICT COURT**

SEP 1 0 2014

D. MARK JONES, CLERK

BY _____
DEPUTY CLERK

District of Utah

2015 JAN 23 A 4:41

UNITED STATES OF AMERICA

v.

JAMIS MELWOOD JOHNSON

DISTRICT OF UTAH

DEPUTY CLERK

**JUDGMENT IN A CRIMINAL CASE**

Case Number:   DUTX2:09CR000133

USM Number:   15981-081

Marcus R. Mumford
Defendant's Attorney

**THE DEFENDANT:**

☐ pleaded guilty to count(s) _____

☐ pleaded nolo contendere to count(s) _____
   which was accepted by the court.

☑ was found guilty on count(s)    1-2, 4-7, 9, 11-16,18, 19, 21, 23, 27-33, 35, 37, 38
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 1341 | Mail Fraud | 4/14/2009 | 2, 4-9 |
| 18 U.S.C. § 1343 | Wire Fraud | 4/14/2009 | 11-16, |
| 18 U.S.C. § 1343 | Wire Fraud | 4/14/2009 | 18, 19, 21 |

The defendant is sentenced as provided in pages 2 through ___7___ of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☑ Count(s)   3,8,10,17,20,22,24-26,34,36      ☐ is   ☑ are  dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

8/26/2014
Date of Imposition of Judgment

_Clark Waddoups_
Signature of Judge

Hon. Clark Waddoups          District Court Judge
Name and Title of Judge

9/4/2014
Date

AO 245B    (Rev. 09/11) Judgment in a Criminal Case
Sheet 1A

DEFENDANT:  JAMIS MELWOOD JOHNSON

CASE NUMBER:  DUTX2:09CR000133

Judgment—Page  2  of  7

## ADDITIONAL COUNTS OF CONVICTION

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 1349 | Conspiracy to Commit Mail Fraud | 4/14/2009 | 25 |
| 18 U.S.C. §§1956 (a)(1)(A)(i) and (2) | Money Laundering | 4/14/2009 | 27-33, 35 |
| 18 U.S.C. §§ 1956(a)(1)(A)(i) and (2) | Money Laundering | 4/14/2009 | 37, 38 |

AO 245B    (Rev. 09/11) Judgment in Criminal Case
Sheet 2 — Imprisonment

| | Judgment — Page | 3 | of | 7 |

DEFENDANT:  JAMIS MELWOOD JOHNSON
CASE NUMBER:  DUTX2:09CR000133

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:

5 months to run concurrent with sentence in Case No. 051700056 before the Fourth Judicial District Court for Millard County, State of Utah.

☐  The court makes the following recommendations to the Bureau of Prisons:

☑  The defendant is remanded to the custody of the United States Marshal.

☐  The defendant shall surrender to the United States Marshal for this district:

    ☐ at   _____ ☐ a.m. ☐ p.m.  on  _____ .

    ☐ as notified by the United States Marshal.

☐  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐ before 2 p.m. on   _____ .

    ☐ as notified by the United States Marshal.

    ☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _Release USMSHold. trace Sweard_

a _CM 9/18/2024_ , with a certified copy of this judgment.

JAMES A. THOMPSON
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

Case 2:09-cr-00133-CW     Document 523     Filed 01/23/15     PageID.6511     Page 4 of 7

AO 245B    (Rev. 09/11) Judgment in a Criminal Case
Sheet 3 — Supervised Release

Judgment—Page __4__ of __7__

DEFENDANT:  JAMIS MELWOOD JOHNSON
CASE NUMBER:  DUTX2:09CR000133

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :
36 months.

     The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance.  The defendant shall refrain from any unlawful use of a controlled substance.  The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☑ The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. *(Check, if applicable.)*

☑ The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. *(Check, if applicable.)*

☑ The defendant shall cooperate in the collection of DNA as directed by the probation officer. *(Check, if applicable.)*

☐ The defendant shall comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which he or she resides, works, is a student, or was convicted of a qualifying offense. *(Check, if applicable.)*

☐ The defendant shall participate in an approved program for domestic violence. *(Check, if applicable.)*

     If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

     The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;

2) the defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer;

3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4) the defendant shall support his or her dependents and meet other family responsibilities;

5) the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9) the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

14) The defendant shall submit his or her person, residence, office or vehicle to search, conducted by the probation office at a reasonable time and in a reasonable manner based upon reasonable suspicion of contraband or evidence of a violation of a condition of release; failure to submit to a search may be grounds for revocation; the defendant shall warn any other residents that the premises may be subject to searches pursuant to this condition.

AO 245B    (Rev. 09/11) Judgment in a Criminal Case
            Sheet 3C — Supervised Release

| | Judgment—Page | 5 | of | 7 |

DEFENDANT:  JAMIS MELWOOD JOHNSON
CASE NUMBER:  DUTX2:09CR000133

## SPECIAL CONDITIONS OF SUPERVISION

1. The defendant is to inform any employer or prospective employer of current conviction and supervision status.

2. The defendant shall provide the U.S. Probation Office complete access to all business and personal financial information.

3. The defendant shall maintain not more than one personal and/or business checking/savings account and shall not open, maintain, be a signatory on, or otherwise use any other financial institution account without the prior approval of the U.S. Probation Office.

4. The defendant shall refrain from incurring new credit charges or opening additional lines of credit unless in compliance with any established payment schedule and obtains the approval of the probation office.

5. The defendant shall not be employed by, affiliated with, own or control, or otherwise participate, directly or indirectly, in the business of money, including accounting and real estate without the approval of the U.S. Probation Office.

Case 2:09-cr-00133-CW     Document 523     Filed 01/23/15     PageID.6513     Page 6 of 7

AO 245B    (Rev. 09/11) Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

Judgment — Page __6__ of __7__

DEFENDANT:    JAMIS MELWOOD JOHNSON
CASE NUMBER:    DUTX2:09CR000133

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|  | Assessment | Fine | Restitution |
|---|---|---|---|
| TOTALS | $ 2,700.00 | $ 0.00 | $ 15,282.00 |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☑ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| Bank of America |  | $ 15,282.00 |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
| TOTALS | $ 0.00 | $ 15,282.00 |  |

☐ Restitution amount ordered pursuant to plea agreement $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☑ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☑ the interest requirement is waived for the    ☐ fine    ☑ restitution.

☐ the interest requirement for the    ☐ fine    ☐ restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B     (Rev. 09/11) Judgment in a Criminal Case
            Sheet 6 — Schedule of Payments

Judgment — Page __7__ of __7__

DEFENDANT:   JAMIS MELWOOD JOHNSON
CASE NUMBER:   DUTX2:09CR000133

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A   ☑  Lump sum payment of $ __2,700.00__ due immediately, balance due

        ☐  not later than _____ , or
        ☐  in accordance  ☐ C,  ☐ D,  ☐ E, or  ☐ F below; or

B   ☐  Payment to begin immediately (may be combined with  ☐ C,  ☐ D, or  ☐ F below); or

C   ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
        _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

D   ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
        _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a
        term of supervision; or

E   ☐  Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from
        imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F   ☑  Special instructions regarding the payment of criminal monetary penalties:

        Defendant shall pay $10.00 per month towards restitution while incarcerated.  Upon release, defendant shall pay
        $400.00 per month or such other amount as determined by probation based upon defendant's financial
        circumstances.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐  Joint and Several

    Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount,
    and corresponding payee, if appropriate.

---

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☐  The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| UNITED STATES OF | ) | |
| AMERICA, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 2:09-CR-00133 |
| | ) | |
| JAMIS MELWOOD JOHNSON, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

BEFORE THE HONORABLE CLARK WADDOUPS

March 7, 2011

Jury Trial

Laura W. Robinson, CSR, RPR, CP
350 South Main Street
144 U.S. Courthouse
Salt Lake City, Utah 84101-2180
(801)328-4800

1

Appearances of Counsel:

For the Plaintiff:          Scott Jay Thorley
                            Adam Elggren
                            Attorneys at Law
                            U.S. Attorney's Office
                            185 S. State Street
                            Suite 300
                            Salt Lake City, Utah 84111

For the Defendant:          Robert K. Hunt
                            Jamie Zenger
                            Daryl Sam
                            Attorneys at Law
                            Utah Federal Defender Office
                            46 West Broadway
                            Suite 110
                            Salt Lake City, Utah 84101

                                                                                 2

```
 1              Salt Lake City, Utah, March 7, 2011

 2                        * * * * *

 3          THE COURT:  Good morning.  We're here in the matter of

 4      the United States versus Jamis Melwood Johnson, case

 5      2:09-CR-133.  Will counsel please state their appearance.

 6          MR. THORLEY:  For the United States, Your Honor, Scott

 7      Thorley.  To my right is AUSA Adam Elggren.  To his right is

 8      Special Agent Greg Stuart.  And to his right is Special

 9      Agent Carissa Barnes.

10          THE COURT:  Thank you, Mr. Thorley.

11          MR. HUNT:  Rob Hunt on behalf of Jamis Johnson who is

12      present.  To my right is Jamie Zenger and Daryl Sam.  And

13      sitting behind Daryl Sam is Robin Howell who is our case

14      agent.  Also during the trial we'll have Darla Snodgrass who

15      is an informational tech person who will assist us and will

16      sit up with Mr. Howell.

17          THE COURT:  Thank you.

18          MR. THORLEY:  And we likewise will have Erica Suarez

19      from the U.S. Attorney's Office.

20          THE COURT:  Thank you.  The panel is here.  I assume

21      that you have all got copies of the proposed voir dire.

22      We'll begin with the jury selection.  Let me -- I got this

23      proposed stipulated fact.  It seems to me, having read

24      through it, that the best place to do that would be at the

25      close of the government's evidence but before the government
```

3

1    rests.  So it will come in as a part in the case in chief.

2    Any objection to that?

3         MR. THORLEY:  No objection.

4         MR. HUNT:  No objection, Your Honor.

5         THE COURT:  With respect to the -- and I assume you

6    have got the preliminary instructions and there are no

7    additional changes that we need to make to those so we can

8    go ahead and get copies made for the jury.  Any objection to

9    that?

10        MR. THORLEY:  We have no objection.

11        MR. HUNT:  None, Your Honor.

12        THE COURT:  All right.  Let me just raise one issue

13   and get your suggestions as to how we should deal with it,

14   if at all.  I understand that there has been a person

15   distributing pamphlets that some of the prospective jurors

16   may have received discussing jury nullification.

17        I haven't seen the pamphlet but it has been reported

18   to me that it says neither the attorneys or the court will

19   tell you that you have the right to disregard the court's

20   instructions, and you should be aware that you have the

21   constitutional right to do that.

22        Do either of you believe I should mention this, ignore

23   it completely.

24        MR. THORLEY:  Your Honor, the United States, frankly,

25   would request that the court inquire into whether any of the

4

1     members of the panel have seen the pamphlet and read it, and

2     whether that would influence them in any way.

3          THE COURT:  Mr. Hunt, do you have any suggestion?

4          MR. HUNT:  That is fine if it is exactly what he said.

5     I think Mr. Thorley's request is fine.

6          THE COURT:  I suspect the best time to do that is

7     during voir dire.

8          MR. THORLEY:  Yes, Your Honor.

9          THE COURT:  I'll just add that as the last question.

10         MR. THORLEY:  Thank you.

11         THE COURT:  And then we can follow up on it if we need

12    to do that.  If there is nothing further, let's bring in the

13    panel.  I'm going to -- I'll step down from the bench until

14    the panel gets in here.  We will seat them in the usual

15    fashion including in the back of the courtroom.  So we will

16    need people who are seated in the courtroom will need to

17    move to the back or someplace where we can seat the jury.

18         We'll be in brief recess while we bring the panel in.

19         (Recess.)

20         THE COURT:  Good morning prospective members of the

21    jury.  We appreciate you being here.  We are here in a civil

22    case.  It is the matter of the United States versus Jamis

23    Melwood Johnson.  I will give you more instructions about

24    that in a moment.  First let me ask counsel to introduce

25    themselves and those who are present with them at counsel

 1    table.

 2         Mr. Thorley?

 3         MR. THORLEY:  Your Honor, ladies and gentlemen, I am

 4    Scott Thorley, I am an Assistant United States Attorney with

 5    the U.S. Attorney's Office here in Salt Lake City.

 6         To my right is co-counsel on the case Adam Elggren

 7    also an Assistant United States Attorney.  To his right is

 8    Special Agent Greg Stuart from the Treasury Department

 9    Criminal Investigation Division of the Internal Revenue

10    Service.  And to his right is Special Agent Carissa Barnes

11    with the Housing and Urban Development Office of the

12    Inspector General Special Agent with that office.  Thank

13    you.

14         MR. HUNT:  Your Honor, ladies and gentlemen, I am Rob

15    Hunt and I am representing Jamis Johnson who is present.

16    Mr. Johnson would you please stand.  And this is Jamie

17    Zenger, co-counsel with me, and also Mr. Daryl Sam,

18    co-counsel as well.

19         Seated here will be two other individuals who you

20    might see come in.  Robin Howell, who is our case agent, and

21    another person named Darla Snodgrass who is another case

22    agent who will be in charge of exhibits.

23         THE COURT:  I said, members of the jury, that this is

24    a civil trial.  It is actually a criminal trial.  The trial

25    is expected to last about two and a half weeks.  Let me

```
1        explain the process we're about to go through.

2            The first part of any trial is selecting a jury.  We

3        will be selecting 13 jurors to ultimately serve during the

4        length of this trial.  As part of this process, the first

5        thing we're going to do is we are going to go through and

6        ask each of you to stand and introduce yourself and answer

7        nine questions so they are general questions about

8        yourselves.

9            Once we have completed that, each of you have been

10       given a card and I will read through about 23 questions and

11       ask you to answer yes or no on the cards.  Following that

12       we'll have some follow up.  The selection of the jury is a

13       critical and important part of the trial.  We ask you to be

14       patient with us.  This will take us a little while to go

15       through each of you and make the proper judgments about how

16       to select a jury.

17           Mr. Taylor is the courtroom deputy and he will guide

18       you through this process.  But if we could begin with juror

19       number one, and there is nine questions on the card that

20       Mr. Taylor will hand to you.  If you could just answer each

21       of those questions while we proceed through this process.

22           Before we have you answer the specific questions, if

23       you would all stand and Mr. Taylor will place you under

24       oath.

25           (Whereupon, the jurors were given an oath.)
```

```
1              THE CLERK:  Thank you.  Please be seated.

2              THE COURT:  We'll begin with XX. XXXXXXXX, if you

3       would stand please and respond to those questions.  If you

4       would please stand, sir.

5              XX. XXXXXXXX:  Your Honor, ladies and gentlemen, my

6       name is XXXX XXXXXXXX.  I'm from Pleasant Grove.  I

7       graduated from BYU in engineering technology.  I am

8       currently an engineering director in the media services

9       department of the LDS Church.  My responsibilities are to

10      oversee a division that designs, manufactures, installs and

11      supports audio visual equipment in numerous facilities.  We

12      also consult with and do some installation in conference

13      rooms.  This includes telepresence rooms and

14      teleconferencing and that sort of thing.  My spouse is

15      retired.  She was a substitute teacher in the school

16      district there in Utah County.  The only family member I can

17      think of that is involved in law enforcement would be a

18      brother-in-law who is a California Highway Patrolman in

19      California.  I have six children.  The youngest -- do I need

20      to go through the age of each one?

21             THE COURT:  Just in general.  We won't hold you to

22      remembering exactly everything.

23             XX. XXXXXXXX:  Thank you.  I would have to refer to

24      notes to do that.  My oldest son is deceased.  My youngest

25      daughter is 19.  I regularly read the Daily Herald, a number
```

8

```
 1      of technical magazines.  I have no bumper stickers.
 2              THE COURT:  Thank you.
 3              XX. XXXXXXXX:  Thank you.
 4              THE COURT:  Mr. XXXXXX.
 5              XX. XXXXXX:  Thank you, Your Honor.  Ladies and
 6      gentlemen my name is XXXXX XXXXXX and I reside in Riverton.
 7      My educational background is a bachelors degree in science
 8      at the University of Utah in architecture.  My occupation is
 9      an architect senior health care planner and I specialize in
10      health care facilities and I have been doing that for over
11      five years.  My job responsibilities marketing for my firm,
12      managing the firm.  I am the director of marketing.
13      Outreach programs, development of new projects, and senior
14      planner for all health care projects.  My spouse is a
15      homemaker.  Previously she was a special ed teacher for the
16      Jones Center here in Salt Lake.
17              I do have a close friend who is in law enforcement.
18      His name is Matt Throckmorton and he is, I think he works
19      with the forensics department or something like that, a
20      crime scene investigation, I think.  Um, I have three
21      children, three boys who are ages 17 and 14 and 11.
22              I don't take any newspapers, but I subscribe to
23      Architectural Record, Architect Magazine, Modern Health Care
24      and a number of other technical magazines.  I don't have --
25      none of my family members have any bumper stickers.
```

```
1            THE COURT:  Okay.  XX. XXXXXXXX.

2            XX. XXXXXXXX:  My name is XXXXXXX XXXXXXXX.  I live up

3    in South Weber which is up near Ogden.  My education

4    background I went to Weber State, didn't graduate, for about

5    two years.  I am a stay at home mom.  I have been that for

6    about seven years and before that I was a senior accounting

7    clerk for a management and training corporation.  Um, my job

8    responsibilities are raising my four children.

9            The occupation of my spouse is he is in the Air

10    National Guard as an -- I forget what he is called.  He

11    works on the wiring of an airplane.  He also works up on

12    base, the Hill Air Force Base as a tech there demilitarizing

13    vehicles.  I do not have any friends who are in law

14    enforcement.  My husband has a close friend who is a sheriff

15    in Wyoming.  I have four children.  My oldest is 11, next is

16    six, four and 18 months.  I don't usually read a lot of

17    newspapers or magazines.  And no, we do not have any bumper

18    stickers on the car.

19            THE COURT:  Thank you.  XX. XXXXXX.

20            XX. XXXXXX:  My name is XXXXX XXXXXX I am from West

21    Valley.  I graduated from Highland High School, no college.

22    In January I was laid off from a medical equipment

23    reconditioning company and I am supposed to start a new job

24    today as a receptionist at Jordan Valley Orthopedics.  So I

25    don't know what my responsibilities are yet.  Just a
```

1    receptionist.  I am a widow.  He was an accountant.  And I

2    have two friends that are on the police force in Salt Lake.

3    One is a guard at the jail; and the other one is an officer

4    on the Salt Lake Police Department.  I have five children

5    ranging from 33 to 21.  I don't take any papers or

6    magazines.  And we have no bumper stickers.

7         THE COURT:  Thank you.

8         XX. XXXXXXX:  My name is XXXXXXX XXXXXXX.  I live in

9    North Ogden.  My educational background I graduated from

10    Logan High and attended two years at Utah State.  My

11    occupation for the last five years I am currently working in

12    a lady's clothing shop.  I retired as a Department of

13    Defense employee with the Defense Depot Ogden.  And job

14    responsibilities now are just sell a lot of cute clothes.

15    Occupation of my spouse, he too was a Department of Defense

16    employee at Defense Depot Ogden and he retired a number of

17    years ago and went through POST and became a bailiff for the

18    court -- county court in Ogden.  And I don't have a close

19    friend but our daughter now works in Weber County Court as a

20    judge's assistant.  I have two children, 40 and 38.  I do

21    read the newspapers, local newspaper, and I have no bumper

22    stickers as well.

23         THE COURT:  Thank you.

24         XX. XXXXXXXXX:  Hi, I am XXXXXX XXXXXXXX.  I am from

25    Kearns.  I graduated from Hillcrest High School.  My

11

1    occupation is a medical assembler.  We build lasers for

2    laser eye surgeries.  My husband is a manufacturer engineer

3    for a medical manufacturing place, too.  The only law

4    enforcement I know is my niece is dating a Park City

5    Officer.  I have two kids, 21 and 22.  I do not take any

6    newspapers but I read online.  And I do not have any bumper

7    stickers.

8        XX. XXXXX:  My name is XXXX XXXXX.  I live in

9    Taylorsville, Utah.  I am currently going to Salt Lake

10   Community College and I am set to go to the University of

11   Utah this summer going into behavioral science and health.

12   I am currently working at Intermountain Health Care for the

13   past three years I'm a courier so I pick up and deliver any

14   kind of medical supplies that are needed throughout the

15   intermountain valley.

16       My responsibilities are to take responsibility for

17   whatever I have in my possession, to watch over it and to

18   obey traffic laws.  I am currently single, no spouse.  I

19   have a close cousin that is a police officer in Gunnison and

20   also a brother that is a police officer in Springville.  I

21   have no children.  I don't take newspapers or magazines.  I

22   have no bumper stickers.

23       THE COURT:  Thank you.

24       XX. XXXX:  My name is XXXX XXXX, I'm from Cedar City.

25   I graduated from the University of Southwestern Louisiana

                                                              12

```
1    with a degree in liberal arts and master of Forestry from

2    Utah State University.  I'm a forester.  I work for the

3    Bureau of Land Management.  I plan and administer vegetation

4    treatments.  My wife is -- sorry I have to move this away so

5    I can read it.  My wife is retired.  She worked for the

6    Social Security Administration for a number of years before

7    retirement.  I don't have any close friends or family

8    members that are in law enforcement.  I do occasionally work

9    with agency law enforcement officers on investigations and

10   violations.  I have two children 27, 29.  I usually keep up

11   with the news via the news media, the TV news media and Salt

12   Lake Tribune and occasionally some of the local papers down

13   in the Cedar City area.  And we have no bumper stickers.

14        THE COURT:  Thank you.

15        XX. XXXXX:  My name is XXXXXXX XXXXX.  I live in

16   Holladay.  I am currently going to school for a bachelor of

17   business management.  I am a full time student so I don't

18   actually work right now.  No job responsibilities other than

19   cleaning the house because I'm a stay at home dad when I'm

20   not a student.  My wife works for an RV company as an office

21   assistant.  I don't have anyone close to me that is in law

22   enforcement.  I have two children, a 19 year old boy and a

23   17 year old girl.  I don't subscribe to any newspapers,

24   magazines.  I do read online stuff, but usually about two or

25   three weeks late because I am doing homework.  I don't have
```

1    any bumper stickers, but I do have a window sticker that has

2    a Y on it.

3        XX. XXXXXX:  My name is XXXXXX XXXXXX and I live in

4    Payson, Utah.  I graduated from BYU with a bachelor degree

5    in Communication of Fine Arts.  I work for Qwest

6    Communication as a customer data technician.  I install high

7    speed data lines ranging from T-1 above.  My wife is a stay

8    at home mom.  We have six kids, one exchange student,

9    ranging from 17 to 8.  Like I need a microphone.  I don't

10   have any close friends that work in law enforcement.  I

11   don't have anyone in the family.  My wife -- I answered the

12   children questions.  I read the Daily Herald and I read the

13   Deseret News.  And window stickers I have a Y and the

14   Yankees.

15       THE COURT:  Thank you.

16       XX. XXXXXXXX:  My name is XXXXXX XXXXXXXX.  I live in

17   Herriman, Utah.  I went to school at Salt Lake Community

18   College for four years and got a license -- I am a licensed

19   journeyman electrician.  I am currently employed.  I

20   switched over into the fire protection field doing fire

21   alarm and fire sprinklers and am currently the division

22   manager in a construction company and an estimator.  My wife

23   is a stay at home mom.  She used to work for Kiddie Candids

24   as a photographer.  I do have some friends in our

25   neighborhood that are in law enforcement.  Two of them that

14

1    are currently police officers, one in West Jordan, one in

2    Salt Lake City.  One that was a highway patrolman.  He was a

3    neighbor of mine and you guys might remember him.  He was --

4    his name was Brian Smith that moved to Texas and that ended

5    up tragically for him.  I do have three girls aging from 8

6    years old, 7 years old and then a 3 year old.  Um, I don't

7    take any newspapers or magazines, but I do read KSL.com.  I

8    do not have any bumper stickers.

9         XX. XXXX:  My name is XXXXX XXXX.  I am from Syracuse.

10   I attended Weber and Utah State and graduated from the Y in

11   interior design.  I have worked many years as a designer and

12   work for America First now refurbishing branches.  My job

13   has just recently changed because of the economy we scaled

14   back I'm now doing mortgages.  So I'm responsible for

15   originator I put the mortgage applications and the files

16   altogether.  I am divorced.  I have no spouse right now.  I

17   don't have a close friend in police enforcement.  I have

18   four children ranging from 27 to 33.  I take the Ogden

19   Standard, I watch the news, so I try to stay current on all

20   that is going on.  I don't have any bumper stickers.

21        THE COURT:  Thank you.

22        XX. XXXX:  Good morning.  My name is XXXXX XXXX.  I'm

23   from Santaquin and I have a two year degree from UVU.  For

24   the past 10 years I have worked for the State of Utah at the

25   State Hospital.  I work on the forensic unit.  Sorry, I have

15

1    been sick.  My job responsibilities I am a psychic tech and

2    I deal with the patients that are trying to become competent

3    on the forensic unit.  My wife also works at the hospital on

4    the children's unit.  I do have friends that work up there

5    that are police officers that work for the hospital.  I have

6    got five kids that range in age from 17 to 2.  I do read the

7    newspaper.  I don't subscribe to one.  And I do not have any

8    bumper stickers.

9        THE COURT:  Thank you.

10       XX. XXX:  My name is XXXXXXX XXX and I live in West

11   Jordan.  I went to Brigham Young University and then the

12   University of Utah and studied political science, sociology,

13   psychology and received a criminology certificate.  I have

14   been a law enforcement officer for over 17 years.  I have

15   worked undercover narcotics, I have worked counter

16   surveillance for the Federal Bureau of Investigations and

17   other narcotic investigations.  I also work for the

18   Department of Justice, National Institute of Corrections

19   teaching across the United States.  Currently I am

20   responsible for all of the programming at a woman's halfway

21   house, Orange Street Community Correctional Center for the

22   State of Utah Adult Probation and Parole.

23       My husband played professional football for 10 years

24   and is now working in gang interdiction in the juvenile

25   justice program for the State of Utah.  I have lots of law

1    enforcement friends.  I have a four year old, a 15 year old

2    stepdaughter and a 30 year old stepdaughter.  I read lots of

3    magazines and newspapers and avoid as many law enforcement

4    articles as I can.  And I recently purchased a used vehicle,

5    so the bumper stickers aren't by my choice.  But there is an

6    Eat at Joe's Crab Shack and a British flag on the back of my

7    vehicle right now.  Not by choice.

8        XX. XXXXX:  My name is XXXX XXXXX and I am from West

9    Valley City.  Um, I graduated from Village High.  I have

10   been a banker for the last 15 years.  My job

11   responsibilities is I am a manager over several bankers.  My

12   husband works for a property management company.  I don't

13   have any close friends or family members in law enforcement.

14   Two children ages 16 and 14.  I don't subscribe to any

15   magazines or anything, but I do watch the news nightly and I

16   do read the newspapers every once in a while.  And I don't

17   have any bumper stickers on the back of my vehicle.

18       XX. XXXXXXX:  My name is XXXX XXXXXXX.  I am from

19   South Jordan.  Salt Lake Community College.  My occupation I

20   am operations manager for a warehouse that covers 11 western

21   United States.  I am in charge of sales, marketing,

22   logistics, everything, employees.  My wife is -- my wife is

23   a masters in education, special education.  She has taught

24   special ed for 14 years.  About 14 too many.  No close

25   family members in law enforcement.  I have four children

17

1    from 27 down to 20.  I read the newspaper on occasion and

2    watch the news.  I have no bumper stickers.

3        XX. XXXXXXX:  Good morning.  My name is XXXXXXXXX

4    XXXXXXX.  I live in Salt Lake.  I graduated from Weber State

5    with a degree in geology.  I am currently work at Hill Air

6    Force Base as a contract negotiator.  I buy supplies and

7    equipment for the 49th Maintenance Squadron.  My wife is a

8    doctor of audiology in Bountiful, Layton and Ogden.  My

9    mother is an investigator for the Department of Labor.  No

10    children.  News media on the television.  No bumper

11    stickers.

12        XX. XXXXXX:  My name is XXXX XXXXXX.  I am from the

13    Midvale area.  My educational background is high school

14    graduate.  I graduated from Orem High School.  My occupation

15    is I am a stay at home mother.  Job responsibilities

16    watching after a teenage son.  The occupation of my spouse

17    he is a car dealer.  I do not have any close friends or

18    family members in law enforcement.  I do have six children

19    raging in age from 31 to 14.  I do not subscribe to

20    newspapers or other media but I regularly read.  I do not

21    have any bumper stickers.

22        XX. XXXXXX:  My name is XXXXX XXXXXX.  I am from

23    Riverton.  I went to Bingham High School.  For 29 -- 27

24    years I worked for a water district here in Salt Lake City.

25    My responsibilities are the operations and distributions

18

1    superintendent.  Making sure water gets where it is going.

2    My wife is currently a stay at home mother.  I have a niece

3    that is currently in the mail room at the Utah Prison.  I

4    have two children, 24 and 7.  I read the Tribune on

5    weekends.  I have no bumper stickers.

6        XX. XXXXXX:  My name is XXXX XXXXXX.  I am from West

7    Valley City.  I have an undergraduate degree in management,

8    bachelors degree from the University of Utah.  I have an MBA

9    from the University of Phoenix.  For the last five years I

10    have been a manager at a major credit card company.  I have

11    three frontline team leaders that I manage and about 60

12    employees.  My spouse also works for that same credit card

13    company, all in customer service and in collections.  My

14    neighbor who I am really close friends with is a narcotics

15    officer for Salt Lake County.  I have two children, one

16    seven and one three.  I don't -- I don't necessarily -- well

17    actually I do.  I read the newspaper every day online and I

18    do have lots of magazine subscriptions, they are mostly

19    hobby related all automotive.  And I do have just one

20    sticker on my truck but it is just a burn off road company.

21        XX. XXXXXXX:  My name is XXXXXX XXXXXXX and I am from

22    Kanab, Utah.  I have a high school diploma from Kanab High

23    School.  I'm currently a part-time dispatcher for the Kane

24    County Sheriff's Office.  And prior to that I managed a

25    mental health clinic in Kanab for five years.  My job

```
 1        responsibilities are basic communications for the dispatch

 2        center for five agencies.  My spouse is currently selling --

 3        he is self-employed selling health and life insurance.

 4        Prior to that he was a hotel manager down here in Salt Lake

 5        City, downtown.  I do have some close friends, through my

 6        employment, that are in law enforcement.  And my oldest son

 7        is a military police officer.

 8             I have four children from 25 to 18, 17 or 18.  I think

 9        one of them is having a birthday this month.  I subscribe to

10        the local newspaper, it is a weekly paper, and I'm lucky if

11        I read it because I forget to.  And I have one window cling

12        on the back of my car that says "Land of the Free Because of

13        the Brave" in honor of my son.

14             XX. XXXXX:  My name is XXXXX XXXXX.  I live in Sandy.

15        I need my glasses.  I have a BS degree from Purdue

16        University.  I have been retired since '91.  I work full

17        time as a missionary for the Church of Jesus Christ of

18        Latter-day Saints in the curriculum department developing

19        online content for LDS.org.  My wife is the assistant

20        managing editor of the Ensign and has been for the last 20

21        years.  I have no close -- or no friends or no acquaintances

22        in law enforcement.  I have three children ranging in age

23        from 39 to 35.  I don't subscribe to any magazines or

24        newspapers but I read the LDS content online.  I have no

25        bumper stickers on my vehicle.
```

1          XX. XXXXXXXX:  Good morning.  My name is XXX XXXXXXXX

2     I am from Provo, Utah.  I went to the University of Colorado

3     in Boulder and am finishing a master's degree at the

4     University of Utah.  I work currently at Novell Software

5     Company and I am a director there.  My current

6     responsibilities include managing a couple of teams who have

7     a variety of functions from sales, presales, technical

8     support and manage business partners.

9          My wife is currently an attorney at the law firm of

10    Snell & Wilmer.  She was a clerk of this court formally.  I

11    have no close friends or family members in law enforcement.

12    I have no children.  I follow the Economist and Wall Street

13    Journal.  I have no bumper stickers.

14         XX. XXXXX:  My name is XXXX XXXXX.  I live in Provo,

15    Utah.  I attended Oregon State University.  I have worked as

16    a chef and a kitchen manager for the last 17 years.  I am

17    responsible for the hiring, firing and training of the crew,

18    ensuring profitability, maintaining cleanliness and safety

19    standards.  My wife stays at home, runs the house, takes

20    care of the kids.  I don't have any close friends or family

21    members in law enforcement.  I have two children ages six

22    and four.  I do not subscribe to any publications, but I do

23    read the Tribune and the Oregonian online.  And I have no

24    bumper stickers.

25         XX. XXXXXX:  Good morning my name is XXXX XXXXXX.  I

1    am from Layton, Utah.  My educational background I have a

2    high school diploma from Ben Lomond.  I have been a facility

3    trainer for Associated Foods at their warehouse out in Farr

4    West for the last two years.  Before that I was an orderer

5    for Associated Foods.  My responsibilities basically I train

6    new hires and work on standard operating procedures.  My

7    wife is a teacher for Layton Elementary.  She has taught

8    fourth grade for, I think, the last four years.  And prior

9    to that it was second grade for four years.  I do have one

10   second cousin that is a highway patrolman up in Oregon.  My

11   first child is actually due in June.  I don't read any

12   newspapers or magazines, just KSL.com and just online stuff.

13   And I do have one window sticker for Fox Racing.

14        XX. XXXXXXX:  My name is XXXXX XXXXXXX.  I am from

15   Syracuse.  My educational background is about an associates

16   degree from Weber State.  I am currently a registrar for

17   Syracuse High School and then before that I was at North

18   Ridge High School.  My job responsibilities I oversee

19   approximately 2,000 students and their records, sending

20   transcripts to potential colleges for them, enrolling new

21   students, withdrawing students that don't attend.  I can go

22   on and on and on.  My spouse is a custodian for an

23   elementary school and then I am affiliated with several law

24   enforcement agencies that come into the school on a first

25   name basis.  I have four children ranging from 33 to 24.  We

```
1    subscribe to the Standard Examiner and a couple of other

2    gardening magazines and herb magazines.  And we have a

3    Packers bumper sticker.

4         XX. XXXXXXXX:  Good morning.  My name is XXXXX

5    XXXXXXXX.  I am from Cedar City, Utah as well.  Educational

6    background I am I guess a professional student.  I am

7    working on my bachelor's degree.  I finished my major in

8    Spanish, minor in biology.  Mostly getting a GIS degree like

9    -- I can spare you the details it is geographic information

10   systems, spacial data nerd stuff.  My occupation for the

11   last five years again a full time student.  When I was

12   attending full time, I am just working on my final project

13   now.  I was a custodian for the university.  I am also a

14   stay at home dad.  I have a two year old son, he is a

15   handful.  My wife is an educator.  She teaches sixth grade

16   at a middle school down in Cedar City.  Let's see, I do have

17   a close friend who is in law enforcement.  He is a law

18   enforcement ranger down at Lake Mead.  I already said

19   children.  Newspapers and magazines I do read the occasional

20   Cedar City newspaper that comes out.  If it is asking for

21   news sources, mostly BBC, NPR, like the other things.  And

22   bumper stickers, I don't have any.

23        XX. XXXXXX:  Good morning.  My name is XXXXXXXX

24   XXXXXX.  I have a house in Sugarhouse.  I graduated from

25   Horizonte after going to Highland and then did two years in
```

23

1    Salt Lake Community College.  I work at a brew pub.  My job

2    is to serve really good beer without getting them

3    intoxicated.  I also started a jewelry business.  I do have

4    a friend in -- who is Salt Lake City officer.  Her name is

5    Veronica Montoya.  I have no children, no spouse.  And I do

6    not take newspapers and I do not have bumper stickers.

7         XX. XXXXX:  My name is XXXXX XXXXX, I live in Spanish

8    Fork, Utah.  I got an MBA from the U.  Technically I'm

9    self-employed, but the company that is my only customer is a

10   software vendor and I'm the acting VP of sales and

11   marketing.  I spearhead a lot of their sales and marketing

12   activities.  My wife is a stay at home mom taking care of

13   our three kids ranging in age from 18 months to 7 years.  I

14   have a high school friend that is a Summit County Sheriff's

15   Deputy or whatever.  He worked for the courthouse.  I

16   covered the kids.  We subscribe to the Daily Herald weekend

17   edition but I usually don't get around to reading it.  We

18   have Readers Digest and Popular Science and I get most of my

19   news from online sources.  No bumper stickers.

20        XX. XXXXXXXXX:  My name is XXXX XXXXXXXXX.  I live in

21   Park City, Utah.  My educational background includes a

22   bachelors degree in philosophy from the University of Utah

23   and a JD from the University of Utah.  My occupation is an

24   attorney.  I am a partner with the Wrona Law Firm in Park

25   City, Utah.  My practice is primarily litigation, mostly

1    real estate and business related.  I manage junior attorneys

2    and paralegals and just am responsible for moving cases

3    along through the system.  My spouse is a stay at home mom.

4    I don't have any close friends or family members who are in

5    law enforcement.  I have four kids, one six year old and

6    three 13 year olds.  And I read the Salt Lake Tribune the

7    local Park City newspaper, the Economist.  And I have a

8    University of Utah sticker on my car.

9        XX. XXXXXXX:  Good morning.  My name is XXXXX XXXXXXX.

10    I am from Centerville, Utah.  I have a certificate in

11    accounting from Pontiac Business Institute in Pontiac,

12    Michigan.  I am currently a software tester and have been

13    for the last five years.  I work for a computer marketing

14    corporation.  We write software for credit unions.  And my

15    job is to break the software before we release it out.  My

16    spouse is a Dominos Pizza delivery driver.  And his

17    responsibility is just to get you guys your pizza as fast as

18    he can.  I have a cousin that is a deputy sheriff in Oakland

19    County, Michigan.  I have an uncle by marriage that is a

20    public defender in Davis County.  I have two children, 16

21    and 18.  My husband subscribes to newspapers but I don't

22    read any of them.  And I have no bumper stickers on my cars.

23        XX. XXXXXXX:  Good morning.  Name is XXXX XXXXXXX and

24    I am from Kearns.  My educational background is I attended

25    two years at the University of Utah.  I am retired.  The

25

1    last 28 years I worked at the university managed a small

2    department there.  My current job responsibilities are

3    taking care of the cat and things around the house.  My wife

4    is a teacher's aide at Redwood Elementary.  I have no close

5    friends or family members in law enforcement.  I had two

6    daughters.  My oldest daughter died of a brain tumor.  I

7    don't read any newspapers or magazines.  All of the news I

8    get is from TV and the web.  And I have no bumper stickers.

9        XX. XXXXXXXX:  Hi.  My name is XXXXXX XXXXXXXX and I

10    am from Beaver, Utah.  I graduated from SUU with a degree in

11    business and marketing education.  I currently work for the

12    Fifth District Court in Beaver as a judicial assistant for

13    both the district and juvenile court.  My job duties include

14    basically everything involving the court from customer

15    service to in-court clerking and jury management.  So the

16    role has been reversed on me today.  My husband works for

17    the U.S. Department of Agriculture as a soil conservationist

18    for the natural resource soil something.  I don't know.  Um,

19    I don't have any close friends or family members that work

20    for law enforcement although I do work with the highway

21    patrol and the deputies through work.  I have three children

22    ages 12, 10 and six.  I do not subscribe to any newspapers

23    but I do read them online and I have no bumper stickers.

24        XX. XXXXXXXX:  My name is XXXX XXXXXXXX.  I live in

25    Payson, Utah.  I graduated from UV Community College in Salt

1    Lake City.  Two years in building construction.  Last five

2    years I have been working construction all my life, I was a

3    superintendent for a construction company, overseeing jobs,

4    large industrial and commercial jobs.  My spouse works as a

5    clerk in a convenience store.  I do have several close

6    friends in law enforcement, no family members, few in the

7    local police department, some on the highway patrol.  I have

8    four children ranging from 37 to 28.  I do subscribe to the

9    newspapers Daily Herald, I read the Salt Lake Tribune, local

10   newspaper in Payson.  I do not have any bumper stickers.

11        XX. XXXXXXXX:  My name is XXXXX XXXXXXXX.  I am from

12   Pleasant Grove.  I have a bachelor of science from BYU in

13   speech therapy and education, a teaching certificate from El

14   Paso, Texas.  We moved to Utah from Texas five years ago and

15   I work as an aide in the elementary school supervising

16   students.  Before that I did teach elementary school and I

17   owned and operated a preschool daycare for three to five

18   year olds.  My husband is -- has a PhD in audiology.  He is

19   semi-retired.  He returns to El Paso once a month for four

20   days to do consulting.  I have two friends in El Paso who

21   are border patrol agents.  I have five children ages 36 to

22   24.  We take the Daily Herald and I probably watch more news

23   than I read.  I don't have any bumper stickers.

24        XX. XXXXXXX:  My name is XXXXX XXXXXXX.  I live in

25   Plain City, Utah.  I have a high school diploma from Ogden

27

 1    High.  I work at Fresenius Medical Care and I make medical

 2    supplies.  My husband works at Great Salt Lake Mineral and

 3    Chemical Corporation, he is a lab technician.  I have two

 4    friends in law enforcement.  I have three children ages 37

 5    through 26.  I take the Standard Examiner and some

 6    housekeeping magazines.  I don't have any bumper stickers.

 7         XX. XXXXXXXX:  My name is XXXXXX XXXXXXXX.  I live in

 8    West Valley, Utah.  I have a bachelors degree from BYU and

 9    an MBA from Southern Utah University.  I work as a regional

10    manager for Heritage West Credit Union.  I oversee the

11    retail -- retail sales operations and employ development for

12    three retail branches, call center and the business services

13    department.  My wife is a homemaker.  Recently though she

14    worked as an office manager for a commercial real estate

15    management company.  I don't have any close friends or

16    relatives that are in law enforcement.  I have a two year

17    old daughter.  I read the Deseret News, Readers Digest,

18    Field and Stream.  I do watch the Nightly News.  I don't

19    have any bumper stickers.

20         XX. XXXXXXX:  My name is XXXX XXXXXXX and I am from

21    Cedar City.  I just recently graduated from Southwest

22    Applied Technology.  I have a CNA and a phlebotomy

23    certificate.  I work at an assisted living facility.  And

24    for those of you who don't know what that is, it is a

25    facility for elderly people when they are not capable of

1 living on their own at home.  And basically what I do is we

2 just kind of oversee and help them with their activities in

3 like an apartment-type atmosphere.  My spouse works for

4 Cedar City.  He works at the waste water treatment plant

5 there.  I have two children ages 14 and 17.  I have a cousin

6 who works for the sheriff's department in Oregon and I am

7 affiliated with some of the police officers in Cedar City

8 that belong to the Marine Corp League because I am the

9 president of the Marine Corp League auxiliary there.  As far

10 as newspapers and magazines, I don't subscribe to any.  I do

11 follow the military personnel that have passed in the

12 military because of being the president of the relief

13 auxiliary.  And the only sticker that is on my vehicle is

14 one that says Marine Corp League sticker and that is it.

15   XX. XXXXXX:  Good morning.  My name is XXXXXXX XXXXXX

16 and I live in Midvale.  I have some college and I work for

17 Morgan Jewelers at Fashion Place and I have been selling

18 jewelry for a long, long time.  My responsibilities are

19 selling jewelry and selling jewelry and selling jewelry.  My

20 husband retired from EDS where he was a software developer

21 and now he owns a 7-11 convenience store in Centerville.

22 And I do know some police officers from the Murray and

23 Midvale units because they provide security for our store in

24 Murray.  And I have a brother and a nephew who work on the

25 border patrol division in South Texas.  I have a niece that

29

1    is an FBI agent.  And I have two nephews that work for

2    Homeland Security in Washington D.C. I do have four children

3    ranging from ages 41 to 35 and we no longer subscribe to any

4    newspapers.  We do listen to the TV news media and subscribe

5    to some magazines.  We don't have any bumper stickers on our

6    vehicle.

7         XX. XXXXX:  Hello, my name is XXXXX XXXXX and I'm from

8    Herriman but I just moved to Midvale.  I am a full time

9    student.  I spent my first year of college outside of the

10   United States and I came back and then went again outside of

11   the United States and I just moved back here to finish up

12   some classes at Salt Lake Community to go to pharmacy school

13   next year.  So I don't work.  I am not married nor ever have

14   been.  I don't know anyone in law enforcement.  I don't have

15   any children.  And I read the online newspaper, state,

16   national and world every day.  And no bumper stickers.

17        XX. XXXX:  Hi, my name is XXXXX XXXX.  I live in South

18   Salt Lake City.  My educational background I attended

19   Granite High School and I did not graduate.  I completed

20   eleventh grade.  My job right now I work at a fabric store

21   at Hancock Fabrics where I am a cashier and I cut material

22   and answer a lot of crafting questions.  I don't have a

23   spouse right now.  I have an ex-husband who is deceased.  I

24   don't have any close friends that are in law enforcement.  I

25   have five children ranging from age 31 to 15.  I read the

1    Tribune on Sundays and I watch the news.  And I don't have

2    any bumper stickers on my vehicle.

3        XX. XXXXXXXXX:  Good morning, I'm XXXXXX XXXXXXXXX.  I

4    live in Logan, Utah and my educational background I went to

5    Utah State University and graduated with a bachelors degree

6    in family and consumer science.  I taught school for a few

7    years.  And right now I work at Utah State University as an

8    academic advisor for the College of Engineering.  My job

9    responsibilities are to keep about 500 engineering students

10   on track with their academic plans.  I also do some

11   recruiting for Utah State.  My husband is a golf pro.  He

12   runs one of the golf courses in Logan.  He also works for

13   the PGA on the off-season and travels around the country

14   doing things for them.  I have some acquaintances that are

15   in law enforcement in one aspect or another but not really

16   close friends.  I have four daughters ranging in age from 25

17   to 34.  And we do subscribe to the local newspaper which I

18   briefly glance over each day sometimes, but mostly watch the

19   news at night and no bumper stickers.

20       XX. XXXXXXX:  Hi.  May name is XXXXXX XXXXXXX.  I am

21   from South Jordan.  I have been to a year and a half of

22   college, I didn't finish.  I am a homemaker.  My husband

23   works for ADP and has for about 20 years.  He works in

24   telecommunication.  I take care of my five kids.  The oldest

25   is 32 the youngest is 12 and in sixth grade.  My brother

1    works in the State Attorney General's Office.  He is like

2    third or fourth in line.  His name is Tony Patterson.  I

3    also have friends in law enforcement in Salt Lake City and

4    those on the border patrol relatives also.  We take the

5    Deseret News.  I watch it on TV.  We have like the weekly

6    magazines that we read also.  And I don't have any bumper

7    stickers.

8         XX. XXXXXXXXX:  Hi.  My name is XXX XXXXXXXXX from

9    Cottonwood Heights.  And I'm currently at the University of

10   Utah in my third semester studying computer science.  I work

11   part time for my dad.  He has a law firm Henriksen and

12   Henriksen, mostly just civil law and personal injury

13   worker's comp cases.  I just -- I am a legal investigator,

14   take pictures of accident scenes, and do whatever they need

15   me to do, deliveries and stuff.  I am single.  I don't have

16   any close friends or family members in law enforcement.  And

17   all my family subscribes to Deseret News.  Sometimes I will

18   look at it or the Tribune or the New York Times online or

19   something.  And we have no bumper stickers.

20        XX. XXXXX:  My name is XXXX XXXXX.  I am from Sandy.

21   I have a bachelor of science degree from BYU in electronics

22   technology.  My occupation for the last 35 years is I have

23   been self-employed, have been a business system analyst

24   particularly around the Orick System.  Job responsibilities

25   is most implementation and customization of those systems.

```
1    My wife is a homemaker.  I don't have any close friends who

2    are in law enforcement, but my wife has an uncle who is a

3    judge down in Salina and her close cousin is also the Chief

4    of Police in Walnut Grove, California.  We have seven

5    children ages 34 down to 21.  We do subscribe to the Deseret

6    News.  I do not personally read it but my wife does.  I do

7    watch the news regularly.  We don't have any bumper stickers

8    on our vehicles.

9        XX. XXXXXXXXXXX:  My name is XXXXXX XXXXXXXXXXX.  My

10    apology about my accent but my native language is

11    Portuguese.  I live in Orem.  I graduated from BYU with a

12    bachelors degree in business management.  I have been

13    working for the State of Utah, actually worked for Utah

14    State Hospital.  My responsibilities basically involve

15    training, software, testing.  We have a patient electronic

16    system at the hospital and the last 13 years I have been

17    basically working with that system.  I also work -- I have a

18    part time job as well besides the full time job which I do

19    accounting.  My wife works for the Orem Child Care Division

20    Programs as a director.  I don't have any close friend who

21    is in law enforcement.  I do know the officers who work at

22    the hospital.  I have two children, 23 and 21.  I do read

23    the news online, local and national.  I do have a bumper

24    sticker that my daughter gave me.  It basically says, "my

25    Schnauzers are smarter than your honor student."
```

1          XX. XXXXX:  My name is XXXXX XXXXX and I'm from Sandy.

2      My educational background is from the University of Utah

3      with a bachelor of arts in art history.  It has not done me

4      any good.  My occupation for the last 15 years has been with

5      a staffing company for a medical and medical professionals.

6      And I am a technical training manager.  Manage a group of

7      people as well as I am responsible for all of the technical

8      applications within the company, training, and getting

9      everyone up to speed on them.  My spouse is a student of

10     physical therapy and will be graduating in May.  I do not

11     have any close friends or family members in law enforcement.

12     I have two children, eight months and three years.  I do not

13     read any newspapers.  I do have Sports Illustrated and read

14     some of those articles.  And Sponge Bob is the consistency

15     in my TV.  And no bumper stickers.

16         XX. XXXXXXX:  Good morning, my name is XXXXXX XXXXXXX

17     and I'm from South Jordan.  I graduated from Kearns High

18     School.  I do have some college management classes that I

19     have taken.  I have been in the mortgage business for over

20     30 years.  Mostly my job responsibilities I am an

21     underwriter.  I review credit packages for credit ratio

22     assets to determine if we're going to allow someone to buy a

23     home.  I am divorced.  My husband was a mechanic.  My

24     stepbrother is a detective with Alpine.  I have a daughter

25     26 and a son 24.  I do not subscribe to any newspapers or

                                                              34

1    magazines.  I do watch the local nightly news and I do not

2    have any bumper stickers.  Thank you.

3        XX. XXXXXXXX:  My name is XXXXXXXX XXXXXXXX and I am

4    from Herriman, Utah.  I have a bachelors degree from BYU and

5    a master's degree from Utah State University.  I have been a

6    library media specialist in Jordan District for the last 13

7    years.  My main responsibilities, besides managing the

8    library, is to help students to gather, analyze and use

9    information.  My spouse is also a media specialist working

10   for Canyons School District.  I do not have any close

11   friends in law enforcement.  I do have a nodding

12   acquaintance with the officer assigned to our school.  I

13   have three children.  They are 27, 24, and 22.  I regularly

14   read newspapers and news and television news online every

15   day.  We don't have any bumper stickers.  My husband who is

16   a radio control enthusiast does have a license plate

17   surround that says glider transporter.

18       XX. XXXX:  Good morning, my name is XXXXXX XXXX.  I am

19   from Sandy.  I have an associates degree from Idaho State

20   University in auto body.  I am self-employed.  I own an auto

21   body supply store in South Salt Lake called Discount Auto

22   body Supplies where my three sons work with me.  I am

23   self-employed and I have all of the responsibilities.  My

24   wife is a housewife.  We have five children ranging from 30

25   to 20.  I have three neighbors who are in law enforcement

35

1    and a nephew in Idaho who is in law enforcement.  Two of my

2    neighbors are retired.  I subscribe to Deseret News and

3    Readers Digest and read them on the weekends.  And I do not

4    have any bumper stickers on my vehicle.

5        XX. XXXX:  My name is XXXXX XXXX, I live in Kearns.  I

6    am a graduate of Highland High School and LDS Business

7    College.  My occupation for the last 19 years has been in

8    accounts payable at Franklin Covey Co.  My job

9    responsibilities everything that entails putting invoices

10   through the system from receiving them in the office through

11   payment.  My husband is a custodian at Jordan School

12   District.  I do not have any close friends or family members

13   who are in law enforcement.  I have three children.  My

14   daughter is deceased and I have two sons 31 and 27.  We

15   don't subscribe to any newspapers.  We do watch the news on

16   television.  We have no bumper stickers.

17       XX. XXXXXX:  Good morning.  My name is XXXXXX XXXXXX

18   and I live in Salt Lake City.  I have a PhD in mathematics

19   from LSU.  I am a professor of mathematics at the University

20   of Utah.  I am semi-retired which means I teach one semester

21   on and one semester office.  Unfortunately, this is the

22   semester on.  My spouse is a homemaker.  I do not have any

23   close friends or family members in law enforcement.  I have

24   three children between 40 and 50 years old.  I subscribe to

25   Salt Lake Tribune, Newsweek Magazine, Field and Stream and I

1    watch the local television and read extensively online.  We

2    have no bumper stickers except a Swedish flag on my wife's

3    car.

4        XX. XXXXXX:  Good morning, my name is XXXXX XXXXXX.  I

5    live in Lehi, Utah.  I am a graduate of Granite High School.

6    I take that one.  Occupation I have been a union elevator

7    installer for 40 years and for the last six years I have

8    been the construction and modernization manager here for an

9    elevator company.  My job responsibilities is personnel,

10    coordinating with contractors, I am also the safety manager

11    on the Utah State Elevator Code and Ethics Board and the gap

12    committee for the union.  My wife is a marketing director

13    for a home health care company.  I have a nephew down in Las

14    Vegas that is a metro officer.  And between my wife and I we

15    have six children ages from 27 to 40.  No newspapers or

16    magazines and no stickers.  Thank you.

17        XX. XXXX:  My name is XXXX XXXX, living in Eagle

18    Mountain.  I graduated from Brigham Young University with a

19    degree in Spanish.  I am a homemaker.  My husband is a

20    criminal defense attorney.  He is doing a trial down in

21    Cedar City today.  I do not have any close friends or family

22    in law enforcement.  I have three children, six, four and

23    almost two.  I subscribe to several newspapers but strictly

24    for the coupons.  No bumper stickers.

25        THE COURT:  Thank you.  I am now going to read some

```
 1    questions to you.  There are 23.  If you would take the

 2    three by five card that you have in front of you and write

 3    your name and your jury number at the top.  If for some

 4    reason the pen we have given you doesn't work, or you don't

 5    have one that writes, raise your hand and we'll fix that.  I

 6    am going to read each of the questions twice and ask you to

 7    answer a yes or no.  It is perfectly okay if you just put a

 8    Y or an N as long as it is clear which of those two it is.

 9         So we will begin that now and I will read each of the

10    questions.  The lawyers have introduced themselves to you.

11    Let me read the first question.  Do you know the defendant,

12    or any of the lawyers that have been introduced to you?

13    Answer yes or no.  That is question number one.  I'll read

14    question number two and then you'll see I'll need the

15    lawyers to give us some information.

16         The question is, do you know any of the witnesses that

17    have been just been named?  So if we could start with you,

18    Mr. Thorley, if you would list the witnesses that the

19    government may call in this case.

20         MR. THORLEY:  Your Honor, Mr. Elggren is going to

21    handle that.

22         THE COURT:  If you would do that, Mr. Elggren.

23         MR. ELGGREN:  Yes, Your Honor.  The government's

24    proposed witness list is as follows:  Steve Newcomb, Kim

25    Arnold, Larisa Jenkins, Carissa Barnes, Lavon Bennett, Brian
```

```
1     Berger, Lance Bingham, Gloria Bruderer, Kelly Carter, Rick

2     Craig, Mark Cummings, Elizabeth DeLeon, Mark Engledow,

3     Kenneth Finsand, Rodney Flahaut, Jeff Fowler, Jeff Gorringe,

4     John Grealish, J.R. Green, Mike Gunn, Elizabeth Gwilliam,

5     Ron Haycock, Kimberly Hinckley Johnson, Michelle Huggins,

6     Lynnea Jensen, Bethany Johnson, Clark Johnson, DaNell

7     Johnson, Joy Jordan, Lowell Kilpack, Brad Kitchen, Jeffrey

8     Leavit, Doug LeDoux, Andy Lewis, Donna Matranga, Chastity

9     Morgan, Travis Naffziger, Domingo Arroyo, excuse me I

10    misspoke on one witness it is not Kimberly Hinckley Johnson

11    it is Thomas.  Excuse me, Kimberly Hinckley Thomas, Jason

12    Neilsen, Ryan Parkinson, Valerie Perry, and Stephen Perry,

13    Gary Peterson, Joseph Pince, Joni Pratt, Tammy Jo Reed,

14    Sherry Rowley, Gil Shirley, Ryan Shirley, Lori Schoenlaub,

15    Lyle Smith, Paul Stanworth, Troy Stoker, Greg Stuart, Arlin

16    Stutznegger, Kenneth Tisor, Caren Tucker, Mike Weilenman,

17    Randy Yagi, and David Stephenson.

18         THE COURT:  Mr. Hunt, are there any additional

19    witnesses besides those that were named by the United States

20    that the defense may call?  Ms. Zenger?

21         MS. ZENGER:  The defense may call Cheryl Bennett, Joe

22    Cartwright, Joe Jimenez, Jamis Johnson, Kimball Johnson,

23    Eric Wheeler and Robin Howell.

24         THE COURT:  I'll read the question now again.  Do you

25    know any of the witnesses that have just been named?  Yes or
```

1    no.  Question number three, are you acquainted with any of

2    the other potential jurors here today?  Question number

3    three, are you acquainted with any other potential jurors

4    here today?

5         Question number four, are you acquainted with any

6    court personnel you see here today?  Again number four, are

7    you acquainted with any court personnel that you see here

8    today?  Question number five, have you ever been involved in

9    a court proceeding or served on a jury before?  Question

10   number five, have you ever been involved in a court

11   proceeding or served on a jury before?  Question number six,

12   have you ever testified as a witness in a judicial

13   proceeding?  Again, question number six, have you ever

14   testified as a witness in a judicial proceeding?

15        Question number seven, I'll read the question and then

16   you'll see why I'm going to have counsel then provide some

17   names.  Have you, a family member, or a close friend had an

18   experience with any of the following entities that may

19   influence you in this case?  Counsel, if you would list the

20   related entities that may be involved in this transaction.

21        MR. THORLEY:  Your Honor, the related entities that

22   we're aware of at this point are Layton Davis Financial

23   Services, Paramount Strategies, Ireland West, LLC, Johnson

24   and Associates, Argent Mortgage, Paragon Lending,

25   Countrywide Home Loans, America's Wholesale Lender,

1    Shoreline Lending, Mountain States Mortgage.  I believe that

2    is it, Your Honor.

3        THE COURT:  Any additional entities that the defense

4    wishes to add to the list?

5        MR. HUNT:  No, Your Honor.

6        THE COURT:  Let me read the question again.  This is

7    question number seven.  Have you, a family member or a close

8    friend, had an experience with any of the entities just

9    listed that might influence you in this case?

10        Question number eight, have you, or any member of your

11    family or a close friend, had an experience with the Office

12    of the Inspector General of the Department of Housing and

13    Urban Development, the Internal Revenue Service, the United

14    States Attorney's Office, the Department of Justice or any

15    other government agency that might influence you in this

16    case?

17        I'll read that again.  It is question number eight.

18    Have you or any member of your family, or a close friend,

19    had an experience with the Office of the Inspector General

20    of the Department of Housing and Urban Development, the

21    Internal Revenue Service, United States Attorney's Office,

22    the Department of Justice, or any other governmental agency

23    that might influence you in this case?

24        Question number nine, have you or a member of your

25    family or a close friend, ever been the victim of a crime?

1     Number nine again, have you, or a member of your family or a

2     close friend, ever been the victim of a crime?

3          Question number ten, have you or a member of your

4     family or a close friend, ever been arrested or convicted of

5     a crime?  I'll repeat number ten.  Have you or a member of

6     your family or a close friend, ever been arrested or

7     convicted of a crime?

8          Number 11, have you or a member of your family or a

9     close friend ever been the focus of a criminal

10    investigation?  Number 11, have you or any member of your

11    family or a close friend ever been the focus of a criminal

12    investigation?

13         Question number 12, have you or any member of your

14    family or a close friend ever been employed by a mortgage

15    broker, mortgage lender, real estate appraiser or title

16    company?  Question number 12, have you or any member of your

17    family or a close friend ever been employed by a mortgage

18    broker, mortgage lender, real estate appraiser or title

19    company?

20         Question number 13, have you or a member of your

21    family or a close friend, ever been involved in the

22    foreclosure of a home?  Number 13, have you, or any member

23    of your family or a close friend, ever been involved in the

24    foreclosure of a home?

25         Number 14, have you or any member of your family or a

42

1    close friend, ever been approached to purchase property

2    based on your good credit score?  I will repeat number 14.

3    Have you, or any member of your family, or a close friend,

4    ever been approached to purchase property based on your good

5    credit score?

6        Number 15, do you have any knowledge or experience in

7    mortgage underwriting procedures, real estate appraisal

8    guidelines, or escrow procedures?  Number 15 again.  Do you

9    have any knowledge or experience in mortgage underwriting

10   procedures, real estate appraisal guidelines, or escrow

11   procedures?

12       Number 16, have you had any formal training in tax

13   return preparation?  Number 16 again.  Have you had any

14   formal training in tax return preparation?

15       Number 17, have you heard anything about this case on

16   the television or the radio or read about it in a newspaper

17   or magazine or other news media?  Number 17, have you heard

18   anything about this case on the television on the radio or

19   read anything about it in the newspaper or magazine or other

20   news media?

21       Number 18, as a juror, your own views about whether a

22   particular law or rule of evidence is right or wrong cannot

23   play a part in your deliberations and review of the

24   evidence.  Would you be unable to follow my instructions

25   about these rules of law as well as all other instructions

1    that will be given to the jury at the end of the case?

2    Number 18 again.  As a juror, your own views about whether a

3    particular law or rule of evidence is right or wrong cannot

4    play a part in your deliberations and review of the

5    evidence.  Would you be unable to follow my instructions

6    about the rules of law, as well as all other instructions

7    that will be given to the jury at the end of the case?

8         Number 19, it is the judge's duty to determine

9    punishment if you find after considering the evidence and

10    the law you must apply that the defendant is guilty.  Would

11    you be unable to decide this case due to concern about a

12    potential punishment?  Number 19, it is the judge's duty to

13    determine punishment if you find after considering the

14    evidence and the law you must apply that the defendant is

15    guilty.  Would you be unable to decide this case due to

16    concern about a potential punishment?

17         Number 20, this trial is expected to last about two

18    and a half weeks.  Do you have any reason why you could not

19    serve on this jury for that length of time?

20         Number 20, this trial is expected to last about two

21    and a half weeks.  Do you have any reason why you could not

22    serve on the jury for that length of time?

23         Number 21, do you have any problem with hearing, sight

24    or any other medical problem that would impair your ability

25    to devote your full attention to the trial?  Number 21, do

1    you have any problem with hearing, sight, or any other

2    medical problem that would impair your ability to devote

3    your full attention to the trial?

4         Number 22, do you know of any reason why you could not

5    serve on this jury if selected?  Number 22, do you know of

6    any reason why you could not serve on this jury if selected?

7         Number 23, some of you may have received a copy of a

8    brochure entitled, Your Jury Rights True Or False.  It may

9    have been handed to some of you as you came into the

10   courthouse today.  Have you received a copy of this

11   brochure?  Yes or no.

12        This is number 23.  Some of you may have received a

13   copy of a brochure entitled, Your Jury Rights True Or False.

14   Have you received a copy of this brochure?

15        Is there anyone who would like to have any of the

16   questions reread?  Good.  Mr. Taylor will now collect the

17   cards from you.  He will collect them in the order you're

18   seated so he will follow that.  Once we have collected the

19   cards, counsel and the parties will retire to the adjacent

20   conference room.  We will then review the answers on the

21   cards.  We will invite some of you to come back for further

22   follow up on some of the responses to your questioning.

23        This will take us a little bit of time, so relax and

24   be patient with us as we try to go through this jury

25   selection process.  As I am sure you understand, the

1       selection of an impartial jury is a critical part of the

2       role.  So we will take sufficient time to make sure that we

3       do that part well.  So if you would be patient with us,

4       we'll be in recess while we follow up on the responses.

5            (Recess.)

6            (Whereupon, the following portion was held in the

7             jury room with the court, counsel and the defendant.)

8            THE COURT:  Back on the record in the United States

9       versus Jamis Johnson.  Counsel and parties are present in

10      the jury room out of the presence of the panel.  I have the

11      cards in front of me.  What I will do is I will go through

12      and look at the cards.  Primarily I'm looking for yes

13      answers and then depending on what the question is and how

14      you feel about it, we'll invite them to come back for some

15      follow up questions.

16           Of course you're free to look at the cards to make

17      sure that I have not missed something, but Mr. Hunt can look

18      over my shoulder to make sure that I don't miss one.  The

19      first one I have is XXXX XXXXXXXX.  XX. XXXXXXXX answers yes

20      to question number five and just to remind you, that is the

21      one about whether you know some of the entities.  He also

22      answers yes to question number 10 which is the question

23      about arrested or convicted of a crime and question number

24      20 and 22.  20 is the question about why he couldn't serve

25      and 22 is problem with hearing or sight.  Will you bring XX.

46

```
1        XXXXXXXX back.

2             THE CLERK:  This is XXXX XXXXX XXXXXXXX.  If you would

3        have a seat right here, sir.

4             XX. XXXXXXXX:  Good morning.

5             THE COURT:  Thank you for being here, XX. XXXXXXXX.

6        We're following up on your responses starting first with

7        question number five which was the question about whether

8        you had served in a court proceeding before.

9             XX. XXXXXXXX:  Yes.

10            THE COURT:  Tell us when you served and what your

11       involvement was.

12            XX. XXXXXXXX:  I served down in Utah County.  It was a

13       murder case.  I ended up being the jury foreman.  It lasted

14       about a week.

15            THE COURT:  Did the jury reach a verdict?

16            XX. XXXXXXXX:  Yes.

17            THE COURT:  Was there anything about your service in

18       that case that you believe would make it difficult for you

19       to serve as a juror in this case?

20            XX. XXXXXXXX:  No.

21            THE COURT:  Question number 10 is whether you or a

22       family member have ever been arrested or convicted of a

23       crime?

24            XX. XXXXXXXX:  Yes.  My daughter was arrested as a

25       result of involvement with marijuana and she had some
```

1    paraphernalia.

2        THE COURT:  I'm going to ask you to speak up.  This

3    cooler is making too much noise.  I'll ask you to speak a

4    little bit louder.

5        XX. XXXXXXXX:  My daughter was arrested with regard to

6    some marijuana and paraphernalia.

7        THE COURT:  And was she -- did she proceed to a trial

8    or how was the issue resolved?

9        XX. XXXXXXXX:  No, there was no trial.  And luckily we

10   have been able to change her direction in life but that was

11   just an unfortunate situation when she was in high school.

12       THE COURT:  In that circumstance, did you feel like

13   she had been treated fairly by law enforcement?

14       XX. XXXXXXXX:  Yes, I think so.

15       THE COURT:  Um, question number 20 has to do -- is the

16   question about whether you have a reason why serving for two

17   and a half weeks on this trial may be a problem for you.

18       XX. XXXXXXXX:  Yes.  We're scheduled to leave a week

19   from Wednesday on a family vacation to Orlando.  We have all

20   of the flights booked and hotels booked and everything.  So

21   that would be awkward.

22       THE COURT:  What is the date you're supposed to leave

23   on that?

24       XX. XXXXXXXX:  The 16th of March.

25       THE COURT:  15th?

 1          XX. XXXXXXXX:  16th.

 2          THE COURT:  16th, okay.  And then 22 is the question

 3     about whether you have a hearing or sight or other medical

 4     problem that may be a problem.

 5          XX. XXXXXXXX:  Um, no.

 6          THE COURT:  Okay.

 7          MR. SAM:  Question 22 is there any reason why you

 8     could not serve on the jury?

 9          XX. XXXXXXXX:  That would be the same as 20, the trip.

10          THE COURT:  Thank you for bringing that to my

11     attention, Mr. Sam.  Any follow up from the United States?

12          MR. ELGGREN:  What was the verdict in the murder case

13     that you served as a juror?

14          XX. XXXXXXXX:  It was guilty.

15          THE COURT:  Anything further from the defense?

16          MR. HUNT:  I have nothing.  Do you have anything?

17          THE COURT:  Thank you, XX. XXXXXXXX.

18          XX. XXXXXXXX:  Thank you.

19          THE COURT:  I guess before we bring the juror back in,

20     Mr. Taylor, remind of us of how many peremptory challenges

21     we need and how many we need to clear to.

22          THE CLERK:  The government will get seven the

23     defendant is 11, so we need to get to 31.

24          THE COURT:  So what I found works most efficiently

25     we'll go through 31.  We'll then discuss challenges for

1    cause and then we'll keep adding until we get enough jurors

2    to fill the jury.

3         Juror number two is XX. XXXXXX.  He answers yes to

4    questions 10, 11, 12, and 23 we better bring him in.

5         THE CLERK:  This is XXXXX XXXX XXXXXX.  Have a seat

6    here, sir.

7         THE COURT:  XX. XXXXXX, thank you for being here.  You

8    answered yes to question number 10 which is whether you or a

9    family member, close friend had been arrested of a crime.

10   Tell us what the issue was and who the person was.

11        XX. XXXXXX:  You bet.  It was my older brother and he

12   was arrested for, um, drug possession and theft.

13        THE COURT:  How was the issue resolved?

14        XX. XXXXXX:  Um, ultimately I think he had a number of

15   those charges before he was an adult and then after and he

16   ultimately served prison time.

17        THE COURT:  Anything about that overall experience

18   dealing with law enforcement and dealing with the criminal

19   justice system that left you with strong views that you

20   believe would affect your ability to serve as a juror in

21   this case?

22        XX. XXXXXX:  I don't think so.  I think it was very

23   fair.

24        THE COURT:  Number 11 is person who has been the focus

25   of a criminal investigation.  Is that the same?

1          XX. XXXXXX:  Same person, yeah.

2          THE COURT:  And then 12 is whether you or a member of

3      the family has been employed by a mortgage broker and

4      mortgage lender.  Tell us who was involved here.

5          XX. XXXXXX:  My father in St. George is part of a --

6      we're not extremely close and so I'm not sure exactly what

7      it is, but I think it does have something to do with

8      mortgages.  I don't know the name of the company.  He works

9      with his brother.  I really don't know much more than that

10     about it.

11         THE COURT:  Anything about your relationship there or

12     information you have through your father that would give you

13     set views about issues involving mortgage brokerage and

14     those kinds of issues that may be an influence in this case?

15     There will be some issues in this case about mortgage

16     brokerage?

17         XX. XXXXXX:  I really don't know anything about it so

18     I would say no.

19         THE COURT:  Last you indicated that somebody gave you

20     a copy of this pamphlet on the way in.

21         XX. XXXXXX:  They did.

22         THE COURT:  The pamphlet -- I don't know if you read

23     it.

24         XX. XXXXXX:  I didn't.  It is folded in my pocket

25     right now.

1          THE COURT:  Well, the pamphlet gives you instructions

2     and basically says you're not required to follow the

3     instructions given by the court.  Would you be able to put

4     that aside and --

5          XX. XXXXXX:  I would be glad to hand it to you right

6     now.

7          THE COURT:  Okay.

8          XX. XXXXXX:  Would you like it?

9          THE COURT:  Well you can leave it here.

10         XX. XXXXXX:  Maybe it is in my coat.

11         THE COURT:  It is not important that you give it to

12    us, but it would be important that you understand if you

13    were asked to serve as juror in this case, you would be

14    asked to take an oath that requires you to follow the

15    instructions given to you by the court.  Would you have any

16    problem doing that?

17         XX. XXXXXX:  No.

18         THE COURT:  Any follow up from the United States?

19         MR. THORLEY:  Will you disregard the jury pamphlet

20    that the court has just been mentioning?

21         XX. XXXXXX:  Absolutely.

22         MR. THORLEY:  Okay.  Would you mind telling us your

23    father's name?

24         XX. XXXXXX:  Sure.  It is Steven XXXXXX.

25         MR. THORLEY:  Steven XXXXXX.  Okay.

```
1              THE COURT:  Any follow up from the defense?

2              MR. HUNT:  Any bad feelings toward the relationship

3       with your father that has caused a problem?

4              XX. XXXXXX:  Um, I know that it has not been a good

5       market and that certainly he said that, you know, moving

6       homes has not been an easy thing.  I know he has something

7       to do with homes there, but I wouldn't say particularly any

8       bad feeling.

9              MR. HUNT:  Does he go under the name Steven XXXXXX or

10      does he go under a business name of some sort?

11             XX. XXXXXX:  Um, I am not sure what you mean.

12             MR. HUNT:  Does he operate a business type of a

13      company?

14             XX. XXXXXX:  He is part of a business, and I don't

15      know the name of the company but he just uses his name.

16             MR. HUNT:  Okay.

17             XX. XXXXXX:  But it is not his business, it is someone

18      else's.  I think it is his brother's business, Donald

19      XXXXXX.

20             MR. HUNT:  Okay.

21             THE COURT:  Thank you very much.

22             XX. XXXXXX:  Okay.

23             THE COURT:  Juror number three is XXXXXXX XXXXXXXX.

24      She answers yes to question number 9, 10, 11, and 23.

25             THE CLERK:  XX. XXXXXXXX.
```

 1          THE COURT:  I kind of understood the DeChristopher

 2     trial --

 3          THE CLERK:  This is XXXXXXX XXXXXXXXX XXXXXXXX.  Have

 4     a seat here, please.

 5          THE COURT:  We're following up on your response to

 6     question number 19 and 11.  9 is the one whether you or a

 7     family member has been a victim of a crime.  Tell us what

 8     was involved there.

 9          XX. XXXXXXXX:  My brother and my sister had quite a

10     bit of money stolen out of their bank accounts because my

11     other sister stole their money.  She took their ATM cards

12     and credit card and racked up a couple of hundred dollars

13     worth of -- well, one was 1,500, the other was, I think it

14     was $800.

15          THE COURT:  Was she ultimately investigated and

16     prosecuted?

17          XX. XXXXXXXX:  Yes, she was.

18          THE COURT:  How closely were you involved in that

19     whole process?

20          XX. XXXXXXXX:  I stayed out of it completely.  I was

21     married and out of the home at the time.

22          THE COURT:  Was there anything about the way that she

23     was treated by law enforcement, the way that the criminal

24     justice system worked, that somehow would affect your

25     ability to be impartial in this case.

```
1              XX. XXXXXXXX:  I don't think so.

2              THE COURT:  Um, 10 and 11 call for similar

3     information.  Was that the same circumstance?

4              XX. XXXXXXXX:  Yes.

5              THE COURT:  Or was there additional circumstances?

6     And finally, you indicated that you received a copy of this

7     brochure?

8              XX. XXXXXXXX:  Yes.

9              THE COURT:  Did you read it?

10             XX. XXXXXXXX:  No.

11             THE COURT:  Okay.

12             XX. XXXXXXXX:  It is in my purse, but I read my book

13    instead.

14             THE COURT:  The brochure includes a bunch of

15    information about whether or not jurors are required to

16    follow the instructions given to them by the court.  Would

17    you be able to disregard that and follow the instructions

18    that the court gives you in deciding this case?

19             XX. XXXXXXXX:  Yes.

20             THE COURT:  Any follow up from the defense or from the

21    United States?

22             MR. THORLEY:  You have to more than disregard it.

23    Would you put it aside?

24             XX. XXXXXXXX:  I probably won't read it.  I tend to

25    take things and then later throw them away.
```

1          MR. THORLEY:  Okay.

2          THE COURT:  Anything from the defense?

3          MR. HUNT:  No other questions.

4          THE COURT:  Thank you very much.

5          Juror number four is XXXXX XXXXXX.  She responds yes

6     to question number 10 and yes to question number 23 and 20.

7     So let's invite XX. XXXXXX back.

8          THE CLERK:  This is XXXXX XXXXXXXX XXXXXX.  Have a

9     seat right here, please.

10         THE COURT:  XX. XXXXXX, thank you for being here.

11    We're following up on your response to some of the

12    questions.  First is question number 10, whether you or a

13    family member or close family have been a victim of crime.

14    Tell us who was involved and what the issue was?

15         XX. XXXXXX:  Oh, I didn't want it to be the victim of

16    a crime, it was the arrested.

17         THE COURT:  Yes, okay it is both arrested or convicted

18    of a crime.

19         XX. XXXXXX:  Okay.  My boyfriend's daughter and it was

20    a DUI.

21         THE COURT:  How long ago was that?

22         XX. XXXXXX:  January.

23         THE COURT:  Were you involved in the circumstance at

24    all?

25         XX. XXXXXX:  No.

1          THE COURT:  Was she eventually prosecuted or treated

2     by the criminal justice system in some way as a result of

3     that arrest?

4          XX. XXXXXX:  She served 10 days.

5          THE COURT:  Anything about the way that she was

6     treated by law enforcement or by the criminal justice system

7     or prosecutors that left you with feelings that would make

8     it difficult for you to sit as a juror?

9          XX. XXXXXX:  No.

10          THE COURT:  In the end, based on what you observed, do

11     you think she was treated fairly?

12          XX. XXXXXX:  Yes.

13          THE COURT:  Number 12 is whether a family member has

14     been employed by a mortgage broker or mortgage lender, real

15     estate appraiser?

16          XX. XXXXXX:  That would be me and I wasn't sure if

17     that counted or not.  I work for Zions Bank.

18          THE COURT:  What did you do for Zions Bank?

19          XX. XXXXXX:  I was new accounts and safe deposit.

20          THE COURT:  How long ago was that?

21          XX. XXXXXX:  Over 30 years.

22          THE COURT:  Okay.  As a result of being employed in

23     this area by Zions Bank, did you have strong feelings about

24     mortgage brokerage or mortgage lending or any of those

25     aspects that would be an influence upon you as a juror

1    today?

2         XX. XXXXXX:  No.

3         THE COURT:  Question number 20 is reasons why it may

4    be difficult for you to serve for two and a half weeks on a

5    jury?

6         XX. XXXXXX:  Well, I mentioned in the introduction I

7    was laid off from my previous job at the end of January and

8    I have been unemployed and I just got a new job.  I was

9    supposed to start today.  They have been very patient with

10   me, but I feel like two and a half weeks might be pushing

11   it.

12        THE COURT:  Do they know that you're here?

13        XX. XXXXXX:  Yes.

14        THE COURT:  Has anyone made any -- given you any

15   indication that if you were unavailable for a week or two

16   that that would be a problem?

17        XX. XXXXXX:  No.

18        THE COURT:  Okay.  Question number 23 is the brochure

19   that was handed out, did you get a copy?  Did you get a copy

20   of this brochure?

21        XX. XXXXXX:  Yes.

22        THE COURT:  Did you have an opportunity to read it?

23        XX. XXXXXX:  I read it briefly.

24        THE COURT:  Okay.  There is information in the

25   brochure that deals with whether you're required to follow

1    the judge's instructions in the case and whether you're

2    under oath to do so.  Would any of the information that you

3    have learned from reading this brochure make it so that it

4    would be difficult for you to listen to what the judge

5    instructs you to do and to follow those instructions?

6        XX. XXXXXX:  No.

7        THE COURT:  Let me phrase it a different way.  This

8    brochure tells you that you have the right as a jury to not

9    -- to determine -- the law may not be fair and to not apply

10   the instructions of the law.  Would you be able to disregard

11   that and follow the court's instructions?

12       XX. XXXXXX:  Yes.

13       THE COURT:  Any follow up from the United States?

14       MR. THORLEY:  When you say you read the pamphlet

15   briefly, how long did you spend reading the pamphlet?

16       XX. XXXXXX:  A couple of minutes.  I, you know, I went

17   through, I don't know, a couple of paragraphs in the first

18   part and then I just kind of looked at the headings.  You

19   know I happened to watch something last night on national

20   news that was very negative and similar to this and I don't

21   agree with that.  It would be very easy for me to just take,

22   you know, your instructions and --

23       MR. THORLEY:  You understand --

24       XX. XXXXXX:  -- base it on the evidence.

25       MR. THORLEY:  You understand that that is the law,

1    that is the system to apply the law as provided to you by

2    the court?

3         XX. XXXXXX:  Yes.

4         MR. THORLEY:  Okay.  And are you willing to do that

5    and disregard whatever you saw?

6         XX. XXXXXX:  Yes.

7         MR. THORLEY:  Thank you.

8         THE COURT:  Any follow up from the defense?

9         MR. HUNT:  No further questions.

10        THE COURT:  Thank you, XX. XXXXXX.

11        XX. XXXXXX:  Okay.

12        THE COURT:  Now juror number five is XXXXXXX XXXXXXX.

13   She answers yes to question five.

14        MR. HUNT:  Your Honor, I almost felt -- go ahead and

15   finish --

16        THE COURT:  Question number 12 and -- 9, 12 and 20.

17        MR. HUNT:  Could we wait just a second.  I have got

18   a -- I have got a question.  This pamphlet, it seems to me

19   that I think I would feel more comfortable if the questions

20   came from the court regarding that.  I don't want the jury

21   to think that we disseminated that in some way.

22        THE COURT:  Maybe I should make that clear that it

23   wasn't disseminated by any of the parties.

24        MR. HUNT:  Could you do that?

25        THE COURT:  I would be happy to do that.  Not that I

1      disagree with Mr. Thorley's follow up questions, but it

2      could leave that in someone's state of mind.  I will be

3      happy to do that.

4              MR. THORLEY:  Thank you.

5              THE COURT:  Let's bring XX. XXXXXXXX in.

6              THE CLERK:  This is XXXXXXX X XXXXXXX.  Have a seat

7      here, please.

8              XX. XXXXXXX:  I don't have to say the prayer, do I?

9              THE COURT:  Not yet.  Question number five is what you

10     responded yes to.  It is, have you been involved in a court

11     proceeding or served on a jury before.  And what was your

12     involvement?

13             XX. XXXXXXX:  Several years ago I was involved in a

14     drug case in local court in Ogden.  And 20 years ago I was

15     involved in a federal grand jury for when it was in Ogden

16     for a period of like 18 months.

17             THE COURT:  Were you on the grand jury?

18             XX. XXXXXXX:  Yes.

19             THE COURT:  When you say you were involved in a drug

20     case, what was your involvement?

21             XX. XXXXXXX:  As a juror.

22             THE COURT:  As a juror.  Did the jury in that case

23     reach a verdict?

24             XX. XXXXXX:  Yes.

25             THE COURT:  Was it a guilty --

```
 1              XX. XXXXXX:  Guilty, yes.

 2              THE COURT:  Was there anything about your experience

 3      in the drug case that left you with negative feelings or

 4      feelings that would make it difficult for you to serve as a

 5      juror here?

 6              XX. XXXXXXX:  Not necessarily, no.

 7              THE COURT:  Also you said you served as a member of

 8      the grand jury that was for an extended period of time.  Did

 9      your service as a grand juror affect your view of the system

10      or how the system works in such a way that would make it

11      difficult for you to be impartial here?

12              XX. XXXXXXX:  No, I don't think so.  That was a really

13      positive experience.

14              THE COURT:  Number nine is the question about whether

15      you or a member of your family has been a victim of a crime.

16              XX. XXXXXXX:  Yes.

17              THE COURT:  What was involved there?

18              XX. XXXXXXX:  Robbery.

19              THE COURT:  Was that you personally?

20              XX. XXXXXXX:  Yeah, they took my golf clubs.

21              THE COURT:  How long ago was that?

22              XX. XXXXXXX:  Um, a year ago.

23              THE COURT:  Was anyone ever prosecuted?

24              XX. XXXXXXX:  No.

25              THE COURT:  Did you report it to the police?
```

1          XX. XXXXXXX:  Yes.

2          THE COURT:  And how were your interactions with the

3     police officers?  Were they -- did they seem like they were

4     interested?  Did they follow up on it?

5          XX. XXXXXXX:  Um --

6          THE COURT:  On your complaint?

7          XX. XXXXXXX:  Somewhat interested, not as interested

8     definitely as I would have liked them to do follow up.

9          THE COURT:  Anything about that experience that would

10    make it difficult for you to be a juror in this case?

11         XX. XXXXXXX:  Um, I think if you're a victim, you get

12    kind of a sense that you need to be protected and you don't

13    want anybody else being hurt like you were hurt.

14         THE COURT:  Okay.  And then number 20 is the question

15    about whether it would be difficult for you to serve for the

16    two and a half weeks.  Tell us what is going on in your

17    life.

18         XX. XXXXXXX:  I am kind of a new employee at this

19    business that I work for and it would just be a hardship for

20    them to do without me for two and a half weeks right now.

21         THE COURT:  Does your employer know you're here?

22         XX. XXXXXXX:  Oh, yes.

23         THE COURT:  And have they made -- given you any

24    indication that it would be difficult for you -- for them if

25    you served on this jury for some period of time?

1          XX. XXXXXXX:  Um, no.  I just know I'm the person that

2     they call when they need help because that is kind of how I

3     was hired to be there.  Pull in a person, you know, other

4     people had other demands.  I'm the part time person that

5     they call.

6          THE COURT:  And this is working in the clothing store?

7          XX. XXXXXXX:  Yes.

8          THE COURT:  When you're called into work, do you know

9     yet what your normal hours are?

10          XX. XXXXXXX:  Yes.  I am usually scheduled, yes, and

11     if I have a lot of advance notice I'll, you know, I have --

12     I have the responsibility to tell them what days I'm not

13     available but they do that two or three weeks ahead of time.

14          THE COURT:  When you work, what is your -- what are

15     your normal hours?  From what time in the morning until

16     when?

17          XX. XXXXXXX:  Sometimes it is a four hour shift, 11 to

18     three, and times it is one to nine.

19          THE COURT:  Okay.  In this case we will be finished at

20     2:30 every day which by the time you get back to North Ogden

21     whatever it is -- it might be a little bit later.  But would

22     that make it any easier for you?  Do they have an evening

23     shift or late afternoon shift?

24          XX. XXXXXXX:  Sometimes I work five to nine.

25          THE COURT:  So that might be a possibility for you?

1          XX. XXXXXXX:  Possibility, yes.

2          THE COURT:  Okay.  Any follow up, Mr. Thorley?

3          MR. THORLEY:  Um, when you mentioned the answer about

4     victims, you understand that the court applies the law and

5     informs you what the law is.  Would you be willing and able

6     to listen to his instructions and set any interests in a

7     victim status aside and simply apply the law based on the

8     court's instructions to you?

9          XX. XXXXXXX:  Yes, I think so.

10          THE COURT:  Okay.

11          MR. THORLEY:  Can you be fair to both sides in this

12     case?

13          XX. XXXXXXX:  Probably.

14          MR. THORLEY:  Thank you.

15          XX. XXXXXXX:  You know I would try.

16          MR. THORLEY:  Thank you.

17          THE COURT:  Mr. Hunt?

18          MR. HUNT:  Okay.  You said probably.  I just wonder

19     what, if there are some concerns, that might affect you.

20     I'm not --

21          XX. XXXXXXX:  Um, I am probably pro the law.  My

22     husband, as I told you, was a bailiff and he was a deputy,

23     Weber County Deputy.  And, you know, my daughter works for

24     the court system.  I believe in abiding by the law for sure.

25          MR. HUNT:  Okay.

```
 1          MS. ZENGER:  Just a follow up.  You did serve on a
 2     federal grand jury.  What is your feeling as far as if an
 3     indictment is returned do you believe that that means that
 4     someone is guilty?
 5          XX. XXXXXXX:  No.  No that was just enough evidence to
 6     bring it back to court.
 7          MS. ZENGER:  Thank you.
 8          THE COURT:  Thank you very much.
 9          MR. THORLEY:  May I ask just one additional question.
10     You mentioned that you're pro the law, but you understand
11     that the law protects the rights of a defendant; is that
12     correct?
13          XX. XXXXXXX:  Yes.  Yes.
14          MR. THORLEY:  So when you apply the law, that would be
15     protecting the rights of both sides by following the court's
16     instructions, is that correct?
17          XX. XXXXXX:  Yes.  Yes.
18          MR. THORLEY:  Thank you.
19          THE COURT:  Thank you.  Juror number six is XXXXXX
20     XXXXXXXX.  She answers yes to questions 8, 9, 10, 11, 12,
21     and 20, and 23.  She answers I don't know what that means
22     but okay we'll find out.
23          THE CLERK:  This is XXXXXX XXXXXXX XXXXXXXX.  Have a
24     seat right here, please.
25          THE COURT:  Thank you for being here, XX. XXXXXXXX
```

1    we're following up on some of your yes answers starting with

2    question number eight.  To remind you, that is the question

3    of whether you had had experience with a whole group of

4    government agencies starting with the Inspector General of

5    the Department of Housing and Urban Development.  Tell us

6    what your involvement was?

7        XX. XXXXXXXX:  Did I say yes?  I am sorry, what was

8    that again?

9        THE COURT:  The question was have you, a member of

10    your family, had experience with, and I'll read the list,

11    Office of Inspector General, the Department of Housing and

12    Urban Development, the Internal Revenue Service, the U.S.

13    Attorney's Office, the Department of Justice or the

14    government agency.

15        XX. XXXXXXXX:  Okay.  Sorry.  Um, I had an

16    ex-sister-in-law that worked for the Internal Revenue

17    Service.  Does that count?

18        THE COURT:  Yes.

19        XX. XXXXXXXX:  I do talk to her a little bit off and

20    on once in a while.

21        THE COURT:  Do you know what she --

22        XX. XXXXXXXX:  She has been there for like 30 years by

23    now and I think she has done pretty much everything.  I

24    don't know exactly what her role was.

25        THE COURT:  Anything about your association with her

```
1    that would make you more inclined or less inclined to

2    believe the positions of the United States as opposed to the

3    defendants?

4            XX. XXXXXXXX:  No.

5            THE COURT:  Okay.  Question number 9 is whether you or

6    a family member has been the victim of a crime?

7            XX. XXXXXXXX:  I have.

8            THE COURT:  Tell us what the circumstances were.

9            XX. XXXXXXXX:  A sexual assault.

10           THE COURT:  And how long ago was that?

11           XX. XXXXXXXX:  About 20 years ago.

12           THE COURT:  And was someone eventually prosecuted for

13   the assault?

14           XX. XXXXXXXX:  No.

15           THE COURT:  Did you, in that circumstance, have

16   dealings with law enforcement?

17           XX. XXXXXXXX:  Yes.

18           THE COURT:  And as a result of that experience, did it

19   leave you with strong feelings one way or the other about

20   law enforcement and how they dealt with the situation?

21           XX. XXXXXXXX:  No.

22           THE COURT:  Anything about -- this case doesn't

23   involve any sexual assaults or anything involving that type

24   of a crime.  Is there anything about that circumstance that

25   would make it difficult for you to now sit as a juror
```

 1     judging impartially the facts as presented in this case?

 2            XX. XXXXXXXX:  I don't think so.

 3            THE COURT:  Okay.  Question number 10 is whether you

 4     or a family member have been arrested or convicted of a

 5     crime?

 6            XX. XXXXXXXX:  Yes.

 7            THE COURT:  What was the circumstance there?

 8            XX. XXXXXXXX:  Um, it was my brother-in-law and he got

 9     -- he came through actually these courts for child

10     pornography.

11            THE COURT:  How long ago was that incident?

12            XX. XXXXXXXX:  May.  Last May.

13            THE COURT:  May of 2010?

14            XX. XXXXXXXX:  Yes.  Sorry, yes.

15            THE COURT:  And has that issue been resolved?

16            XX. XXXXXXXX:  Yes.

17            THE COURT:  And how was it resolved.

18            XX. XXXXXXXX:  He is in prison, federal prison.

19            THE COURT:  Do you have any feelings about whether or

20     not the law enforcement and criminal justice system acted

21     appropriately in that case?

22            XX. XXXXXXXX:  Um, yeah.  I don't know too much about

23     their role.

24            THE COURT:  Did you feel like he was treated fairly or

25     unfairly?

1          XX. XXXXXXXX:  Oh, yeah.

2          THE COURT:  And he was eventually convicted and sent

3     to prison and you thought that was a just result?

4          XX. XXXXXXXX:  Yes.

5          THE COURT:  Question number 10, we just did that.  11,

6     focus of a criminal investigation.  Is that your --

7          XX. XXXXXXXX:  That was him.

8          THE COURT:  Your brother-in-law.

9          XX. XXXXXXXX:  Yes.

10          THE COURT:  And then 12 is whether you or family

11     member have been employed by a mortgage broker or mortgage

12     lender or real estate appraiser or title company?

13          XX. XXXXXXXX:  My mother-in-law and my brother-in-law

14     was employed by Countrywide Bank.  I think it has been like

15     six, seven years down in Texas.

16          THE COURT:  Have you had discussions with them about

17     the mortgage brokerage business or the mortgage lending

18     business?

19          XX. XXXXXXXX:  No only about office politics in a

20     sense.

21          THE COURT:  Okay.  And not so much as to the way the

22     mortgage brokerage works but interaction between personnel

23     in the office?

24          XX. XXXXXXXX:  Yeah, like management personnel and

25     stuff like that.

1          THE COURT:  Anything about your discussions with them

2     or the fact that they were involved that would make it

3     difficult for you to sit as a juror in a case that is going

4     to involve issues regarding mortgage brokerage and some of

5     those related issues?

6          XX. XXXXXXXX:  No.

7          THE COURT:  Question number 20 is reasons why it may

8     be difficult for you to serve for two and a half weeks.

9     What is going on with your life?

10          XX. XXXXXXXX:  Work obligations.

11          THE COURT:  Can you be any more specific on what the

12     impact would be?

13          XX. XXXXXXXX:  Well, I am -- I am one person doing one

14     line at my work.  I'm a medical assembler and I am the only

15     one in charge of that line.  They could bring some people in

16     but I'm ultimately in charge of that one line.

17          THE COURT:  And what is the name of your employer.

18          XX. XXXXXXXX:  Luminis.

19          THE COURT:  Do they know that you're here?

20          XX. XXXXXXX:  Yes.

21          THE COURT:  And any indication from them as to whether

22     they would be able to fill in for you if you were --

23          XX. XXXXXXXX:  No, I haven't talked to them about

24     that.

25          THE COURT:  Okay.  And finally, with response to the

71

1     brochure you indicated you answered a "T".

2         XX. XXXXXXXX:  Sorry?

3         THE COURT:  You said true or false.  That is what it

4     was.

5         XX. XXXXXXXX:  That is the name of the brochure.

6     Sorry, yes I got one.

7         THE COURT:  Did you read it?

8         XX. XXXXXXXX:  Yes, I did.

9         THE COURT:  It is important for you to understand that

10    this brochure is not distributed by the court or by any of

11    the parties, either the defense or the U.S. Attorney's

12    Office.  The brochure can be read to lead you to believe

13    that you're not required to follow the court's instructions

14    and you can disregard the oath of the jury that you would

15    take.

16        Would you be able to follow the court's instructions

17    and put aside any information that was provided to you in

18    this brochure?

19        XX. XXXXXXXX:  Yes.

20        THE COURT:  Any concerns about that in any way at all?

21        XX. XXXXXXXX:  No.

22        THE COURT:  Thank you.  Anything further Mr. Thorley

23    or Mr. Elggren?

24        MR. THORLEY:  No.

25        MR. HUNT:  Do you remember your brother-in-law's name?

1     I'm sure you do.

2              XX. XXXXXXXX:  Hans XXXXXXXX, same last name.

3              THE COURT:  Do you by chance know who his attorney was

4     in that case?

5              XX. XXXXXXXX:  It was an older guy.  A lot of them are

6     older guys.  No, I don't.

7              THE COURT:  Do you know whether this was a state or

8     federal?

9              XX. XXXXXXXX:  Federal.

10             THE COURT:  Federal.

11             XX. XXXXXXXX:  Right above us, yeah.

12             MS. ZENGER:  Did you attend his court proceedings?

13             XX. XXXXXXXX:  Um, yes.  His one thing.  I'm sorry,

14    I'm not familiar with the courts, but when they reached a

15    verdict or not verdict but the evidence and all of that

16    stuff.

17             MS. ZENGER:  Did he go to trial?

18             XX. XXXXXXXX:  Um, not a jury trial but yes.  Is that

19    the same thing?  I'm sorry.

20             THE COURT:  He was ultimately found guilty and

21    convicted and sentenced to prison.

22             XX. XXXXXXXX:  Four years.

23             MR. THORLEY:  He didn't plead guilty, he didn't go in

24    and say yeah, I agree that --

25             XX. XXXXXXXX:  He did plead guilty because that is

1      what he was advised to do.

2          MR. THORLEY:  Okay.  And did you think that was fair?

3          XX. XXXXXXXX:  With the evidence stacked up against

4      him, yeah.  There is no way he could have disputed it.

5          MS. ZENGER:  Do you know in what capacity your

6      relatives are employed at Countrywide?  Do you know what

7      they do?

8          XX. XXXXXXXX:  My brother-in-law was in charge of the

9      maintenance and my mother-in-law was, I think, in

10     collections.

11         THE COURT:  Thank you very much.

12         XX. XXXXXXXX:  That it.

13         THE COURT:  Yes.

14         XX. XXXXXXXX:  Thank you.

15         THE COURT:  Juror number seven is XXXX XXXXX and he

16     answers yes to 9, 10, 13.  We should get some follow up with

17     him.

18         THE CLERK:  Okay.  This is XXXXXXX XXXXXXXX XXXXX.

19     Have a seat right here, sir.

20         THE COURT:  XX. XXXXX, we're following up on your

21     responses.  Question number nine was have you or a family

22     member or close friend been the victim of a crime and you

23     said yes.

24         XX. XXXXX:  Um, yes.  But basically just we have all

25     had our cars broken into, radios stolen, stereos, nothing

1     more than that.

2          THE COURT:  Have you had any interaction with law

3     enforcement on any of these situations?

4          XX. XXXXX:  Um, no.

5          THE COURT:  Anything about that that would make you

6     more or less likely to favor either the United States or the

7     defense in a case involving those allegations?

8          XX. XXXXX:  No.

9          THE COURT:  The allegations in this case are much

10    different than a break-in to an automobile.  Question number

11    13 is whether you have been involved or a family member in

12    the foreclosure of a home.

13         XX. XXXXX:  Yes.  I wasn't exactly sure on this one.

14    I know that my sister has fallen behind numerous times and

15    she has had trouble with maybe two houses.  I have had an

16    uncle that had to bail her out at least once, maybe twice,

17    just she has had a lot of trouble making payments.

18         THE COURT:  Has her home been taken away from her?

19         XX. XXXXX:  She moved out of one house and into

20    another.  I believe they said she let it go to the bank.  I

21    don't know if they were necessarily forced out.  I'm not

22    sure.

23         THE COURT:  Based on any information that you have,

24    has she been treated fairly by the banking or credit

25    officials that have been involved in those cases?

1          XX. XXXXX:  Yes.

2          THE COURT:  More to do with her own personal

3     circumstances rather than what was going on with the

4     lenders?

5          XX. XXXXX:  Yeah, she couldn't make the payments.  She

6     kind of knew it was coming.  She tried to delay it.

7          THE COURT:  Okay.  Number 13, that is the one I just

8     covered.  That is all.  Any follow up?

9          MR. THORLEY:  Did you feel that whatever bank or

10    foreclosure processes were undertaken were fair as you

11    understood your sister's situation?

12         XX. XXXXX:  I didn't understand much.  I know that

13    they just gave her notes and eventually the time came when

14    she would either have to either pay something, settle

15    something, or she would have to move out.  I know it was

16    somewhere in the ballpark of 20,000 or so that my uncle had

17    to lend to her so she would keep her house.

18         MR. THORLEY:  Did you feel there was anything unfair

19    about what the lenders did?

20         XX. XXXXX:  No.

21         MR. THORLEY:  Okay.

22         THE COURT:  Any follow up?

23         MR. HUNT:  No questions.

24         THE COURT:  Thank you.

25         XX. XXXXX:  Thank you.

1          THE COURT:  Juror number eight is XXXX XXXX.  He

2     answers questions number 9 yes, 14 yes, and 21 yes.  Nine is

3     victim of a crime.  So we better find out.

4          THE CLERK:  This is XXXXXXX X XXXX.  Have a seat right

5     here, sir.

6          THE COURT:  XX. XXXX, thank you for being here.  Your

7     response to question number nine was yes which is whether

8     you or a close family member or friend have been the victim

9     of a crime.

10          XX. XXXX:  Um, yes.

11          THE COURT:  Tell us what was involved?

12          XX. XXXX:  Well, a couple of little incidents but the

13     major one was just couple of years before I met my wife, she

14     was a victim of a date rape.

15          MR. THORLEY:  I apologize, I didn't hear.

16          XX. XXXX:  I said a couple of years before I met my

17     wife, she was the victim of a date rape.

18          THE COURT:  Was there a police investigation?

19          XX. XXXX:  Yes.

20          THE COURT:  Did she feel like she was treated fairly

21     by law enforcement in that circumstance?

22          XX. XXXX:  She was 17 at the time and did not go to

23     court so it disturbed her quite a bit, yeah.  And it took

24     her years to get over it.

25          THE COURT:  Anything about that that would affect your

1     ability to sit as a juror in a case that doesn't involve any

2     allegations of a sexual crime or anything relating to that?

3          XX. XXXX:  No, I don't think so.

4          THE COURT:  Question number 14 is whether you have

5     been approached to purchase property based on your good

6     credit score.  You have indicated yes.  Is that you or

7     someone else?

8          XX. XXXX:  Yeah.  It hasn't been a one on one thing,

9     but I have got mailings and kind of bulk mailing kind of

10    things for refinancing and for, you know, investment type

11    stuff.

12         THE COURT:  Have you ever followed up on any of those?

13         XX. XXXX:  No.

14         THE COURT:  Primarily a mail solicitation saying you

15    have got a good credit score, we can get you a better rate

16    or something like that?

17         XX. XXXX:  Yes.

18         THE COURT:  Okay.  This case will involve some issues

19    involving mortgage lending.  Anything about those brochures

20    that would make it hard for you to be a juror in a case

21    involving those kinds of issues?

22         XX. XXXX:  The ones I have received, you mean?

23         THE COURT:  Yes.

24         XX. XXXX:  Nothing that comes to mind.

25         THE COURT:  Question number 21 is whether you have a

1    problem with hearing, sight or other medical problem that

2    would impair your ability to devote your full attention to

3    trial.

4         XX. XXXX:  Yeah.  My hearing is not as good as it used

5    to be.  This left ear is kind of more or less shot.

6         THE COURT:  Today in the courtroom did you have any

7    problem hearing?

8         XX. XXXX:  A couple of the people in the back that

9    when they moved the microphone away I didn't hear them very

10   well.

11        THE COURT:  When the mike was working as it should

12   have been --

13        XX. XXXX:  It was fine.

14        THE COURT:  -- it was okay.

15        XX. XXXX:  Yeah, it was fine.

16        THE COURT:  Any follow up?

17        MR. THORLEY:  I apologize for asking you about your

18   wife's situation, but is there anything that she feels or

19   harbors about her treatment by law enforcement that is

20   negative?

21        XX. XXXX:  No, I don't think there is.

22        THE COURT:  Okay.

23        MR. THORLEY:  Okay.

24        MR. HUNT:  No questions.

25        THE COURT:  Thank you very much.

1          XX. XXXX:  Okay.

2          THE COURT:  Juror number nine is XXXXXXX XXXXX.  He

3     answers 5 yes, and 6 yes, court proceeding in small claims,

4     and he answers 9 yes, 10 yes, 11 yes, 13 yes, the rest are

5     all nos.

6          THE CLERK:  This is XXXXXXX XXXXXXX XXXXX.  Have a

7     seat right here, sir.

8          XX. XXXXX:  Thank you.

9          THE COURT:  XX. XXXXX, just following up on some of

10    your yes answers.  In response to question number 5, you

11    said that you had been involved in a court proceeding

12    before.

13         XX. XXXXX:  Yeah, small claims court.

14         THE COURT:  And how long ago was that?

15         XX. XXXXX:  It has been 10 years ago.

16         THE COURT:  Anything about that proceeding that would

17    make it difficult for you to be a juror in this case?

18         XX. XXXXX:  No.  I also was the -- sorry it just

19    popped into my head.  I was a defendant in a criminal case

20    two years ago.

21         THE COURT:  What was the nature of the crime?

22         XX. XXXXX:  It was a criminal mischief that I had

23    committed and I pled guilty to that to take responsibility

24    for it.

25         THE COURT:  And did you receive a sentence?

1          XX. XXXXX:  A fine and probation which I served out

2     successfully.

3          THE COURT:  In your dealings with law enforcement, did

4     you feel like they treated you fairly in that case?

5          XX. XXXXX:  Absolutely.  Very fairly.

6          THE COURT:  And the court system, was that fair?

7          XX. XXXXX:  Yes.

8          THE COURT:  Question number 9 is whether you have been

9     the victim of a crime.

10         XX. XXXXX:  Um, my wife has been the victim of a crime

11    when she was a youth.

12         THE COURT:  What was the circumstance?

13         XX. XXXXX:  It was abuse.

14         THE COURT:  By a family member or something?

15         XX. XXXXX:  Yes.

16         THE COURT:  Did that result in some criminal charges?

17         XX. XXXXX:  It did not.  It was not resolved that way.

18         THE COURT:  Was there any criminal law enforcement

19    investigation?

20         XX. XXXXX:  No.  The person who committed the abuse on

21    her ended up passing away.

22         THE COURT:  Anything about that experience, by that I

23    mean your wife's experience, and her discussions with you,

24    that would make it hard for you to be impartial as a juror

25    in the case?

1          XX. XXXXX:  No.

2          THE COURT:  This case doesn't involve any abuse

3     situations or anything like that, but do you think you could

4     serve fairly as a juror?

5          XX. XXXXX:  Yes, sir.

6          THE COURT:  Six was the -- 6 was whether you have

7     testified as a witness.  That was in the small claims court?

8          XX. XXXXX:  Small claims, yes, sir.

9          THE COURT:  Number 11 which is whether you or a family

10    member or close friend have been a victim of a criminal

11    investigation?

12         XX. XXXXX:  That was myself and that was --

13         THE COURT:  The criminal mischief?

14         XX. XXXXX:  Yes.

15         THE COURT:  And then 14 was whether you or a friend or

16    family member has been involved in a home foreclosure.

17         XX. XXXXX:  I have had a home foreclosed on me.  We

18    gave it back to the bank after we were no longer able to

19    sustain the payments.

20         THE COURT:  How long ago was that?

21         XX. XXXXX:  Three years ago.

22         THE COURT:  Who was the mortgage lender that was

23    involved?

24         XX. XXXXX:  I want to say Wells Fargo was the last one

25    but I am not positive on that.

1          THE COURT:  Going through that process, did you feel

2      like the mortgage lender dealt with you fairly?

3          XX. XXXXX:  Yes.

4          THE COURT:  More not the way the bank was or the

5      lender was treating you, but your own personal

6      circumstances?

7          XX. XXXXX:  It was our personal circumstances.  It had

8      nothing to do with unfair practices or anything like that.

9          THE COURT:  Any follow up?

10         MR. THORLEY:  No, Your Honor.

11         THE COURT:  Thank you very much.

12         XX. XXXXX:  Thank you.

13         MR. JOHNSON:  Thanks.

14         THE COURT:  Number 10 is XXXXXX XXXXXX.  He is no to

15     all of the questions.  I take it back, I missed one.  Five

16     is the question about serving on a jury or a court

17     proceeding.  I expect we should find out.

18         THE CLERK:  This is XXXXXX XXXX XXXXXX.  If you would

19     have a seat right here, sir.

20         THE COURT:  XX. XXXXXX, thank you for being here.  We

21     just want to follow up on your experience in a court

22     proceeding or serving on a jury before.

23         XX. XXXXXX:  Yeah.  I was a juror in a shoplifting

24     case in Provo, Utah, just the local jury there.  It was a

25     one day trial.  I was selected to the jury and served on the

```
 1       jury and that was it.

 2              THE COURT:  Did they reach a verdict?

 3              XX. XXXXXX: We did.

 4              THE COURT:  Guilty or not guilty?

 5              XX. XXXXXX:  It was guilty.

 6              THE COURT:  Anything about serving on that jury that

 7       makes it difficult for you to be a juror in another case?

 8              XX. XXXXXX:  Not at all.

 9              THE COURT:  Okay.  Any follow up?

10              MR. THORLEY:  No.

11              MR. HUNT:  No.

12              THE COURT:  Thank you very much.

13              XX. XXXXXX:  All right.  Thank you.

14              THE COURT:  Number 11 is XXXXXXX XXXXXXXX.  Looks like

15       all nos to me.

16              MR. HUNT:  All nos to me.  I think we need to talk to

17       him about that.

18              MR. STUART:  Something is wrong.

19              THE COURT:  Number 12 is XXXXX XXXX.  Let's see, she

20       has got -- she lists she may know some of the people.  She

21       works in the mortgage industry.  Let's bring her in, please,

22       number 12.  XXXXX XXXX she answers yes to question number 2,

23       9, 12, 18, and 23.

24              THE CLERK:  Okay.  This is XXXXXXXX XXXX.  Have a seat

25       right here, please.
```

84

1          THE COURT:  Thank you for being here.

2          XX. XXXX:  You're welcome.

3          THE COURT:  First we're following up on you have

4     indicated that you may know a Rick Craig.

5          XX. XXXX:  If he is the one who is CEO over America

6     First.

7          MR. STUART:  No.

8          THE COURT:  He was a CEO.

9          XX. XXXX:  Rick Craig who is CEO over America First

10     Credit Union.

11          THE COURT:  America First Credit Union is that the

12     same?

13          MR. THORLEY:  Our information is that it is not the

14     same person.

15          THE COURT:  Okay.  And then on question number nine

16     which is about having been the victim of a crime or someone

17     close to you.

18          XX. XXXX:  Um, well, we had a business a few years ago

19     and we have a business in Clearfield and a few years ago it

20     was broken into and someone robbed us.  And then a couple of

21     years ago my home used to sit right on Antelope Drive in

22     Syracuse and UDOT bought our home because they're expanding

23     the road and in that process someone broke into our shop and

24     stole equipment out of the tool building.

25          THE COURT:  Were there criminal investigations in

1    either of these cases?

2         XX. XXXX:  You know, they didn't.  They said well, you

3    know, we -- they didn't.  Nothing was really investigated

4    and nothing ever reported.

5         THE COURT:  Did you have any feeling about the way law

6    enforcement dealt with those issues that left you with some

7    concerns?

8         XX. XXXX:  Well, I don't know.  I think that maybe

9    they felt like there were some more demanding issues, you

10   know, and we should have on our part really had better

11   record of what was in there.  So I share a little bit of the

12   responsibility of that.  We didn't have pictures and serial

13   numbers and models and you know.

14        THE COURT:  Anything about that that would make it

15   difficult for you to be a juror in this case?

16        XX. XXXX:  I don't think so.

17        THE COURT:  Question number 12 was whether you or a

18   family member has been employed by a mortgage broker or

19   mortgage lender or an appraiser or title company?

20        XX. XXXX:  I work for America First Credit Union as a

21   mortgage originator.  So I'm not an underwriter, but when

22   the applications come in, I put the files together and get

23   all of the documents and disclosures in them.  So I don't

24   actually work with the member in a loan mortgage loan, but I

25   do get the files ready and make sure everything is in them

1    for that process.

2        THE COURT:  This case will involve some issues

3    relating to mortgage brokerage practices.  Would you be able

4    to listen to the evidence and make a decision on the facts

5    of this case and put aside information that you may have

6    otherwise learned about the mortgage business because of

7    your own personal experience?

8        XX. XXXX:  Yeah, because I don't really know a lot

9    about as far as I don't do the loans, you know, I'm not as

10   familiar with the -- I'm familiar with that first process

11   when I put the files together.

12       THE COURT:  Do you actually make underwriting

13   decisions?

14       XX. XXXX:  No.  That is the underwriting department.

15       THE COURT:  You put the information together for

16   someone else that uses the information?

17       XX. XXXX:  I have the forms that need to go in that

18   file so that they can do their job.  But I don't do

19   underwriting.  I don't do processing.

20       THE COURT:  Question number 18 has to do with -- let

21   me read the question to you.  As a juror, your own views

22   about whether a particular law or rule of evidence is right

23   or wrong cannot play a part in your deliberations and review

24   of the evidence.  Would you be unable to follow my

25   instructions about these rules of law as well as all other

87

1    instructions that will be given to you at the end of the

2    case.  And you have answered yes, this may be a problem for

3    you.

4            XX. XXXX:  No, I meant no.

5            THE COURT:  You meant no?

6            XX. XXXX:  That is your instruction.  That is what I

7    will listen to.

8            THE COURT:  Okay.  Sometimes that question is too

9    long.

10           XX. XXXX:  Confusing.

11           THE COURT:  So you --

12           XX. XXXX:  Double negative.

13           THE COURT:  -- you would be able to follow the court's

14    instructions?

15           XX. XXXX:  Yeah.  Sure.

16           THE COURT:  Which relates to the last question which

17    you apparently received a copy of this brochure.  Did you

18    read it?

19           XX. XXXX:  No, I took a glance.

20           THE COURT:  Okay.  It is important for you to

21    understand that none of the parties, either the defense or

22    the government or the court, was responsible for

23    distributing this brochure.

24           XX. XXXX:  I figured that out once I looked at it.

25           THE COURT:  And there is a statement in here that a

```
 1      juror is not required to follow his or her oath, not

 2      required to follow the court's instructions.

 3          XX. XXXX:  That is crazy.

 4          THE COURT:  Would you be able to completely disregard

 5      that and do as --

 6          XX. XXXX:  I don't agree with that.  I agree that --

 7          THE COURT:  Yeah.  Any follow up?

 8          MR. THORLEY:  When it comes to loans and loan

 9      origination, that sort of thing, you understand that each

10      loan stands by itself and has to be judged based on the

11      information that is given?

12          XX. XXXX:  Sure.  There are certain criteria depending

13      on the loan and that is how that loan is made in the first

14      place.  They have got to meet certain loan scores and all of

15      the different criteria that goes into it, sure.

16          MR. THORLEY:  Can you set aside your experience that

17      you had in the origination fee and listen to the facts of

18      this case and judge it solely based on the facts of this

19      case?

20          XX. XXXX:  Sure.

21          MR. THORLEY:  Be fair and impartial not referring to

22      your past experience?

23          XX. XXXX:  Yeah.

24          MR. THORLEY:  Thank you.

25          XX. XXXX:  Like I said, my experience is putting the
```

1    files together, seeing the different forms and disclosures

2    that go in there.  And I am not the one that really meets

3    with the member.  I don't do the processing or the

4    underwriting on them at all.  I don't know how that --

5         MR. THORLEY:  Okay.

6         XX. XXXX:  How he did do all of that.

7         THE COURT:  Thank you very much.

8         XX. XXXX:  You're welcome.

9         THE COURT:  Juror number 13 is XXXXX XXXX.

10        MR. STUART:  Quick question, I just bring this up to

11   make sure that if it is an issue I want to make sure.  But

12   based off of what she said, she lives -- I know exactly

13   where it is at.  She may not know it, but she knows my

14   family, my father -- my mother and father.  I just wanted to

15   mention that.

16        THE COURT:  Any concern about that?  I guess you make

17   a note of it.

18        MR. STUART:  Yeah.

19        MR. HUNT:  That was XXXXX XXXX.

20        THE COURT:  Thank you.

21        MR. STUART:  Syracuse is a small town.  I want to make

22   sure I mentioned that.

23        MR. HUNT:  We can impeach you.  We don't need further

24   questions on that.

25        THE COURT:  XX. XXXX, 13, answers 13 and 23 yes.

```
1              THE CLERK:  All right.  This is XXXX X XXXX.  Have a

2      seat right here, sir.

3              XX. XXXX:  Hi.

4              THE COURT:  XX. XXXX, thank you for being here.  We're

5      following up on your responses.  Question 13 asked if you

6      were or a family member has been involved in a home

7      foreclosure?

8              XX. XXXX:  Me personally.  Back in 2002, we had a home

9      that we had our home foreclosed on.

10             THE COURT:  Anything about your dealings -- well first

11     of all, who was the lender?

12             XX. XXXX:  What was the name of one of the lenders

13     that was named earlier?

14             MR. STUART:  Countrywide.

15             XX. XXXX:  Countrywide was the first lender and it got

16     sold.  I don't remember who it got sold to.

17             THE COURT:  Anything about the way that the lenders

18     dealt with you in that whole process that you thought was

19     unfair?

20             XX. XXXX:  No.

21             THE COURT:  Any conduct of the lender that you thought

22     was not the way it should have been?

23             XX. XXXX:  No.

24             THE COURT:  So the foreclosure was basically a result

25     of your own personal circumstances?
```

1          XX. XXXX:  Yes.

2          THE COURT:  Question number 23 has to do with you

3     received a copy of this brochure.  Did you read it?

4          XX. XXXX:  No.  The woman handed it to me as I was

5     walking into the courthouse, but I just stuck it in my back

6     pocket.

7          THE COURT:  It is important that you understand that

8     none of the parties to this litigation, either the defense

9     or the prosecution or the court for that matter, was

10     responsible for distributing this.  And there is a

11     suggestion in this brochure, more than a suggestion I guess,

12     that you're not required to follow the court's instructions

13     and you can disregard your oath as a juror to do so.  Would

14     you be able to put that aside completely and follow the

15     court's instructions in this case?

16          XX. XXXX:  Yes.

17          THE COURT:  Okay.  Any follow up?

18          MR. THORLEY:  No.

19          MR. HUNT:  No nothing.

20          XX. XXXX:  Thank you.

21          THE COURT:  Thank you very much.

22          Juror number 14 is XXXXXX XXX.  She answers 5, 6, 7,

23     8, 9, and 10, 13 and number 23, yes.  XX. XXX has a unique

24     way of writing.

25          MR. JOHNSON:  Is this 14?

1           THE COURT:  This is number 14, yes.

2           THE CLERK:  This is XXXXXXX X XXX.  Have a seat here,

3      please.

4           THE COURT:  XX. XXX, we are following up on your yes

5      answers.  Number 5 which is, been involved in a court

6      proceeding or served on a jury before.  Tell us what was

7      involved?

8           XX. XXX:  I have been asked to be a witness in cases.

9      I have brought cases before, mostly Third District Court,

10     felony court cases, where I was the lead investigator.  I

11     have been an expert witness mostly in criminal matters.

12          THE COURT:  What was the area of your expertise that

13     you testified to?

14          XX. XXX:  Um, drug interdiction.

15          THE COURT:  And I believe that you indicated that your

16     husband is involved?

17          XX. XXX:  Juvenile justice.

18          THE COURT:  Juvenile justice corrections.

19          XX. XXX:  Yes.

20          THE COURT:  Does he deal with drug interdiction cases

21     as well or other kinds?

22          XX. XXX:  He works with juveniles that have been

23     involved in the criminal justice system.  Mostly he does

24     gang interdiction.

25          THE COURT:  And I assume that that -- would those yes

                                                              93

1    answers for have you been involved in court proceedings and

2    testified as a witness --

3         XX. XXX:  All are in response to that question.

4         THE COURT:  Now given your quite heavy involvement in

5    the court system, do you believe that you would be able to

6    serve impartially as a juror or do you have now a

7    preconceived notion about one side or the other that would

8    affect your ability to sit as a juror?

9         XX. XXX:  Yes.  I would try to not be swayed.

10        THE COURT:  When you say try?

11        XX. XXX:  I tend to believe law enforcement officers

12   and what they deliver as the truth.  But I would try to be

13   fair and impartial.

14        THE COURT:  The court will ultimately give you

15   instructions, if you're selected to serve on a jury, that

16   will say that you're not to believe the law enforcement

17   officer as being more truthful or less truthful than any

18   other witness.  As a person, as a law enforcement officer,

19   you have probably heard that instruction before.

20        XX. XXX:  I have.

21        THE COURT:  Would you be able to follow that

22   instruction?

23        XX. XXX:  I would for sure try to follow that

24   instruction.

25        THE COURT:  Okay.  When you say you would try, I sense

1        that you --

2              XX. XXX:  I don't know if unconsciously that I can

3        make myself sway away from my alignment with law enforcement

4        because I have been a law enforcement officer for so long.

5              THE COURT:  Okay.

6              XX. XXX:  But I would certainly try.

7              THE COURT:  That is a fair answer.  Now, question

8        number 9 has to do with whether you or a family member has

9        been a victim of a crime.  Who was the victim of a crime?

10             XX. XXX:  I have been and my family has been.

11             THE COURT:  What was the nature of the crime?

12             XX. XXX:  I was sexually assaulted in college.

13             THE COURT:  Was there an investigation by law

14       enforcement?

15             XX. XXX:  Not by law enforcement.

16             THE COURT:  By other enforcement agencies.

17             XX. XXX:  Uh-huh (affirmative).  The school, um, he

18       was a -- he was an athlete at Brigham Young University and

19       so they did an investigation on him but --

20             THE COURT:  As a result, did you think that the

21       investigation was handled fairly?

22             XX. XXX:  No.  Which is probably why I became a law

23       enforcement officer.

24             THE COURT:  And as a result of that, have you come

25       away with views that shape your views about the importance

1   of law enforcement or proceeding with law enforcement?

2       XX. XXX:  Yes.

3       THE COURT:  I take it that -- I infer that in that

4   particular circumstance you believe that the person was not

5   dealt with the way you believe the law should have required

6   him to be dealt with?

7       XX. XXX:  That is accurate.

8       THE COURT:  Question number 10, have you or a family

9   member or close friend been arrested or convicted of a

10  crime.  Is that someone close to you or your family?

11      XX. XXX:  My husband's teammate at the University of

12  Utah was convicted, I believe about 25 years ago, of drug

13  charges.

14      THE COURT:  And do you feel like law enforcement did

15  their job --

16      XX. XXX:  Uh-huh (affirmative).

17      THE COURT:  -- correctly in that case?

18      XX. XXX:  Yes.

19      THE COURT:  Number 13 is whether you have been or a

20  family member has been involved in foreclosure of a home.

21      XX. XXX:  Uh-huh (affirmative).

22      THE COURT:  Who was the person?

23      XX. XXX:  It was my brother-in-law and then my husband

24  and I were just about foreclosed upon.  We were able to sell

25  the home just before the market got really, really bad.

1              THE COURT:  Did the lending institutions you dealt

2       with deal with you fairly in those cases?

3              XX. XXX:  Well they -- I mean we finally sold it so by

4       the hair of our chinny-chin-chins I guess they dealt with us

5       fairly.

6              THE COURT:  Did you feel like they were over

7       aggressive with you?

8              XX. XXX:  They were pretty aggressive.

9              THE COURT:  And then last you indicated that somebody

10      handed you a copy of this brochure.

11             XX. XXX:  Yes.

12             THE COURT:  You need to understand that neither the

13      defense nor the prosecution or the court was responsible for

14      handing this brochure out.  Did you have an opportunity to

15      read it?

16             XX. XXX:  No.  I wrote my cell phone packet number on

17      it.

18             THE COURT:  Okay.  And this brochure suggests that

19      you're not required to follow the court's instructions and

20      that you can disregard your oath as a juror.  Would you be

21      able to completely put that aside and do as the court

22      instructs you?

23             XX. XXX:  Yes, Your Honor.

24             THE COURT:  Okay.  Any follow up?

25             MR. THORLEY:  XX. XXX, everyone knows that each case

1    stands alone don't you?

2        XX. XXX:  Yes.

3        MR. THORLEY:  You know this case doesn't deal with

4    gangs or drugs; is that correct?

5        XX. XXX:  I would assume so.

6        MR. THORLEY:  And in your role as an investigator, you

7    have the role of listening to each witness in an

8    investigation in deciding what weight, if any, to give to

9    what that person says; is that correct?

10       XX. XXX:  Yes.

11       MR. THORLEY:  And you know that what you do is take

12   each case as an individual case; is that right?

13       XX. XXX:  Yes.

14       MR. THORLEY:  Not every case comes together; is that

15   correct?

16       XX. XXX:  That is accurate.

17       MR. THORLEY:  And there are a lot of cases or

18   investigations that you decide not to proceed on because

19   there just isn't the evidence; is that correct?

20       XX. XXX:  That is correct.

21       MR. THORLEY:  And is it correct that you make

22   judgments based on the sufficiency and the worthiness of the

23   evidence in your investigations.

24       XX. XXX:  That is correct.

25       MR. THORLEY:  Do you understand that that same process

1    is the process that you would undergo as a juror?

2         XX. XXX:  Yes.

3         MR. THORLEY:  And can you listen to the evidence,

4    listen to the witnesses, decide what is credible and what is

5    to be believed in making a decision in this case?

6         XX. XXX:  I believe I could do that.

7         MR. THORLEY:  You can set your past experience or

8    affiliations aside and make a determination then based on

9    the evidence?

10        XX. XXX:  Yes.

11        MR. THORLEY:  Thank you.

12        THE COURT:  Any follow up?

13        MR. HUNT:  But that doesn't obviously excuse the bias

14   you represented you still feel there could be some bias that

15   might affect you?

16        XX. XXX:  I believe there could be.  To be fully

17   honest, I believe that there could be.

18        MR. HUNT:  In this case there will be also witnesses

19   who have pled guilty and who will testify, could that

20   further affect your ability, who actually testify perhaps

21   against my client.

22        XX. XXX:  I don't believe so.  I work in an advocacy

23   position now with previously incarcerated women.  And so I

24   do a lot of domestic violence work around holistic services

25   for them and I do not judge them currently based on the

1      mistakes they have made in their past.  I'm able to look at

2      them just as the human being sitting in front of me, not for

3      all of the mistakes that they have made in their past.

4              MR. HUNT:  Okay.

5              MS. ZENGER:  Have you worked with prosecutors from the

6      U.S. Attorney's Office?

7              XX. XXX:  I have.

8              MS. ZENGER:  Can you tell us who?

9              XX. XXX:  I wouldn't remember.  Back when I was doing

10     counter surveillance, we were investigating some individuals

11     that were receiving terrorist funds prior to the Olympics.

12     We worked on a case with one of the federal prosecutors,

13     then they fled the country.

14             MR. HUNT:  The prosecutors?

15             XX. XXX:  Yeah.  No.  Um, there was a -- there were

16     several drug enforcement agency cases that I have worked

17     with.  I would know them by face.  It has been a long time

18     since I have done undercover work.

19             MR. HUNT:  Thank you.

20             THE COURT:  Thank you very much.

21             XX. XXX:  Thank you.

22             THE COURT:  Juror number 15 is XXXX XXXXX.  She

23     answers yes to 7, 9, 10, 11, 13.  Let's invite XX.  XXXXX

24     in.

25             THE CLERK:  This is XXXX XXXXX.  Please have a seat

1    right here.

2        THE COURT:  Thank you for being here.  You indicated

3    that you may be familiar with one of the entities that was

4    listed.

5        XX. XXXXX:  Countrywide.

6        THE COURT:  Was it Countrywide?

7        XX. XXXXX:  Uh-huh (affirmative).  They were my

8    mortgage company for a while.  I also had a friend that lost

9    a home and that was their mortgage company so that is --

10       THE COURT:  Okay.

11       XX. XXXXX:  -- the association I have with them.

12       THE COURT:  Based on your experience with Countrywide,

13    and your friend's experience with Countrywide, do you

14    believe that they dealt fairly with people that you were

15    involved with?

16       XX. XXXXX:  Not with my friends.  She said that she

17    had a really hard time working with them.  My dealings with

18    them has always been good.  They're no longer my mortgage

19    company, they sold it to Bank of America.  But my dealings

20    with them was fine.  Hers was not as good as mind.

21       THE COURT:  Did your friend share any details with you

22    about how she believed that they were dealing unfairly with

23    her?

24       XX. XXXXX:  She was having problems with payments

25    because of her husband having surgery done and she was

1    trying to work with them to be able to keep her home and

2    apparently they were not very good with working with her

3    so --

4        THE COURT:  Okay.  You also respond to question number

5    9 which is about whether you or a family member or friend

6    have been a victim of a crime.

7        XX. XXXXX:  I have a -- well she is like my best

8    friend.  About three or four months ago her live-in

9    boyfriend that lived with her for about five years ago or

10   five years evidently moved in with his father and allegedly

11   killed his father.  It hasn't gone to trial yet.

12       THE COURT:  Have you been involved in that

13   investigation?

14       XX. XXXXX:  I just heard a lot of the details on what

15   took place just from her and so I mean I haven't been

16   questioned by police or anything, but I know quite a bit of

17   details on it.

18       THE COURT:  That sounds like -- not sounds, that was

19   obviously a very difficult circumstance.

20       XX. XXXXX:  Yeah.  Not only did the children lose

21   their dad, but they lost their grandfather.

22       THE COURT:  Anything about that circumstance that

23   would make it difficult for you to sit in a trial that

24   involves a different kind of a crime, doesn't involve

25   violence in any way?

```
1              XX. XXXXX:  No.

2              THE COURT:  Question number 10 is whether you or a

3    friend has been a victim or been arrested or convicted of a

4    crime.  Is that the same?

5              XX. XXXXX:  That is the same situation, yes.

6              THE COURT:  And then the next one is about the

7    criminal investigation.  Is that the same?

8              XX. XXXXX:  That is taking place with him, yes.

9              THE COURT:  13 is whether you or a family member or

10   friend have been involved in a home foreclosure.

11             XX. XXXXX:  My sister recently was about to lose her

12   home and she actually did a short sale and then my friend

13   that I referred to that lost her home, she did have a

14   foreclosure on there.

15             THE COURT:  Do you know who the lenders were?

16             XX. XXXXX:  It was Countrywide.

17             THE COURT:  Any follow up?

18             MR. THORLEY:  You mentioned Countrywide.  You

19   understand that Countrywide was a big lender?

20             XX. XXXXX:  Absolutely.

21             MR. THORLEY:  Lots of different operations through --

22             XX. XXXXX:  Uh-huh (affirmative).

23             MR. THORLEY: -- lots of the country.  Do you

24   understand that whether or not your friend had a negative

25   experience that doesn't necessarily brand the whole company?
```

103

```
 1          XX. XXXXX:  Correct.  Yeah, I have had a good

 2     experience with them when they were my mortgage broker.

 3          MR. THORLEY:  Okay.  Thank you.

 4          XX. XXXXX:  Varies upon each person.

 5          MR. THORLEY:  Based on what you know about the

 6     homicide investigation, do you have any questions or

 7     problems with the way law enforcement has handled that

 8     investigation?

 9          XX. XXXXX:  No.  They have been wonderful for my

10     friend.

11          MR. THORLEY:  Okay.  Thank you.

12          THE COURT:  Anything from the defense?

13          MR. HUNT:  No.

14          THE COURT:  Thank you.

15          XX. XXXXX:  Thank you.

16          MR. JOHNSON:  Thank you.

17          THE COURT:  Juror number 16 is XXXX XXXXXXX.  He

18     responds to question number nine with a yes which is the

19     victim of crime.  I guess we better find out what that is

20     about.

21          THE CLERK:  This is XXXX X XXXXXXX.  Have a seat right

22     here, sir.

23          XX. XXXXXXX:  Thank you.

24          THE COURT:  XX. XXXXXXX, we're just following up on

25     your response that you or a family member or friend have
```

104

1      been a victim of crime.

2            XX. XXXXXXX:  Yes.

3            THE COURT:  What was the crime?

4            XX. XXXXXXX:  Um, the terrible rape of a daughter.

5            THE COURT:  Your daughter?

6            XX. XXXXXXX:  Yes.

7            THE COURT:  Was law enforcement involved?

8            XX. XXXXXXX:  Yes.

9            THE COURT:  Did they deal appropriately with the

10     circumstance?

11           XX. XXXXXXX:  To date, yes.  It is still an open case.

12           THE COURT:  How long ago was this?

13           XX. XXXXXXX:  Um, four years ago.

14           THE COURT:  Was someone eventually charged or has

15     someone been charged?

16           XX. XXXXXXX:  Not yet.

17           THE COURT:  Is that because they have been unable to

18     identify the person or --

19           XX. XXXXXXX:  Yes.

20           THE COURT:  That is obviously a very traumatic and

21     difficult circumstance to deal with.  Anything about that

22     experience that would affect your ability to be on a jury in

23     a case that doesn't involve any violence at all?

24           XX. XXXXXXX:  No.

25           THE COURT:  Any follow up?

```
1            MR. THORLEY:  No.

2            MR. HUNT:  No.

3            THE COURT:  Thank you very much.

4            XX. XXXXXXX:  Thank you.

5            THE COURT:  Number 17 is XXXXXXXXX XXXXXXX.  I guess

6   I'm going to have to number these.  If my numbering is

7   right, I think I have got it right, he has responded yes to

8   questions number 3, 5, 9, 10 and 18 and 20.  Let's ask

9   XX. XXXXXXX to come back.

10           THE CLERK:  This is XXXXXXXXX XXXXX XXXXXXX.  Have a

11  set right here, sir.

12           XX. XXXXXXX:  Good morning.

13           THE COURT:  You indicated that you may be acquainted

14  with one of the other potential jurors.

15           XX. XXXXXXX:  Yeah, the guy sitting next to me, XXXX,

16  works for Page Brake and we have a contract with them out

17  there on the base.  So I don't know if I was acquainted with

18  him but I know that he had mentioned that.  So I thought I

19  better put yes on that in case we did, in fact, have some

20  dealings with each other.

21           THE COURT:  If you should both end up on the jury

22  together, would there be anything about that relationship

23  that would make you more or less inclined to follow his

24  direction or not follow his direction?

25           XX. XXXXXXX:  No.  No, definitely not.
```

106

1          THE COURT:  Okay.  You think you would be able to

2     exercise your own independent judgment?

3          XX. XXXXXXX:  Yeah.  I don't think I know him well

4     enough to even --

5          THE COURT:  Okay.

6          XX. XXXXXXX:  -- listen to anything that he has to

7     say.

8          THE COURT:  Number five is whether you have been

9     involved in a court proceeding or served on a jury before?

10          XX. XXXXXXX:  I answered yes.  I went to court for

11     myself one time, twice, two times.

12          THE COURT:  How long ago was that?

13          XX. XXXXXXX:  Oh, 15 years ago or so.

14          THE COURT:  What was the nature of the matter?

15          XX. XXXXXXX:  DUI.

16          THE COURT:  In that circumstance, did you feel like

17     the system treated you fairly?

18          XX. XXXXXXX:  Oh, yeah.

19          THE COURT:  Anything that is left over in terms of

20     your feelings about the system that would make it difficult

21     for you to be involved in the jury?

22          XX. XXXXXXX:  No.

23          THE COURT:  Number 9 is the question about whether you

24     have been a victim of a crime or someone you know?

25          XX. XXXXXXX:  Yup, just burglary of my car.  My car

1       was broken into.

2              THE COURT:  Was it investigated by the police?

3              XX. XXXXXXX:  No, unfortunately not.

4              THE COURT:  Anything about that incident that would

5       make you more or less likely to believe one side or the

6       other in this case?

7              XX. XXXXXXX:  In this case, I don't think so.

8              THE COURT:  Nothing like that in this case.

9              XX. XXXXXXX:  Okay, then no.

10             THE COURT:  Number 10 is whether you or a family

11      member has been arrested for a crime.  Was that the DUI?

12             XX. XXXXXXX:  Yeah.  Yeah.

13             THE COURT:  Any other circumstances that we ought to

14      be aware of?

15             XX. XXXXXXX:  No.

16             THE COURT:  Number 18, let me read this to you because

17      my question may have been confusing.

18             XX. XXXXXXX:  It was.  I know the question.

19             THE COURT:  As a juror, your own views about whether a

20      particular law or rule of evidence is right or wrong cannot

21      play a part in your deliberations.  In view of the evidence,

22      would you be unable to follow my instructions about these

23      rules of law as well as other instructions the court may

24      give you?  Your answer was yes.

25             XX. XXXXXXX:  I probably would be able to, but

1    feelings are pretty strong in some instances.  So I would

2    more than likely be able to follow the instructions, but

3    feelings do play a role.

4         THE COURT:  In this case, the allegations against the

5    defendant involve allegations of wire fraud and mail fraud.

6    Do you have any strong feelings about the law in that area

7    that would cause you to believe that the law should not be

8    enforced?

9         XX. XXXXXXX:  I don't know.  I would say that it would

10   depend upon exactly what happened.  But I do have feelings

11   against mail fraud.

12        THE COURT:  The court will give you instructions that

13   will spell out what the elements for each of the offenses

14   alleged are.  Would you be able to listen to those elements

15   and decide whether or not you think that the facts as

16   presented in the evidence meets those elements or does not

17   meet those elements?

18        XX. XXXXXXX:  I would like to think I would be able

19   to, but I don't know for sure.

20        THE COURT:  Sounds like you have some concern?

21        XX. XXXXXXX:  A little, yeah.

22        THE COURT:  And the court appreciates your candor.  I

23   mean it is important that you be candid with all of the

24   parties about how you feel.  So in a particular case if you

25   disagreed with the law, do you believe its application in a

1     particular case may not be appropriate?  Do I understand

2     that you believe that you would try but it might be

3     difficult for you to put aside your own feelings and apply

4     the law as you're instructed?

5          XX. XXXXXXX:  Yeah, I don't know that I would disagree

6     with the law per se as circumstances, individual

7     circumstances I would hope that I would be able to put

8     everything aside but I can't say for sure.  Even, you know,

9     even given instruction on the law.

10         THE COURT:  All right.  Fair enough, thank you.

11    Number 20 is whether it would be difficult for you to serve

12    on the jury for two and a half weeks.  What is going on that

13    would be hard for you?

14         XX. XXXXXXX:  I have got my contracting officer

15    warrant exam scheduled for next week, Wednesday, and I don't

16    know how often they do them.  I know that this is the first

17    one that they have done since November.

18         THE COURT:  Is this an exam that you're required to

19    take?

20         XX. XXXXXXX:  I'm not required to take it, but I'm

21    scheduled to take it.  We have only got -- right now we have

22    only got two contracting officers in our office that can

23    sign contracts and get them released.

24         THE COURT:  What would be the consequences if you

25    missed the exam?

                                                              110

1           XX. XXXXXXX:  I would have to reschedule.

2           THE COURT:  And is this something that you have been

3      preparing for?

4           XX. XXXXXXX:  Yeah.  Yeah since -- since you start

5      your job, you know, as a contract negotiator, you take all

6      your classes and you go level one certification, level two

7      certification, and then after you get your years of

8      experience, and then your contracting classes level two

9      certification, then you go and take the test and get your

10     warrant so you can do contracts.

11          THE COURT:  So if you pass the exam, that gives you an

12     opportunity to progress?

13          XX. XXXXXXX:  Yes.

14          THE COURT:  And if you miss the exam, will you be

15     delayed in terms of progressing?

16          XX. XXXXXXX:  Not necessarily.

17          THE COURT:  Any follow up?

18          MR. THORLEY:  XX. XXXXXXX, you made comment that --

19     well, depends on what happened in that particular case.  You

20     understand that jumping to conclusions isn't the right thing

21     to do, right?

22          XX. XXXXXXX:  Right.

23          MR. THORLEY:  In fact, I think that is what you just

24     said and it depends on the facts of the case.  Would you be

25     able to set aside any other situation that you may have

                                                          111

1    heard or thought about and simply listen to the facts in

2    this case and make a decision based on the facts?

3         XX. XXXXX:  I would like to say yes, but personal

4    feelings come into play sometimes.  I would like to believe

5    that I would be able to, but I can't 100 percent for certain

6    say yes.

7         MR. THORLEY:  Okay.

8         XX. XXXXXXX:  Is that clear enough?

9         MR. HUNT:  No follow up.

10        THE COURT:  Thank you very much.

11        MR. JOHNSON:  Thank you.

12        THE COURT:  Number 18 is XXXX XXXXXX.  She answers 9

13   yes, 13 yes.  Let's bring her in briefly.  Always amazing to

14   me how many people are victims of a crime.

15        MR. HUNT:  And who don't take the newspaper.

16        THE CLERK:  This is XXXX XXXXX XXXXXX.  Have a seat

17   right here, please.

18        THE COURT:  XX. XXXXXX, we're following up on question

19   9 which is whether you or a family member has been a victim

20   of a crime?

21        XX. XXXXXX:  Just a house burglary.

22        THE COURT:  How long ago was that.

23        XX. XXXXXX:  That was, let's see, probably 13 years

24   ago.

25        THE COURT:  Was there any law enforcement

112

1    investigation?

2         XX. XXXXXX:  Just calling an officer out to give us a

3    case number essentially.

4         THE COURT:  Did they deal appropriately with the

5    situation?

6         XX. XXXXXX:  Yes.

7         THE COURT:  Anything about that that would make it

8    difficult for you to be a juror in this case?

9         XX. XXXXXX:  Not at all.

10        THE COURT:  Question number 13 is about foreclosure of

11   a home.

12        XX. XXXXXX:  Yes.

13        THE COURT:  Is that you or someone else?

14        XX. XXXXXX:  No, it was a sister-in-law and that was

15   about 25 years ago.

16        THE COURT:  Do you remember who it was that -- who did

17   you say it was?

18        XX. XXXXXX:  My sister-in-law.

19        THE COURT:  Your sister-in-law?

20        XX. XXXXXX:  Yes.

21        THE COURT:  Do you know who the lender was that was

22   involved on that?

23        XX. XXXXXX:  I do not.

24        THE COURT:  Do you have any feelings as to whether or

25   not the lender treated your sister-in-law fairly?

1          XX. XXXXXX:  In my opinion it was fair.  I don't know

2     a lot of details about the circumstance.

3          THE COURT:  Any follow up?

4          MR. HUNT:  None.

5          MR. THORLEY:  The fact that with regard to the

6     burglary you say law enforcement responded and gave you a

7     case number?

8          XX. XXXXXX:  Yes.

9          MR. THORLEY:  Was there other follow up investigation?

10         XX. XXXXXX:  Um, not to my knowledge.  Also, I guess I

11    didn't mention, my husband has had his place of business

12    burglarized two times.  He has a car lot on State Street so

13    we have gone through this process a few times.

14         MR. THORLEY:  And have there been investigations in

15    those cases as well?

16         XX. XXXXXX:  Um, with the car lot I think one was

17    pursued a little more.

18         MR. THORLEY:  Okay.  Does the fact that all you got

19    was a case number in your house burglary, does that -- did

20    that leave some negative feelings or concerns with you?

21         XX. XXXXXX:  Oh, I think you feel a little not a lot

22    you can do, you know, to pursue anything.  But we were okay.

23         MR. THORLEY:  Would you be able to listen to the

24    evidence in this case and set that aside for any experience

25    you have had in the past?

                                                              114

```
1          XX. XXXXXX:  Absolutely.

2          MR. THORLEY:  Okay.  Thank you.

3          THE COURT:  Thank you very much.  Number 19 is XXXXX

4   XXXXXX.  He answers 9 yes and all of the rest are nos.  The

5   cases that are the most difficult in terms of people

6   involvement are sexual cases involving sexual abuse or

7   sexual conduct of some kind.

8          THE CLERK:  This is XXXXX XXXXXX XXXXXX.  Have a seat

9   right here, sir.

10         THE COURT:  XX. XXXXXX, we're following up on question

11  number nine which had to do with you or a family member or

12  friend being the victim of a crime?

13         XX. XXXXXX:  My house was burglarized, robbed.

14         THE COURT:  How long ago was that?

15         XX. XXXXXX:  About six years ago.

16         THE COURT:  And did you deal with law enforcement in

17  that circumstance?

18         XX. XXXXXX:  Yes, the West Jordan Police.

19         THE COURT:  And did they deal appropriately under the

20  circumstances?

21         XX. XXXXXX:  Well, they never caught the guy, but I

22  assume it was a guy, but I assume they did.

23         THE COURT:  There wasn't anything in terms of the way

24  they treated you that you thought left you with sort of

25  strong feeling about --
```

1            XX. XXXXXX:  No.

2            THE COURT:  -- law enforcement?

3            XX. XXXXXX:  No, not at all.

4            THE COURT:  Okay.  Any follow up?

5            MR. THORLEY:  No.

6            MR. HUNT:  No, Your Honor.

7            THE COURT:  Thank you very much.  Number 20 is XXXXXX

8    XXXXXX who answers 6 yes, 9 yes, 14 yes and 15 yes.  Let's

9    bring XX. XXXXXX in.

10           THE CLERK:  This is XXXXXX XXXXXXXX XXXXXX.  Have a

11   seat right here.

12           THE COURT:  Mr. XXXXXX, we're following up on your

13   response to question number six.

14           XX. XXXXXX:  Yes, Your Honor.

15           THE COURT:  That you testified as a witness

16   previously.  What type of a case was that?

17           XX. XXXXXX:  Um, sorry, say that again?

18           THE COURT:  What type of a case was it?

19           XX. XXXXXX:  Just an unemployment hearing.

20           THE COURT:  How long ago was that?

21           XX. XXXXXX:  Um, probably within the last two months.

22           THE COURT:  Was it before the Labor Department or

23   Labor Employment Division?

24           XX. XXXXXX:  Just the unemployment division before a

25   justice -- I don't know who, I don't remember the name

116

1    specifically but done over the telephone.

2        THE COURT:  Anything about that experience that left

3    you with feelings about the way that the system works that

4    would be difficult for you as a juror?

5        XX. XXXXXX:  No, I don't think so.

6        THE COURT:  Number nine is whether you or a family

7    member or friend has been the victim of a crime?  What was

8    the crime?

9        XX. XXXXXX:  Friends or family.

10       THE COURT:  Yes.

11       XX. XXXXXX:  Um, I would say probably I may have

12   misspoken on that one.

13       THE COURT:  Let me read the question so we can make

14   sure.  Have you or a member of your family or close friend

15   ever been a victim of a crime?

16       XX. XXXXXX:  Been a victim of a crime, yes.  Mostly

17   burglaries, that type of thing.  Just going through my head,

18   I'm the only one in the family that hasn't been the victim

19   of a burglary at least once.

20       THE COURT:  As a result of those crimes, have you had

21   any dealing with law enforcement?

22       XX. XXXXXX:  The tile was stolen out of my home before

23   I bought it so it wasn't my ownership, but that is the only

24   time I have dealt with the law enforcement.

25       THE COURT:  Did the law enforcement deal appropriately

1    with it, with your circumstance?  Did they deal

2    appropriately under the circumstances?

3         XX. XXXXXX:  Yes.

4         THE COURT:  Anything about that experience that would

5    make it difficult for you to be a juror in this case?

6         XX. XXXXXX:  I don't think so.

7         THE COURT:  Question number 14 is, have you or a

8    member of your family or close friend ever been approached

9    to purchase property based upon your good credit score?

10        XX. XXXXXX:  Yeah, quite often.  I mean I have really

11   great credit so I get a lot of offers.  I get a lot of, you

12   know, I know this friend who knows that friend who could

13   help out.  Just those kinds of dealings, yeah.

14        THE COURT:  Have these been offers to buy property or

15   just to take out another loan?

16        XX. XXXXXX:  In say like Central Utah the great place

17   to buy a vacation home, plot of land, that kind of thing.

18   Never anything more than that.

19        THE COURT:  People say would you like to buy this land

20   or something?

21        XX. XXXXXX:  We have some vacation land out there.

22        THE COURT:  Has anyone ever approached you under a

23   circumstance that you thought they were trying to take

24   advantage of your credit score in some way?

25        XX. XXXXXX:  No, I don't think so.

1       THE COURT:  Question number 15 is whether you have

2    knowledge of mortgage underwriting procedures, appraisal

3    guidelines, and escrow procedures?

4       XX. XXXXXX:  Just probably just in my own personal

5    dealings.  I have done a lot probably in the last 15,

6    20 years.

7       THE COURT:  In this case, there will be some evidence

8    about those kinds of procedures.  Would you be able to make

9    a decision as a juror based on the evidence you will hear in

10   court as opposed to what you believe you have learned over

11   the years about these practices?

12      XX. XXXXXX:  I think so.

13      THE COURT:  Any follow up?

14      MR. THORLEY:  No.

15      MS. ZENGER:  When you say you have done a lot, does

16   that mean you have done a lot of real estate purchases?

17      XX. XXXXXX:  Just a lot of purchases, refinances, you

18   know.  I am a person who I work for a credit card company so

19   we get into those fine minutia details and paying attention

20   to whatever it is, whenever I do these transactions I pay

21   attention to all of the stack of papers they give you.  I

22   read them pretty closely.  So --

23      THE COURT:  Thank you very much.

24      XX. XXXXXX:  Thank you so much.

25      THE COURT:  Number 21 is XXXXXX XXXXXXX who responds

119

1     to question number 10 yes, arrested or convicted of a crime.

2         THE CLERK:  This is XXXXXX XXX XXXXXXX.  If you would

3     have a seat right here, please.

4         THE COURT:  We're following up on your response that

5     you or a family member or close friend may have been

6     arrested or convicted of a crime?

7         XX. XXXXXX:  I knew you were going to ask me about

8     that.  Um, my husband, when he was a teen, well just when he

9     was 20, before I met him or knew him, he was arrested along

10    with his sister who was in a custody battle.  They had taken

11    -- his sister had taken her son without permission in a

12    custody issue and he was with her.

13        THE COURT:  How many years ago was that?

14        XX. XXXXXX:  Well, he is 40 -- he is 52 and I think he

15    was 21.

16        THE COURT:  So 30 years ago?

17        XX. XXXXXX:  Yeah.

18        THE COURT:  Anything about that experience that has

19    left you with feelings about the justice system or law

20    enforcement?

21        XX. XXXXXX:  No.  I wasn't involved in that at all.

22    And I have only heard a story about it.  So I don't have any

23    opinion about it really, you know what I mean.  Just --

24        THE COURT:  Okay.  Any follow up?

25        MR. THORLEY:  No.

1          MR. HUNT:  None.

2          THE COURT:  Thank you very much.

3          XX. XXXXXX:  Is that it?

4          MR. JOHNSON:  Thank you.

5          THE COURT:  Number 22 is XXXXX XXXXX who answers 5

6     yes, 7 yes, 14 yes, 21 yes.

7          THE CLERK:  This is XXXXX XXXXXXX XXXXX.  Have a seat

8     right here, sir.

9          XX. XXXXX:  Thank you.

10          THE COURT:  Thank you, Mr. Gaunt, for being here.

11     We're following up on your response to several questions.

12     First, have you been involved in a court proceeding or a

13     jury before and you said yes.

14          XX. XXXXX:  Yes, four times.

15          THE COURT:  Four times as a juror?

16          XX. XXXXX:  Um, three times as a juror; once as a

17     member of a special court marshal when I was on active duty.

18          THE COURT:  Anything about those experiences on those

19     juries that left you feelings about this system that would

20     make it difficult for you to be a juror again?

21          XX. XXXXX:  Not particularly.  One of them was a grand

22     jury in Indiana.

23          THE COURT:  Okay.  On the two instances where you were

24     asked to reach a verdict, did the jury reach a verdict?

25          XX. XXXXX:  Yes.

1          THE COURT:  Were they criminal cases or civil cases?

2          XX. XXXXX:  Civil cases, sir.

3          THE COURT:  And they found --

4          XX. XXXXX:  For the defendant both times, as I recall.

5          THE COURT:  What was the nature of the claims?

6          XX. XXXXX:  One was a personal injury, and one was a

7     fraud type of a case.

8          THE COURT:  What type of fraud?

9          XX. XXXXX:  Um, didn't pay the bills kind of thing.

10    Judgment to pay the liens, as I recall.  It was in Sandy.

11         THE COURT:  Okay.  Question number 7 was whether or

12    not you have had experience with a group of entities, that

13    whole list of entities, do you remember?

14         XX. XXXXX:  Countrywide Mortgage.

15         THE COURT:  And how are you familiar with Countrywide?

16         XX. XXXXX:  We tried to pay our mortgage off and it

17    took forever and it was like pushing spaghetti across the

18    street.  We finally got it resolved.  But it was certainly

19    not a pleasant experience.

20         THE COURT:  Did you feel like Countrywide was

21    unresponsive?

22         XX. XXXXX:  Yes.  Yes, sir.  I don't take well to

23    talking to answering machines.

24         THE COURT:  In this case there will be some evidence

25    that may involve Countrywide.  Are your feelings about your

1    experience in trying to pay off your mortgage such that you

2    would be able to listen to the evidence in this case and

3    make a decision on the facts here as opposed to what you

4    have personally experienced?

5        XX. XXXXX:  I think so, sir.

6        THE COURT:  Number 14 is whether you have been

7    approached by a friend to purchase property based on your

8    good credit score?

9        XX. XXXXX:  A couple of times people have approached

10   us.  We always quickly said no.

11       THE COURT:  Anything about those cases that would make

12   it a problem for you?

13       XX. XXXXX:  No, sir.  No, sir.

14       THE COURT:  21 is do you have any problem with

15   hearing, sight or other medical problems that may make it

16   difficult for you to serve as a juror.

17       XX. XXXXX:  Um, I need to go to the restroom about

18   once an hour because I'm getting old and that is what my

19   doctor says, it is part of getting old.

20       THE COURT:  We will usually take a break about every

21   hour-and-a-half.  Can you generally manage that?

22       XX. XXXXX:  Yeah.  Yeah, that is within the bounds.

23       THE COURT:  Okay.  And you would be able to raise your

24   hand if you needed to take a break.

25       XX. XXXXX:  Yes, sir.

```
1              THE COURT:  Any follow up?

2              MR. THORLEY:  Um, XX. XXXXX --

3              XX. XXXXX:  Yes, sir.

4              MR. THORLEY:  -- you understand that a Texaco station

5       in Utah may be different than a Texaco station in Alabama

6       and I am sorry Countrywide is a big company, you understand

7       that?

8              XX. XXXXX:  Yes, sir, I think so.

9              MR. THORLEY:  And you may have a good experience here

10      and somewhere else possibly a bad experience?

11             XX. XXXXX:  I guess.  I hadn't really thought about

12      it.

13             MR. THORLEY:  Do you have, because of your experience

14      with Countrywide, do you have any strong feelings about the

15      company such that it would impact your decision making?

16             XX. XXXXX:  I don't think they're in business any more

17      but I would never have done business with them again.  We

18      didn't -- it was one of those deals where our mortgage was

19      sold to Countrywide and then we were stuck with them and

20      couldn't get out from it.  We did, but it took forever.  So

21      no, it left a really bad taste in our mouth.

22             MR. THORLEY:  Do you think that might factor into the

23      evidence about Countrywide that you might --

24             XX. XXXXX:  Honestly, it is hard to say.  I hadn't

25      really thought about it until this came up, but it was not a
```

1    good experience.  I'm sorry but that is as good an answer as

2    I have got.

3        MR. THORLEY:  Okay.  And it has lingered with you and

4    kind of --

5        XX. XXXXX:  Well, you know, you get the run around

6    long enough you don't forget that.

7        MR. THORLEY:  Yeah.

8        THE COURT:  Any follow up?

9        MR. HUNT:  We don't.  Thank you.

10       THE COURT:  Thank you.

11       MR. JOHNSON:  Thank you.

12       THE WITNESS:  Thank you, sir.

13       THE CLERK:  XX. XXXXXXXX answers question number 8

14   yes.  It look like he answered it no and then crossed it out

15   and answered yes.  This is the one about experiences with

16   various agencies.  Anybody want to follow up and want to

17   find out what his experience has been.

18       MS. ZENGER:  He said his wife was a law clerk for this

19   court.

20       THE COURT:  Yes, let's talk to him.  He said his wife

21   is an attorney and a clerk and an attorney now at Snell and

22   Wilmer.

23       THE CLERK:  This is XXXXXXXX XXXXXX XXXXXXXX.  Have a

24   seat right here, sir.

25       THE COURT:  XX. XXXXXXXX, first with respect to the

                                                          125

1    question that had to deal with various agencies, Inspector

2    General of HUD, Internal Revenue Service, U.S. Attorney's

3    Office, you said that you had had some experience with them?

4         XX. XXXXXXXX:  Yes.

5         THE COURT:  Tell us with which agency and what

6    experience?

7         XX. XXXXXXXX:  I was recently audited by the IRS.  The

8    audit is complete, but it was -- well how fun can an audit

9    be.  So, I mean I would say that it was nothing that would

10   impact my judgment.  It wouldn't bias me in any way, but it

11   is something that seemed like it would be a material

12   omission not to bring it up on the forms.

13        THE COURT:  You didn't feel like you had to go out and

14   get even with the United States because you were audited?

15        XX. XXXXXXXX:  Correct.

16        THE COURT:  Okay.  You also indicated that your wife,

17   I believe, is an attorney at Snell & Wilmer?

18        XX. XXXXXXXX:  Uh-huh (affirmative).

19        THE COURT:  And she had clerked for the court.

20        XX. XXXXXXXX:  For you, actually.  Laura XXXXXXXX is

21   her name.

22        THE COURT:  How long ago was that?

23        XX. XXXXXXXX:  Last summer.  She also clerked for

24   Judge Nuffer, or interned, whatever the term would be.

25        THE COURT:  And anything about that experience that

1    you believe you need to tell the parties that they should

2    know about whether they would consider you suitable to serve

3    as a juror?

4        XX. XXXXXXXX:  Um, nothing at all.  You know, it is --

5    it just seemed like material issues that I should bring up.

6    None of it would impact my judgment or would bias me in any

7    way.

8        THE COURT:  And I take it she has been at Snell &

9    Wilmer now since --

10        XX. XXXXXXXX:  A handful of months.

11        THE COURT:  Is she working in any particular area?

12        XX. XXXXXXXX:  She is in their REEF Group, Real Estate

13    Environmental and Finance, and she focuses primarily on

14    environmental law.

15        THE COURT:  Anything about discussions with her about

16    the law about her experience that in any way would influence

17    you as a juror?

18        XX. XXXXXXX:  I don't believe so.

19        THE COURT:  Any follow up?

20        MR. THORLEY:  Concerning your audit with the IRS, has

21    that been resolved?

22        XX. XXXXXXXX:  It has, thank goodness.

23        MR. THORLEY:  Resolved satisfactorily?

24        XX. XXXXX:  Yes.  Yes.

25        MR. THORLEY:  Were you treated fairly by the people at

1    the IRS?

2         XX. XXXXXXX:  I would say so.  I mean my experience is

3    that it is -- it is the sort of experience where we have a

4    conversation with them, and two weeks later we get a demand

5    letter, one side of the organization doesn't speak to the

6    other so it gets frustrating.  After a while, I fortunately

7    did my taxes through H&R Block and paid for their peace of

8    mind and so they treated me like gold.  And I could

9    effectively take every issue I had straight to the regional

10   director at H&R Block and he gets with everyone.  So the

11   annoyance, annoyance is probably the right word to describe

12   my experience, and fortunately, it has been completely and

13   satisfactorily resolved.

14        MR. THORLEY:  Anything lingering with you, any bad

15   taste in your mouth, that would factor into your listening

16   to evidence about or about the work of the IRS?

17        XX. XXXXXXX:  No.

18        MR. THORLEY:  In this case.

19        XX. XXXXXXX:  No.

20        MR. THORLEY:  Okay.  Thank you.

21        THE COURT:  Any follow up?

22        MR. HUNT:  No, Your Honor.

23        THE COURT:  Thank you very much.

24        MR. JOHNSON:  Thank you.

25        XX. XXXXXXX:  Thank you.

```
 1              THE COURT:  Number 24 is XXXX XXXXX who answers number
 2     9 yes.
 3              THE CLERK:  This is XXXX XXXXXXXX XXXXX.  Have a seat
 4     right here, sir.
 5              THE COURT:  XX. XXXXX, we just are following up on
 6     your response that you or a family member or close friend
 7     have been a victim of a crime?
 8              XX. XXXXX:  Yes.  I was held up at knifepoint 20 years
 9     ago in downtown Portland.  They got $11 from me.  Nobody was
10     ever caught, as far as I know.
11              THE COURT:  Was law enforcement involved?
12              XX. XXXXX:  Yeah.
13              THE COURT:  Anything about the way they treated you
14     that left you with feelings about law enforcement either
15     extremely positive or extremely negative?
16              XX. XXXXX:  No, not at all.  It was a very minor
17     incident.  Had the knife not been involved, you know, like I
18     said they got $11 at that time in downtown Portland.  There
19     was a lot of gang growth and things like that that were
20     happening.  I was just walking home from work and it was
21     late at night but no.  No.
22              THE COURT:  Any follow up?
23              MR. THORLEY:  No.
24              MR. HUNT:  No.  No follow up.
25              THE COURT:  Thank you very much.
```

1       XX. XXXXX:  You bet.

2       MR. JOHNSON:  Thank you.

3       THE COURT:  25 is XXXX XXXXXX who answers 9 yes, and

4   23 yes, 13 yes.

5       THE CLERK:  This is XXXX XXXXXX.  If you would have a

6   seat right here, sir.

7       XX. XXXXXX:  Great.

8       THE COURT:  XX. XXXXXX, you indicated that you or a

9   family member or friend have been a victim of a crime?

10      XX. XXXXXX:  Yes.

11      THE COURT:  What was the crime?

12      XX. XXXXXX:  My cousin was dragged into a house when

13  she was seven or eight, and I don't know if I would call it

14  rape or sexually assaulted, that was probably -- I think I

15  was 11 or 12 at the time so it has been a while.

16      THE COURT:  This is what number of years ago?  How

17  many?

18      XX. XXXXXX:  17, 18.  Something like that.

19      THE COURT:  Were you personally involved with the law

20  enforcement in that situation at all?

21      XX. XXXXXX:  No.

22      THE COURT:  Anything about that circumstance that led

23  you to believe that law enforcement didn't deal with the

24  circumstances appropriately?

25      XX. XXXXXX:  No.

```
 1          THE COURT:  Any concern about that as to how it would

 2     affect your ability to serve as a juror in this case.

 3          XX. XXXXXX:  No.

 4          THE COURT:  13 is whether you or a family member have

 5     been involved in a home foreclosure?

 6          XX. XXXXXX:  My brother-in-law recently foreclosed on

 7     his home.

 8          THE COURT:  Do you remember who the lender was?

 9          XX. XXXXXX:  I don't know.

10          THE COURT:  Any information that you have about that

11     circumstance that would lead you to believe that he was

12     treated unfairly by the lender?

13          XX. XXXXXX:  No.

14          THE COURT:  All right.  Was this basically a situation

15     of his own personal finances having changed?

16          XX. XXXXXX:  Yeah.  He lost his job and could no

17     longer finance his house.

18          THE COURT:  You also indicated that you received a

19     copy of this pamphlet as you were coming into the

20     courthouse?

21          XX. XXXXXX:  Yeah.

22          THE COURT:  Did you read it?

23          XX. XXXXXX:  No, not really.  I glanced at it while I

24     was waiting for the doors to open, but I got cold and so I

25     put my hands back in my pocket along with the pamphlet.
```

1          THE COURT:  The pamphlet contains information that

2     would suggest that as a juror you're not required to follow

3     your oath and not required to follow the instructions given

4     you by the court?

5          XX. XXXXXX:  Yeah.

6          THE COURT:  Would you be able to completely put that

7     aside in terms of making a decision in this case?

8          XX. XXXXXX:  Yeah.

9          THE COURT:  Would you be able to follow the court's

10    instructions and honor the oath that you take as a juror?

11         XX. XXXXXX:  Yes.

12         THE COURT:  You need to understand that neither the

13    defense or the prosecution or the court was responsible for

14    distributing this pamphlet.  Any follow up?

15         XX. XXXXXX:  Yeah.

16         MR. THORLEY:  No.

17         XX. XXXXXX:  No.

18         THE COURT:  Thank you very much.

19         XX. XXXXXX:  Thank you very much.

20         THE COURT:  26 is XXXXX XXXXXXX, who answers 13 and 23

21    yes.

22         THE CLERK:  This is XXXXX XXXXXX XXXXXXX.  Have a seat

23    right here, please.

24         XX. XXXXXXX:  Okay.

25         THE COURT:  Question number 13 had to do with whether

1       you or a family member had a home foreclosure?

2              XX. XXXXXXX:  My daughter.

3              THE COURT:  And how long ago was that?

4              XX. XXXXXXX:  Um, probably eight years ago.

5              THE COURT:  Do you know who the lender was in that

6       case?

7              XX. XXXXXXX:  No.

8              THE COURT:  Anything that you learned about that

9       circumstance that caused you to believe that the lender had

10      acted unfairly towards your daughter?

11             XX. XXXXXXX:  No.  Her ex-husband was the one that was

12      responsible for it.

13             THE COURT:  Okay.  He is the one that caused the

14      circumstances that led to the foreclosure?

15             XX. XXXXXXX:  Yes.  Yes.

16             THE COURT:  Anything about that circumstance that

17      would make it difficult for you to be a juror in this case?

18             XX. XXXXXXX:  No.

19             THE COURT:  You also indicated that you received a

20      copy of this pamphlet on your way into the courthouse.  Did

21      you read it?

22             XX. XXXXXXX:  No.  I glanced at it and saw what it was

23      and folded it and put it in my purse.

24             THE COURT:  Some of the information in the pamphlet

25      suggests that you're not required to follow the court's

1    instructions or to honor the oath that you would take as a

2    juror.  Would you be able to completely disregard that?

3         XX. XXXXXXX:  Yes.

4         THE COURT:  And follow the court's instructions?

5         XX. XXXXXXX:  Yes.

6         THE COURT:  Anything about that pamphlet that you

7    think would influence you in any way being a juror in this

8    case?

9         XX. XXXXXXX:  No.

10        THE COURT:  Any follow up?

11        MR. THORLEY:  No.

12        MS. ZENGER:  Are you familiar with Special Agent Greg

13   Stuart to your left?

14        XX. XXXXXXX:  No.

15        MS. ZENGER:  Okay.

16        THE COURT:  Thank you for reminding me.  I just need

17   to tell you that this was not distributed by the defendants

18   or the prosecution or the court so you just need to

19   understand that.

20        XX. XXXXXXX:  Right.

21        THE COURT:  Thank you.  You're excused.

22        XX. XXXXXXX:  Okay.

23        MR. JOHNSON:  Thank you.

24        MR. STUART:  Was she from Syracuse?

25        MR. HUNT:  You just told us how small --

1          MR. STUART:  Her home that they bought up was an older

2     home and my parents are like long established members there

3     and my parents live one block off of her street, one house

4     off Antelope Drive.  Not that small but --

5          MS. ZENGER:  Just checking.

6          THE COURT:  XXXXX XXXXXXXX, number 27, answered 10 and

7     11 yes and 23.  Let's bring XX. XXXXXXXX in.

8          THE CLERK:  This is XXXXX X XXXXXXXX.  Please have a

9     seat here.

10         XX. XXXXXXXX:  Thank you.

11         THE COURT:  XX. XXXXXXXX, we're following up on your

12    response to questions number 10 and 11.

13         XX. XXXXXXXX:  Okay.

14         THE COURT:  10 is, have you or a friend or family

15    member been arrested or convicted of a crime?

16         XX. XXXXXXXX:  Yes, not me.  I worked with, I think I

17    mentioned I was a custodian at Utah Valley University a

18    couple of years back and became an acquaintance -- I don't

19    consider him a friend, he was recently convicted for a

20    probation violation so he is serving time in the Iron County

21    Jail.

22         THE COURT:  Anything about that circumstance that led

23    you to believe that law enforcement had acted unfairly or

24    inappropriately?

25         XX. XXXXXXXX:  No.  He made a stupid choice and

1    suffered the consequences, I think.

2         THE COURT:  And question number 11 was the same

3    question about a criminal investigation.

4         XX. XXXXXXXX:  Criminal investigation.  Currently, my

5    younger brother is cited for a misdemeanor.  I just put that

6    down because I figured that is full disclosure.  So he is

7    challenging it in court so I think there is some kind of

8    something I don't really know.

9         THE COURT:  Anything about that circumstance that

10   leads you to believe that he is being targeted or treated

11   unfairly in any way by law enforcement?

12        XX. XXXXXXXX:  No, nothing.

13        THE COURT:  Finally, you indicated that you received a

14   copy of this brochure?

15        XX. XXXXXXXX:  Yeah.  As I walked in there was a gal

16   handing out brochures.  I assumed it was the same one in the

17   information thing.  However upon thinking about that

18   question, I looked at it and I saw it was some company out

19   of Montana or something but I just glanced at the back.

20        THE COURT:  Some of the information in the brochure

21   suggests that as a juror you would not be required to follow

22   your oath or to follow the instructions given to you by the

23   court.  Would you be able to completely put that aside?

24        XX. XXXXXXXX:  I didn't hear that until just now, but

25   yeah that is -- I would follow the court's orders.

1          THE COURT:  Okay.  And you need to understand neither

2     the defense nor prosecution nor the court, for that matter,

3     was involved in distributing this?

4          XX. XXXXXXXX:  I assumed it was a third-party, some

5     group, yeah.

6          THE COURT:  Okay.  Thank you.  Any follow up?

7          MR. THORLEY:  Might I ask, you mentioned an

8     investigation of a misdemeanor.  Do you know what kind of

9     allegation is being made?

10         XX. XXXXXXXX:  He was working at a convenience store

11    and was the subject, I guess you would say, of a sting

12    operation for selling alcohol.  He asked for I.D. and there

13    was some discrepancy on whether he saw a card or just asked

14    for identification.  And what the law actually states in

15    Cedar City I am not -- not following that, it is his thing,

16    and he is working it out with his lawyer and --

17         MR. THORLEY:  Any feeling in you that there was

18    unfairness involved in that investigation?

19         XX. XXXXXXXX:  Um, as far as, you know, investigation

20    I think again I don't understand it enough to make a

21    judgment on it so I would say that I don't know.  I mean to

22    be fair, I just don't know the situation well enough to make

23    a judgment on whether he was treated fairly or unfairly.

24         MR. THORLEY:  Can you set that investigation and

25    whatever is happening there aside?

```
1              XX. XXXXXXXX:  Absolutely.  Again, personally, because

2      I don't know what it is, there is nothing really there.  But

3      also I think I see them as separate issues.

4              MR. THORLEY:  Thank you very much.

5              THE COURT:  Anything further?

6              MR. JOHNSON:  Thank you.

7              MR. HUNT:  No further questions.

8              XX. XXXXXXXX:  Thank you.

9              THE COURT:  Number 28 is XXXXXXXX XXXXXX.  XX. XXXXXX

10     answers yes to questions 9, 10 and 13, 15, 19, 20 and 22.

11     Let's ask XX. XXXXXX to come in.

12             MR. ELGGREN:  Is it your intention to go all the way

13     through without a break?

14             THE COURT:  Do you need to take a break?

15             MR. ELGGREN:  I can just --

16             MR. THORLEY:  We can keep going.

17             THE COURT:  If we can get to 31 and see where we are.

18             MR. ELGGREN:  Okay.

19             THE COURT:  I don't mean to inflict unusual or cruel

20     punishment.

21             MR. ELGGREN:  I appreciate that.

22             THE CLERK:  This is XXXXXXXX XXXXXX.  Have a seat

23     right here, please.

24             XX. XXXXXX:  Hello.

25             THE COURT:  XX. XXXXXX, thank you for being here.
```

1      We're following up on your response, first of all, to

2      question number 9 whether you or a family member has been a

3      victim of a crime?

4            XX. XXXXXX:  Yes, I had a DUI.

5            THE COURT:  And how long ago was that?

6            XX. XXXXXX:  I was 22.  37 years ago.

7            THE COURT:  In your dealing with the system in that

8      case, do you believe that you were dealt with fairly?

9            XX. XXXXXX:  Yes.

10           THE COURT:  Did the law enforcement officers treat you

11     with respect and --

12           XX. XXXXXX:  No, but I was definitely dealt fairly

13     with by the court.

14           THE COURT:  Okay.  Any feelings about law enforcement

15     officers and the way they deal with people that would carry

16     over to the way you would view the evidence presented by law

17     enforcement officers in this case?

18           XX. XXXXXX:  Um, honestly yeah a little bit.  I have

19     not been treated fairly by many officers.  You guys are

20     intimidating.

21           MR. HUNT:  We're all taking notes.

22           THE COURT:  In this case this doesn't involve anything

23     similar to a violent crime or a traffic crime or a DUI

24     crime.  It involves facts that involve allegations of fraud.

25     In those circumstances, do you believe that you would be

1    more or less inclined to believe the law enforcement

2    officers who testify?

3        XX. XXXXXX:  I would say I would definitely be fair, I

4    would treat them fairly, yes.

5        THE COURT:  Okay.

6        MR. THORLEY:  I apologize, I didn't quite hear.  I

7    think my --

8        XX. XXXXXX:  Yes, I would be fair.

9        MR. THORLEY:  Okay.  Thank you.

10       THE COURT:  You would give their testimony the same

11    weight that you would give every other witness's testimony?

12       XX. XXXXXX:  Correct.

13       THE COURT:  Question number 10 has to do with arrested

14    or convicted of a crime and that was you?

15       XX. XXXXXX:  That was me, yes.

16       THE COURT:  And I think I asked you, maybe I didn't

17    ask you, whether or not you had been the victim of a crime.

18       XX. XXXXXX:  No, that was the only crime.

19       THE COURT:  Okay.  And then 13 has to do with

20    foreclosure of a home, you or someone close to you.

21       XX. XXXXXX:  My mother foreclosed on her home and then

22    my sister actually did a short sale with that same home.

23    She kind of got stuck with it.

24       THE COURT:  Do you know who the lenders involved were?

25       XX. XXXXXX:  I don't.  I was too young.

```
 1            THE COURT:  Anything about that experience that you

 2       have learned of that would cause you to believe that the

 3       lenders treated your mother and then your -- was it your

 4       sister --

 5            XX. XXXXXX:  Correct.

 6            THE COURT: -- unfairly?

 7            XX. XXXXXX:  No.

 8            THE COURT:  Number 15 has to do with knowledge about

 9       mortgage underwriting procedures, real estate appraisal

10       guidelines, and escrow practices?

11            XX. XXXXXX:  Well, I didn't know if I should say yes

12       or no on that one.  It was just because I have bought a

13       home.  I have gone through the procedures.

14            THE COURT:  Anything other than just buying a home?

15            XX. XXXXXX:  No.

16            THE COURT:  Anything about that procedure that has

17       left you mad or unhappy or believing that you have been

18       dealt with inappropriately?

19            XX. XXXXXX:  No.  I actually lucked out.  I bought

20       right before everything fell.  I got a good interest rate

21       and good price.

22            THE COURT:  Good.  15 -- or let's see, 20 has to do

23       with the trial lasting two and a half weeks and you

24       indicated that may be difficult for you?

25            XX. XXXXXX:  Yes.  I don't think I can financially
```

1    afford taking two weeks off of work or two and a half weeks

2    off of work.

3         THE COURT:  All right.  Remind us what hours do you

4    work?

5         XX. XXXXXX:  I actually work at Squatters Brew Pub.  I

6    pick up a lot of shifts there.  I work two nights, Tuesday

7    and Monday nights, but helping my sister with house cleaning

8    and I am about to do three shows this summer for my jewelry

9    business.  I'm pretty busy.  I'm sure everyone is pretty

10   busy.

11        THE COURT:  We will be out of trial -- you will be

12   free at 2:30 every day.

13        XX. XXXXXX:  Okay.

14        THE COURT:  Would that impact your ability to still

15   make -- do your shift work and meet your obligations for

16   your employer?

17        XX. XXXXXX:  I would be able to still meet my

18   obligations if 2:30 was the time.

19        THE COURT:  Let me see if I have got everything.

20   Number 19, let me read this to you and you can explain.  It

21   is the judge's duty to determine punishment.  If you find

22   after considering the evidence and the law that you must

23   find the defendant is guilty, would you be able to decide

24   this case without concern about what the potential

25   punishment would be?

1           XX. XXXXXX:  And there -- no, I am afraid that I would

2      have to know the punishment in order to make a right

3      decision because punishment has to equal the crime.  So I

4      was a little hesitant on that one.

5           THE COURT:  In this case you understand the jury will

6      not decide what the punishment is, that will be decided

7      later based on a number of other factors.  You seem to be

8      saying, and I want to make sure we fully understand you,

9      that you may worry about what the punishment is in trying to

10     decide whether or not the person was guilty of the offense

11     beyond a reasonable doubt?

12          XX. XXXXXX:  Oh, I am sorry, then no.  I would

13     definitely take all facts into consideration and make a

14     decision by that without the punishment being brought up.

15          THE COURT:  Okay.  And then number 20 is, I asked you

16     about 22, do you know of any reason you cannot serve on the

17     jury?  Is that the employment issue?

18          XX. XXXXXX:  Yes.

19          THE COURT:  Have we resolved that to your

20     satisfaction?

21          XX. XXXXXX:  Yes.

22          THE COURT:  Any follow up?

23          MR. THORLEY:  Thank you.  Do you live in the home that

24     you bought?

25          XX. XXXXXX:  Yes.

1           MR. THORLEY:  Okay.  And just so I understand about

2     that, the last issue about needing to know the punishment to

3     see if it fits the crime, would you have that in the back of

4     your mind when you consider the issue of guilt or innocence

5     and looking at the facts?

6           XX. XXXXXX:  Honestly probably, but I must have

7     misunderstood the question because I would take all facts

8     and I would definitely base my decision on that.  But, of

9     course, in the back of my mind, yes.  What would happen to

10    this man if I pleaded guilty for him or not guilty, et

11    cetera.

12          MR. THORLEY:  And if it was trending toward, you know,

13    strike that.  But in your mind do I understand that there is

14    a link between what the ultimate outcome of the case would

15    be and how you would look at the evidence and how you might

16    vote?

17          XX. XXXXXX:  Yes, probably.  I mean I'm just assuming

18    everyone puts that into perspective but maybe I shouldn't, I

19    guess.

20          MR. THORLEY:  Okay.

21          THE COURT:  Okay.  Thank you.

22          MR. THORLEY:  And lastly, if I may, you said you

23    haven't been treated fairly by very many law enforcement

24    officers?

25          XX. XXXXXX:  No.

                                                              144

1          MR. THORLEY:  Kind of a bad experience in your -- in

2     your life?

3          XX. XXXXXX:  And granted I have not always been

4     innocent.

5          MR. THORLEY:  Okay.  Do your feelings about law

6     enforcement then factor into how you listen to and take into

7     account their testimony?

8          XX. XXXXXX:  No.

9          MR. THORLEY:  It doesn't?

10         XX. XXXXXX:  No.

11         MR. THORLEY:  Okay.

12         XX. XXXXXX:  I don't feel like I would.

13         MR. THORLEY:  You understand these two people are law

14    enforcement officers?

15         XX. XXXXXX:  Yes.

16         MR. THORLEY:  And would your feelings about the way

17    you were treated and the way you have been treated by law

18    enforcement officers factor into how you listen to their

19    testimony?

20         THE WITNESS:  No.

21         MR. THORLEY:  Okay.  Thank you.

22         MS. ZENGER:  If the judge tells you that punishment is

23    something that he gets to decide and you are not to consider

24    that in making your decision, can you follow that from the

25    judge?

1          XX. XXXXXX:  Yes.

2          THE COURT:  Thank you.

3          XX. XXXXXX:  Thank you.

4          MR. JOHNSON:  Thank you.

5          THE COURT:  29 is XXXXX XXXXX.  He answers 5, 9, 10,

6     13, and 15 not really, whatever that means, and 23 yes.

7          THE CLERK:  All right this is XXXXX X XXXXX.  Have a

8     seat here, sir.

9          THE COURT:  XX. XXXXX, you answered that you have been

10    involved in a court proceeding and served on a jury before.

11    Tell us what your involvement was?

12         XX. XXXXX:  Um, I was arrested several years ago and

13    it was a plea in abeyance.  One day in and out thing.

14         THE COURT:  What was the allegation against you?

15         XX. XXXXX:  Domestic violence for breaking my window.

16         THE COURT:  And in your dealing with law enforcement

17    in that circumstance, did you come away feeling that you had

18    been treated fairly or unfairly?

19         XX. XXXXX:  Oh, yeah.  I had no issues with how they

20    handled it.

21         THE COURT:  And because of that involvement, would you

22    be more or less likely to believe anything that law

23    enforcement officers say?

24         XX. XXXXX:  I don't think it would have any impact.

25         THE COURT:  Now number 9 is whether you or a family

                                                              146

1    member has been a victim of a crime.  You indicated yes.

2        XX. XXXXX:  Yeah, a decade ago my car was broken into

3    and stuff was stolen out of it.

4        THE COURT:  Was there an investigation?

5        XX. XXXXX:  Um, not -- I don't think so.

6        THE COURT:  Anything about dealing with law

7    enforcement in that circumstance that left you with a bad

8    taste in your mouth?

9        XX. XXXXX:  They were the ones that called us to say

10   our car has been broken into.

11       THE COURT:  Number 10 is whether you been arrested,

12   convicted of a crime.  Is that the circumstance you have

13   described?

14       XX. XXXXX:  Yes.

15       THE COURT:  Number 13 is whether you have ever been

16   involved in the foreclosure of a home?

17       XX. XXXXX:  I haven't, my sister was.

18       THE COURT:  Do you know who the lender was in that

19   case?

20       XX. XXXXX:  No.  I might recognize the name if I heard

21   it but I don't.

22       THE COURT:  Anything about her circumstance and the

23   way she was treated by the lenders that you believe was

24   unfair or done the way it should have been?

25       XX. XXXXX:  I don't know enough of how things went

147

1    down to know if it was fair or not.

2        THE COURT:  Anything about that circumstance that

3    would influence your ability to sit in the case that would

4    involve some issues about home foreclosure and related

5    issues?

6        XX. XXXXX:  Without knowing the details of the case, I

7    can't say yes or no but probably not.

8        THE COURT:  All right.  And finally, 15 is do you have

9    any knowledge about mortgage writing?  You said not really.

10    I assume that is a no.

11        XX. XXXXX:  I took a -- well it was more on the

12    appraisal, I took an MBA -- took a real estate -- commercial

13    real estate appraiser class but that was one class and so I

14    got a little bit of introduction to it but not really.

15        THE COURT:  And finally, question number 23 had to do

16    with receiving the copy of this brochure that somebody

17    handed you.

18        XX. XXXXX:  They handed me that.

19        THE COURT:  You should understand that neither the

20    defense nor the prosecution nor the court had anything to do

21    with handing this out?

22        XX. XXXXX:  I gathered that by reading it.

23        THE COURT:  And --

24        XX. XXXXX:  Or browsing through it.

25        THE COURT:  And the brochure suggests that you're not

148

1    required to follow your oath as a juror and not required to

2    follow the instructions of the court.  Would you be able to

3    disregard that, put that completely aside?

4         XX. XXXXX:  Yes.

5         THE COURT:  In serving on this case?  Any follow up?

6         MR. THORLEY:  How thoroughly did you go through the

7    pamphlet?

8         XX. XXXXX:  I started a few of the paragraphs.

9         MR. THORLEY:  Okay.  But nothing that affected you

10   personally or sticks in your memory?

11        XX. XXXXX:  It seemed like somebody had an ulterior

12   motive that was trying to push something.

13        MR. THORLEY:  Okay.  Thank you.

14        THE COURT:  Anything further?

15        MR. HUNT:  No.

16        THE COURT:  Thank you very much.

17        MR. JOHNSON:  Thank you.

18        THE COURT:  XXXX XXXXXXXXX, number 30, answers yes to

19   5, 6, 8, 9, 13, 15, and 20.

20        MR. JOHNSON:  He is a lawyer.

21        THE CLERK:  This is XXXX XXXXXXX XXXXXXXXX.  Have a

22   seat right here, sir.

23        XX. XXXXXXXXXX:  All right.

24        THE COURT:  XX. XXXXXXXXX, we're following up on some

25   of your responses.  Number five was whether you have been

149

1      involved in a court proceeding or served as a juror before.

2      You indicated yes.  Tell us what was involved?

3          XX. XXXXXXXXX:  Um, I was a party to an effort by the

4      biological father of my adopted children to take them back.

5          THE COURT:  So it is a custody dispute of sorts?

6          XX. XXXXXXXXX:  Parental rights determination.

7          THE COURT:  You also indicated that you have testified

8      as a witness.  Was that in the same proceeding?

9          XX. XXXXXXXXX:  Yeah.

10          THE COURT:  As an attorney, you have also obviously

11      had experience with the court system.  Anything about your

12      involvement, personally or as an advocate or as a lawyer,

13      that would in your mind make it difficult for you to serve

14      as a juror in this case?

15          XX. XXXXXXXXX:  I don't think so.  Nothing in my

16      experience.

17          THE COURT:  Number 8 has to do with experiences with a

18      list of agencies including HUD, IRS, U.S. Attorney's Office.

19      Just tell us generally what your experience has been with

20      those?

21          XX. XXXXXXXXX:  I was subpoenaed by a grand jury to

22      testify about a year and a half ago in a case someone was

23      being indicted for some kind of misconduct.  I think it was

24      -- I think it was Department of Justice that was conducting

25      it.  I don't remember a lot of details.  I don't think there

1    was anything about that experience that really affects me

2    much.

3        THE COURT:  Number nine is whether you or a family

4    member has been a victim of a crime?

5        XX. XXXXXXXXX:  Yeah, my car broken into before.  That

6    is the only thing.

7        THE COURT:  Okay.  Anything about your experience with

8    law enforcement under those circumstances that would leave

9    you with negative feelings about law enforcement?

10        XX. XXXXXXXXX:  No, I thought they were great.

11        THE COURT:  Number 13 is whether you or a family

12    member or friend has been involved in a home foreclosure?

13        XX. XXXXXXXXX:  Yeah, in connection with my work, I'm

14    working on foreclosures all of the time.

15        THE COURT:  As a result of that, do you have any

16    opinions or views about mortgage lenders that would make you

17    more or less inclined to believe testimony of people

18    associated with such institutions?

19        XX. XXXXXXXXX:  That is hard to say.  I have seen some

20    shady practices.

21        THE COURT:  Let me ask it a little differently.  You,

22    as an attorney, understand the importance of making

23    decisions based on the facts presented in this case.  Would

24    you be able to do that?

25        XX. XXXXXXXXX:  Yeah, I think so.

1           THE COURT:  Do you believe anything about your

2      experience in foreclosures would cause you to be of a

3      particular mind set that would bias you one way or the other

4      in reaching a decision?

5           XX. XXXXXXXXX:  I think I could be impartial.

6           THE COURT:  Okay.  Number 15 has to do with knowledge

7      about underwriting procedures, appraisal, et cetera.  Is

8      that as a result of your work?

9           XX. XXXXXXXXX:  Yes, it is.

10          THE COURT:  Again, same question.  Would you be able

11     to make a decision based on the evidence presented in this

12     case, bringing to bear your common sense but not making

13     judgments based on anything presented outside of the

14     courtroom?

15          XX. XXXXXXXXX:  Yeah, I think so.

16          THE COURT:  Okay.  Number 20 is whether it would be

17     difficult for you to serve for two and a half weeks?

18          XX. XXXXXXXXX:  Yeah.

19          THE COURT:  Tell us what the circumstances are?

20          XX. XXXXXXXXX:  Well, I am an hourly employee.  I get

21     paid based on hours I bill and collect.  And two and a half

22     weeks out of work would be, I don't want to be dramatic, but

23     it would be financially pretty devastating given my family

24     circumstance right now.

25          THE COURT:  Is there anything going on in your -- in

1    your practice, in your work experience right now, that is

2    particularly unique to this time frame or is it just

3    generally it would be hard?

4        XX. XXXXXXXXX:  Um, well it is unique.  It is kind of

5    awkward to get into, but it is uniquely a financially

6    difficult time for my family.  My house is on the market

7    right now, we're trying to get out from under some debts.

8    It is just a hard time.

9        THE COURT:  One of the things you should be aware of

10   is we will be out of court at 2:30 every day which doesn't

11   completely answer the question, but would that in any way

12   help you with dealing with some of the work issues?

13       XX. XXXXXXXXX:  I think it would help.  It still would

14   be -- it would be really difficult but it would help.

15       THE COURT:  Would your concern about the impact this

16   may have about upon you financially be so strong that you

17   would be worried about that and not give your full

18   attention, not be able to give your full attention to the

19   issues presented in this trial?

20       XX. XXXXXXXXX:  It would honestly be hard not to feel

21   some distraction, but I would try not to, but it would be a

22   challenge.  I might have some -- I have a pretrial hearing

23   in front of Judge Jenkins the day after tomorrow and some

24   other things sort of sprinkled in the calendar the next

25   couple of weeks that would have to be sorted out, too.

```
 1              THE COURT:  Okay.  Mr. Thorley, any follow up?

 2              MR. THORLEY:  You mentioned testifying in front of the

 3       grand jury.  Do you recall the name of the Assistant United

 4       States Attorney that asked you to come and testify?

 5              XX. XXXXXXXXX:  I don't remember.

 6              MR. THORLEY:  Male or female?

 7              XX. XXXXXXXXX:  Male.

 8              MR. THORLEY:  Okay.  And you did indicate that you

 9       could be impartial.  You understand as an attorney that each

10       case stands on its own merits, its own facts and witnesses

11       involved --

12              XX. XXXXXXXXX:  Yeah.

13              MR. THORLEY:  -- in that case?

14              XX. XXXXXX:  Yeah, I do.

15              MR. THORLEY:  And you can -- you can set past

16       experience aside?

17              XX. XXXXXXXXX:  I think so.

18              MR. THORLEY:  And look at the facts of this case?

19              XX. XXXXXXXXX:  Yeah, I think so.

20              MR. THORLEY:  Okay.

21              THE COURT:  Go ahead.

22              MR. THORLEY:  You talked about financial impact.  I

23       guess all jurors have a financial impact on their -- on

24       their life.  Is yours -- do you feel any different than

25       others jurors that are out there in the courtroom?
```

```
1              XX. XXXXXXXXX:  Um, I don't get any sort of salary or

2        any sort of draw.  So, you know, I am really an hourly

3        worker in that sense.  You guys understand that so you

4        probably do any way and it is just like I said that sort of

5        a unique window of time my family is going through that has

6        us doing fairly drastic things like getting rid of our

7        house.

8              MR. HUNT:  Are you a sole practitioner or with a firm?

9              XX. XXXXXXXXX:  With a firm.

10             MR. HUNT:  What firm?

11             XX. XXXXXXXXX:  The Wrona Law Firm.

12             MR. HUNT:  Wrona Law Firm.

13             XX. XXXXXXXXX:  Yeah.

14             MR. HUNT:  And what types of clients do you -- what

15       area of practice do you do?

16             XX. XXXXXXXXX:  Mostly related to real estate one way

17       or the other.

18             MR. HUNT:  And when you say one way or another, what

19       do you mean?

20             XX. XXXXXXXXX:  Um, you know, everything from

21       foreclosures to disputes with banks over foreclosures,

22       construction defect disputes, earnest money disputes.  You

23       know, if you practice in Park City, you're touching real

24       estate a lot if you're a litigator.

25             MR. HUNT:  There were a lot of entities that were
```

```
1      thrown at you but if I may try and repeat two.  One of them

2      was Dear Creek Title.  Does that ring a bell at all?

3              XX. XXXXXXXXX:  It doesn't.

4              MR. HUNT:  Or Michelle Huggins?

5              XX. XXXXXXXXX:  No.

6              MR. HUNT:  And I forget the other one Gwilliam.

7              XX. XXXXXXXXX:  Doesn't sound familiar.

8              MR. HUNT:  Um, do you do mostly plaintiff's work or

9      defense work?

10             XX. XXXXXXXXX:  We're on the plaintiffs side more

11     often than the defense.

12             MR. HUNT:  Homeowner side?

13             XX. XXXXXXXXX:  Um, yeah, often the purchaser.

14             MR. HUNT:  Okay.

15             XX. XXXXXXXXX:  Sometimes the builder and developer,

16     but more often the plaintiff or the purchaser.

17             MR. HUNT:  Lastly, two silly questions, I want to make

18     sure.  What year did you graduate from law school?

19             XX. XXXXXXXXX:  '92.

20             MR. HUNT:  From where?

21             XX. XXXXXXXXX:  University of Utah.

22             MR. HUNT:  Okay.

23             THE COURT:  Thank you very much.

24             XX. XXXXXXXXX:  Thank you.

25             MR. JOHNSON:  Thank you.
```

1          THE COURT:  Number 31 is XXXXX XXXXXXX who answers 5

2     yes, 9 yes, and 23 yes.  Let's bring her in.

3          THE CLERK:  This is XXXXX XXXX XXXXXXX.  Have a seat

4     here.

5          XX. XXXXXXX:  Hi there.

6          THE COURT:  Thank you.  We're following up first on

7     your response that you have been involved in a judicial

8     proceeding or served on a jury before?

9          XX. XXXXXXX:  I have been involved in a judicial

10    proceeding.  My son had brought up charges against my

11    ex-husband for child abuse so I had to go to court to get

12    custody back of my son.

13         THE COURT:  Was that resolved in a way that you felt

14    was dealt fairly with you and the issues?

15         XX. XXXXXXX:  Yes.

16         THE COURT:  Anything about your experience in court

17    there that left you with such bad feelings about court

18    proceedings that you think it would be hard for you to be a

19    juror?

20         XX. XXXXXXX:  No, sir.

21         THE COURT:  Number 9 is whether you or a family member

22    has been a victim of a crime?

23         XX. XXXXXXX:  Yes.

24         THE COURT:  Was this your son?

25         XX. XXXXXXX:  No, this was actually myself.  Um, I was

```
 1    moving back to Michigan and my U-Haul was stolen in Michigan
 2    City, Indiana and transported to Gary where the repo people
 3    saw them unloading it.  So I did get all of my stuff back.
 4         THE COURT:  Did the law enforcement people that you
 5    dealt with in that circumstance act appropriately?
 6         XX. XXXXXXX:  Yes.
 7         THE COURT:  Treated you fairly?
 8         XX. XXXXXXX:  Yes.
 9         THE COURT:  Finally, you indicated that you received a
10    copy of this brochure on the way into the courthouse.
11         XX. XXXXXXX:  Yes.
12         THE COURT:  First you need to understand that neither
13    the defense nor the prosecution nor the court had anything
14    to do with the distribution of this brochure.
15         XX. XXXXXXX:  Okay.
16         THE COURT:  Did you read it?
17         XX. XXXXXXX:  No.
18         THE COURT:  There is information in there that would
19    suggest you're not required to follow your obligation as a
20    juror taking the oath or to follow the instructions given to
21    you by the court.  Would you be able to put all of that
22    aside and follow the court's instructions and honor the oath
23    that you take as a juror if you were selected to serve?
24         XX. XXXXXXX:  Yes, sir.
25         THE COURT:  Okay.  Any follow up by anyone?
```

```
 1              MR. THORLEY:  No.

 2              MR. HUNT:  No follow up.  Thank you.

 3              THE COURT:  Thank you very much.

 4              XX. XXXXXXX:  Thank you.

 5              MR. JOHNSON:  Thank you.

 6              THE COURT:  Let's go back and see where we are.

 7     Starting with juror number one and going forward, any

 8     challenges for cause by the United States, first of all?

 9              MR. THORLEY:  I am not sure how Your Honor intends to

10     handle things like travel issue that juror number one had

11     with the tickets to Orlando and that sort of thing.

12              THE COURT:  I'll tell you my inclination.  We have

13     plenty of jurors.  I don't have any inclination to subject

14     someone to losing their travel plans.  Unless there is a

15     strong objection, I will excuse juror number one.

16              MR. HUNT:  We would agree.

17              THE COURT:  We will strike juror number one.

18              MR. THORLEY:  The next juror that I have got a

19     question about is I have a question about number four who is

20     starting a new job today, XXXXX XXXXXX.  Otherwise --

21              MR. HUNT:  I have the same concern about that.

22              THE COURT:  If there is no objection, I will strike

23     her.  In this economy it doesn't seem like a good time to

24     put someone's livelihood at risk.

25              MR. THORLEY:  Yes.
```

1           THE COURT:  Before we move to the second page, defense

2      have any more on 1 through 9?

3           MR. HUNT:  No.

4           THE COURT:  Okay.  Go onto the second page,

5      Mr. Thorley.

6           MR. THORLEY:  Um, as much as I would like XX. XXXXXXX,

7      juror number 17 talked about having some pretty strong

8      feelings about mail fraud and --

9           THE COURT:  Which one are you on?

10          MR. THORLEY:  Sorry, number 17.

11          MR. HUNT:  Jumped over 14?  Nice try though, Scott.

12          MS. ZENGER:  17 years in law enforcement.

13          MR. HUNT:  I think with her involvement with the FBI

14     with the U.S. Attorney's Office and the bias that she has, I

15     don't think she can --

16          THE COURT:  I think I need to strike number 14,

17     XXXXXXX XXX.  Let's go to number 17.  In addition to XX.

18     XXXXXXX he is the one that is taking an exam.

19          MR. THORLEY:  Yes.

20          THE COURT:  Which indicated that it may not impact

21     him, but he didn't know when it could be scheduled again.

22     What is your view about XX. XXXXXXX?

23          MR. HUNT:  I would say that I agree.  I understand his

24     vagueness very well and probably concerned both sides not

25     just --

1          MR. ELGGREN:  It wasn't the exam that concerned me.

2     He said he wasn't sure he could follow the judge's

3     instructions.

4          THE COURT:  Probably.

5          MR. HUNT:  Probably would, but I don't see -- anybody

6     that hesitates like that, they have got something going on

7     in the back of their mind and I think we should strike him.

8          MR. JOHNSON:  Okay.

9          THE COURT:  Any more on Page 2 which is 10 through 18?

10         MR. HUNT:  No.

11         THE COURT:  Next Page, 19 through 27.  Any from the

12    United States?

13         MR. THORLEY:  I think -- I don't see anyone else on

14    that page.  I think we're okay there.

15         THE COURT:  Anything from the defense 19 through 27?

16         MR. THORLEY:  Your Honor, if we could go back and just

17    revisit for just a second juror number 22.  XX. XXXXX talked

18    about the terrible experience that he had with Countrywide.

19    They are a lender in this case and as many times as we tried

20    to get him to say, you know, would it factor into his

21    decision?  He wasn't able to say that it wouldn't.  He said

22    it was pretty bad.

23         MR. HUNT:  I think he was able to say affirmatively

24    and answer the judge's question.  We oppose that.

25         THE COURT:  He did -- he did say he had a bad taste

1    but he felt like in the particular circumstance he had a

2    hard time getting their attention and deal with what he

3    wanted to deal with, but he did say that he believed he

4    could follow and would not disregard the court's

5    instructions.  I'm going to overrule the objection and leave

6    XX. XXXXX on.  Any more on 19 through 27?

7        MR. HUNT:  I don't know.  I don't know.  Do you?

8        MS. ZENGER:  No.

9        THE COURT:  Any on 28 through 31?  The only one that I

10   want you to think about, I'm not sure what we ought to do

11   about it, it is number 30.

12       MR. THORLEY:  Yeah.

13       MR. ELGGREN:  Yeah.

14       MR. THORLEY:  Before we get to 30, could we raise with

15   the court juror 28, XXXXXXXX XXXXXX.  She said that she

16   hadn't been treated fairly by officers, she hadn't been

17   treated with respect, and there was this link between

18   punishment and how she would vote on the case that was very

19   cloudy and kind of weird.

20       MR. STUART:  I don't think she understood the --

21       MS. ZENGER:  We object to that.

22       MR. HUNT:  I think the bottom line is that she was

23   able to affirmatively answer the question which was

24   explained to her follow the instructions and she could.

25       MS. ZENGER:  As she said, she wasn't always innocent

1      herself with respect to the law enforcement.

2           MR. JOHNSON:  She wasn't treated fairly.

3           THE COURT:  I think she did say that she had not been

4      treated fairly, but I asked her several different ways

5      whether or not she believed she would follow the court's

6      instructions and whether or not she would give more weight

7      to the testimony of others in law enforcement.  I think she

8      said she would take the facts fairly.  So no, I'm going to

9      overrule the objection.  29, 30, or 31?  What about 30?

10          MS. ZENGER:  30?

11          MR. ELGGREN:  That is the attorney.

12          MR. HUNT:  He went to law school with me but I don't

13     remember him.

14          THE COURT:  He didn't remember you either.

15          MR. HUNT:  He didn't remember me either.

16          THE COURT:  The main concern I have is this is an area

17     in which he has practice experience.  I don't know whether

18     that is a concern for either side.

19          MR. HUNT:  I don't know.  He is obviously an attorney,

20     that is true.

21          MS. ZENGER:  Hardship, very small firm.  He is a -- he

22     is tied to his own billing.

23          MR. JOHNSON:  I don't know him personally.

24          THE COURT:  Does the United States object to striking

25     him?

```
1              MR. THORLEY:  Um, I don't think we do, Your Honor.  I

2      think our concern would be that as much on his background

3      and expertise on the financial impacts that he --

4              THE COURT:  Without wanting to get into the detail, he

5      stated there are unique circumstances going on that

6      obviously are going to be a distraction for him at this

7      time.  So let's strike number 30.  Mr. Taylor how many more

8      do we need?

9              THE CLERK:  Five.

10             THE COURT:  Are you up to doing five more,

11     Mr. Elggren?

12             MR. ELGGREN:  We can do five.

13             THE COURT:  There is a restroom right here.  At least

14     go through this stage.

15             MR. THORLEY:  Yes.

16             THE COURT:  Number 32, is XXXXXXX XXXXXXX who answers

17     5 and 6 yes, 9 yes, 23 yes.  Mr. XXXXXXX.  I always hate to

18     ask that one about victim of crime but we always get yeses.

19     We almost have to find out.

20             THE CLERK:  This is XXXXXXX XXXX XXXXXXX.  So have a

21     seat right here, sir.

22             THE COURT:  XX. XXXXXXX, thank you for being here.

23     Um, you indicated that you had been involved previously in a

24     judicial proceeding or served as a juror?

25             XX. XXXXXXX:  Served as a juror.
```

1           THE COURT:  How many years ago was that?

2           XX. XXXXXXX:  About 40 years ago.

3           THE COURT:  Do you remember what type of a case it

4      was?

5           XX. XXXXXXX:  It was a civil case.  I don't remember

6      too many of the details because it didn't last very long.

7           THE COURT:  Do you remember if the jury reached a

8      verdict?

9           XX. XXXXX:  It never went to the jury.  The testimony

10     was presented and they went back and settled out.

11          THE COURT:  Anything about your experience that would

12     make it difficult for you to be a juror again?

13          XX. XXXXXXX:  No.

14          THE COURT:  You also answered number six yes which is

15     whether you have testified as a witness?

16          XX. XXXXXXX:  Yes.  That was in a Salt Lake case.

17     That was also 40 some odd years ago, an assault case.  I was

18     the only witness to the perpetrator, the only viable witness

19     to the perpetrator.  And the defendant brought in a lot of

20     family members to say he was somewhere else so it was

21     numbers so they won, the city lost.

22          THE COURT:  Anything about that experience that left

23     you with bad feelings about law enforcement or the way you

24     interacted with the court system?

25          XX. XXXXXXX:  No.

1          THE COURT:  Number nine is the one about victim of a

2     crime.  Was that the same incident?

3          XX. XXXXXXX:  No.  I mean it depends on what you mean

4     by a crime.  I have been burglarized, had a car stolen and

5     thing likes that.

6          THE COURT:  Anything, any involvement with law

7     enforcement in any of those episodes?

8          XX. XXXXXXX:  No, not really.  I mean other than

9     reporting it to them.

10         THE COURT:  Any negative experiences as a result of

11    that?

12         XX. XXXXXXX:  No.

13         THE COURT:  Finally, and you indicated you had someone

14    hand you a copy of this brochure.  You need to understand

15    first that neither the parties, defense or the prosecution

16    or the court, distributed this brochure and did you read it?

17         XX. XXXXXXX:  No, I have not looked at it.

18         THE COURT:  The brochure is arguing that you as a

19    juror are not required to follow the court's instructions

20    and can disregard your oath as a juror.  Would you put that

21    aside completely and follow the court's instructions if

22    you're selected?

23         XX. XXXXXXX:  It depends.  Um, I think in most

24    business law I probably could.  I think it is when other

25    morales get into more political type things I have to say.

1          THE COURT:  This case involves allegations of whether

2     there has been wire fraud committed or mail fraud and the

3     court will instruct you as to the elements of that.  Would

4     you be able to follow the court's instructions as to whether

5     the evidence supports a conviction of that?

6          XX. XXXXXXX:  Yes.

7          THE COURT:  This case, I don't believe, follows -- has

8     any political overtones or social justice overtones in the

9     normal sense of the word.

10         XX. XXXXXXX:  Right.

11         THE COURT:  With that information, does that solve any

12    concerns that you would have about being able to follow the

13    court's instructions?

14         XX. XXXXXXX:  Yes.  Yes.

15         THE COURT:  Any follow up, Mr. Thorley?

16         MR. THORLEY:  What are the kinds of cases that you

17    would have a hard time deciding whether or not to follow the

18    court's instructions?

19         XX. XXXXXXX:  Well, I don't know.  I mean it is just

20    going back to some injustices, you know, that we have had in

21    the past.  Rosa Parks, things like that.

22         MR. THORLEY:  Social matters and fair treatment are

23    important to you?

24         XX. XXXXXXX:  Yes, where I think the law was somewhat

25    wrong.

1          MR. THORLEY:  Okay.  Do you feel that the criminal law

2    system factors into some of those social concerns that you

3    have?

4          XX. XXXXXXX:  Yeah.

5          MR. THORLEY:  And in what ways?

6          XX. XXXXXXX:  I can't say exactly, but I mean not off

7    the top of my head anyway.

8          MR. THORLEY:  Okay.  But you will set aside those

9    concerns and look at the facts and look at the given

10   evidence and testimony?

11         XX. XXXXXXX:  I don't see a problem with that.

12         MR. THORLEY:  Okay.  Judge it on what happens in the

13   courtroom?

14         XX. XXXXXXX:  Yeah.

15         MR. THORLEY:  Okay.  Thank you.

16         THE COURT:  Follow up?

17         MR. HUNT:  No follow up.

18         THE COURT:  Thank you very much.

19         MR. JOHNSON:  Thank you.

20         THE COURT:  Number 33 is XXXXXX XXXXXXXX and she

21   answers 5 yes, 12 yes, the rest no.  And let's find out what

22   she has been involved in.  She is a judicial assistant

23   through the Utah State Court.

24         THE CLERK:  This is XXXXXX XXXX XXXXXXXX.  Have a seat

25   right here, please.

1          THE COURT:  XX. XXXXXXXX, you get to tell -- be on the

2     other end now.

3          XX. XXXXXXXX:  Yeah.

4          THE COURT:  Number five was whether you had been

5     involved in judicial proceedings or served as a juror.  You

6     said yes.  Does that cover your career as a judicial

7     administrator?

8          XX. XXXXXXX:  No.

9          THE COURT:  Um, number 12 has to do with knowledge

10    about mortgage brokerage, mortgage lending, real estate

11    appraising and title companies.  You said you have some

12    knowledge of that area?

13         XX. XXXXXXX:  I thought I put yes on the question that

14    I had a family member that worked in that area.

15         THE COURT:  It did include family members.  Tell us

16    who is involved.

17         XX. XXXXXXX:  I have a sister in law that works for a

18    title company down in Panguitch and I believe she is

19    actually in the process of buying it.

20         THE COURT:  Anything about your association with her

21    that would make it difficult for you to serve as a juror in

22    a case involving some of those kinds of issues.

23         XX. XXXXXXX:  No.

24         THE COURT:  Do you have any concerns, based on your

25    familiarity with the court system, and your involvement in

1    the process, as to whether you could be fair and sit as a

2    juror in this case?

3         XX. XXXXXXX:  Do I have any concerns?  No.

4         THE COURT:  Any follow up?

5         MR. THORLEY:  No.

6         MR. HUNT:  I don't have any questions.

7         THE COURT:  Thank you very much.

8         XX. XXXXXXX:  Okay.  Thank you.

9         THE COURT:  Number 34 is XXXX XXXXXXXX who answers

10    number 9 yes, 10 yes, 11 yes.  The rest are all nos.

11         THE CLERK:  This is XXXX XXXXXXX XXXXXXX.  If you

12    would have a seat right here, please, sir.

13         THE COURT:  XX. XXXXXXXX, we're following up on the

14    question that you indicated that you or a close family

15    member or friend have been a victim of a crime.  Could you

16    tell us what was involved?

17         XX. XXXXXXXX:  Um, sexual abuse.

18         THE COURT:  How many years ago was that?

19         XX. XXXXXXXX:  Oh, probably seven.

20         THE COURT:  And what was your relationship with the --

21    with the victim?

22         XX. XXXXXXXX:  I was her father.

23         THE COURT:  Was there a prosecution as a result of

24    this charge?

25         XX. XXXXXXXX:  Yes.  Yes.

1           THE COURT:  And how was it resolved?

2           XX. XXXXXXXX:  I don't remember.  It was my -- it was

3     my father that was --

4           MR. HUNT:  I can't hear it.

5           THE COURT:  It was the grandfather of the child?

6           XX. XXXXXXXX:  Yes.

7           THE COURT:  And was he -- was he ultimately sentenced

8     or was he convicted of the crime?

9           XX. XXXXXXXX:  Yes.

10          THE COURT:  Did he serve time in prison?

11          XX. XXXXXXXX:  No.

12          THE COURT:  Based on your experience with that, did

13    you think that the law, criminal justice system including

14    law enforcement and the courts acted fairly in that case?

15          XX. XXXXXXXX:  Yes.

16          THE COURT:  And do you have any concerns about your

17    experience in that case that would carry over to your

18    ability to be impartial as a juror in this case?

19          XX. XXXXXXXX:  No.

20          THE COURT:  Okay.  Number 10 is whether a close family

21    member has been arrested or convicted of a crime.  Was that

22    the same situation.

23          XX. XXXXXXXX:  It is.

24          THE COURT:  And question 11 was about a criminal

25    investigation.  Was that the same situation?

1          XX. XXXXXXXX:  Yes.

2          THE COURT:  Any follow up from the United States?

3          MR. THORLEY:  No.

4          MR. HUNT:  None, Your Honor.

5          THE COURT:  Thank you very much.

6          XX. XXXXXXXX:  Thank you.

7          THE COURT:  Number 35 is XXXXX XXXXXXXX who answers

8     yes to question number 5 and 7 and 13 and 14 and 22 who has

9     tickets to Las Vegas for March 11th and 12th to go see --

10    maybe you're hip enough to understand that.

11         MR. ELGGREN:  Mountain West Conference Tournament.

12         THE COURT:  Basketball tickets.

13         THE CLERK:  This is XXXXX XXXXXXXX.  Have a seat right

14    here, please.

15         THE COURT:  Thank you for being here.  You have

16    indicated that you have previously been involved in a

17    judicial proceeding or served as a juror before?

18         XX. XXXXXXXX:  Yes, in El Paso, Texas.

19         THE COURT:  How long ago was that?

20         XX. XXXXXXXX:  Um, gee, maybe eight or ten years.

21         THE COURT:  And do you remember what type of a case it

22    was?

23         XX. XXXXXXXX:  It was a civil case.

24         THE COURT:  And you served on the jury in that case?

25         XX. XXXXXXXX:  Yes.

```
 1            THE COURT:  And was that a good experience?

 2            XX. XXXXXXXX:  Um, yes.

 3            THE COURT:  Did the jury reach a verdict?

 4            XX. XXXXXXXX:  Yes.

 5            THE COURT:  Did they find for the plaintiff or the

 6      defendant?

 7            XX. XXXXXXXX:  Okay, I want to make sure I get this

 8      right.  So tell me which one -- what they are.

 9            THE COURT:  The plaintiff is the one making the

10      accusations.  The defendant is the one --

11            XX. XXXXXXXX:  Plaintiff.

12            THE COURT:  The plaintiff prevailed?

13            XX. XXXXXXXX:  Yes.

14            THE COURT:  What was the nature of the claim?

15            XX. XXXXXXXX:  Um, it was a claim against Sears for

16      siding on a house that wasn't good and they didn't come

17      through with their contracts.

18            THE COURT:  Anything about that experience that would

19      make it difficult for you to be a juror again?

20            XX. XXXXXXXX:  No.

21            THE COURT:  Number 7 was a list of various entities.

22      You indicated that you may have been familiar with one of

23      the entities.  Do you remember which one?

24            XX. XXXXXXXX:  Countrywide.

25            THE COURT:  Okay.  What was your association or
```

1      familiarity with Countrywide?

2            XX. XXXXXXXX:  Well, my husband and my son bought some

3      rental properties starting about eight years ago, wasn't the

4      best choice we realize now, but probably four to six of them

5      have gone into foreclosure and been foreclosed on.

6            THE COURT:  And Countrywide was the lender?

7            XX. XXXXXXXX:  Um, I know that was one, yes.

8            THE COURT:  Anything about that experience in terms of

9      dealing with Countrywide that would make it difficult for

10     you to be impartial in hearing evidence about how

11     Countrywide may have dealt with some of the circumstances of

12     this case?

13            XX. XXXXXXXX:  Well, my only complaint would be

14     repeated, repeated, repeated, repeated phone calls when the

15     answer did not change and yeah it was a long process.

16            THE COURT:  Question number 13 had to deal with the

17     foreclosure of homes or properties.  Is that the same

18     circumstance?

19            XX. XXXXXXXX:  Yes.

20            THE COURT:  And 14 is whether you or a family member

21     has been approached to purchase property based on your good

22     credit score?

23            XX. XXXXXXXX:  Well, I think that is how the whole

24     situation started.  My son was working with a relatively

25     young entrepreneur who was doing really well.  And that is

                                                              174

1    how we got approached and bought properties.

2         THE COURT:  Has the effect of these foreclosures had a

3    financial impact upon you and your family?

4         XX. XXXXXXXX:  Yes.  Yeah.

5         THE COURT:  Has it been such a financial impact that

6    it would be difficult for you to put that aside in thinking

7    about the evidence in this case?

8         XX. XXXXXXXX:  Um, I guess not.

9         THE COURT:  You have indicated that you have tickets

10   to go to Las Vegas.

11        XX. XXXXXXXX:  I do.  I do.

12        THE COURT:  Is that with other members of your family?

13        XX. XXXXXXXX:  Yes.

14        THE COURT:  We could ask which team you're supporting

15   but --

16        MR. STUART:  All in blue.

17        XX. XXXXXXXX:  I was going to say if I had a bumper

18   sticker, which I don't, it would be BYU.  Yes.

19        THE COURT:  I take it these are plans you have had for

20   some time?

21        XX. XXXXXXXX:  Yes.  Yes.

22        THE COURT:  How disappointed would you be if you're

23   unable to go?

24        XX. XXXXXXXX:  Oh, my gosh, I could cry right now if

25   you want me to.

1        THE COURT:  Why do you want to go watch them lose?

2        XX. XXXXXXXX:  Now now.

3        THE COURT:  Anything further?

4        MR. THORLEY:  When you talked about the repeated

5   calls, were you the one making the calls or receiving the

6   calls?

7        XX. XXXXXXXX:  Receiving calls.  And even when we

8   would answer their calls, you know, I mean messages left

9   four times within an hour if we weren't home, or we would

10  just get so tired we would pick up the phone and put it down

11  and I mean I guess I understand their perspective but it

12  was -- it was not pleasant.

13       MR. THORLEY:  Kind of a bad taste in your mouth about

14  Countrywide?

15       XX. XXXXXXXX:  About what?

16       MR. THORLEY:  About Countrywide and their --

17       XX. XXXXXXXX:  Well, I don't know that it was just

18  Countrywide.  There has been -- I think my husband would

19  tell you every name of every place but yes, I know that was

20  one of them and I am not sure if some of them got sold to

21  some other entity and I don't know.

22       MR. THORLEY:  Okay.  Thank you.

23       THE COURT:  Anything further?

24       MR. HUNT:  Do you have any questions?

25       THE COURT:  Thank you very much.

1          XX. XXXXXXXX:  Do I get to go to Las Vegas?

2          THE COURT:  We'll get back to you.  We won't make you

3     wait too much longer.

4          MR. JOHNSON:  Go BYU.  I'm with you.

5          XX. XXXXXXXX:  Yeah.

6          THE COURT:  Number 36 is XXXXXX XXXXXXX.  She answers

7     yes to 5, 6, 8, 9, 10, 11, 13 I think and 21 and 22.  Bring

8     XX. XXXXXXX back in.

9          THE CLERK:  This is XXXXXX XXXXXXX have a seat here,

10    please.

11          THE COURT:  First of all, thank you for being here.

12    You indicated that you have been involved in a court

13    proceeding and served as a juror before.  Tell us what was

14    involved?

15          XX. XXXXXXX:  I don't -- it wasn't a jury, I was just

16    -- we had -- we were selling our house and the realtor I

17    don't know it has been quite a while, any way, something

18    happened and we got sued and we had to come up with $400 to

19    pay for the -- for our house that we ended up keeping.

20          THE COURT:  Anything about that experience that left

21    you with bad feelings about the court system and the way it

22    works?

23          XX. XXXXXXX:  No, just realtors.

24          THE COURT:  Number six has to do with whether you have

25    been a witness in a judicial proceeding?

177

1         XX. XXXXXXX:  No, it wasn't judicial.

2         THE COURT:  You have not been a witness in a trial?

3         XX. XXXXXXX:  Well, it was just the neighbor kid had

4    broke into a house and we witnessed him and we had to go to

5    court on that.

6         THE COURT:  You testified against him.

7         XX. XXXXXXX:  Uh-huh.

8         THE COURT:  Okay.  Anything about that that left a bad

9    experience in your mind?

10        XX. XXXXXXX:  No.

11        THE COURT:  Number 10 is whether you have been

12   arrested or convicted of a crime or a member of your family

13   or friends?

14        XX. XXXXXXX:  My son has.

15        THE COURT:  And what was the nature of the crime that

16   he was charged with?

17        XX. XXXXXXX:  It was, um, drugs and he spent 10 years

18   in prison for that.

19        THE COURT:  Do you feel like the court system and the

20   law enforcement people treated him fairly in that case?

21        XX. XXXXXXX:  No.

22        THE COURT:  Can you give us any particulars about why

23   you feel that way?  How the system worked that caused you to

24   have that feeling?

25        XX. XXXXXXX:  Well, I just don't think that for what

1    he did that he should have spent 10 years and what they did

2    to him in prison.

3            THE COURT:  So you thought that the sentence didn't

4    match the crime?

5            XX. XXXXXXX:  No.

6            THE COURT:  Now in making a decision as a juror in

7    this case, would that experience impact how you would feel

8    about reaching a decision?

9            XX. XXXXXXX:  I really don't know.  Honestly I really

10    -- I can't -- I really don't know.

11            MR. THORLEY:  Would you be more or less likely to

12    believe the testimony of law enforcement officers as a

13    result of that experience?

14            XX. XXXXXXX:  No, I would not.

15            THE COURT:  In other words, would you believe --

16            XX. XXXXXXX:  I would not believe a law enforcement

17    officer.

18            THE COURT:  Would you have concerns about whether

19    they're being truthful?

20            XX. XXXXXXX:  Yes.

21            THE COURT:  Under the circumstances.

22            XX. XXXXXXX:  Yes.

23            THE COURT:  Um, number 13 has to do with a

24    foreclosure.  Have you had --

25            XX. XXXXXXX:  No, but my daughter was foreclosed on

1      her home.

2            THE COURT:  Do you remember who the lender was?

3            XX. XXXXXXX:  You know, I don't.  I have no idea.

4            THE COURT:  Do you feel like she was treated fairly by

5      the lender in that circumstance?

6            XX. XXXXXXX:  You know, I really can't say because I

7      didn't get into it as much.  I just pretty much stayed out

8      of that.

9            THE COURT:  Okay.  21 has to do with whether you have

10     problems because of hearing or sight or other medical

11     problems that would make it difficult.

12            XX. XXXXXXX:  I can't hear real well.

13            THE COURT:  Did you have trouble hearing this morning

14     in the courtroom when we were using the microphones?

15            XX. XXXXXXX:  No.

16            THE COURT:  It was okay?  You think you could hear?

17            XX. XXXXXXX:  As long as I had the microphone.  As

18     soon as the microphone was gone I could not hear at all.

19            THE COURT:  And then number -- the last question I

20     asked you about is whether you said there may be some

21     reasons why you should not serve on the jury.  You indicated

22     yes there are some.  What are your concerns?

23            XX. XXXXXXX:  Just like I say, all of the other things

24     that were involved pretty much.

25            THE COURT:  With your son?

                                                              180

```
1              XX. XXXXXXX:  Uh-huh.

2              THE COURT:  Any follow up?

3              MR. THORLEY:  No.

4              MR. HUNT:  No.

5              THE COURT:  Thank you very much.

6              XX. XXXXXXX:  Thank you.

7              MR. JOHNSON:  Thank you.

8              THE COURT:  Let's go through those five.  Mr. Thorley.

9              MR. THORLEY:  We would have concerns about first of

10     all juror number 35.  That may very well function in a role

11     of a real estate investor plus the tickets to the basketball

12     tournament would be distracting to her.

13             THE COURT:  Any objection to striking her?

14             MR. HUNT:  No, we don't.

15             THE COURT:  She will be stricken.

16             MR. HUNT:  Just because of the Mountain West

17     Conference Tournament.

18             MR. THORLEY:  And then I think we believe that the

19     last juror --

20             THE COURT:  36?  Any objection to striking 36?

21             MR. JOHNSON:  I thought her concern went to a drug

22     charge.  It has nothing to do with a financial crime so I

23     think that is a perhaps slight change but I liked her.

24             THE COURT:  Mr. Thorley?

25             MR. THORLEY:  She said that she couldn't be fair and
```

```
 1      wouldn't listen to the testimony of law enforcement.

 2           THE COURT:  She seemed strong to me that she would not

 3      believe law enforcement officers.  I'm going to strike her

 4      on that basis.  So we need to do two more.

 5           Number 37 is XXXXXX XXXXXXXX who answers 9 yes, 11

 6      yes, 12 yes, 15 yes and 23 yes.

 7           THE CLERK:  This is XXXXXX XXXXXXXX XXXXXXXX.  Have a

 8      seat right here, please.

 9           XX. XXXXXXX:  Okay.  Thank you.

10           THE COURT:  XX. XXXXXXXX, first we're following up on

11      whether you or a family member have been the victim of a

12      crime?

13           XX. XXXXXXXX:  Okay.

14           THE COURT:  Tell us what the circumstances?

15           XX. XXXXXXXX:  I had a brother-in-law whose car was

16      broken into and had some stuff stolen out of it.  That was

17      several years ago.  I didn't -- I figured -- I figured I

18      would put it down there.

19           THE COURT:  Any dealing with law enforcement by you in

20      that circumstance?

21           XX. XXXXXXXX:  No.

22           THE COURT:  Any feelings about how law enforcement

23      dealt with the circumstance that would carry over to this

24      case?

25           XX. XXXXXXXX:  No.
```

1          THE COURT:  Number 11 has to do with you or a family

2     member that has been the focus of a criminal investigation?

3          XX. XXXXXXXX:  Goes back with number 10.  Also I had a

4     brother that was charged with stealing some checks and

5     cashing those checks from Zions -- or on a bank in Arizona.

6     That was about eight or nine years ago.

7          THE COURT:  Was he eventually convicted of the crime?

8          XX. XXXXXXXX:  I believe -- I think he pled it out.  I

9     don't know if it ever went to trial.

10         THE COURT:  Based on what you know about how he was

11     treated, do you feel like he was treated fairly in the

12     circumstances?

13         XX. XXXXXXXX:  I do.

14         THE COURT:  Do you feel like the courts dealt with him

15     appropriately in terms of the sentence imposed?

16         XX. XXXXXXXX:  Yes.

17         THE COURT:  Number 15 is a question about experience

18     with mortgage underwriting procedures, appraisal guidelines,

19     escrow procedures.  Tell us what experience you have in that

20     area?

21         XX. XXXXXXXX:  I have worked in banking for about

22     15 years.  I have been a mortgage underwriter, loan

23     processor for part of that time, worked for Heritage West

24     Credit Union for the last five years and was responsible for

25     originating and underwriting some mortgages.  Not a whole

183

1       lot, but I did a few.

2              THE COURT:  This case will involve some issues

3       involving underwriting of mortgages and loan processing

4       procedures.  Would you be able to listen to the evidence in

5       this case and put aside experiences that you have had that

6       may be different than what you hear about in the courtroom

7       today?

8              XX. XXXXXXXX:  I would.

9              THE COURT:  Would you have any concern about being a

10      juror if you were the defendant in a case made about

11      accusations about wire fraud and mail fraud involving

12      mortgage procedures?  Would you have any concern about

13      someone with your experience serving on the jury?

14             XX. XXXXXXXX:  I wouldn't.

15             THE COURT:  You also indicated that you received a

16      copy of this brochure?

17             XX. XXXXXXXX:  I did.

18             THE COURT:  Did you read it?

19             XX. XXXXXXXX:  I glanced through it.

20             THE COURT:  First you need to understand that neither

21      the court or parties either the defense or prosecution are

22      not responsible for the brochures.

23             XX. XXXXXXXX:  I understand.

24             THE COURT:  The brochure suggests that you're not

25      required to honor your oath as a juror and you could

                                                              184

1    disregard the instructions of the court.  Would you be able

2    to put that out of your mind and honor your oath and follow

3    the court's instructions?

4         XX. XXXXXXXX:  Yes.

5         THE COURT:  Any follow up by the United States?

6         MR. THORLEY:  No.

7         MR. HUNT:  When you, in your practice, where are you

8    presently?  You're with --

9         XX. XXXXXXXX:  Heritage West Credit Union.

10        MR. HUNT:  Heritage West and before that WestLand.

11        XX. XXXXXXXX:  No, I started with Farr West Bank

12   worked for Zions Bank also and BankOne and Chase.

13        MR. HUNT:  Have you ever had to participate in any

14   kind of fraud investigation in any of those?

15        XX. XXXXXXXX:  Actually currently.  I was contacted

16   last week by someone from the Department of Defense --

17   Department of Defense -- Department of Justice, yeah, and

18   the special agent from the IRS concerning a case that

19   BankOne and Chase that happened about seven years ago when I

20   was a manager of BankOne and Chase.  We submitted a

21   suspicious activity report for an individual who was -- who

22   had cashed several or withdrawn several times 9,000 close to

23   $10,000 in cash pretty frequently.  So that hasn't gone

24   anywhere.  They asked me if I remembered doing it seven

25   years ago.  I don't really remember, so that is where I am

185

1    at with that.

2          MS. ZENGER:  Are you familiar with money laundering

3    statutes and loss?

4          XX. XXXXXXXX:  I am.

5          MR. HUNT:  And mail fraud and wire fraud.

6          XX. XXXXXXXX:  Pretty familiar as far as my job goes.

7          MR. HUNT:  As part of your job?

8          XX. XXXXXXXX:  Uh-huh.

9          THE COURT:  Anything further?

10         MR. THORLEY:  Can you put all of that aside and listen

11   to what is said in the courtroom?

12         XX. XXXXXXXX:  I can, yes.

13         MR. THORLEY:  And listen to the testimony and review

14   the documents and make a judgment based on what happens in

15   this courtroom?

16         XX. XXXXXXXX:  I can, yes.

17         THE COURT:  Thank you.

18         MR. THORLEY:  Thank you.

19         XX. XXXXXXXX:  One other thing.  You asked if we were

20   acquainted with any of the other jurors.  I am acquainted

21   with juror number 38, the one right after me, XXXX XXXXXXX.

22   I was not aware of that until we sat there talking and

23   she --

24         THE COURT:  I believe so.

25         XX. XXXXXXXX:  She is -- she is from Cedar City.  I

1    lived down in Cedar City about 10 years ago and said well 7,

2    8 years ago I worked at Zions Bank inside Smith's.  She

3    worked at Smith's.

4        THE COURT:  If the two of you ended up on the jury

5    together, would you be more or less influenced by her than

6    any of the other jurors?

7        XX. XXXXXXXX:  No.

8        THE COURT:  Okay.  Thank you.

9        XX. XXXXXXXX:  Thank you.

10        MR. STUART:  Cedar City is a small town.

11        THE COURT:  XXXX XXXXXXX, number 38 answers 5 yes,

12    number 9 is yes, number 10 is yes, number 23 is yes.

13        MR. HUNT:  Five.

14        THE COURT:  5, 9, 10 and 23.

15        THE CLERK:  This is XXXX XXXXX XXXXXXX.  Have a seat

16    right here, please.

17        THE COURT:  Thank you, XX. XXXXXXX.  We're following

18    up on some of your responses.  Question number 5 had to do

19    with whether you have been involved in a judicial proceeding

20    or served on a jury before?

21        XX. XXXXXXXX:  Yes.

22        THE COURT:  Which was it in your case?

23        XX. XXXXXXXX:  I was on jury duty 28 plus years ago.

24        THE COURT:  Do you remember what type of case it was?

25        XX. XXXXXXXX:  Um, I can't think -- it had to do with a

1    woman taking money from the elderly, if I remember

2    correctly.  It has been a very long time ago.

3         THE COURT:  Did the jury reach a verdict?

4         XX. XXXXXXX:  We did.

5         THE COURT:  Was there -- was it for the plaintiff or

6    the defendant?

7         XX. XXXXXXX:  We found her guilty.

8         THE COURT:  Was there anything about that experience

9    that caused you to believe you never wanted to be on a jury

10   again?

11        XX. XXXXXXX:  Not at all.  I enjoyed it.

12        THE COURT:  Number 9 is a question about being a

13   victim of a crime by you or a friend or a family member?

14        XX. XXXXXXX:  Family.

15        THE COURT:  What was the crime, first of all?

16        XX. XXXXXXX:  It was a friend, a family member had her

17   house broken into.

18        THE COURT:  Um, and were any valuables taken?

19        XX. XXXXXXX:  Yes, but they were recovered.

20        THE COURT:  Did you personally have any involvement

21   with law enforcement in that circumstance?

22        XX. XXXXXXX:  No.

23        THE COURT:  And based on what you were aware of, the

24   circumstances, did you have feelings about whether the law

25   enforcement dealt with that circumstance appropriately?

1          XX. XXXXXXX:  I wasn't even involved.  They were in

2     another state so it didn't affect me.

3          THE COURT:  10 is whether you or a family member has

4     been arrested of a crime?

5          XX. XXXXXXX:  Family in another state.  I wasn't

6     involved.

7          THE COURT:  Okay.  Do you know what the crime was?

8          XX. XXXXXXX:  No.

9          THE COURT:  Anything that, you know, about that

10    circumstance that would lead you to believe that you

11    couldn't be a juror and be fair in this case?

12         XX. XXXXXXX:  No.

13         THE COURT:  You indicated that someone handed you a

14    copy of this brochure.

15         XX. XXXXXXX:  You know what, I didn't even look at it.

16    It is stuck in my envelope when I came in.

17         THE COURT:  We want you to first understand that

18    neither the defense nor the prosecution or the court

19    distributed this brochure.

20         XX. XXXXXXX:  I had to look and make sure that that is

21    what it was that you were talking about because I wasn't --

22    I stuck it in my envelope and that is where it has been.

23         THE COURT:  Okay.  The brochure suggests that as a

24    juror you may not be required to follow your oath as a juror

25    or to follow the instructions of the court.  Would you be

1    able to put any information about that aside and honor your

2    oath and follow the instructions given to you by the court?

3           XX. XXXXXXX:  Yes, sir.

4           THE COURT:  Okay.  Any follow up?

5           MR. THORLEY:  No.

6           MR. HUNT:  No.

7           THE COURT:  Thank you very much.

8           MR. JOHNSON:  Thank you.

9           XX. XXXXXXX:  Thank you.

10          THE COURT:  Any challenge to number 37?

11          MR. HUNT:  Our concern is that he will, if he is on

12    the jury, he might act as an expert inside of the jury room.

13    He is industry savvy and has been involved in fraud

14    investigations.  That is our concern.

15          MR. THORLEY:  I'm not sure that that is a challenge

16    for cause, Your Honor.  I am -- he did indicate that he

17    would put all of his past experience and that sort of thing

18    aside and listen to the evidence and follow the court's

19    instructions and listen to the testimony and make a decision

20    based on what happens in the courtroom.

21          THE COURT:  I'm going to overrule the objection.  I

22    don't believe that he should be disqualified simply because

23    he has knowledge about the circumstances about the industry.

24    Um, any objection to 38?

25          MR. HUNT:  We would have a standing objection on 38.

1          THE COURT:  38.

2          MR. HUNT:  On 37.

3          THE COURT:  Your objection is noted.

4          MR. HUNT:  Sorry.

5          MR. THORLEY:  We don't have any objection to 38.

6          THE COURT:  All right.  I think we have got enough

7     jurors now.

8          THE CLERK:  Yes.

9          THE COURT:  Okay.  We'll go back out and my practice

10    is not to tell the jurors which ones have been excused for

11    cause, simply exercise the preemptory challenges based on

12    the numbers left.

13          Mr. Taylor, do you need to explain to them how you

14    want them to do this?

15          THE CLERK:  Sure.  If you would just cross off the

16    name all the way across to the column.  First column is for

17    the government and then the defense and put your initials

18    after you make your strike and then put your -- the number

19    of the challenge you're using.  And I put a tab up here

20    saying how many challenges you'll get.  Defense will get the

21    first four in groups of two and then one after that.

22          THE COURT:  Any questions about that?

23          MR. HUNT:  No.

24          THE COURT:  So you get two, one, two, one and then

25    alternating.

191

1      MR. HUNT:  Okay.

2      THE COURT:  Um, well --

3      MR. THORLEY:  I was going to ask if you could give me

4      a couple of minutes.

5      THE COURT:  Let's take a short break.  We'll go back

6      in.  What I would like to do is get the jury picked.  I

7      think we'll seat the jury and place them under oath.  Tell

8      me your view.  If I do that and read them the instructions,

9      it will be probably until 2:30 or at least.  Would you have

10     any strong preference that I instruct them in the morning

11     and release them as soon as they're set aside?

12     MR. HUNT:  I don't have any preference.

13     MR. THORLEY:  I would prefer that the court's

14     preliminary instructions be coupled with opening arguments,

15     Your Honor.

16     THE COURT:  Okay.  My guess is by the time we get done

17     and we'll be close enough to 2:00 we probably should excuse

18     them for the day.  It has been a long morning.  So we'll

19     proceed that way and then we'll plan to start right at 8:30

20     and I'll instruct them first thing in the morning and you

21     can go right into opening statements.

22     MR. HUNT:  Okay.

23     MR. THORLEY:  Okay.

24     (Whereupon, the following proceedings were

25     conducted in the courtroom.)

1          THE COURT:  We are back in session in the United

2     States versus Johnson.  Members of the jury, thank you for

3     your patience.  It was not our intention to starve you to

4     death, but we're getting close to the process where you will

5     be released.

6          Just so you can understand where we are going, we will

7     finish selecting the jury after which the members of -- the

8     rest of you will be excused and the jury will then be sworn,

9     placed under oath, and then we'll excuse you until tomorrow

10    morning.  So at least you can understand the -- where we're

11    going with this process.

12         This process involves what we call preemptory

13    challenges.  After we have questioned the jury and raised

14    information about their qualifications to serve, each of the

15    sides has a right to exercise challenges which ultimately

16    will result in a process of 13 members being selected to

17    serve on the jury.  We will be involved in that process.

18    Mr. Taylor will hand the list of potential jurors back and

19    forth between counsel as they make their selection after

20    which we will select the jury.

21         In the meantime I'm supposed to entertain you.

22    Actually, let me just emphasize something that I hope is

23    obvious to all of you.  Having a right to a jury is a

24    constitutionally guaranteed right.  When the Constitution of

25    the United States was adopted, they adopted the right that

                                                                    193

1    originated in England to have a right to a jury.  And in the

2    United States, as opposed to many countries in the world,

3    you have a right to a jury trial both in a civil case and in

4    a criminal case.

5         Many countries who allow a jury trial in criminal

6    cases do not allow them in civil cases.  So it is a rather

7    unique institution that comes out of the British common law.

8    The right to a jury is, as you think about it, really a

9    unique right in terms of having the right of fellow citizens

10   who come from common walks of life bringing a breadth of

11   experience to sit and listen to the evidence and make a

12   decision as to whether or not the government has proven its

13   case against a criminal defendant.  It is a very important

14   right and a valuable right that all of us who are involved

15   in the justice system value very highly and I'm sure as

16   citizens you value it as well.

17        The origin of the jury system is kind of fascinating.

18   You go back to British history it started with champions

19   fighting each other and the winner of the championship

20   determining the outcome.  And overtime that evolved to such

21   a practice that seemed primitive and were arcane such as if

22   you walked across the coals and your feet are burned, you're

23   guilty.  If you walk across the coals and they're not

24   burned, you're not guilty.  That eventually evolved to the

25   point of throwing the defendant in the Themes.  If he

1     floated he was guilty, if he sunk he was innocent.  That

2     didn't seem to me the outcome was very good in either

3     alternatives.

4          But going back now many centuries it soon evolved to

5     the point where citizens were selected among the community

6     to hear the evidence a little bit different than we do it

7     now.  They selected citizens who were thought to have the

8     most knowledge about the circumstances rather than those who

9     presumably know little or nothing about the circumstances.

10          But eventually that evolved into the jury system that

11    we now have.  In the federal court, and in all criminal

12    cases in state court, the jury must reach a unanimous

13    verdict which is a strong protection of the rights of the

14    accused and places the burden on the United States to prove

15    allegations against a citizen with evidence that proves the

16    guilt beyond a reasonable doubt.

17          The other question that people often ask when they

18    come to federal court is why do we have a federal court and

19    why do we have a state court and what is the difference

20    between the two.  The details are sometimes confusing and a

21    little bit difficult to explain.  But in broad terms, the

22    federal court deals with, in the criminal context, crimes

23    that are made crimes because of an act of congress and

24    because of a violation of federal law.  In general, those

25    kinds of crimes we deal with securities fraud, wire and mail

1     fraud, because it uses the mediums of interstate commerce.

2     Securities fraud and anti-trust matters and various issues

3     that rise out of the violations of tax laws, generally all

4     federal laws.  There is a kind of an exception to that that

5     sometimes comes into play.  If the crime is committed on an

6     Indian reservation, that becomes, generally, often a matter

7     of federal -- if it is a felony, it becomes an issue for

8     federal court to decide.

9          In terms of the kinds of cases that we deal with,

10     about 30 percent of the cases we deal with in federal court

11     now are immigration cases.  People who are charged with

12     having been in the country illegally and having committed a

13     felony crime.  After that, the next largest category we deal

14     with are people that are involved in drug trafficking.

15     After that it is various kinds of fraud crimes, frauds

16     against a banking institution, theft of someone's identity.

17     After that we deal with various kinds of cases of whether

18     you are a felon in possession of a firearm illegally.

19          Once a person is convicted of a felony, they lose the

20     right to possess a firearm.  And we receive a number of

21     cases in which people are found to be in possession of a

22     firearm after they have been previously convicted.

23          The fifth most common case which was to me a surprise

24     when I came on the bench, is child pornography and

25     trafficking in child pornography.  After that, there is a

1    whole host long list of various federal crimes that we deal

2    with.  On the civil side it is -- we deal with violations of

3    again rights that are created or protected by federal law,

4    but we also see -- deal with civil disputes that arise

5    between citizens of different states.  If all of the

6    plaintiffs are citizens of one group of states, and all of

7    the defendants are citizens of a separate group of states,

8    they have the right to have their case heard in federal

9    court.  The policy behind that is the belief that a person

10    who is from outside of the state may have an expectation

11    that he would be treated with more prejudice in a state

12    court than he would be in a federal court.

13        So in our system we deal with a whole range, basically

14    whatever you can imagine, in terms of the commercial

15    activity as to our society and that we deal with contract

16    disputes, torts, medical malpractice occasionally, when you

17    have someone from a different state that is treated by a

18    doctor from Utah, a whole host of fraud circumstances

19    arising out of contracts and commercial circumstances.  In

20    general, that is the difference between federal court.  In a

21    federal court we have limited jurisdiction, whereas in the

22    state court they have jurisdiction over all matters that are

23    brought to them with the limited exception that in some

24    cases if congress has declared that this is a matter to be

25    decided only in federal court, then we hear it.  But

197

1    otherwise they have general jurisdiction in the state court.

2         As a result of limited jurisdiction the first question

3    that always must be answered is whether the court has the

4    authority to deal with this matter.  So that is kind of a

5    different category than the state court.

6         Also in state court in a civil case it is not

7    necessary that the jury reach a unanimous verdict.  Whereas

8    in federal court, both in civil and criminal cases, all of

9    the jurors must agree on the verdict to be reached.

10        This courthouse that we're in, as you probably have

11   heard on the news or read in the paper, we're in the process

12   of building a new courthouse which will be 10 stories tall.

13   We had the ground breaking about a week ago, they're now

14   involved in construction.  Hopefully it will be completed

15   within about three years and we will move out of this

16   building.  This building was built in 1905 and remodeled in

17   1932.  It is -- the courtrooms, the historic courtrooms

18   which are on the second floor, are beautiful courtrooms with

19   wood paneling and decorations on the ceiling but we have

20   simply outgrown the abilities of this courthouse.  There are

21   safety features, there are seismic issues that have to be

22   dealt with.  The plan, as I understand it, is that once the

23   new building is completed and the courts -- the federal

24   court, the district courts move to the new building, this

25   building will be remodeled to bring the safety features up

```
 1        to code, and then the Bankruptcy Court will have this

 2        building together with some other government offices that

 3        will be kept here.  In some ways it will be kind of a sad

 4        day to move out of this historic building and move to the

 5        one next door, but that is the process that is underway.

 6        One of the things that they had to do to clear the lot is

 7        that there was a historic building called the Odd Fellows

 8        Building that was positioned right behind this court.  And

 9        to make way for the new court, they made a decision not to

10        tear it done but to preserve it because of its historic

11        value.

12            The building was facing north so they jacked the

13        building up 16 feet in the air and they rotated it.  The way

14        they jacked it up and then they had to move it to the west

15        to a parking lot that they had created there, rotate the

16        building so that it was facing to the south, and move it

17        back in position and move it across the street so it now

18        sits right across the street.  It was an expensive operation

19        and some wondered why we spent that much money on moving an

20        old building across the street.  I think that they ended up

21        selling the building for less than it cost them to move it,

22        but we now have a historically preserved landmark across the

23        street.  But it was quite an interesting operation to watch

24        them move this four-story building and jack it up in the

25        air.  I read someplace, I don't know if is accurate, that it
```

1    was largest brick structure in that kind that has ever been

2    moved that kind of a distance.  So that is the way it is.

3        As has probably been aware to some of you, unlike

4    state court where they will draw jurors just from Salt Lake

5    County or Utah County or Cache County, when you're called to

6    serve in federal court you can be called as far away as

7    Kanab, one of you came from Kanab, and some times we have

8    jurors from the north.  So just because of the district

9    size, it sometimes places an imposition for travel.  Again

10   that is important that we get a fair representation of the

11   citizens of the entire state, not just the citizens of one

12   particular county.  And that is part of the protection that

13   is afforded and the goodwill of the people of the state who

14   are willing to come and serve.  Again as evidenced by the

15   fact that we have very, very good support in terms of the

16   public willing to appear and perform their public duty.

17       Hopefully we will get you out of here before the

18   predicted storm.

19       I would also mention to you that if you are involved

20   with youth groups who you believe would like to have a tour

21   of the court, we are happy to do that.  We bring them down

22   and we explain the court system.  We usually do a little

23   mock trial, it takes about 45 minutes.  And usually we take

24   them down to the marshal's office and they explain to them

25   what the United States Marshals Service does, show them what

1    a holding cell looks like.  And they generally have a pretty

2    good experience.  So if any of you are involved with a youth

3    group, I'm not soliciting this because we have plenty to do,

4    but we are happy, if any of you would want to bring a youth

5    group down in an evening and have them spend an hour or

6    hour-and-a-half with the court, have them explain what we

7    do, we would be happy to do that.  You can just contact us

8    and we will schedule a time.

9        The parties have now exercised their challenges.  I am

10    going to read the names of the jurors and ask you to stand

11    as I call your name.  After I have read the jurors, we will

12    excuse the rest of you and then ask those who have been

13    selected to remain for just a few moments longer while I

14    give you some further instructions.

15        Juror number one is XXXXX XXXXX XXXXXX, please stand.

16    Juror number two is XXXXXXX XXXXXXXX XXXXX.  Juror number

17    three is XXXXXXXX X XXXX.  Juror number four is XXXXXXX

18    XXXXXXXX XXXXX.  Juror number five is XXXXXXX XXXXXXX

19    XXXXXXXX.  Juror number six is XXXX X XXXXXXX.  Juror number

20    seven is XXXX XXXXX XXXXXX.  Juror number eight is XXXXXXXX

21    XXXXXX XXXXXXXX.  Juror number nine is XXXX XXXXXXXX XXXXX.

22    Juror number 10 is XXXX XXXX XXXXXX.  Juror number 11 is

23    XXXXX X XXXXX.  Juror number 12 is XXXXX XXXX XXXXXXX.

24    Juror number 13 is XXXX XXXXX XXXXXXX.

25        The rest of you are now excused.  Let me again thank

1    you for your service.  We appreciate your patience with our

2    process.

3        For those who have been selected jurors, I'm going to

4    call you and have you then seated in the box.  Mr. Taylor

5    will make sure you get in the right place.  Seated in number

6    one XX. XXXXXX.  Number two is XX. XXXXX.  Number three XX.

7    XXXX.  If you would come forward.  Number four is XX. XXXXX.

8    XX. XXXX is number three, XX. XXXXX is number four.  XX.

9    XXXXXXXX is number five.  XX. XXXXXXX is number six.  XX.

10   XXXXXX is number seven.  Number eight is XX. XXXXXXXX.

11   Number nine is XXXX XXXXX.  Number 10 is XXXX XXXXXX.

12   Number 11 is XXXXX XXXXX.  Number 12 is XXXXX XXXXXXX.

13   Number 13 is XXXX XXXXXXX.

14       And in just a moment I'm going to have Mr. Taylor

15   place you under oath.  But let me just explain a little bit

16   further.  We will be in court from 8:30 in the morning.  We

17   try to start promptly at 8:30.  We will take a mid morning

18   break sometime between 10 and 10:30 depending on where we

19   are with the witness.  We will take a lunch break.  It will

20   be about 20 minutes.  We will then take a lunch break

21   between 12 and 12:30, depending on the witness, and it will

22   be a half an hour lunch break.  We will provide lunch for

23   you.

24       We will break for the day somewhere between 2:00 and

25   2:30, depending on where we are with a witness.  We will not

202

1       go past 2:30.  So you can plan -- make your plans assuming

2       you will be out of here at 2:30 every day.

3              If during the course of the trial you should need to

4       take a break for any reason, you can raise your hand, let

5       Mr. Taylor know, and we will accommodate any breaks that

6       need to be done.  You will note that we go from 8:30 to 2:30

7       instead of starting at 9:00 and going until five or 5:30.

8       We have found that it is actually more efficient in terms of

9       the use of your time and the use of the court's time with

10      almost the same number of hours of testimony to operate this

11      schedule.  So it frees up your afternoon to deal with

12      problems, and it frees the court up to conduct other

13      hearings after we excuse the jury every day.

14             So that will be the program.  But we do ask you to be

15      prompt, to be here on time.  I have asked counsel to be here

16      and ready to start at 8:30.  We'll ask you to be here at

17      quarter after eight, or shortly thereafter, so that we can

18      start the testimony right at 8:30 every morning.  In order

19      to make this system work, we have to be on time.

20             I will give you instructions first thing tomorrow

21      morning as to what this case is about and the law that

22      governs it.  We will then hear on opening statements from

23      each of the counsel.  And then we will begin with

24      presentation of evidence tomorrow morning.  I don't think

25      there is anything else I need to tell you before we break

1    except for the fact that this is a criminal trial.  I will

2    explain the circumstances and background information in more

3    detail tomorrow.  I will give you instructions each day when

4    you leave not to talk about this case with anyone including

5    today.  If there should happen to be any information about

6    this on the news media or in the newspaper, you're

7    completely to turn it off, not pay attention to it.  You're

8    not to do any information searches on the internet or

9    Facebook or LinkedIn or any other social media to try to

10    find out about the party or counsel.  Everything that you

11    learn about this case must come from evidence that you hear

12    in the courtroom.

13        When the case is concluded and you have reached a

14    verdict you will then be free to talk about it.  But until

15    then, we can ask you to honor the court's instruction that

16    you not talk about this case.  You can tell the members of

17    your family it is a criminal case, and once it is completed

18    you will be able to describe all of the circumstances to

19    them.

20        At this point, Mr. Taylor, would you plays the -- I

21    should tell you one more thing.  I think we have lunches for

22    them don't we, Jeff?

23        You can take it with you.  You can go eat on your own.

24    But if you want to take a lunch, we have one here for you.

25    So if you would ask the jurors to rise and Mr. Taylor will

204

1     place you under oath.

2             THE CLERK:  Please raise your right arm once more.

3             (Whereupon, the jury panel was given an oath.)

4             THE CLERK:  Thank you.

5             THE COURT:  We will now excuse you until tomorrow

6     morning.  Please rise for the jury.

7             (Whereupon, the jury left the courtroom.)

8             THE COURT:  Anything further before we recess?

9             MR. HUNT:  No, Your Honor.

10            MR. THORLEY:  No, Your Honor.

11            THE COURT:  Okay.  See you in the morning.

12            (Whereupon, the trial adjourned for the day.

13             The jury trial will resume on March 8, 2011

14             at 8:30 a.m.)

15

16

17

18

19

20

21

22

23

24

25

```
1      STATE OF UTAH              )

2                                 )ss

3      COUNTY OF SALT LAKE        )

4

5               I, Laura W. Robinson, Certified Shorthand

6      Reporter, Registered Professional Reporter and Notary Public

7      within and for the County of Salt Lake, State of Utah, do

8      hereby certify:

9               That the foregoing proceedings were taken before

10     me at the time and place set forth herein and were taken

11     down by me in shorthand and thereafter transcribed into

12     typewriting under my direction and supervision;

13              That the foregoing pages contain a true and

14     correct transcription of my said shorthand notes so taken.

15              In witness whereof I have subscribed my name and

16     affixed my seal this 24th day of June, 2011.

17

18                          _____

19                          Laura W. Robinson, CSR, RPR, CP

20                          and Notary Public

21

22     MY COMMISSION EXPIRES:

23     February 19, 2013

24

25
```