# EXHIBIT T

**Fill in this information to identify the case:**

Debtor name ___MSB TRUST___

United States Bankruptcy Court for the: _____ District of __UTAH__
                                                                    (State)

Case number (If known): ___25-23863___

☐ Check if this is an
   amended filing

## Official Form 206D

# Schedule D: Creditors Who Have Claims Secured by Property    12/15

Be as complete and accurate as possible.

1. **Do any creditors have claims secured by debtor's property?**
   ☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.
   ☒ Yes. Fill in all of the information below.

### Part 1:    List Creditors Who Have Secured Claims

2. **List in alphabetical order all creditors who have secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim.

| | | Column A<br>**Amount of claim**<br>Do not deduct the value of collateral. | Column B<br>**Value of collateral that supports this claim** |
|---|---|---|---|

**2.1**

| **Creditor's name** | **Describe debtor's property that is subject to a lien** | | |
|---|---|---|---|
| CANYON VIEW CREDIT UNION | 1028 South 1900 East SLC UT 84108 | $ 348,000.00 | $ 1,800,000.00 |

**Creditor's mailing address**

PO BOX 58025 SLC UT 84158

**Describe the lien**
FIRST MORTGAGE LIEN Secured Creditor

**Creditor's email address, if known**

**Is the creditor an insider or related party?**
☒ No
☐ Yes

**Date debt was incurred** 27 SEP 2013

**Last 4 digits of account number** 2 0 1 1

**Is anyone else liable on this claim?**
☐ ²No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H).

**Do multiple creditors have an interest in the same property?**
☐ No
☒ Yes. Specify each creditor, including this creditor, and its relative priority.

Disputed 2nd Position Hard Money
Gravity Capital LLC

**As of the petition filing date, the claim is:**
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**2.2**

| **Creditor's name** | **Describe debtor's property that is subject to a lien** | | |
|---|---|---|---|
| CANYON VIEW CREDIT UNION | 1836 East Yale Ave SLC UT 84108 | $ 428,938.00 | $ 1,500,000.00 |

**Creditor's mailing address**
PO BOX 58025 SLC UT 84158

**Describe the lien**
FIRST MORTGAGE LIEN Secured Creditor

**Creditor's email address, if known**

**Is the creditor an insider or related party?**
☒ No
☐ Yes

**Date debt was incurred** 12 October 2018

**Last 4 digits of account number** 5 9 9 3

**Is anyone else liable on this claim?**
☒ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H).

**Do multiple creditors have an interest in the same property?**
☐ No
☒ Yes. Have you already specified the relative priority?
   ☐ No. Specify each creditor, including this creditor, and its relative priority.
      Disputed 2nd Position Hard Money
      Gravity Capital LLC
   ☐ Yes. The relative priority of creditors is specified on lines _____

**As of the petition filing date, the claim is:**
Check all that apply.
☐ Contingent
☒ Unliquidated
☐ Disputed

3. **Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any.**    $ 776,938.00

Debtor    MSB TRUST
_____
Name

Case number *(if known)*  25 - 23863

| Part 1: | Additional Page | Column A Amount of claim Do not deduct the value of collateral. | Column B Value of collateral that supports this claim |
|---|---|---|---|

Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page.

**2.3** Creditor's name

Canyon View Credit Union

**Creditor's mailing address**

PO BOX 58025 SLC UT 84158

**Creditor's email address, if known**

2500 N. University Ave.

Date debt was incurred    14 January 2021

Last 4 digits of account number    9  6  9  6

**Do multiple creditors have an interest in the same property?**
☐ No
☒ Yes. Have you already specified the relative priority?
    ☐ No. Specify each creditor, including this creditor, and its relative priority.
        Lis Pendens - Unsecured - Hybrid LLC

    ☐ Yes. The relative priority of creditors is specified on lines _____

**Describe debtor's property that is subject to a lien**

4643 -4645 South Highland Drive Holladay UT 84117

**Describe the lien**
First Lien  Mortgage, Secured Creditor

**Is the creditor an insider or related party?**
☐ No
☐ Yes

**Is anyone else liable on this claim?**
☐ No
☒ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H).

**As of the petition filing date, the claim is:**
Check all that apply.
☐ Contingent
☒ Unliquidated
☐ Disputed

$ 1,542,000.00     $ 3,200,000.00

**2.4** Creditor's name

Gravity Capital LLC

**Creditor's mailing address**

531 E 770 N. Orem, UT 84097

**Creditor's email address, if known**

Date debt was incurred    22 March 2022

Last 4 digits of account number    ___  ___  ___  ___

**Do multiple creditors have an interest in the same property?**
☐ No
☐ Yes. Have you already specified the relative priority?
    ☐ No. Specify each creditor, including this creditor, and its relative priority.
        Canyon CFC - First Lien Holder (Secured Creditor)
        Hybrid Intl LLC - Lis-pendens  (Unsecured Creditor)

    ☐ Yes. The relative priority of creditors is specified on lines _____

**Describe debtor's property that is subject to a lien**

1028 S 1900 E. Salt Lake City UT 84108

**Describe the lien**
Business Loan  (Second Position)

**Is the creditor an insider or related party?**
☐ No
☐ Yes

**Is anyone else liable on this claim?**
☐ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H).

**As of the petition filing date, the claim is:**
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

$ 161,500.00     $ 1,800,000.00

Page Total Column A: $ 1,703,500.00

| Debtor | MSB TRUST | | Case number (if known) | 25 - 23863 |
|---|---|---|---|---|
| | Name | | | |

| Part 1: | Additional Page | Column A | Column B |
|---|---|---|---|
| | | Amount of claim | Value of collateral that supports this claim |
| | | Do not deduct the value of collateral. | |

Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page.

**2.5** Creditor's name

Gravity Capital LLC

**Describe debtor's property that is subject to a lien**

1836 East Yale Ave, Salt Lake City UT 84108

$ 161,500.00     $ 1,500,000.00

**Creditor's mailing address**

531 E 770 N, Orem, UT 84097

**Describe the lien**

Business Loan  (SECOND Position )

**Creditor's email address, if known**

2500 N. University Ave.

**Is the creditor an insider or related party?**
☐ No
☐ Yes

Date debt was incurred     22 March 2022

**Is anyone else liable on this claim?**
☐ No
☒ Yes. Fill out Schedule H: Codebtors (Official Form 206H)

Last 4 digits of account number     ___ ___ ___ ___

**As of the petition filing date, the claim is:**
Check all that apply.
☐ Contingent
☒ Unliquidated
☐ Disputed

**Do multiple creditors have an interest in the same property?**
☐ No
☒ Yes. Have you already specified the relative priority?

☐ No. Specify each creditor, including this creditor, and its relative priority.

Canyon View - First Lien Holder (Secured Creditor)

Lis Pendens - Unsecured - Hybrid LLC

☐ Yes. The relative priority of creditors is specified on lines _____

**2.___** Creditor's name

**Describe debtor's property that is subject to a lien**

$_____     $_____

**Creditor's mailing address**

**Describe the lien**
Mortgage

**Creditor's email address, if known**

**Is the creditor an insider or related party?**
☐ No
☐ Yes

Date debt was incurred     _____

**Is anyone else liable on this claim?**
☐ No
☐ Yes. Fill out Schedule H: Codebtors (Official Form 206H).

Last 4 digits of account number     ___ ___ ___ ___

**As of the petition filing date, the claim is:**
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Do multiple creditors have an interest in the same property?**
☐ No
☐ Yes. Have you already specified the relative priority?
☐ No. Specify each creditor, including this creditor, and its relative priority.

☐ Yes. The relative priority of creditors is specified on lines _____

Page Total Column A: $ 161,500.00

| Debtor | MSB Trust | Case number *(if known)* | 25 - 23863 |
|---|---|---|---|
| | Name | | |

## Part 2:    List Others to Be Notified for a Debt Already Listed in Part 1

List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.

If no others need to be notified for the debts listed in Part 1, do not fill out or submit this page. If additional pages are needed, copy this page.

| Name and address | On which line in Part 1 did you enter the related creditor? | Last 4 digits of account number for this entity |
|---|---|---|
| | Line 2. ___ | ___ ___ ___ ___ |
| | Line 2. ___ | ___ ___ ___ ___ |
| | Line 2. ___ | ___ ___ ___ ___ |
| | Line 2. ___ | ___ ___ ___ ___ |
| | Line 2. ___ | ___ ___ ___ ___ |
| | Line 2. ___ | ___ ___ ___ ___ |
| | Line 2. ___ | ___ ___ ___ ___ |
| | Line 2. ___ | ___ ___ ___ ___ |
| | Line 2. ___ | ___ ___ ___ ___ |
| | Line 2. ___ | ___ ___ ___ ___ |
| | Line 2. ___ | ___ ___ ___ ___ |
| | Line 2. ___ | ___ ___ ___ ___ |
| | Line 2. ___ | ___ ___ ___ ___ |
| | Line 2. ___ | ___ ___ ___ ___ |

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF UTAH

PDF FILE WITH AUDIO FILE ATTACHMENT

25-21749

Max Warren Barber

Motion for Relief from Stay and Co-Debtor Stay filed by Gravity Capital

| | |
|---|---|
| Case Type : | bk |
| Case Number : | 25-21749 |
| Case Title : | Max Warren Barber |
| Audio Date\Time: | 6/2/2025 1:29:59 PM |
| Audio File Name : | 25-21749-KRA_20250602-132959.mp3 |
| Audio File Size : | 3865 KB |
| Audio Run Time : | [00:08:03] (hh:mm:ss) |

**Help using this file:**

An audio file is embedded as an attachment in this PDF document. To listen to the file, click the Attachments tab or the Paper Clip icon. Select the Audio File and click Open.

**MPEG Layer-3 audio coding technology from Fraunhofer IIS and Thomson.**

**This digital recording is a copy of a court proceeding and is provided as a convenience to the public. In accordance with 28 U.S.C. § 753 (b) "[n]o transcripts of the proceedings of the court shall be considered as official except those made from the records certified by the reporter or other individual designated to produce the record."**

# Bankruptcy Court Hearing

## Recording Name:
## [25--21749--KRA_20250602--132959]

Transcript Prepared By:



720--287--3710

1355 S. Colorado Blvd.

Suite C515

Denver, CO 80222

DUNS Number: 037801851
CAGE Code: 6C7D5
Tax ID #: 27--2983097

| | |
|---|---|
| 1 | Female:   I -- I haven't -- (inaudible - 00:00:02). |
| 2 | Female 2:  Oh. |
| 3 | Female:   The United States Bankruptcy Court for the District of |
| 4 | Utah, the Honorable Kevin R. Anderson presiding is now |
| 5 | in session.  God Save the United States of America and |
| 6 | this Honorable Court. |
| 7 | Anderson:  Call the calendar. |
| 8 | Female:   In the matters of Max Barber. |
| 9 | Anderson:  Let's go to appearances, starting with the movant, |
| 10 | Mr. Dove. |
| 11 | Dove:    Kenyon Dove for Gravity Capital, LLC. |
| 12 | Anderson:  And Mr. Barber. |
| 13 | Barber:   Uh, Mr. Barber for the debtor, Your Honor, as debtor. |
| 14 | Anderson:  Mr. Bingham, are you appearing or observing? |
| 15 | Bingham:  Uh, most-- -- really just observing, uh, for Canyon |
| 16 | View Federal Credit Union. |
| 17 | Anderson:  All right, thank you.  So I see that we have a |
| 18 | proposed stipulation and proposed order of -- |
| 19 | Unknown Male:  And, Your Honor, I -- -- I'm -- uh, I don't know |
| 20 | whether I'm appearing or not, observing on behalf of |
| 21 | Hybrid and Schulz. |
| 22 | Anderson:  Oh. |
| 23 | Unknown Male:  -- uh, my other client. |
| 24 | Anderson:  All right, so, uh, state your name, Mr. Nickel, for |
| 25 | the record. |

```
 1  Nickel:     Mark Nickel.
 2  Anderson:   All right, very good.  So I see we have a stipulation
 3              and proposed order that has been uploaded.  Mr.
 4              Barber, uh, the order and the stipulation were signed
 5              with a slash-S.  I just wanna get clarification for
 6              the record that you -- that those documents, uh,
 7              reflect your agreement with the creditor.
 8  Barber:     Um, yes, Your Honor.  When we were at the last
 9              hearing, that was the path that we were going forward
10              with the creditor.  Uh, the one part that we had in
11              there that wanted to clarify in the order that was,
12              um, upon the creditor performing his obligations,
13              everything would go forward.  If he didn't perform his
14              obligations, then the rem relief would not be granted,
15              if he didn't provide, for example, the lien correction
16              and give an accounting of the pay-off.
17  Anderson:   Well, I -- I understood the in rem relief to be, uh,
18              upon the entry of the order.
19  Barber:     Yes, um, just if he was not to follow through --
20  Anderson:   Oh.
21  Barber:     -- with the obligations.
22  Anderson:   All right.
23  Barber:     Sorry.
24  Anderson:   All right, Mr. Dove, any- -- anything to add?
25  Dove:       Um, Your Honor, I -- I guess just to clarify.  So
```

| | | |
|---|---|---|
| 1 | | we'll be granted in rem relief under the stipulation |
| 2 | | and order. |
| 3 | Anderson: | Correct. |
| 4 | Dove: | But in the event we were then to fail later to provide |
| 5 | | the accounting and -- and the other requirements, then |
| 6 | | in rem would -- would be terminated I guess at that |
| 7 | | point.  Is that as I'm to understand that? |
| 8 | Anderson: | Well, if -- if that's how the parties want it, you'll |
| 9 | | have to somehow come back before me, I suppose to get |
| 10 | | that.  My intent is to enter the order you've uploaded |
| 11 | | at Docket 48.  I'm going to enter a separate order |
| 12 | | granting the in rem relief.  I'm also going to enter |
| 13 | | an order, uh, e- -- essentially waiving your -- your |
| 14 | | claims for, uh, damages and sanctions and etc.  I'm |
| 15 | | sorry, Mr. Barber's claims.  Uh, and finally an order |
| 16 | | dismissing the case under 521(i) for failure to |
| 17 | | provide the required bankruptcy papers within 45 days |
| 18 | | of the petition date.  So I'll enter those in an -- |
| 19 | | enter those in an order with the order of dismissal |
| 20 | | being entered, uh, last.  So that's how I intend to |
| 21 | | proceed.  Uh, I thought it appropriate to have a |
| 22 | | separate order for in rem, just granting the in rem |
| 23 | | relief.  Uh, I'll -- I'll add per the stipulation, uh, |
| 24 | | but I thought in the event there was some subsequent |
| 25 | | filing, it'd be helpful to have that in a separate |

```
 1                    order rather than combined with the stipulation.
 2    Dove:          Perfect.  That works for us, Your Honor.
 3    Anderson:      All right, very good then.  Anything else?
 4    Barber:        Um, yes, Your Honor.  So just to confirm, and I
 5                   apologize.  Um, to confirm the order will be as the
 6                   stipulation with the prerequisites.  If the
 7                   prerequisites do not follow, the rem relief will not
 8                   be upheld, so to speak?
 9    Anderson:  Yes, I'm going to put in the order granting in rem
10                   relief that -- that it is pursuant to the terms and
11                   conditions of the stipulation, and that'll give you an
12                   opportunity.  But -- but your case is going to be
13                   dismissed, so there will not be a -- a case -- this
14                   will not be available as a forum, um, but you can make
15                   that argument before the, uh, state court.
16    Barber:        Okay.
17    Anderson:      But I don't -- I don't know how else to accomplish,
18                   uh, what you're doing, what -- what you're proposing.
19    Barber:        Just -- I just wanted to have an opportunity to review
20                   Docket 48.  I haven't logged onto the Pacer to
21                   identify Docket 48 correctly.  Um --
22    Anderson:      Well, your -- your signature appeared on it.
23    Barber:        Okay.  That was the --
24    Anderson:      Ap- -- approval as to form.
25    Dove:          And just to clarify, the stipulation was -- was signed
```

# Gravity Bankruptcy Fraud  Claimed Twice
# Claim 5-1 & 6-1
# $1,131,014.62

| | | | |
|---|---|---|---|
| *Creditor:* (12511653) [History](#)<br>Gravity Capital<br>2500 N. University Ave.<br>Provo, UT 84604 | **Claim No: 5**<br>*Original Filed Date:* 12/02/2024<br>*Original Entered Date:* 12/02/2024 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Jared L. Anderson<br>*Modified:* | |

Amount  claimed: $565507.31
Secured claimed: $565507.31

*History:*

| [Details](#) | [5-1](#) | 12/02/2024 Claim #5 filed by Gravity Capital, Amount claimed: $565507.31 (Anderson, Jared) |
|---|---|---|

*Description:* (5-1) Secured by lien on property with Deed of Trust
*Remarks:*

| | | | |
|---|---|---|---|
| *Creditor:* (12511653) [History](#)<br>Gravity Capital<br>2500 N. University Ave.<br>Provo, UT 84604 | **Claim No: 6**<br>*Original Filed Date:* 12/02/2024<br>*Original Entered Date:* 12/02/2024 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Jared L. Anderson<br>*Modified:* | |

Amount  claimed: $565507.31
Secured claimed: $565507.31

*History:*

| [Details](#) | [6-1](#) | 12/02/2024 Claim #6 filed by Gravity Capital, Amount claimed: $565507.31 (Anderson, Jared) |
|---|---|---|

*Description:* (6-1) Lien on property for real estate
*Remarks:* (6-1) Adding documents to Proof of Claim

**Fill in this information to identify the case:**

Debtor 1  GSE Global LLC

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the: District Utah

Case number  24-24810

Official Form 410

# Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
|---|---|

| | | |
|---|---|---|
| 1. **Who is the current creditor?** | Gravity Capital LLC | |
| | Name of the current creditor (the person or entity to be paid for this claim) | |
| | Other names the creditor used with the debtor | |
| 2. **Has this claim been acquired from someone else?** | ☒ No ☐ Yes.  From whom? | |
| 3. **Where should notices and payments to the creditor be sent?** Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
| | Gravity Capital LLC | |
| | Name | Name |
| | 531 E 770 N | |
| | Number       Street | Number       Street |
| | Orem            UT         84097 | |
| | City            State       ZIP Code | City            State       ZIP Code |
| | Contact phone 801-875-3577 | Contact phone |
| | Contact email steve@thesummitcompanies.com | Contact email |
| | Uniform claim identifier for electronic payments in chapter 13 (if you use one): | |
| 4. **Does this claim amend one already filed?** | ☒ No ☐ Yes.  Claim number on court claims registry (if known) _____ | Filed on _____ MM / DD / YYYY |
| 5. **Do you know if anyone else has filed a proof of claim for this claim?** | ☒ No ☐ Yes.  Who made the earlier filing? _____ | |

**Part 2:**    **Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____ |

| | |
|---|---|
| 7. **How much is the claim?** | $_____565,507.31_. **Does this amount include interest or other charges?**<br>    ☐ No<br>    ☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| | |
|---|---|
| 8. **What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.<br><br>Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br><br>Limit disclosing information that is entitled to privacy, such as health care information.<br><br>money loaned |

| | |
|---|---|
| 9. **Is all or part of the claim secured?** | ☐ No<br>☑ Yes.   The claim is secured by a lien on property.<br><br>**Nature of property:**<br>☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.<br>☐ Motor vehicle<br>☐ Other. Describe: _____<br><br>**Basis for perfection:**    Deed of Trust<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:**             $ 1,000,000.00<br>**Amount of the claim that is secured:**    $ 565,507.31<br>**Amount of the claim that is unsecured:** $_____0.00_ (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:**    $ 565,507.31<br><br>**Annual Interest Rate** (when case was filed) 24.00 %<br>☑ Fixed<br>☐ Variable |

| | |
|---|---|
| 10. **Is this claim based on a lease?** | ☑ No<br>☐ Yes. Amount necessary to cure any default as of the date of the petition.    $_____ |

| | |
|---|---|
| 11. **Is this claim subject to a right of setoff?** | ☑ No<br>☐ Yes. Identify the property: _____ |

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3: Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  11/27/2024
                  MM / DD / YYYY


_Jared L. Anderson_
Signature

**Print the name of the person who is completing and signing this claim:**

| | |
|---|---|
| Name | Jared L. Anderson |
| | First name          Middle name          Last name |
| Title | Attorney for Gravity Capital LLC |
| Company | Anderson, Fife, Marshall & Johnson LC |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | 2500 N University Ave. |
| | Number          Street |
| | Provo                              UT          84604 |
| | City                               State       ZIP Code |
| Contact phone | 8013751920          Email jla@wasatch.law |

## OPEN-END PROMISSORY NOTE

> DO NOT DESTROY THIS NOTE. RETAIN THE SIGNED ORIGINAL NOTE.
> This is an open-end note, meaning the amount borrowed is not fixed, and
> additional borrowing is permitted using the same collateral securing this note.

| | |
|---|---|
| Maximum Principal Amount: | $1,200,000.00 |
| Initial Advance Amount: | $332,000,00 |
| Date of Note: | March 22, 2022 |
| Maturity Date: | June 22, 2022 |
| Monthly Payments: | All accrued interest |
| First Payment Due Date: | April 1, 2022 |
| Interest Rate: | 15.00% |
| Lender: | Gravity Capital, LLC, a Utah limited liability company, 531 E 770 N, Orem UT 84097 |
| Borrower: | Max W. Barber and Sara G. Navarra, Trustees of the MSB Trust dated December 12, 2017, and any amendments thereto 1028 S 1900 E, Salt Lake City UT 84107 |
| Security Documents: | A Deed of Trust on the real property known by common street address of 1028 South 1900 East Salt Lake City Utah 84108 ("Parcel 1") and 1836 East Yale, Salt Lake City, Utah 84108 ("Parcel 2" and collectively with Parcel 1, the "Property"), as more particularly described in the Deed of Trust. A loan guaranty signed by Max W. Barber. |

1. **Definitions:** The above definitions are a part of this Open-End Promissory Note (this "Note").

2. **Promise to Pay:** Borrower promises to pay to the order of the Lender, its successors and assigns, in U.S. currency, the Principal Amount, or so much as is advanced by Lender to Borrower under this Note and related Business Loan Agreement, plus all other amounts due under this Note.

3. **Payment Schedule:** Borrower agrees to pay Lender each of the Monthly Payments on the first day of each month, beginning on the First Payment Due Date, and then continuing each month after that on the first day of each succeeding month. Then, on the Maturity Date, Borrower agrees to pay Lender the entire outstanding balance of the Note, including principal, accrued unpaid interest, and unpaid fees, charges and costs. Borrower will make payments to Lender at any address specified by Lender from time to time, beginning with the address set forth above. Payments will be applied first to any unpaid fees, costs and late charges, then to accrued interest, and finally to unpaid principal. Borrower may prepay this Note at any time, without penalty; however, all fees and charges are earned fully as of the date assessed to Borrower and will not be refunded or credited upon early payment. Payments are considered received only after they have fully cleared Lender's account.

4. **Interest:** Interest will accrue on the outstanding principal balance at the Interest Rate. Despite the foregoing or anything else in this Note to the contrary, however, if there occurs an Event of Default at any time then the rate of interest will increase to 24.0% compounding monthly (meaning

any accrued unpaid interest at the end of each month will be added to the principal balance and additional interest will accrue on such accrued unpaid interest), from the date of occurrence of such Event of Default and continuing until this Note is paid in full. In computing the number of days during which interest accrues, the Date of Note will be included regardless of the actual date, or time of day, the first advance is made, and the day on which funds are repaid will also be regardless of the time of day. If any interest payment or other charge or fee exceeds the maximum amount permitted by applicable law, then the Borrower must pay the maximum legal amount, and Lender will credit any excess interest already paid by Borrower against the principal balance, or if Lender has received the payment of more than the maximum legal amount, Lender will immediately refund the excess to the Borrower. In determining whether the interest paid or payable in any specific case exceeds the highest lawful rate, the holder and the Borrower will to the maximum extent permitted under applicable law (a) characterize any non-principal payment as an expense, fee, or premium rather than as interest; (b) exclude voluntary prepayments and the effects of these; and (c) spread the total amount of interest between the Date of Note and the Maturity Date, regardless of whether Borrower prepays this Note.

5. **Default:** Each of the following constitutes an event of default ("Event of Default") under this Note: (a) Borrower fails to make any payment when due under this Note, or any senior lien on the Property, or (b) Borrower or any of Borrower's affiliated parties fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note (described below) or in any of the other related loan documents executed by Borrower or such affiliated party(ies) in favor of Lender in connection with the loan evidenced by this Note, or fails to comply with or to perform any term, obligation, covenant or condition contained in any other agreement (whether related to this loan or not) between Lender and Borrower or any of such Borrower's affiliates. Similarly, an Event of Default under this Note constitutes a material default under each and every related loan document and any other agreement between Lender and Borrower. If any payment due under this Note (including a monthly payment or the full balance due at maturity) is not fully paid by the date it is due, then the Borrower must pay to Lender a late charge equal to ten percent of the full amount of the delinquent payment. Additionally, on each annual anniversary after the Maturity Date until this Note has been fully paid, Borrower must pay to Lender an additional late charge equal to ten percent of the full amount of the outstanding balance.

6. **Acceleration/Waiver:** Time is of the essence under this Note. If an Event of Default occurs, Lender, at its option and without notice or demand, may declare the entire principal balance, all accrued interest, and all other amounts due under the terms of this Note, immediately due in full. The Borrower(s) waive presentment for payment, demand and notice of dishonor and nonpayment of this note, and consent to any and all extensions of time, renewals, waivers or modifications that may be granted by the Lender hereof with respect to the payment or other provisions of this Note, and to the release of any security, or any part thereof, with or without substitution and to the addition to or release of any party. No waiver of any payment under this Note will operate as a waiver of any other payment. No course of dealing between the Borrower and Lender in exercising any rights will operate as a waiver of rights of Lender or of any of the terms of this Note.

7. **Security:** The full payment and performance of this Note is or may be secured by any other document or agreement referencing this Note and stating that it secures the payment or performance of this Note, including, without limitation, the Security Documents identified above.

8. **General Conditions:** The Borrower agrees to pay all costs incurred by the Lender in enforcing this Note, including, without limitation, court costs and reasonable attorneys' fees, with or without

suit. In recognition of the facts that, among other things, the Lender is located and operates in the State of Utah, the Lender's sole office location is in Utah, the Lender's funds originated from Utah, and payments under this Note will be made in Utah, this Note will be governed by and interpreted under the laws of the State of Utah (without regard to conflicts of laws principles). Borrower agrees to submit to the exclusive jurisdiction of and agrees to the venue of the courts of the State of Utah, whether state courts or federal courts located in or serving Utah County, Utah, and agrees not to bring any action in any court of law located outside of Utah County, Utah, relating in any way to this Note. If any term or provision of this Note is held illegal or unenforceable, all other terms and provisions will remain effective. All obligations of each Borrower identified above (if there are multiple) are joint and several. <u>Borrower waives its rights to a trial by jury as to any matter arising out of or concerning the subject matter of this Note.</u>

**This Promissory Note is accepted and agreed to by, and Borrower states that the loan proceeds evidenced by this Note will be used solely for business, commercial and/or investment purposes and not for personal, family or household purposes:**

**Max W. Barber and Sara G. Navarra, Trustees of the MSB Trust dated December 12, 2017, and any amendments thereto**

By: _____

Name: Max W. Barber

Title: Trustee of the MSB Trust dated December 12, 2017, and any amendments thereto

On this 22nd day of March, 2022, in the State of Utah, County of Salt Lake, I, the undersigned Notary Public, do hereby certify that Max W. Barber personally appeared before me this day and acknowledged the due execution of the foregoing instrument.

BRENDA S. HOLLIDAY
NOTARY PUBLIC·STATE OF UTAH
COMMISSION# 708883
COMM. EXP. 11-18-2023

_____
Notary Public

# BUSINESS LOAN AGREEMENT

This Business Loan Agreement (this "Agreement"), dated effective as of March 22, 2022 (the "Effective Date"), is executed by Max W. Barber and Sara G. Navarra, Trustees of the MSB Trust dated December 12, 2017, and any amendments thereto ("Borrower") and Max W. Barber (each a "Guarantor" and together with the Borrowers, the "Obligors"), jointly and severally, in favor and for the benefit of Gravity Capital, LLC, a Utah limited liability company ("Lender"). Lender may make a business loan (the "Loan") to Borrower on the terms in this Agreement and the other Loan Documents (as defined below). Obligors agree as follows in favor of the Lender and in consideration for Lender's issuance of the Loan:

## 1. Basic Loan Terms

1.1. _Loan._ Lender may loan Borrower U.S. funds in the maximum principal amount of $1,200,000.00 (the "Loan Amount") on the terms set forth below, in the Note (as defined below), and in the other various Loan Documents.

1.2. _Note._ The Loan will be evidenced an Open-End Promissory Note in a form acceptable to Lender and executed by the Borrower, in an original principal amount equal to the Loan Amount, and dated on or about the Effective Date (the "Note").

1.3. _Guaranty._ The full payment and performance of the Loan will be, and is, guaranteed by the Guarantor as more particularly described in a loan guaranty, in a form acceptable to Lender and executed by the Guarantor on or about the Effective Date (the "Guaranty").

1.4. _Mortgage._ Payment and performance under the Note will be secured by one or more security documents, each in a form acceptable to Lender, including a Deed of Trust upon real property located at the common address of 1028 South 1900 East Salt Lake City Utah 84108 ("Parcel 1") and 1836 East Yale, Salt Lake City, Utah 84108 ("Parcel 2" and collectively with Parcel 1, the "Property") (each a "Mortgage" and any Property referred to in the Mortgage is referred to in this Agreement as the "Property" as more particularly described in the Mortgage).

1.5. _Loan Documents._ This Agreement, the Note, the Guaranty, the Mortgage, the Commercial Security Agreement(s), and all other agreements and documents entered into in connection with the Loan are referred to as the "Loan Documents."

1.6. _Discount Points/Fees._ As consideration for the Loan, on the date of Loan issuance, Borrower shall pay to Lender loan discount points in an amount equal to $16,800.00 (the "Discount Points"), and an "Inspection Fee" in the amount of $1,000.00. The Discount Points and Inspection Fee are fully earned and not subject to a refund or adjustment upon payment, in full or in part, of the amounts due under the Note.

1.7. _Fees and Costs._ Borrower shall also pay all of Lender's fees and expenses, including title, appraisal, inspection, legal, and other fees associated with the Loan ("Lender's Costs"). All of Lender's Costs are fully earned and not subject to a refund or

adjustment upon payment, in full or in part, of the amounts due under the Note. All of Lender's Costs will be advanced by Lender and deducted from the net proceeds of the Loan or paid by Borrower at the closing of the Loan, as a condition to disbursement of any of the proceeds to the Borrower; but if for some reason payment is not made from the Loan proceeds at closing, Obligors will remain responsible for the amount owed. Borrower will pay a $500.00 release/reconveyance to Lender upon full payoff of the Note, which fee will be added by Lender to the final payoff balance, for each Mortgage released or reconveyed. Lender may require an appraisal, at Borrower's sole cost, at any time in Lender's sole discretion, and the cost will be paid by Borrower directly or may be added to the principal balance of the Note, at Lender's discretion.

1.8.    Advances. Additional advances of Loan proceeds are subject to this Section 1.8. Borrower agrees to pay an advance fee on each amount advanced (beyond the initial advance) in an amount equal to 10.0% of the amount advanced or any lesser amount agreed to by Lender in Lender's sole discretion. The advance fee will be paid by Borrower at the time of issuance of each additional advance, and is fully earned immediately upon receipt by Lender, and will not be subject to refund or credit for any reason except if required by applicable law.

(a)    Maximum Amount. Lender will advance the Loan Amount, and no more. If Lender makes an advance that causes the principal balance of the Loan to exceed the Loan Amount, Obligors agree to repay the excess promptly, and such excess amount will be considered principal under the Note regardless of the stated Loan Amount. The stated Loan Amount is reference and maximum Lender potential lending capacity only and is not a limitation on Borrower's repayment obligation. Subject to all the other provisions herein, Lender will advance the Loan proceeds only for the purpose of funding Borrower's ongoing business activities in constructing and selling wellhead equipment.

(b)    Requests. A request for an advance must be in writing from Borrower.

(c)    Disbursement. Advances will be made by check or wire transfer to Borrower's account.

(d)    Requirements for Advance. In order for Borrower to request any advance (after the initial advance):

(1)    Borrower and/or other makers acceptable to Lender, in Lender's sole and absolute discretion, shall have signed promissory notes (described below) as required by Lender, evidencing an obligation to repay the advanced amount.

(2)    The advance will not cause the Loan to be in excess of the Loan Amount.

(3)    The representations and warranties of each of the Obligors contained in all of the Loan Documents are correct at the time of the advance.

(4)    Obligors are not, and no Obligor is or has at any time been, in breach of or default under any Loan Document.

(5)    Lender has determined, in Lender's sole and absolute discretion, the Loan is not at material risk of default.

(6)    Lender has determined, in Lender's sole and absolute discretion, that Borrower has provided sufficient additional collateral, or improvements to existing collateral, to adequately secure the additional funds, according to Lender's internal valuations and calculations, including without limitation of the generality of the foregoing, a minimum loan-to-value ratio of 55% with respect to the Property (i.e., the outstanding Loan balance will never exceed more than 55% of the Lender's determination of the Property's value at any time, after deducting from such value the outstanding balance on any senior liens), with the Property value being determined by Lender in its sole discretion, and with the agreement that Lender may require an appraisal, at Borrower's sole cost, at any time in Lender's sole discretion.

(7)    Lender has determined, in Lender's sole and absolute discretion, that each and all of the Obligors remains creditworthy, solvent, and capable of repaying its financial obligations including, without limitation, the Loan.

(8)    Lender has obtained, at Borrower's sole expense, sufficient title insurance coverage, policy(ies), and/or endorsement(s) insuring the additional advance amount, in Lender's sole discretion.

(9)    Lender has, in Lender's sole discretion, inspected or caused to be inspected the Property.

1.9.    <u>Taxes.</u> Borrower shall pay all mortgage, transfer, documentary stamp taxes, intangible taxes, and other such charges, levies, assessments, and taxes of any kind in connection with the issuance of the Loan and/or the making of the Note or recording of the Mortgage. If any such taxes or assessments on the Property are not timely paid by Borrower when due, Lender will have, in addition to all other rights and remedies available under the Loan Documents or at law or in equity, in Lender's sole and absolute discretion, the right to pay off such taxes and assessments on the Property, in whole or in part, and upon payment of such amount(s), if any, there will be added to the outstanding principal balance of the Note the amount paid by Lender plus and additional amount equal to 10% of that amount paid, and all such additional amounts will be considered outstanding principal under the Note and will bear interest as provided in the Note. All such amounts may, in Lender's sole discretion, be treated as an advance under Section 1.8.

2.    **Representations and Warranties.** Obligors, respectively, and each of the undersigned individuals on behalf of any of the Obligors which are business entities, represent and warrant to Lender as follows, and with the clarification that any investigation at any time made by Lender will not diminish Lender's right to rely on the representations

and warranties; any broad representation will not be limited by a separate more specific representation; Borrower shall not request an advance under the Loan unless all of the representations and warranties in this Agreement are true and correct as of the date the request for advance is made; and Borrower will be deemed to have remade the representations and warranties in this Agreement as of the date the request for advance is made.

2.1.  <u>No Approvals.</u> No approval, authorization, bond, consent, certificate, franchise, license, permit, registration, qualification, or other action or grant by or filing with any person is required in connection with the execution, delivery, or performance by Borrower.

2.2.  <u>Authority; Valid and Binding Obligation.</u> Obligors, respectively, have full power and authority to own all Property, and Borrower has full power and authority to carry on its business as now being conducted. Each of the Obligors is fully authorized and permitted to enter into this Agreement and the other Loan Documents, as applicable, to execute any and all documentation required in the Loan Documents, to borrow, as applicable, the amounts contemplated in the Loan Documents upon the terms set forth in the Loan Documents and to perform the terms of the Loan Documents to which they are a party, none of which require the consent or approval of any third person or will conflict with or violate any law or legal obligation applicable to any Borrower. The Loan Documents constitute valid and binding legal obligations of Obligors and each of the signers of the Loan Documents other than Lender and are enforceable in accordance with their terms, free from any setoff, claim, or defense of any nature.

2.3.  <u>No Conflicts.</u> The execution, delivery, and performance of the Loan Documents by Obligors will not conflict with or violate (a) any charter document of any Obligor; (b) any applicable law or agreement to which any Obligor is a party or by which any Obligor or any of its assets or properties are bound; or (c) any agreement to which any Obligor is bound or to which any Obligor is a party and will not result in or require the creation (except as provided in or contemplated by this Agreement) of any lien upon any of those assets or properties.

2.4.  <u>Liens, Security Interests, and Assignments.</u> Unless specifically agreed to in a later writing by Lender in Lender's sole and absolute discretion, the liens, security interests, and assignments created by the Loan Documents will, when granted and duly filed or recorded, constitute valid, effective, properly perfected, and enforceable second-priority liens, security interests, and assignments. The Note is an open-end note, meaning the amount borrowed is not fixed, and additional borrowing is permitted using the same collateral securing the Note. Any default by borrower under the first position loan or mortgage on either Property will constitute an immediate and automatic default under the Note and this Agreement. At all times after such default, Lender will have, in addition to all other rights and remedies available under the Loan Documents or at law or in equity, in Lender's sole and absolute discretion, the right to pay off the first position mortgage/loan(s) on the Property, in whole or in part, and upon payment of such amount(s), if any, there will be added to the outstanding principal balance of the Note the amount paid by Lender plus

and additional amount equal to 10% of that amount paid, and all such additional amounts will be considered outstanding principal under the Note and will bear interest as provided in the Note. All such amounts may, in Lender's sole discretion, be treated as an advance under Section 1.8.

2.5.    Proceedings. There is no action, claim, investigation, suit, proceeding, arbitration, or litigation ("Proceedings") pending or, to the knowledge of either of the Obligors, threatened against any Obligor(s). For purpose of this Agreement, "knowledge of Obligor" and similar phrases mean an officer, director, manager, or member is actually aware of the fact or matter or a prudent officer or manager of Borrower could be expected to discover or otherwise become aware of that fact or matter in the course of conducting a reasonably comprehensive investigation regarding the accuracy of any representation, warranty, or matter contained in this Agreement. There are no facts that would likely result in any such Proceedings. No Obligor is subject to or in default with respect to any notice, order, writ, injunction, or decree of any court, agency, authority, or arbitration tribunal.

2.6.    Taxes. Obligors have filed all required federal, state, and local tax returns and each of them has paid all of its taxes, assessments, and all other obligations under federal, state, or local law before they became delinquent, including all property taxes with respect to the Property. There is no pending audit or investigation by any taxing authority or of any pending but unassessed tax liability of any Obligor.

2.7.    Contracts. All leases, rental agreements, management contracts, and other agreements related to the use, operation, or management of the Property, if any, are in full force and effect. No Obligor is in breach of those agreements related to the Property, and no other party is in breach of those agreements related to the Property.

2.8.    Hazardous Substances. No Hazardous Substances, hazardous wastes, pollutants or contaminants are or have at any time been used, deposited, stored, disposed of, placed, or otherwise located in or on, or released from, the Property or any facility operated on the Property. No Obligor has received notice or is aware that any notice to any other person has been given, of any violation or claimed violation of any law, ordinance, rule, or regulation relating to Hazardous Substances, hazardous wastes, pollutants, or contaminants, and no Obligor or the Property is in violation of any such law, ordinance, rule, or regulation. No underground tank for storage of gasoline or other purpose is located on the Property. None of the improvements on the Property were constructed with or presently contain any asbestos or asbestos related insulation or other construction material, polychlorinated biphenyl (PCB), or urea formaldehyde.

2.9.    Financial Condition. All financial statements, profit and loss statements, tax returns, statements as to ownership, and other statements or reports previously or later given to Lender by or on behalf of Obligors is accurate and complete in all material respects and fairly present the financial condition and results of operations of the party, as of the dates of those statements or reports. Obligors have no material contingent liabilities, liabilities for taxes, material forward or long term commitments, or unrealized or anticipated losses from any unfavorable commitments not reflected in those financial

statements or reports. No material adverse change has occurred in the business, properties, or condition (financial or otherwise) of any Obligor in the 24 months preceding the date of this Agreement.

2.10.    Licenses, Permits and Approvals. Obligors have all licenses, permits, consents, approvals, and authorizations necessary or appropriate for the operation of Borrower's business as currently conducted.

2.11.    Commercial Purpose. The entire proceeds of the Loan will be used solely and exclusively for business and commercial purposes, and no portion of the proceeds will be used for any personal, consumer, family, household, or similar purpose. No portion of the proceeds of the Loan will be used for the immediate, incidental, or ultimate purpose of "purchasing" or "carrying" any "margin stock" as described in Regulation U (12 C.F.R., part 221) of the Board of Governors of the Federal Reserve System, or for the purpose of reducing or retiring any indebtedness that was originally incurred for such purpose. Promptly upon request by Lender, Borrower shall provide written evidence to Lender identifying the use, or proposed use, of the Loan proceeds, which evidence may include, without limitation, contracts, bids, estimates, invoices, payment receipts, etc. as Lender determines in its sole discretion. Borrower's failure to use any of the Loan proceeds for the authorized uses herein, or Borrower's failure to provide written evidence as requested by Lender from time to time, will be a default under this Agreement. Borrower will use the loan proceeds solely in connection with the improvement and development of the Property.

2.12.    Investment Company Act. Borrower is not an "investment company" or a company controlled by an "investment company" within the meaning of the Investment Company Act of 1940, as amended. Borrower is not a "holding company" within the meaning of the Public Utility Holding Company Act of 1935, as amended.

2.13.    Nonforeign Status. Borrower is not a foreign corporation, foreign limited liability company, foreign partnership, foreign trust, or foreign estate (as those terms are defined in the Internal Revenue Code and related IRS regulations).

2.14.    Contracts; Labor Matters. Except as disclosed to Lender in writing:

(a)    Borrower is not subject to any corporate restriction, judgment, decree, or order that materially affects its business, property, assets, operations, or condition, financial or otherwise.

(b)    No labor contract to which Borrower is a party or is otherwise subject is scheduled to expire prior to the final maturity date (with all extensions) of the Loan.

(c)    Borrower has not, within the two-year period preceding the making of the Loan, taken any action that would have constituted or resulted in a "plant closing" or "mass layoff" within the meaning of the Worker Adjustment and Retraining Notification Act of 1988, as amended, or any similar applicable federal, state, or local law, and has no

reasonable expectation that any such action is or will be required at any time prior to the final maturity date (with all extensions) of the Loan.

(d) Borrower is not a party to any labor dispute, and there are no strikes or walkouts relating to any labor contracts to which Borrower is a party or is otherwise subject. Borrower has complied with, and will continue to comply with, the provisions of the Fair Labor Standards Act of 1938, as amended.

2.15. <u>Sufficiency of Capital.</u> Obligors, after the consummation of this Agreement and after giving effect to the indebtedness incurred under this Agreement, are each solvent. "Solvent" means, with respect to any entity or person, that at the time of determination:

(a) the fair value of its assets, both at fair valuation and at present fair saleable value, is in excess of the total amount of its liabilities, including, without limitation, contingent claims; and

(b) Each Obligor is then able and expects to be able to pay its/his debts as they mature; and

(c) Each Obligor has capital sufficient to carry on its/his business as conducted and as proposed to be conducted.

For purposes of the definition of "Solvent," contingent liabilities (such as litigation, guaranties, and pension plan liabilities) are computed at the amount that, in light of all the facts and circumstances existing at the time, represents the amount that can reasonably be expected to become an actual or matured liability.

2.16. <u>Name and Address.</u> Obligors, during the preceding five years, have not been known as or used any other limited liability company, corporate, fictitious, doing business as, or trade names, except as disclosed to Lender in writing, nor has any Obligor, during the preceding five years, been the surviving corporation of a merger or consolidation or acquired all or substantially all of the assets of another Person, except as disclosed to Lender in writing.

2.17. <u>Patriot Act.</u> No Obligor will (a) be or become subject at any time to any law, regulation, or list of any government agency (including the U.S. Office of Foreign Asset Control list) that prohibits or limits Lender from making any advance or extension of credit to Borrower or from otherwise conducting business with Borrower, or (b) fail to provide documentary and other evidence of its/his/her identity as may be requested by Lender at any time to enable Lender to verify its/his/her identity or to comply with any applicable law or regulation, including Section 326 of the USA Patriot Act of 2001, 31 U.S.C. Section 5318.

2.18. <u>Temporary Bridge Loan.</u> The Loan is intended to be a temporary "bridge" loan and is not intended as long-term or permanent financing.

2.19.   Accurate Information. All information delivered by or on behalf of Obligors to Lender in obtaining the Loan is correct and complete, and there are no omissions therefrom that result in that information being incomplete, incorrect, or misleading. Obligors shall promptly notify Lender if any written information, exhibit, or report furnished to Lender contained, at the time it was furnished, any untrue statement of a material fact or omitted to state any material fact necessary to make the statements contained therein not misleading in light of the circumstances in which made. No notification pursuant to this Section 2.19 will cure or remedy the effect of the prior untrue statement of a material fact or omission of any material fact nor will any subsequent notification have the effect of amending or modifying this Agreement.

2.20.   Survival. All representations and warranties in this Agreement will survive the delivery of the Loan Documents and the making of the Loan, and will continue to survive until all sums payable pursuant to the Note or this Agreement, or which are secured by any security instrument included in the other Loan Documents, have been paid in full.

## 3.     Other Covenants of Borrower

3.1.    Information and Certificates. Until the Loan has been repaid in full, Obligors shall promptly provide the information and documents reasonably requested by Lender related to Borrower or any Property. Upon written request by Lender, Obligors shall deliver to Lender a certificate, executed by Borrower's manager or other officer or person acceptable to Lender, certifying that the representations and warranties in this Agreement are true and correct as of the date of the certificate and further certifying that, as of the date of the certificate, no event of default exists (or would exist with the giving of notice, the passage of time, or both) under this Agreement or any of the other Loan Documents.

3.2.    Accounts and Records; Financial Information. Borrower shall maintain, in a safe place, full and accurate accounts and records of Borrower's operations and business affairs similar to those maintained by other businesses of the type in which Borrower is engaged and consistent with principles heretofore applied to Borrower. Borrower shall permit Lender by Lender's duly authorized agents to inspect the accounts and records at any reasonable time. Upon Lender's request, Borrower shall furnish or cause to be furnished to Lender current financial statements of Borrower and other information regarding the financial condition and operation of Borrower as Lender may reasonably request from time to time. If the foregoing financial information is not provided on or before five business days after the request, Lender may begin to accrue interest on the Loan at the default interest rate in the Note without accelerating the Loan or declaring the Loan in default. If the required financial information is thereafter provided and no other default then exists, the interest rate on the Loan will revert back to the non-default interest rate in the Note.

3.3.    Payment of Property Taxes and Other Assessments. Obligors shall cause to be paid and maintained as current all obligations to pay all property taxes and assessments, impact fees, park fees, and any other fees and assessments levied against or otherwise

related to the Property (including greenbelt rollback taxes) and any penalties and interest associated with those taxes, whether the taxes are past due or due at a future time. Upon written request by Lender, Obligors shall provide proof of the payment and full satisfaction of all obligations contemplated by this section.

    3.4.    <u>Mechanics Liens.</u> Obligors shall fully pay and discharge all claims for labor done and material and services furnished, if any, on the Property and take all other steps to forestall the assertion of claims against the Property or any part of the Property or right or interest appurtenant to the Property.

    3.5.    <u>Insurance.</u> Obligors shall obtain (or cause any tenant in possession of the Property to obtain) and maintain in force and pay the cost of property, commercial general liability, and other types and forms of insurance coverage with respect to the Property or the Loan as may be required by Lender in accordance with Lender's insurance requirements as delivered to any Obligor from time to time, including the insurance required to be maintained under any lease agreement applicable to the Property.

    3.6.    <u>Law; Judgments; Material Agreements.</u> Obligors shall comply with all laws, ordinances, regulations, and rules and all judgments, orders, and decrees of any arbitrator, other private adjudicator, or government authority relating to Obligor and the Property. Obligors shall comply in all material respects with all material agreements, documents, and instruments to which any Obligor is a party or by which it or any of its assets or properties are bound or affected. Each Obligor shall obtain and maintain in full force and effect all approvals and permits and shall comply in all material respects with all conditions and requirements of all approvals and permits.

    3.7.    <u>Environmental Matters.</u>

        (a)    Definitions. These words have these meanings under this Section 3:

            (1)    "Environmental Laws" means any federal, state, or local statute, law, rule, regulation, ordinance, code, policy, or rule of common law now or subsequently in effect and in each case as amended, and any judicial or administrative interpretation thereof, including any judicial or administrative order, consent decree, or judgment, relating to the environment, health, safety, or Hazardous Substances (as defined below), including, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. § 9601, et seq.; the Hazardous Materials Transportation Act, as amended, 49 U.S.C. § 1801, et seq.; the Resource Conservation and Recovery Act, as amended, 42 U.S.C. § 6901, et seq.; the Federal Water Pollution Control Act, as amended, 33 U.S.C. § 1251, et seq.; the Toxic Substances Control Act, 15 U.S.C. § 2601, et seq.; the Clean Air Act, 42 U.S.C. § 7401, et seq.; the Safe Drinking Water Act, 42 U.S.C. § 3808, et seq., the state hazardous waste control acts in the state in which the applicable Property is located, the state statutes on solid waste management, and the statutes of the state in which the applicable Property is located on underground storage regulations.

(2)    "Hazardous Substance" includes all of the following:

(A)    Those substances included within the definitions of "hazardous materials," "toxic substances," or "solid waste" in the Environmental Laws

(B)    Those substances listed in the United States Department of Transportation Table (49 C.F.R. 172.101 and amendments thereto) or by the Environmental Protection Agency as hazardous substances (40 C.F.R. Part 302 and amendments thereto)

(C)    All other substances, materials and wastes that are, or that become, regulated under, or that are classified as hazardous or toxic under, any Environmental La

(D)    Notwithstanding the foregoing, the term "Hazardous Substance" does not include any substance stored by Borrower or its lessee in the ordinary course of business and in compliance with Environmental Laws.

(3)    "Release" means any releasing, spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, disposing, or dumping.

(4)    "Knowledge." For purpose of this Agreement, "knowledge of Obligors" and similar phrases means (i) with respect to an Obligor that is an entity, an officer, director, manager, or member of the Obligor is actually aware of the fact or matter or a prudent officer, manager, or member of such Obligor could be expected to discover or otherwise become aware of that fact or matter in the course of conducting a reasonably comprehensive investigation regarding the accuracy of any representation, warranty, or matter contained in this Agreement, and (ii) with respect to an Obligor that is a natural person, the individual is actually aware of the fact or matter or could be expected to discover or otherwise become aware of that fact or matter in the course of conducting a reasonably comprehensive investigation regarding the accuracy of any representation, warranty, or matter contained in this Agreement.

(b)    Site Assessments. If Lender ever has reason to believe there are Hazardous Substances (other than those disclosed by an Obligor in writing to Lender on or before the date of this Agreement) affecting any of the Property, Lender at any time, after notice to Borrower, and from time to time may contract for the services of persons (the "Site Reviewers") to perform environmental site assessments ("Site Assessments") on the Property for the purpose of determining whether there exists on the Property any environmental condition that could result in any liability, cost, or expense to the owner, occupier, or operator of the Property arising under any Environmental Laws. The Site Assessments may be performed at any time on one or more occasions, upon reasonable notice, and under reasonable conditions established by Borrower that do not impede the performance of the Site Assessments. The Site Reviewers are hereby authorized to enter upon the Property for those purposes. The Site Reviewers are further authorized to perform

both above and below the ground testing for environmental damage or the presence of Hazardous Substances on the Property and other tests on the Property as may be necessary to conduct the Site Assessments in the reasonable opinion of the Site Reviewers. The Obligors shall supply to the Site Reviewers the historical and operational information regarding the Property as may be reasonably requested by the Site Reviewers to facilitate the Site Assessments and shall make available for meetings with the Site Reviewers appropriate personnel having knowledge of the matters. On request, Lender shall make the results of the Site Assessments fully available to Borrower, which (prior to an event of default under the Loan Documents) may, at Borrower's election, participate under reasonable procedures in the direction of the Site Assessments and the description of tasks of the Site Reviewers. The Obligors shall pay the cost of performing the Site Assessments promptly upon demand from Lender.

(c)     Right of Entry. Lender has the right, but not the obligation, without in any way limiting Lender's other rights and remedies under the Loan Documents, to enter onto the Property or to take the other actions as Lender deems necessary or advisable to clean up, remove, resolve, or minimize the impact of, or otherwise deal with, any Hazardous Substances on or affecting the Property following receipt of any notice from any person or entity asserting the existence of any Hazardous Substances pertaining to the Property or any part thereof that, if true, could result in an order, notice, suit, imposition of a lien on the Property, or other action or that, in Lender's sole opinion, could jeopardize Lender's security under the Loan Documents. The Obligors shall pay promptly upon demand all reasonable costs and expenses paid or incurred by Lender in the exercise of any of those rights. Notwithstanding the foregoing in this section, prior to Lender taking any action authorized in this section, Lender shall give Borrower prior notice of any Hazardous Substances on or affecting the Property and shall give Borrower the reasonable opportunity to take appropriate action to remove the Hazardous Substances, except that Lender is not required to provide the notice or reasonable opportunity if, in Lender's reasonable discretion, the Hazardous Substances present an emergency or pose an imminent and substantial threat to the Property or to those occupying it.

(d)     Right to Participate. Lender has the right at any time to appear in and to participate in, as a party if Lender so elects, and be represented by counsel of Lender's own choice in, any action or proceeding initiated in connection with any Environmental Law that affects the Property.

(e)     Third-Party Use. An Obligor shall not permit any third party to use, generate, manufacture, produce, store, or Release, on, under, or about the Property, or transfer to or from the Property, any Hazardous Substance except in compliance with all applicable Environmental Laws, and Obligor shall not permit any environmental liens to be placed on any portion of the Property

(f)     No Release. Obligors have not caused or permitted the Release of, and have no knowledge of the Release or presence of, any Hazardous Substance on the Property in excess of the reportable quantities prescribed by Environmental Law or the migration of any Hazardous Substance from or to any other property adjacent to or in the

vicinity of the Property in excess of the reportable quantities prescribed by Environmental Law. Borrower's intended future use of the Property will not result in the Release of any Hazardous Substance on the Property.

3.8. Notice to Lender. The Obligors shall give prompt written notice to Lender, at the address in the Loan Agreement, of the following:

(a) Any proceeding, including any lawsuit, investigation, or settlement by or with any federal, state, or local governmental authority with respect to the presence of any Hazardous Substance on the Property or the migration of any Hazardous Substance from or to any other property adjacent to, or in the vicinity of, the Property

(b) All claims made or threatened by any third party against an Obligor or the Property relating to any loss or injury resulting from any Hazardous Substance

(c) Obligor's discovery of any occurrence or condition on any property adjoining or in the vicinity of the Property that could cause the Property or any part of the Property to be subject to any restrictions on its ownership, occupancy, transferability, or use under any Environmental Laws; and

(d) Obligor's discovery of a violation of Environmental Laws that an Obligor is legally required to report to any federal, state, or local governmental authority or the discovery of a Release of a Hazardous Substance in sufficient quantities to be reportable under Environmental Law to any federal, state, or local governmental authority.

3.9. Remediation Efforts. Obligor shall conduct and complete all investigations, studies, sampling, testing, and all remedial, removal, and other actions necessary to clean up and remove all Hazardous Substances in, from, or affecting the Property in accordance with all applicable Environmental Laws and in accordance with the orders and directives of all governmental authorities.

3.10. Reliance by Lender. Each Obligor acknowledges that Lender has and will rely upon the representations, warranties, and agreements in closing and funding and making future advances under the Loan (or modifying as the case may be) and that the execution and delivery of this Agreement is an essential condition but for which Lender would not close or fund or make advances under (or modify) the Loan.

3.11. Indemnification.

(a) Obligors each shall indemnify and defend Lender from and against:

(1) all claims, costs, expenses, actions, suits, proceedings, losses, damages, and liabilities of any kind whatsoever, other than any Litigation Expenses (defined below), directly or indirectly arising out of or attributable to (i) the use, generation, manufacture, production, storage, Release, threatened Release, or presence of a Hazardous Substance on, under, or about the Property; (ii) any violation or claim of violation of any Environmental Law with respect to the Property; (iii) any breach of any of the warranties,

representations and covenants contained in this Agreement, and/or (iv) the ownership, use, occupancy, management, and/or control of the Property or any portion of the Property; and

(2)   any court filing fee, court cost, arbitration fee or cost, witness fee, and each other fee and cost of investigating and defending or asserting any claim for indemnification under this Agreement, including in each case, attorneys' fees, other professionals' fees, and disbursements (collectively, "Litigation Expenses").

(b)   The indemnification obligations in this Agreement will continue in full force and effect and survive the payment and performance of the Loan, the release of any lien or encumbrance securing the Loan, any foreclosure (or deed in lieu of foreclosure) of any lien or encumbrance securing the Loan, the exercise by Lender of any other remedy under any documents securing the Loan, and any suit, proceeding, or judgment against Borrower by Lender.

(c)   The indemnification obligations in this Agreement are not subject to any nonrecourse or other limitation of liability provisions contained in any document or instrument executed and delivered in connection with the Loan, and the liability of Obligors under this Agreement is not limited by any nonrecourse or similar limitation of liability provisions. The indemnities in this Agreement apply to each indemnified party with respect to losses that in whole or in part are caused by or arise out of the negligence of an indemnified party or any strict liability.

## 4.   General Provisions

4.1.   <u>Notices.</u> Each party giving or making any notice, request, demand, or other communication (each, a "Notice") pursuant to this Agreement must give the Notice in writing and use one of the following methods of delivery, each of which for purposes of this Agreement is a writing: personal delivery, Registered Mail or Certified Mail (in each case, return receipt requested and postage prepaid), or nationally recognized overnight courier (with all fees prepaid). Any party giving a Notice must address the Notice to the appropriate person at the receiving party (the "Addressee") at the address set forth in the Note. Except as provided elsewhere in this Agreement, a Notice is effective only if the party giving the Notice has complied with this section and the Addressee has received the Notice. If the Addressee rejects or otherwise refuses to accept the Notice, or if the Notice cannot be delivered because of a change in address for which no Notice was given, then the Notice is deemed delivered upon the rejection, refusal, or inability to deliver. If any Notice is received after 5:00 p.m. on a business day where the Addressee is located, or on a day that is not a business day where the Addressee is located, then the Notice is deemed received at 9:00 a.m. on the next business day where the Addressee is located.

4.2.   <u>Confidentiality.</u> Obligors shall hold in strictest confidence and not use or disclose to any person, firm, or entity, without written authorization of Lender, the terms of this Agreement. Notwithstanding anything to the contrary in this section, any party may make the disclosure as may be required by law, except that in that event, the party required to make the disclosure shall promptly notify the other parties in writing prior to making the

disclosure and that notice must include the basis for determining that the disclosure is required by law and a reasonable description of the information required to be disclosed. Notwithstanding the foregoing, the parties may disclose this Agreement to their respective representatives and advisors for appropriate business purposes.

4.3.    Amendments. The parties may amend this Agreement only by a written agreement of the parties that identifies itself as an amendment to this Agreement.

4.4.    Waivers. The parties may waive any provision in this Agreement only by a writing executed by the party or parties against whom the waiver is sought to be enforced. No failure or delay in exercising any right or remedy or in requiring the satisfaction of any condition under this Agreement, and no act, omission, or course of dealing between the parties, operates as a waiver or estoppel of any right, remedy, or condition. A waiver made in writing on one occasion is effective only in that instance and only for the purpose stated. A waiver once given is not to be construed as a waiver on any future occasion or against any other person.

4.5.    Severability. If any provision of this Agreement is determined to be invalid, illegal, or unenforceable, the remaining provisions of this Agreement remain in full force if the essential terms and conditions of this Agreement for each party remain valid, binding, and enforceable.

4.6.    Entire Agreement. This Agreement and the Loan Documents constitute the final agreement between the parties. It is the complete and exclusive expression of the parties 'agreement on the matters contained in this Agreement. All prior and contemporaneous negotiations and agreements between the parties on the matters contained in this Agreement are expressly merged into and superseded by this Agreement and the Loan Documents. The provisions of this Agreement may not be explained, supplemented, or qualified through evidence of trade usage or a prior course of dealings. In entering into this Agreement, no party has relied upon any statement, representation, warranty, or agreement of the other party except for those expressly contained in this Agreement. There are no conditions precedent to the effectiveness of this Agreement other than those expressly stated in this Agreement.

4.7.    Counterparts; Electronic Signatures. The parties may execute this Agreement in multiple counterparts, each of which constitutes an original, and all of which, collectively, constitute only one agreement. The signatures of all of the parties need not appear on the same counterpart, and execution and/or delivery of an executed counterpart signature page by electronic means is as effective as executing and delivering this Agreement in the presence of the other parties to this Agreement. This Agreement is effective upon delivery of one executed counterpart from each party to the other parties. In proving this Agreement, a party must produce or account only for the executed counterpart of the party to be charged.

4.8.    Third Party Beneficiaries. This Agreement does not and is not intended to confer any rights or remedies upon any person other than the signatories.

4.9.　Interpretation. This Agreement will not be construed in favor of or against any party for any reason, including because of authorship.

4.10.　Time of Essence. With regard to all dates and time periods set forth in this Agreement, time is of the essence.

4.11.　Further Assurances. Each party and its officers and directors shall use all commercially reasonable efforts to take, or cause to be taken, all actions necessary or desirable to consummate and make effective the transactions this Agreement contemplates. After the closing of the Loan, each party and its officers and directors shall use all commercially reasonable efforts to take, or cause to be taken, all further actions necessary or desirable to carry out the purposes of this Agreement.

4.12.　Governing Law. The laws of the state of Utah (without giving effect to its conflict of laws principles) govern all matters arising out of or relating to this Agreement and the transactions it contemplates, including, without limitation, its interpretation, construction, performance, and enforcement.

4.13.　Forum Selection

(a)　Designation of Forum. Any party bringing a legal action or proceeding against any other party arising out of or relating to this Agreement may bring the legal action or proceeding in in any court sitting in or serving Utah County, Utah.

(b)　Waiver of Right to Contest Jurisdiction. Each party waives, to the maximum extent permitted by law, any objection that the party may now or later have to the laying of venue of any legal action or proceeding arising out of or relating to this Agreement brought in any court sitting in or serving Utah County, Utah; and any claim that any action or proceeding brought in any court specified in this section has been brought in an inconvenient forum.

(c)　Submission to Jurisdiction. Each party to this Agreement submits to the jurisdiction of any court sitting in or serving Utah County, Utah, and its/their appellate courts, for the purposes of all legal actions and proceedings arising out of or relating to this Agreement.

4.14.　Rights and Remedies Cumulative. Any enumeration of rights and remedies set forth in this Agreement is not intended to be exhaustive. Any party's exercise of any right or remedy under this Agreement does not preclude the exercise of any other right or remedy. All rights and remedies are cumulative and are in addition to any other right or remedy set forth in this Agreement, any other agreement between the parties, or which may now or subsequently exist at law or in equity, by statute or otherwise.

4.15.　Waiver of Jury Trial. Each party knowingly, voluntarily, and intentionally waives its right to a trial by jury to the extent permitted by law in any action or other legal proceeding arising out of or relating to this Agreement and the transactions it contemplates. This waiver applies to any action or other legal proceeding, whether sounding in contract,

tort, or otherwise. Each party acknowledges that it has received the advice of competent counsel.

4.16. <u>Litigation Expenses.</u> If any legal action, arbitration, or other proceeding is brought under this Agreement, in addition to any other relief to which the successful or prevailing party or parties (the "Prevailing Party") is entitled, the Prevailing Party is entitled to recover, and the non-Prevailing Party shall pay, all reasonable attorneys 'fees, court costs, and expenses of the Prevailing Party, even if not recoverable by law as court costs (including, without limitation, all fees, taxes, costs and expenses incident to arbitration, appellate, bankruptcy, and post-judgment proceedings), incurred in that action, arbitration, or proceeding and all appellate proceedings. For purposes of this section, the term "attorneys 'fees" includes, without limitation, paralegal fees, investigative fees, expert witness fees, administrative costs, disbursements, and all other charges billed by the attorney to the Prevailing Party.

4.17. <u>Not a Partnership.</u> This Agreement does not constitute or create a partnership, joint venture, joint undertaking, or agency relationship of any kind among the parties. No party to this Agreement has the right or authority to make representations, act, or incur any debts on behalf of the other. No party is acting as an agent for an undisclosed principal or as a nominee.

4.18. <u>Advice of Counsel.</u> Each party acknowledges and agrees that the terms of this Agreement have been completely read and fully understood and voluntarily accepted by the party after having a reasonable opportunity to retain and confer with legal counsel. This Agreement is entered into after a full investigation by the parties. The parties acknowledge and agree that McDonald Fielding, PLLC represents Lender and does not represent any Obligor or any other person involved in the Loan.

4.19. <u>Specific Performance.</u> The parties agree that irreparable damage would occur if any of the provisions of this Agreement were not performed by them in accordance with the terms of this Agreement and that the parties are entitled to specific performance of the terms of this Agreement in addition to any other remedy at law or equity.

4.20. <u>Cross Default and Cross Collateral.</u> A default under any one of the Loan Documents constitutes a default under each and all of the remaining Loan Documents. Any collateral under any one of the Loan Documents is also collateral securing each other Loan Document, so that all Loan Documents share the same collateral and that a default on under any Loan Document gives Lender the right to pursue all available remedies provided under any and all of the Loan Documents.

The undersigned Obligors are signing this Business Loan Agreement on the date stated in the introductory paragraph.

Max W. Barber and Sara G. Navarra, Trustees of the MSB Trust dated December 12, 2017, and any amendments thereto

By: _____

Name: Max W. Barber

Title:  Trustee of the MSB Trust dated December 12, 2017, and any amendments thereto

Max W. Barber, an individual: _____

## Loan Guaranty

Max W. Barber, an individual (the "Guarantor") whose social security number is XXX-XX- 0340 and whose date of birth is ___ / ___ / 2001/ and whose home address is 1028 South 1900 East SLC UT 84108 1985 , hereby guarantees to Gravity Capital, LLC, a Utah limited liability company, its successors and assigns ("Lender"), the full performance and observance of all of the covenants, conditions, obligations, and agreements to be performed and observed by Max W. Barber and Sara G. Navarra, Trustees of the MSB Trust dated December 12, 2017, and any amendments thereto ("Borrower") under each and every obligation or agreement of Borrower to or in favor of Lender, whether now existing or arising hereafter, including without limitation under a Promissory Note in the principal amount of $1,200,000.00 and dated on or about the date of this Guaranty executed by each Borrower in favor of Lender and all other documents executed by each Borrower in connection with that Promissory Note (collectively, the "Obligations"), as follows:

1. This Guaranty is an absolute guaranty of payment and performance of all obligations, of any kind, of Borrower to Lender under or relating to the Obligations. This is not a guaranty of collection only. Guarantor has given this Guaranty to Lender in order to induce Lender to enter into the Obligations with Borrower, which Obligations will be of benefit to Guarantor.

2. The validity of this Guaranty and the obligations of the Guarantor hereunder shall in no way be terminated, affected or impaired by reason of the assertion by the Lender of any of the rights or remedies reserved to the Lender pursuant to the provisions of the documents or agreements evidencing the Obligations (the "Obligation(s) Agreements"), or by reason of the waiver by or the failure of the Lender to enforce any of the terms, covenants or conditions of said Obligations, all of which may be given or done without notice to Guarantor.

3. Guarantor further agrees that liability under this Guaranty shall be primary, and that in any right of action which shall accrue to the Lender under any of the Obligation(s) Agreements, Lender may proceed against Guarantor without having commenced any action against or having obtained any judgment against Borrower or any other guarantor. The Lender shall not be required to make any demand on Borrower or any other guarantor or otherwise pursue or exhaust its remedies against Borrower or any other guarantor before, simultaneously with, or after enforcing its rights and remedies hereunder against Guarantor.

4. Guarantor waives notice of default in the payment of any amount contained or reserved in any of the Obligation(s) Agreements or notice of the breach or non-performance of any of the covenants, conditions or agreements contained in any of the Obligation(s) Agreements.

5. Guarantor further covenants and agrees that this Guaranty shall remain and continue in full force and effect as to renewal, extension, amendment or modification of any of the Obligation(s) Agreements, provided that Guarantor's obligations under the Obligation(s) Agreements shall not be materially increased by any such renewal, extension, amendment or modification. No assignment or transfer any of the Obligations or the Obligation(s) Agreements shall operate to extinguish or diminish the liability of Guarantor.

Guarantor Initials: _____                                    Loan Guaranty - Page 1 of 2

6. Guarantor agrees that in the event the Borrower shall become insolvent or shall be adjudicated as bankrupt, or shall file a petition for reorganization, arrangement or similar relief under any present or future provision of the Bankruptcy Code, or if such petition filed by creditors of the Borrower shall be approved by a court, or if the Borrower shall seek a judicial readjustment of the rights of its creditors under any present or future Federal or State law, or if a receiver of all or part of its property and assets is appointed by any State or Federal Court, and in any such proceeding the Obligations shall be terminated or rejected, or the obligations of Borrower thereunder shall be modified, Guarantor shall immediately pay to the Lender or its successors or assigns an amount equal to all amounts due under the Obligations.

7. Neither Guarantor's obligation to make payment in accordance with the terms of this agreement nor any remedy for the enforcement thereof shall be impaired, modified, changed, released or limited in any manner whatsoever by any filing of Borrower or its estate in bankruptcy or of any remedy for the enforcement thereof, resulting from the operation of any present or future provision of the Bankruptcy Code or other statute, or from the decision of any court.

8. This Guaranty shall be governed by and construed in accordance with the laws of the State of Utah applicable to agreements made and to be wholly performed within the State of Utah (without regard to conflicts of laws principles). Venue for any action arising out of or related to this agreement shall be in any court sitting in or serving Utah County, Utah.

9. Guarantor agrees to pay all costs and expenses incurred by the Lender in enforcing this Guaranty, including without limitation, court costs, legal fees and expert witness costs. This Guaranty binds Guarantor and Guarantor's heirs, successors, and assigns, and it benefits and may be enforced by Lender and Lender's successors in interest and assigns. If a court of competent jurisdiction finds that any provision of this Guaranty is unenforceable, then the remaining provisions will remain in effect without the unenforceable parts.

10. This Guaranty, together with the documents referenced herein, contains all of the agreements of the parties hereto with respect to the matters contained herein and no prior or contemporaneous agreement or understanding, oral or written, pertaining to any such matters shall be effective for any purpose. No provision of this Guaranty may be amended or added to except by an agreement in writing signed by the parties hereto or their respective successors in interest and expressly stating that it is an amendment of this Agreement.

This Loan Guaranty is dated effective as of March 22, 2022, by:

**Max W. Barber, an individual:** _____

CERTIFIED TO BE A TRUE AND CORRECT COPY OF THE ORIGINAL

RECORDING REQUESTED BY,
WHEN RECORDED RETURN TO:
Gravity Capital, LLC
c/o McDonald Fielding, PLLC
321 N Mall Dr. Suite K101
St. George UT 84790

*Parcel Nos. 16-09-429-005 and 16-09-427-010*
*Escrow No. 156520-BHS*

## DEED OF TRUST

This Deed of Trust is dated effective as of March 22, 2022, and is given by Max W. Barber and Sara G. Navarra, Trustees of the MSB Trust dated December 12, 2017, and any amendments thereto with an address at 1028 S 1900 E, Salt Lake City UT 84107, as Trustor; with Kyle Fielding, a Utah attorney with an address at 321 N Mall Dr. Suite K101, St. George UT 84790 as Trustee; in favor of Gravity Capital, LLC, a Utah limited liability company with an address at 531 E 770 N, Orem, UT 84097, as Beneficiary.

1. **Definitions.** The following terms have these meanings when used in this Deed of Trust:

    1.1. Certification of Trust means the instrument attached hereto as **Exhibit B** providing authority for the signer of this Deed of Trust to sign on behalf of the Trustor.

    1.2. Default means the occurrence of any one or more of the following:

        1.2.1. breach or default in payment of any Secured Obligation;

        1.2.2. breach or default in performance of any term, covenant, condition or agreement under the Note, this Deed of Trust or under any of the other Loan Documents;

        1.2.3. Trustor applies for or consents to the appointment of a receiver or trustee for it or any portion of its assets, or if such a receiver or trustee is appointed for Trustor or its property, or Trustor makes an assignment for the benefit of creditors, or Trustor admits in writing its inability to pay its debts as they become due, or Trustor becomes insolvent, or a petition is filed by Trustor pursuant to any of the provisions of the United States Bankruptcy Code or any similar or successor statute or such a petition is filed against Trustor;

        1.2.4. there is an attachment to any of the assets of Trustor and the same is not discharged within sixty (60) days;

        1.2.5. Trustor shall cause or institute or there shall be instituted against Trustor any proceeding for the dissolution or termination of Trustor;

1.2.6. any representation, warranty or disclosure made to Beneficiary by Trustor proves to be materially false or misleading on the date as of which made, whether or not that representation or disclosure appears in the Loan Documents; or

1.2.7. all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Trustor is sold or transferred) without Lender's prior written consent.

1.3. Loan means a loan from Beneficiary to Trustor in the stated principal amount of $1,200,000.00, as evidenced by the Note and other Loan Documents.

1.4. Loan Documents means the Note, this Deed of Trust, and any other document executed in Beneficiary's favor in connection with the Loan, including without limitation any documents executed by Trustor or any of Trustor's affiliates, guarantors, co-borrowers, or other parties acting for, on behalf of, at the request of, or for the benefit of, Trustor.

1.5. Note means the Open-End Promissory Note dated on or about the same date as this Deed of Trust, executed by Trustor in favor of Beneficiary, in the principal amount of the Loan (the Note is an open-end note, meaning the amount borrowed is not fixed, and additional borrowing is permitted using the same collateral securing the Note).

1.6. Property means the Real Property together with each of the following:

1.6.1. all buildings and other improvements, fixtures, personal property and equipment now or hereafter located on the Real Property,

1.6.2. all right, title, interest, and privileges of Trustor in and to all rights of way, streets, roads, and alleys used in connection with or pertaining to such Real Property,

1.6.3. all water and water rights, (including stock or other evidence of ownership in irrigation, canal and other stock water companies) appurtenant to or used in connection with the land,

1.6.4. all minerals, oil and gas, and other hydrocarbon substances in, on or under the Real Property,

1.6.5. all appurtenances, easements, and rights and rights of way related to any of the Real Property,

1.6.6. all air rights, development rights and credits, licenses, and permits related to the Real Property,

1.6.7. all proceeds and claims arising on account of any damage to or taking of the Real Property or any portion of the Real Property,

1.6.8. all causes of action and recoveries for any loss to or diminutions in the value of the Real Property, and

1.6.9. all other appurtenant rights and privileges.

1.7. Real Property means the real property known by common address of 1028 South 1900 East Salt Lake City Utah 84108 ("Parcel 1") and 1836 East Yale, Salt Lake City, Utah 84108

("Parcel 2" and collectively with Parcel 1, the "Property") and more particularly described in the attached <u>Exhibit A</u>.

1.8. <u>Secured Obligations</u> means the Note, the Loan Documents, and all other obligations of Trustor or any other party in favor of the Beneficiary and relating in any way to the Loan, including, without limitation, each of the following:

    1.8.1. performance of every obligation of Borrower and Trustor contained in the Loan Documents (as defined below) as those documents may be amended or modified from time to time, including an increase in the amount of the Loan;

    1.8.2. performance of every obligation of Trustor contained in any agreement, document, or instrument executed by Trustor stating that the applicable obligations are secured by this Deed of Trust; and

    1.8.3. compliance with and performance of each and every provision of any declaration of covenants, conditions, and restrictions; any maintenance or easement agreement; or any other agreement, document, or instrument by which the Trustor is bound or may be affected and which relates in any way to the Property.

The term "obligations" is used in its broadest and most comprehensive sense and includes, without limitation, all interest and charges, prepayment charges (if any), late charges and loan fees at any time accruing or assessed on any of the Secured Obligations. The obligations of any guarantor under any guarantee of the Loan or of any of Trustor's obligations under the Loan Documents, including, without limitation, any repayment guarantee or completion guarantee, do not constitute Secured Obligations. All terms of the Secured Obligations and the documents evidencing such obligations are incorporated into this Deed of Trust by this reference.

2. **Grant in Trust.** Trustor irrevocably grants, conveys, and assigns to Trustee, in trust for the benefit of Beneficiary, with power of sale and right of entry and possession, all of the Property, whether now owned or acquired later by the Trustor, and all additions and accretions to the described Property, for the purpose of securing all of the Secured Obligations.

3. **Assignment Leases/Rents.** Trustor hereby irrevocably assigns to Beneficiary all of Trustor's right, title, and interest in, to, and under (a) all present and future leases of the Property or any portion thereof, all licenses and agreements relating to the management, leasing, or operation of the Property, whether such leases, licenses, and agreements are now existing or entered into after the date of this Deed of Trust (collectively, "**Leases**"); and (b) all the income, rents, issues, deposits, and profits of the Property, including, without limitation, all amounts payable and all rights and benefits accruing to Trustor under the Leases ("**Payments**"). The term "Leases" will also include all guarantees of and security for the tenant's performance thereunder, and all amendments, extensions, renewals, or modifications thereto which are permitted hereunder. This is a present and absolute assignment, not an assignment for security purposes only, and Beneficiary's right to the Leases and Payments is not contingent upon and may be exercised without possession of the Property, except that all such Payments received by Beneficiary will be applied to the balance due and owing under the Secured Obligations. Trustor also hereby irrevocably assigns to Beneficiary all other contracts related to the Property to the extent assignable

without the consent of a third party. Upon satisfaction of or release of the Secured Obligations under the Loan Documents, Beneficiary shall, upon written request by Trustor, assign to Trustor all of Beneficiary's right, title, and interest in, to and under the Leases, Payments, and other contracts related to the Property and assigned by Trustor to Beneficiary pursuant to this Deed of Trust. The assignments under the paragraph will not cause Beneficiary to be: (a) a mortgagee in possession; (b) responsible or liable for the control, care, management, or repair of the Property or for performing any of the terms, agreements, undertakings, obligations, representations, warranties, covenants, and conditions of the Leases; (c) responsible or liable for any waste committed on the Property by the tenants under any of the Leases or any other parties, for any dangerous or defective condition of the Property, or for any negligence in the management, upkeep, repair, or control of the Property resulting in loss or injury or death, to any tenant, licensee, employee, invitee, or other person; (d) responsible for or under any duty to produce rents or profits; or (e) directly or indirectly liable to Trustor or any other person as a consequence of the exercise or failure to exercise any of the rights, remedies, or powers granted to Beneficiary under this Deed of Trust or to perform or discharge any obligation, duty, or liability of Trustor arising under the Leases.

4. **Grant of License.** Trustor retains a license ("License") to enforce and manage the Leases, collect and retain the Payments as they become due and payable, and enjoy the benefit of the other contracts that were assigned by Trustor to Beneficiary pursuant to this Deed of Trust until the occurrence of a Default (as defined below). Upon a Default, the License will be automatically revoked and Beneficiary may collect and apply the payments pursuant to the terms of this Deed of Trust without notice and without taking possession of the Property. All payments thereafter collected by Trustor will be held by Trustor as trustee under a constructive trust for the benefit of Beneficiary. Trustor hereby irrevocably authorizes and directs the tenants under the Leases to rely upon and comply with any notice or demand by Beneficiary for the payment to Beneficiary of any rental or other sums that may at any time become due under the Leases, or for the performance of any of the tenants' undertakings under the Leases, and the tenants will have no duty to inquire as to whether any Default has actually occurred or is then existing. Trustor hereby relieves the tenants from any liability to Trustor by reason of relying upon and complying with any such notice or demand by Beneficiary. Beneficiary may apply, in its sole discretion, any Payments so collected by Beneficiary against any Secured Obligation under the Loan Documents, whether existing on the date hereof or hereafter arising. Collection of any Payments by Beneficiary will not cure or waive any Default or notice of Default or invalidate any acts done pursuant to such notice. Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court (Trustor hereby irrevocably consenting to the appointment a receiver by a Court of competent jurisdiction), and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of the Property or any part thereof, in its own name sue for or otherwise collect said rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorneys' fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine.

5.**Security Agreement/Fixture Filing.** Trustor grants and assigns to Beneficiary a security interest, to secure payment and performance of all of the Secured Obligations, in all of the following described personal property in which Trustor now or at any time hereafter has any

interest and all proceeds and all products of the following as the following terms are defined in the Uniform Commercial Code for the state where the Property is located ("UCC") (collectively, the "Collateral"): inventory; equipment; general intangibles, including payment intangibles; accounts, including health-care-insurance receivables; chattel paper; commercial tort claims; deposit accounts; documents; instruments; investment property; letter-of-credit rights; letters of credit; goods; farm products; and any other kind or form of personal property located on or used in connection with the Property. As to all of the above-described personal property that is or that hereafter becomes a "fixture" under applicable law, this Deed of Trust is intended to constitute a fixture filing within the UCC. It is acknowledged and agreed that, if this Deed of Trust qualifies as a "construction mortgage" under the applicable UCC, this Deed of Trust will be considered a "construction mortgage" that secures an obligation incurred for the construction of an improvement on land including the acquisition cost of the land.

6. **Obligations of the Trustor.** Trustor agrees to do all of the following:

6.1. Trustor will cause the Secured Obligations to be timely paid and complied with in all respects.

6.2. Trustor will pay prior to delinquency all taxes, assessments, levies, and charges imposed upon the Property by any public authority or upon Beneficiary by reason of its interest in any Secured Obligation or in the Property, or by reason of any payment made to Beneficiary pursuant to any Secured Obligation, except that Trustor will have no obligation to pay taxes that may be imposed from time to time upon Beneficiary and that are measured by and imposed upon Beneficiary's net income.

6.3. Trustor will at all times keep the Property in good order, condition, and repair. Trustor shall not alter the Property except for normal clearing, grading, and construction activities. Trustor shall cause the Property, and all activities on the Property, to comply at all times with all applicable laws. Trustor shall promptly complete any improvements to be constructed on the Property and ensure that all construction on the Property is done in accordance with applicable law in a good and workmanlike manner.

6.4. Trustor will keep the Property insured against loss by fire, flood, theft, and other hazards and risks reasonably associated with the Property due to its type and location. This insurance must be maintained in the amounts and for the periods that Lender requires or is required by applicable law. The insurance carrier providing the insurance may be chosen by the Trustor subject to the Lender's approval, which may not be unreasonably withheld. If the Trustor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Deed of Trust. If Lender determines at any time before the full satisfaction of the Secured Obligations that the Property securing the Secured Obligations is not covered by flood insurance or is covered by flood insurance in an amount less than the amount required by law, the Lender may notify the Trustor that the Trustor should obtain flood insurance at the Trustor's expense. If the Trustor fails to obtain adequate flood insurance that is acceptable to Lender, Lender may purchase flood insurance on the Trustor's behalf. All insurance policies and renewals must be acceptable to Lender and must include a standard "mortgagee clause" and, where applicable, "loss payee clause." The Trustor shall immediately notify the Lender of cancellation or termination of the insurance. Lender may

hold the policies and renewals. If Lender requires, the Trustor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, the Trustor shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by the Trustor. Unless otherwise agreed in writing, all insurance proceeds will be applied to the restoration or repair of the Property or to the Secured Obligations, whether or not then due, at Lender's option. Any application of proceeds to principal will not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Trustor. If the Property is acquired by Lender, the Trustor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to the Lender to the extent of the Secured Obligations immediately before the acquisition.

**7. Due on Sale/Encumbrance.** If the Property or any interest in the Property is sold, transferred, or condemned, including, without limitation, through sale or transfer, directly or indirectly, of a majority or controlling interest in the corporate stock or general partnership interests, limited liability partnership interests, or limited liability company interests of a managing member of Trustor, mortgaged, assigned, further encumbered or leased, whether directly or indirectly, whether voluntarily, involuntarily or by operation of law, without the prior written consent of Beneficiary, then Beneficiary, in its sole discretion, may at any time thereafter declare all Secured Obligations immediately due and payable.

**8. Warranty of Title.** Trustor represents and warrants to Beneficiary that Trustor is the sole owner of good, marketable, and unencumbered title to the Property. Trustor shall immediately discharge any lien not approved by Beneficiary in writing that has or may attain priority over this Deed of Trust. Trustor represents and warrants that Beneficiary shall have no less than a second-lien priority position on the Property.

**9. Damage/Insurance/Condemnation.** Trustor irrevocably, unconditionally, and absolutely assigns to to the Beneficiary all of the following:

9.1. all awards of damages and all other compensation payable directly or indirectly by reason of a condemnation or proposed condemnation for public or private use affecting all or any part of, or any interest in, the Property or Collateral;

9.2. all other claims and awards for damages to, or decrease in value of, all or any part of, or any interest in, the Property or Collateral;

9.3. all proceeds of any insurance policies payable by reason of loss sustained to all or any part of the Property or Collateral; and

9.4. all interest that may accrue on any of the foregoing. Subject to applicable law, and without regard to any requirement contained in this Deed of Trust, Beneficiary may at its discretion apply all or any of the proceeds it receives to its expenses in settling, prosecuting or defending any claim and shall apply the balance, if any, to the Secured Obligations in any order acceptable to Beneficiary, or Beneficiary may release all or any part of the proceeds to Trustor upon any conditions Beneficiary may impose. Beneficiary may commence, appear in, defend, or prosecute any assigned claim or action and may adjust, compromise, settle and collect all claims and awards assigned to Beneficiary, except that in no event

will Beneficiary be responsible for any failure to collect any claim or award, regardless of the cause of the failure, including, without limitation, any malfeasance or nonfeasance by Beneficiary or its employees or agents.

At its sole option, Beneficiary may permit insurance or condemnation proceeds held by Beneficiary to be used for repair or restoration, but may condition such application upon reasonable conditions

**10. Defense and Notice of Losses, Claims and Actions.** At Trustor's sole expense, Trustor shall protect, preserve, and defend the Property and Collateral and title to and right of possession of the Property and Collateral, the security hereof, and the rights and powers of Beneficiary and Trustee hereunder, against all adverse claims. Trustor shall give Beneficiary and Trustee prompt notice in writing of the assertion of any claim, of the filing of any action or proceeding, of any material damage to the Property or Collateral, and of any condemnation offer or action.

**11. Compensation; Exculpation; Indemnification.** Trustor shall pay all statutory Trustee's fees and reimburse Trustee immediately upon demand for expenses in the administration of this trust, including attorneys' fees. To induce Beneficiary to make the Loan, Trustor shall indemnify, defend, and hold Beneficiary and Trustee harmless on demand for, from, and against any liability, loss, costs, damages, and expenses (including attorneys' fees) that Beneficiary or Trustee may sustain in any way related to the Property. This indemnity will survive any foreclosure, trustee's sale, or deed in lieu related to the Property, will benefit any foreclosure purchaser, and will not be subject to any otherwise applicable statutory or contractual anti-deficiency limitation or nonrecourse provision.

**12. Hazardous Materials.**

12.1.     <u>Hazardous Materials</u> means (i) any chemical, material, or substance defined or included in the definition of "hazardous substances," "hazardous materials," "toxic substances," or words of similar import under any Hazardous Materials Laws (as defined below); (ii) any oil, petroleum, flammable substances, explosives, asbestos; or (iii) any other chemical, material or substance which may or could pose a hazard to health or safety. Without limitation of the foregoing, the term "Hazardous Materials" includes all substances, materials, and wastes considered "hazardous waste" under all applicable federal, state, and local laws.

12.2.     Trustor represents and warrants that (i) no Hazardous Materials have been, are, or will be used, generated, stored, or disposed of on, under, or about the Property; and (ii) the Property and all past, present, and future uses of the Property were, are, and will be in compliance with all relevant local, state, and federal laws, rules, regulations, policies, ordinances, court decisions, settlement orders, and consent decrees relating to the protection of the environment on, under, or about the Property (collectively, the "Hazardous Materials Laws"). At Trustor's expense, Trustor shall comply with and will cause any tenants or occupants of the Property to comply with the Hazardous Materials Laws. If any Hazardous Materials are found to exist on, under, or about the Property, Trustor shall at Trustor's expense take all necessary and appropriate remedial action that Beneficiary or any relevant authority will require. Trustor shall immediately advise Beneficiary in writing of any governmental or regulatory communications or proposed or

instituted actions with regard to Hazardous Materials and the Property, and will immediately provide Beneficiary with copies of any written communications to and from the authorities. Upon any default under this Deed of Trust, Beneficiary will have the right, at Trustor's expense, to obtain or require Trustor to obtain an environmental survey or study of the Property from a qualified independent environmental engineer, all to the satisfaction of Beneficiary. To induce Beneficiary to make the Loan secured by this Deed of Trust, Trustor agrees to indemnify, defend, and hold Beneficiary and Trustee harmless on demand for, from, and against any liability, loss, costs, damages, and expenses (including attorneys' fees) that Beneficiary or Trustee may sustain in any way related to any Hazardous Materials on, under, or about the Property.

12.3.    This indemnity will survive any foreclosure, trustee's sale, or deed in lieu of the Property, will benefit any foreclosure purchaser, and will not be subject to any otherwise applicable statutory or contractual anti-deficiency limitation or nonrecourse provision. The indemnity provided in this Deed of Trust for Hazardous Materials is intended to be in addition to, and not in lieu, limitation, or modification of, any separate environmental indemnity contained in any of the other Loan Documents.

**13. Right of Inspection.** Beneficiary, its agents, and employees, may enter the Property at any reasonable time for the purpose of inspecting the Property and Collateral and ascertaining Trustor's compliance with the terms thereof, and regardless of whether or not a default has occurred.

**14. Cumulative Rights and Remedies.** At any time after Default, Beneficiary and Trustee will each have all rights available at law or in equity, including any rights or remedies under any of the Loan Documents, and any rights or remedies provided elsewhere in this Deed of Trust. All such rights and remedies of Beneficiaries are cumulative and non-exclusive.

**15. No Cure or Waiver.** Neither Beneficiary's nor Trustee's nor any receiver's entry upon and taking possession of all or any part of the Property and Collateral, nor any collection of rents, issues, profits, insurance proceeds, condemnation proceeds or damages, other security or proceeds of other security, or other sums, nor the application of any collected sum to any Secured Obligation, nor the exercise or failure to exercise of any other right or remedy by Beneficiary or Trustee or any receiver will cure or waive any breach, Default or notice of default under this Deed of Trust, or nullify the effect of any notice of default or sale (unless all Secured Obligations then due have been paid and performed and Trustor has cured all other Defaults), or impair the status of the security, or prejudice Beneficiary or Trustee in the exercise of any right or remedy, or be construed as an affirmation by Beneficiary of any tenancy, lease or option or a subordination of the lien of or security interests created by this Deed of Trust.

**16. Power to File Notices and Cure Defaults.** Trustor hereby irrevocably appoints Beneficiary and its successors and assigns, as its attorney-in-fact, which agency is coupled with an interest, to prepare, execute and file or record any document necessary to create, perfect, or preserve Beneficiary's security interests and rights in or to any of the Property and Collateral, and upon the occurrence of an event, act or omission which, with notice or passage of time or both, would constitute a Default, Beneficiary may perform any obligation of Trustor hereunder.

**17. Additional Provisions.** This Deed of Trust and the Loan Documents contain the entire agreement of the parties with respect to the matters contemplated herein and supersede all prior

negotiations. The Loan Documents grant further rights to Beneficiary and contain further agreements and affirmative and negative covenants by Trustor that apply to this Deed of Trust and to the Property and Collateral, and such further rights and agreements are incorporated herein by this reference.

18. **Attorneys' Fees.** Trustor agrees to pay all of Lender's costs of collection, exercise of remedies or rights or other assertion of claims, including, but not limited to, attorneys' fees and expert and court costs, whether or not court proceedings are instituted, and, where instituted, whether in district court, appellate court, or bankruptcy court. In addition, Trustor will pay to Trustee all Trustee's fees hereunder and will reimburse Trustee for all expenses incurred in the administration of this trust, including, without limitation, any attorneys' fees.

19. **No Waiver.** No previous waiver and no failure or delay by Beneficiary in acting with respect to the terms of the Deed of Trust or any Loan Document will constitute a waiver of any breach, Default, or failure of condition under the Deed of Trust, Loan Documents, or the obligations secured thereby. A waiver of any term of the Deed of Trust, Loan Documents, or of any of the obligations secured thereby must be made in writing and will be limited to the express written terms of such waiver. In the event of any inconsistencies between the terms of the Note and the terms of any other document related to the Loan evidenced by the Note, the terms of the Note will prevail.

20. **Merger.** No merger will occur as a result of Beneficiary's acquiring any other estate in, or any other lien on, the Property unless Beneficiary expressly and unequivocally consents to a merger in writing.

21. **Successors in Interest.** The terms, covenants, and conditions herein contained will be binding upon and inure to the benefit of the heirs, successors and assigns of the parties hereto.

22. **Governing Law.** The calculation of amounts due under, and the enforcement of, the Secured Obligations, the Note, and the Loan Documents, will be made in under the laws of the state selected in each of the Loan Documents; except, to the extent required by the laws of the state where the Property is located in order for this Deed of Trust to be enforceable, in which case this Deed of Trust will be construed in accordance with the laws of the state where the Property is located. In all cases, the laws of the state where the Property is located will govern the procedures for foreclosure, judicially or non-judicially.

23. **Notices.** Each party giving or making any notice, request, demand, or other communication (each, a "Notice") pursuant to this Deed of Trust must give the Notice in writing and use one of the following methods of delivery, each of which for purposes of this Deed of Trust is a writing: personal delivery, Registered Mail or Certified Mail (in each case, return receipt requested and postage prepaid), nationally recognized overnight courier (with all fees prepaid), facsimile, or email (with a clear notation at the top of the email in conspicuous type indicating that the email constitutes notice under this Deed of Trust with a specific reference to the full title of this Deed of Trust). Any party giving a Notice must address the Notice to the appropriate person at the receiving party (the "Addressee") at the address first set forth above or to another Addressee or another address as designated by a party in a Notice pursuant to this section. Except as provided elsewhere in this Deed of Trust, a Notice is effective only if the party giving the Notice has complied with this section and the Addressee has received the Notice. If the Addressee rejects or otherwise refuses

to accept the Notice, or if the Notice cannot be delivered because of a change in address for which no Notice was given, then the Notice is deemed delivered upon the rejection, refusal, or inability to deliver. If any Notice is received after 5:00 p.m. on a business day where the Addressee is located, or on a day that is not a business day where the Addressee is located, then the Notice is deemed received at 9:00 a.m. on the next business day where the Addressee is located.

**24. Waiver of Marshaling Rights.** Trustor, for itself and for all parties claiming through or under Trustor, and for all parties who may acquire a lien on or interest in the Property hereby waives all rights to have the Property or any other property marshaled upon any foreclosure of the lien of this Deed of Trust or on a foreclosure of any other lien securing the Secured Obligations. Beneficiary will have the right to sell the Property and any or all of said other property as a whole or in separate parcels, in any order that Beneficiary may designate.

**25. Substitute Trustee.** Beneficiary, at its option, may from time to time remove Trustee and appoint a successor or substitute trustee by an instrument recorded in the county in which this Deed of Trust is recorded. Without conveyance of the Property, the successor trustee will succeed to all the title, power, and duties conferred upon the Trustee under this Deed of Trust and by applicable law.

**26. Waivers.** Trustor waives all right of homestead, equity of redemption, and statutory right of redemption and relinquishes all other rights and exemptions of every kind, including, without limitation, a statutory right to an elective share in the Property.

**27. Foreclosure.** Upon default, Beneficiary shall have the option to declare all sums secured hereby immediately due and payable and foreclose upon the Property in any manner provided by law for the foreclosure of mortgages, trust deeds, or security agreements, and Beneficiary shall be entitled to recover in such proceedings all costs and expenses incident thereto, including reasonable attorneys' fees.

**Executed by the Trustor:** Max W. Barber and Sara G. Navarra, Trustees of the MSB Trust dated December 12, 2017, and any amendments thereto

By: _____

Name: Max W. Barber, Trustee of the MSB Trust dated December 12, 2017, and any amendments thereto

On this 22ND day of March, 2022, in the State of Utah, County of Salt Lake, I, the undersigned Notary Public, do hereby certify that Max W. Barber personally appeared before me this day and acknowledged the due execution of the foregoing instrument.

_____
Notary Public

BRENDA S. HOLLIDAY
NOTARY PUBLIC·STATE OF UTAH
COMMISSION# 708883
COMM. EXP. 11-18-2023

## EXHIBIT A

### LEGAL DESCRIPTION

PARCEL 1:

Lot 12, Block 2, YALECREST HEIGHTS, according to the official plat thereof as recorded in the office of the Salt Lake County Recorder.

PARCEL 2:

Lot 8, UPPER YALE THIRD ADDITION, according to the official plat thereof as recorded in the office of the Salt Lake County Recorder, and also commencing at the Southeast corner of said Lot 8; thence South 40.5 feet; thence West 60 feet; thence North 40.5 feet; thence East 60 feet to the point of beginning.

# Statement of Account

**JLA**      **25017a**

SEILER, ANDERSON,
FIFE & MARSHALL, LC

November 25, 2024
Invoice #

2500 North University Ave.
Provo, UT 84604
801-375-1920

Gravity Capital
531 East 770 North
Orem, UT 84097

You may pay Online at rsalawyers.com



———————— (Please Detach this portion and submit with your payment) ————————

In Reference To:   MSB Trust Foreclosure

### Professional Services

|  |  | Hours | Rate | Amount |
|---|---|---|---|---|
| 7/12/2023 JLA | Reviewing documents provided by Steve for MVB trust foreclosure. | 0.40 | 330.00/hr | 132.00 |
| 7/13/2023 JLA | Reviewing MSB trust regarding note and trust deed; work on obtaining foreclosure TSG. | 0.50 | 330.00/hr | 165.00 |
| 8/7/2023 JLA | Telephone call with United West Title regarding TSG. | 0.20 | 330.00/hr | 66.00 |
| 8/8/2023 JLA | Review and respond to email from United West Title regarding TSG; working on foreclosure. | 0.50 | 330.00/hr | 165.00 |
| JLA | Reviewing title report for subject property. | 0.20 | 330.00/hr | 66.00 |
| 8/10/2023 JLA | MSB Trust.  Review TSG; email to Steve. | 0.50 | 330.00/hr | 165.00 |
| 8/17/2023 JLA | Drafting substitution of trustee and notice of default. | 1.10 | 330.00/hr | 363.00 |
| 8/21/2023 JLA | Finalize MSB notice of default; arrange for recording and service. | 1.00 | 330.00/hr | 330.00 |
| 8/24/2023 JLA | Review NOD certified delivery report. | 0.20 | 330.00/hr | 66.00 |
| 11/16/2023 JLA | Telephone call with judgment creditor regarding status of foreclosure. | 0.30 | 330.00/hr | 99.00 |
| 11/21/2023 JLA | Email to Steve regarding status and trustee's sale. | 0.20 | 330.00/hr | 66.00 |
| 11/27/2023 JLA | Drafting MSB trust notice of trustee's sale; arrange for publication and service; email to Steve; arrange for posting by Constable. | 1.50 | 330.00/hr | 495.00 |

Gravity Capital

| Date | | Description | Hours | Rate | Amount |
|------|---|-------------|-------|------|--------|
| 11/28/2023 | JLA | Telephone call with Constable regarding posting notice of trustee's sale. | 0.20 | 330.00/hr | 66.00 |
| | JLA | Working on publishing notice of trustee's sale. | 0.30 | 330.00/hr | 99.00 |
| 12/1/2023 | JLA | Review Constable's proof of service for notice of Trustee's sale. | 0.20 | 330.00/hr | 66.00 |
| 12/4/2023 | JLA | Reviewing certified mail confirmation of delivery; file notice of trustee's sale. | 0.20 | 330.00/hr | 66.00 |
| 12/5/2023 | JLA | Review certified mail delivery notices. | 0.20 | 330.00/hr | 66.00 |
| 12/28/2023 | JLA | Review notice of Max Barber bankruptcy; reviewing automatic stay issues; review previous correspondence. | 0.30 | 330.00/hr | 99.00 |
| 12/29/2023 | SRC | Researched Trusts and how a bankruptcy affects collecting on a promissory note | 0.30 | 195.00/hr | 58.50 |
| | SRC | Researched Trusts and how a bankruptcy affects collecting on a promissory note | 0.50 | 195.00/hr | 97.50 |
| 1/2/2024 | JLA | Further review of Max Barber bankruptcy filing; email to Steve. | 1.00 | 350.00/hr | 350.00 |
| 1/3/2024 | JLA | Review proof of publication for notice of trustee's sale. | 0.20 | 350.00/hr | 70.00 |
| 1/8/2024 | JLA | Prepare for trustee's sale. | 0.30 | 350.00/hr | 105.00 |
| 1/9/2024 | JLA | Travel to and postpone trustee's sale. | 2.20 | 350.00/hr | 770.00 |
| 1/26/2024 | JLA | Telephone call with potential buyer. | 0.20 | 350.00/hr | 70.00 |
| 1/29/2024 | JLA | Review Barber motion to convert BK copy to Steve. | 0.30 | 350.00/hr | 105.00 |
| 2/14/2024 | JLA | Review and respond to email from Steve regarding trustee's sale status. | 0.20 | 350.00/hr | 70.00 |
| 2/20/2024 | JLA | Review bankruptcy notice of Chapter 11; copy to Steve. | 0.20 | 350.00/hr | 70.00 |
| 2/21/2024 | JLA | Telephone call with Steve  regarding bankruptcy status;  notify potential buyer. | 0.20 | 350.00/hr | 70.00 |
| | JLA | Telephone call with potential buyers. | 0.40 | 350.00/hr | 140.00 |
| 2/27/2024 | JLA | Review bankruptcy order setting proof of claim deadline; copy to Steve. | 0.20 | 350.00/hr | 70.00 |

Gravity Capital

| Date | | Description | Hours | Rate | Amount |
|------|--|-------------|-------|------|--------|
| 4/1/2024 | JLA | Prepare new notice of trustee's sale; arrange for service and publishing. | 0.50 | 350.00/hr | 175.00 |
| 4/4/2024 | JLA | Review proof of delivery for notice of trustee's sale. | 0.20 | 350.00/hr | 70.00 |
| 4/15/2024 | JLA | Review and respond to email from junior lien holder regarding foreclosure. | 0.20 | 350.00/hr | 70.00 |
| 4/23/2024 | JLA | Review and respond to email from Steve with updated payoff; email to Jonathan Kirk regarding opening bid. | 0.30 | 350.00/hr | 105.00 |
| 5/1/2024 | JLA | Telephone call with potential buyer. | 0.20 | 350.00/hr | 70.00 |
| 5/6/2024 | JLA | Review and respond to email from Steve regarding continuation of trustee's sale. | 0.20 | 350.00/hr | 70.00 |
| 5/8/2024 | JLA | Travel to and attend trustee's sale; continue sale to June 7. | 2.00 | 350.00/hr | 700.00 |
| 5/9/2024 | JLA | Telephone call with potential purchaser regarding trustee's sale. | 0.20 | 350.00/hr | 70.00 |
| 5/14/2024 | JLA | Review notice of default from University First Federal Credit Union trust deed. | 0.20 | 350.00/hr | 70.00 |
| 6/5/2024 | JLA | Review and respond to email from Steve regarding postponing sale. | 0.20 | 350.00/hr | 70.00 |
| 6/6/2024 | JLA | Preparing new notice of trustee's sale. | 0.20 | 350.00/hr | 70.00 |
| 6/11/2024 | JLA | Prepare new notice of trustee's sale; arrange for service and posting. | 0.70 | 350.00/hr | 245.00 |
| 6/12/2024 | JLA | Working on publishing notice of trustee's sale. | 0.20 | 350.00/hr | 70.00 |
| 6/13/2024 | JLA | Review cancellation of notice of default of UFCU trust deed. | 0.20 | 350.00/hr | 70.00 |
| 7/17/2024 | JLA | Review and respond to email from Steve regarding postponing trustees sale. | 0.20 | 350.00/hr | 70.00 |
| 7/22/2024 | JLA | Telephone call with potential purchaser regarding status of sale. | 0.20 | 350.00/hr | 70.00 |
| | JLA | Prepare document for trustee sale continuance. | 0.20 | 350.00/hr | 70.00 |
| 7/23/2024 | JLA | Travel to and attend trustees sale; continue sale to August 22. | 2.20 | 350.00/hr | 770.00 |

Gravity Capital

Page     4

| | | | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 8/19/2024 | JLA | Draft new notice of trustees sale; arrange for posting and service. | 0.40 | 350.00/hr | 140.00 |
| | JLA | Review and respond to email from Steve regarding rescheduling trustee's sale. | 0.20 | 350.00/hr | 70.00 |
| 8/20/2024 | JLA | Confirm publication for notice of trustees sale. | 0.20 | 350.00/hr | 70.00 |
| 8/21/2024 | JLA | Telephone call with potential buyer regarding new date fore trustee's sale. | 0.20 | 350.00/hr | 70.00 |
| 8/26/2024 | JLA | Review constable's proof of posting and certified mail return received. | 0.30 | 350.00/hr | 105.00 |
| 9/11/2024 | JLA | Review Deseret News proof of publication for trustee's sale. | 0.20 | 350.00/hr | 70.00 |
| 9/20/2024 | JLA | Follow up with Steve regarding status. | 0.20 | 350.00/hr | 70.00 |
| | JLA | Telephone call with Steve regarding trustee's sale issues. | 0.20 | 350.00/hr | 70.00 |
| | JLA | Review and respond to email and telephone call from potential purchaser. | 0.50 | 350.00/hr | 175.00 |
| | JLA | Preparing for trustee's sale; calculating payoff and costs. | 0.30 | 350.00/hr | 105.00 |
| 9/23/2024 | JLA | Travel to trustee's sale; review bankruptcy filing; continue sale to Nov 7; review and respond to email from potential buyer. | 2.50 | 350.00/hr | 875.00 |
| 10/1/2024 | JLA | Review notice of bankruptcy. | 0.20 | 350.00/hr | 70.00 |
| 10/7/2024 | JLA | Review bankruptcy notice regarding proof of claim. | 0.20 | 350.00/hr | 70.00 |
| 11/5/2024 | JLA | Checking bankruptcy docket for status. | 0.20 | 350.00/hr | 70.00 |
| 11/6/2024 | JLA | Review bankruptcy docket; email to Steve regarding canceling trustees sale. | 0.20 | 350.00/hr | 70.00 |
| 11/19/2024 | JLA | Review motion to dismiss bankruptcy; copy to Steve. | 0.50 | 350.00/hr | 175.00 |

For professional services rendered

$9,866.00

Gravity Capital

Page    5

Additional Charges :

| Date | | Description | Amount |
|------|------|-------------|--------|
| 8/10/2023 | JLA | United West Title Insurance Agency - trustee's sale guarantee | 1,918.00 |
| 8/21/2023 | JLA | Mailing fee for Certified Mail (9) of Substitution of Trustee and Notice of Default and Election to Sell Trust Property. | 74.07 |
| 11/28/2023 | JLA | Mailing fee for 10 Certified Mail of Notice of Trustee's Sale. | 82.30 |
| | JLA | Mailing fee for additional Certified Mail. | 8.23 |
| 12/6/2023 | JLA | Service of notice of trustee's sale | 95.00 |
| 1/9/2024 | JLA | Publishing Fee legal notice published in Deseret News | 523.16 |
| 4/1/2024 | PEN | Mailing fee for Notice of Trustee's Sale for ten people/businesses. | 84.10 |
| 4/17/2024 | JLA | Publishing Fee - Deseret News | 523.16 |
| 6/2/2024 | JLA | Publishing Fee - Deseret News legal notice | 523.16 |
| 6/12/2024 | JLA | Mailing fee for Certified Mail to ten people with Notice of Trustee's Sale. | 84.10 |
| 8/27/2024 | JLA | Service of Notice of Trustee's Sale | 130.00 |
| 9/5/2024 | JLA | Publishing Fee - notice of trustee's sale | 469.82 |

| | | |
|---|---|---|
| Total additional charges | | $4,515.10 |
| For professional services rendered | | $14,381.10 |

Accounts receivable transactions

| | | |
|---|---|---|
| 9/19/2023 | Payment - thank you. Check No. 2422 | ($1,518.00) |
| 1/16/2024 | Payment - thank you. Check No. 2440 | ($3,455.60) |
| 4/1/2024 | Payment - thank you. Check No. 2452 | ($2,413.16) |
| 5/13/2024 | Payment - thank you. Check No. 2466 | ($1,027.26) |
| 8/12/2024 | Payment - thank you. Check No. 2485 | ($1,589.10) |
| Total payments and adjustments | | ($10,003.12) |

### Timekeeper Summary

| Name | Hours | Rate | Amount |
|------|-------|------|--------|
| Jared L. Anderson | 20.20 | 350.00 | $7,070.00 |
| Jared L. Anderson | 8.00 | 330.00 | $2,640.00 |
| Sean R Conner | 0.80 | 195.00 | $156.00 |

To: Max Barber <23blackbee@gmail.com>
Cc: Kenyon Dove <kdove@smithknowles.com>

Good Morning,

Attached please find the proposed Order and Stipulation regarding the Motion for Relief for your review and signature. The offered terms are only valid up to today's hearing, and must be signed and returned to our office to be filed with the court prior to today's hearing at 1:30pm.

Mr. Dove has an appointment at 9:00am this morning but will call you afterwards to discuss with you.

Thank you,

Lexie Martin
Bankruptcy Case Manager | Kenyon D. Dove

**smith | knowles**

2225 Washington Boulevard, Suite 200

Ogden, Utah  84401

Ph 801-476-0303 | Fx 801-476-0399

THIS OFFICE COLLECTS DEBTS AND ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE

This transmission (including any attachments) may contain confidential information, privileged material (including material protected by the attorney-client or other applicable privilege), or constitute non-public information. Any use of this information by anyone other than the intended recipient is prohibited. If you have received this transmission in error, please immediately reply to the sender and delete this information from your system. Use, dissemination, distribution, or reproduction of this transmission by unintended recipients is not authorized and may be unlawful.

[Quoted text hidden]

📄 **Order and Stipulation re Motion for Relief.pdf**
61K

---

**Max Barber** <23blackbee@gmail.com>                                                        Wed, May 21, 2025 at 11:43 AM
To: Alexis Martin <amartin@smithknowles.com>
Cc: Kenyon Dove <kdove@smithknowles.com>

Mr Dove,
There are several discrepancies pertaining to this stipulation which I cannot agree to. It would have served us both better to have this stipulation yesterday to go over these points

1. Firstly the amount of 733K is still contested as per my exhibit M.2 Doc 33 in my emergency motion as it shows that Gravity payoff to Cottonwood title on April 24th (while automatic stay waas in play) was 622K. I am still unsure how Gravity has now amassed over 107K in a day as per the motion after REM filing during an automatic stay.
2. Per your own exhibit list in the Debtor's equity worksheet you have listed the Gravity amount as 565,507.31. Again the vast discrepancies between payoff is alarming and has contributed to the current situation. I am happy to continue to negotiate but will not stipulate to 733k with accruing interest and fees.
3. Are you against going forward with the stipulation stating we will set amounts with title?
4. Sarah Navarra cannot sign this because she is not a co-debtor as stated on the bankruptcy petition.
5. Given the events over the last week with the other creditor(hybrid) I cannot afford to use any information to continue to paint a false narrative from the proposed stipulation.

Please give me a call asap.

Thank you,

Max
[Quoted text hidden]

---

**Kenyon Dove** <kdove@smithknowles.com>                                                     Wed, May 21, 2025 at 12:31 PM
To: Max Barber <23blackbee@gmail.com>, Alexis Martin <amartin@smithknowles.com>

What if we just stipulate to in rem relief today and you agree to dismiss the motion as to my clients and I and we'll agree to schedule the sale sometime after July 7th.  That will give you time to sell the property and still leaves the question open to resolve the total amount owed in advance of July 7th.  Let me know ASAP.  I think I can get my clients to do that for todays purposes.

[Quoted text hidden]

---

**Alexis Martin** <amartin@smithknowles.com>                                                  Wed, May 21, 2025 at 1:04 PM
To: Max Barber <23blackbee@gmail.com>
Cc: Kenyon Dove <kdove@smithknowles.com>

Hello Mr. Barber,

Attached please find the attached updated Stipulation. Mr. Dove will be calling you shortly to discuss.

Thank you,

Lexie Martin
Bankruptcy Case Manager | Kenyon D. Dove



smith | knowles

2225 Washington Boulevard, Suite 200

Ogden, Utah  84401

Ph 801-476-0303 | Fx 801-476-0399

**THIS OFFICE COLLECTS DEBTS AND ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE**

This transmission (including any attachments) may contain confidential information, privileged material (including material protected by the attorney-client or other applicable privilege), or constitute non-public information. Any use of this information by anyone other than the intended recipient is prohibited. If you have received this transmission in error, please immediately reply to the sender and delete this information from your system. Use, dissemination, distribution, or reproduction of this transmission by unintended recipients is not authorized and may be unlawful.

**From:** Max Barber <23blackbee@gmail.com>
**Sent:** Wednesday, May 21, 2025 11:43 AM
**To:** Alexis Martin <amartin@smithknowles.com>

[Quoted text hidden]

[Quoted text hidden]

📄 **Updated Stipulation.pdf**
23K

**Max Barber** <23blackbee@gmail.com>                                                    Wed, May 21, 2025 at 1:22 PM
To: Alexis Martin <amartin@smithknowles.com>
Cc: Kenyon Dove <kdove@smithknowles.com>

See agreed Stipulation .... Max

[Quoted text hidden]

📄 **Agree Stipualtion Gravity - Barber.pdf**
146K

**Kenyon Dove** <kdove@smithknowles.com>                                                 Wed, May 21, 2025 at 1:35 PM
To: Max Barber <23blackbee@gmail.com>, Alexis Martin <amartin@smithknowles.com>

The hearing will be held online via Zoom – I've included the login information below, the court recommends logging on at least 10 minutes prior to make sure you are able to log in okay.

**JOIN NOW**

Meeting ID: **160 3007 6397**

Passcode/Participant ID: **6001201**

Or you can call in at 1-669-254-5252

[Quoted text hidden]

**Kenyon Dove** <kdove@smithknowles.com>                                                 Wed, May 21, 2025 at 3:25 PM
To: Max Barber <23blackbee@gmail.com>, Alexis Martin <amartin@smithknowles.com>

Hello Mr. Barber-

Thank you for your work on reaching the stipulation today.  Will you please check with your title company to see if it is sufficient for Gravity Capital to provide a current payoff to resolve your concern about the amount of Gravity Capital's lien for underwriting purposes?  I am concerned about recording an amended deed of trust affecting the priority of my client's lien on the properties.

I've requested a current more detailed payoff from my clients that I will forward to you to start the discussion regarding the payoff to my client.  Can you provide something from the title company to verify that they are assisting with the closing when it happens?

Thank you,

Kenyon

Kenyon D. Dove

**SMITH KNOWLES, PLLC**

2225 Washington Blvd., Ste 200

Ogden, Utah 84401

801-476-0303

---

**From:** Max Barber <23blackbee@gmail.com>
**Sent:** Wednesday, May 21, 2025 1:23 PM

[Quoted text hidden]

[Quoted text hidden]

---

**Alexis Martin** <amartin@smithknowles.com>                           Thu, May 22, 2025 at 8:38 AM
To: Max Barber <23blackbee@gmail.com>
Cc: Kenyon Dove <kdove@smithknowles.com>

Good Morning Mr. Barber,

Attached please find a copy of the proposed Order on the Stipulation for your review and signature. Once we receive the signed Order back we can file it with the court.

[Quoted text hidden]

 **Proposed Order.pdf**
321K

---

**Max Barber** <23blackbee@gmail.com>                           Thu, May 29, 2025 at 8:19 PM
To: Alexis Martin <amartin@smithknowles.com>
Cc: Kenyon Dove <kdove@smithknowles.com>

Hi Kenyon,

Wanted to get back to you earlier today.

Reconfirming as previous agreed

1. Amend the county recorder record lien amount to the $322,000 to reflect the original loan amount not the $1.2 million as it is today.

2. Day of last hearing we discussed you would go back to your clients to get a clear accounting as how they came to the balance, any further insure on that.

Ready to go

Thank you

Max

[Quoted text hidden]

---

**Alexis Martin** <amartin@smithknowles.com>                           Fri, May 30, 2025 at 10:27 AM
To: Max Barber <23blackbee@gmail.com>
Cc: Kenyon Dove <kdove@smithknowles.com>

Good Morning Mr. Barber,

As to the items you are reconfirming, yes it #1 regarding amending the lien is included in the Stipulation so once finalized we can review amending that with Gravity. As to #2, it is not enumerated in the stipulation, but we will contact Gravity regarding a clear accounting.

Just to confirm, do you approve us to affix your electronic signature to the Order so that we can get it finalized with the court. We have to have specific written consent before we can do so, and the court will not approve the order without your signature. If not, we plan on the hearing Monday going forward. Please let me know as soon as possible.

[Quoted text hidden]

---

**Max Barber** <23blackbee@gmail.com>                           Fri, May 30, 2025 at 12:22 PM
To: Alexis Martin <amartin@smithknowles.com>
Cc: Kenyon Dove <kdove@smithknowles.com>

Hi Kenyon

Will amend into the stipulation correctly for your review this afternoon

Regards,

Max

[Quoted text hidden]

*Submitted by:*
Kenyon D. Dove (9868)
SMITH KNOWLES, PLLC
2225 Washington Boulevard, Suite 200
Ogden, Utah 84401
Telephone:       (801) 476-0303
Telefax:          (801) 476-0399
Email:            defaultservices@smithknowles.com

*Attorneys for Gravity Capital, LLC*

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In Re: | Bankruptcy No. 25-21749 |
| | Chapter 13 |
| MAX WARREN BARBER, | Judge: Kevin R. Anderson |
| Debtor. | **[Filed Electronically]** |

---

### ORDER RE: MOTION FOR IN REM RELIEF FROM THE AUTOMATIC STAY
### AND THE CO-DEBTOR STAY

---

Gravity Capital, LLC ("Creditor"), a secured creditor of the Debtor, a secured creditor of

the Debtor, Max Warren Barber as Trustee of the MSB Trust dated December 12, 2017

("Debtor"), and Co-Debtor, Max Warren Barber (Debtor and Co-Debtor collectively referred to

herein as the "Debtors"), having presented its Motion for *in rem* Relief from the Automatic Stay

and the Co-Debtor Stay, based upon the Stipulation of the parties, attached hereto as Exhibit "A"

and incorporated herein by this reference, Creditor's Motion is granted pursuant to the terms of

the Stipulation as follows:

1. Creditor is a secured creditor of the Debtors, secured by real properties, in which the
   Debtor and Co-Debtor claim some interest, located at 1028 South 1900 East, Salt Lake
   City Utah and 1836 East Yale, Salt Lake City, Utah 84108 (hereinafter referred to jointly
   as the "Property"), and more particularly described as follows:

   > PARCEL 1: LOT 12, BLOCK 2, YALECREST HEIGHTS, ACCORDING TO
   > THE OFFICIAL PLAT THEREOF AS RECORDED IN THE OFFICE OF THE
   > SALT LAKE COUNTY RECORDER. PARCEL NO. 16-09-427-010-0000.

   > PARCEL 2: LOT 8, UPPER YALE THIRD ADDITION, ACCORDING TO THE
   > OFFICIAL PLAT THEREOF AS RECORDED IN THE OFFICE OF THE SALT
   > LAKE COUNTY RECORDER, AND ALSO COMMENCING AT THE
   > SOUTHEAST CORNER OF SAID LOT 8; THENCE SOUTH 40.5 FEET;
   > THENCE WEST 60 FEET; THENCE NORTH 40.5 FEET; THENCE EAST 60
   > FEET TO THE POINT OF BEGINNING. PARCEL NO. 16-09-429-005-0000.

2. Gravity Capital, LLC is hereby granted *in rem* Relief from the Automatic Stay and Co-
   Debtor Stay as to the Property in favor of Gravity Capital, LLC only, pursuant to 11 USC
   362(d)(4).

3. Any Trustee's Sale set hereafter will be held after July 7, 2025.

4. Parties agree to discuss in good faith the final payoff amount due prior to July 7, 2025.

5. The Automatic Stay and Co-Debtor Stay will also be lifted and applied to any bifurcation
   or conversion of this case from one chapter to another as to Gravity Capital, LLC.

6. The fourteen-day stay following entry of this Order Granting Relief, as provided by
   Bankruptcy Rule 4001(a)(3), should be waived.

7. Additionally, Debtor's Emergency Motion for Sanctions, Injunctive Relief, and
   Expungement of Wrong Liens for Violations of the Automatic Stay, Bad Faith Conduct,
   Willful Interference with Property of the Estate, and Abuse of Process, and any claims

related thereto are hereby dismissed with prejudice as to Gravity Capital, LLC, its officers

and agents including Dave Knudsen, Attorney Kenyon D. Dove, and Smith Knowles,

PLLC, in accordance with the Stipulation of the Parties.

8.  The recorded lien shall be amended to reflect the correct principal and/or balance owed.

The Automatic Stay shall remain in effect for all parties except Gravity Capital, LLC to

sell the properties, effective as of July 7, 2025.

9.  The Debtor and Co-Debtor identified herein are Max W. Barber and the MSB Trust.

---

**END OF DOCUMENT**

## DESIGNATION OF PARTIES TO BE SERVED

Service of the foregoing **ORDER RE: MOTION FOR IN REM RELIEF FROM THE AUTOMATIC STAY AND THE CO-DEBTOR STAY** shall be served to the parties and in the manner designated below:

**By Electronic Service:** I certify that the parties of record in this case as identified below, are registered CM/ECF users and will be served notice of entry of the foregoing Order through the CM/ECF system:

- **Darwin H. Bingham**    dbingham@scalleyreading.net, cat@scalleyreading.net
- **Lon Jenkins tr**    ecfmail@ch13ut.org, lneebling@ch13ut.org
- **Jonathan D. Kirk**    ecf@kirklawutah.com, jonathan@kirklawutah.com
- **United States Trustee**    USTPRegion19.SK.ECF@usdoj.gov
- **Aaron M. Waite**    aaronmwaite@agutah.gov

**By U.S. Mail Service** – In addition to the parties of record receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed R. Civ. P. 5(b):

| | |
|---|---|
| *Debtor* | *Co-Debtor/Borrower* |
| **Max Warren Barber** | **Sara G. Navarra** |
| 1028 South 1900 East | **Trustee of the MSB Trust** |
| Salt Lake City, UT 84108 | 1028 South 1900 East, |
| | Salt Lake City, UT 84108 |
| *Debtor* | |
| **Max Warren Barber** | *Co-Debtor/Borrower* |
| 1836 E Yale Ave | **Sara G. Navarra** |
| Salt Lake City, UT 84108 | **Trustee of the MSB Trust** |
| | 1836 East Yale, |
| | Salt Lake City, UT 84108 |

/s/ Kenyon D. Dove
Attorney at Law

# Exhibit "A"
## (Stipulation)

*Submitted by:*
Kenyon D. Dove (9868)
SMITH KNOWLES, PLLC
2225 Washington Boulevard, Suite 200
Ogden, Utah 84401
Telephone: (801) 476-0303
Telefax: (801) 476-0399
Email: defaultservices@smithknowles.com

*Attorneys for Gravity Capital, LLC*


## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH

Bankruptcy No. 25-21749
Chapter 13
Judge: Kevin R. Anderson

In Re:

MAX WARREN BARBER, Debtor.    **[Filed Electronically]**


### STIPULATION RE: MOTION FOR *IN REM* RELIEF FROM THE AUTOMATIC STAY AND THE CO-DEBTOR STAY


Gravity Capital, LLC ("Creditor"), a secured creditor of the Debtor, a secured creditor of the Debtor, Max Warren Barber as Trustee of the MSB Trust dated December 12, 2017 ("Debtor"), and Co-Debtor, Max Warren Barber (Debtor and Co-Debtor collectively referred to herein as the "Debtors"), having presented its Motion for *in rem* Relief from the Automatic Stay and the Co-Debtor Stay, and Debtors, based upon an agreement between the parties, by and through their respective attorneys of record, agree the Motion should be granted pursuant to the terms outlined in this Stipulation as follows:

1. Creditor is a secured creditor of the Debtors, secured by real properties, in which  the Debtor and Co-Debtor claim some interest, located at 1028 South 1900 East, Salt Lake City Utah and 1836 East Yale, Salt Lake City, Utah 84108 (jointly referred to the "Property"), and more particularly described as follows:

> PARCEL 1: LOT 12, BLOCK 2, YALECREST HEIGHTS, ACCORDING TO THE OFFICIAL PLAT THEREOF AS RECORDED IN THE OFFICE OF THE SALT LAKE COUNTY RECORDER. PARCEL NO. 16-09-427-010-0000.

> PARCEL 2: LOT 8, UPPER YALE THIRD ADDITION, ACCORDING TO THE OFFICIAL PLAT THEREOF AS RECORDED IN THE OFFICE OF THE SALT LAKE COUNTY RECORDER, AND ALSO COMMENCING AT THE SOUTHEAST CORNER OF SAID LOT 8; THENCE SOUTH 40.5 FEET; THENCE WEST 60 FEET; THENCE NORTH 40.5 FEET; THENCE EAST 60 FEET TO THE POINT OF BEGINNING. PARCEL NO. 16-09-429-005-0000.

2. Debtor stipulates to immediate in rem Relief from the Automatic Stay and Co-Debtor Stay in favor Gravity Capital, LLC.

3. Gravity Capital, LLC agrees that any Trustee's Sale set hereafter will be held after July 7, 2025.

4. Parties agree to discuss in good faith the final payoff amount due prior to July 7, 2025.  5. The Automatic Stay and Co-Debtor Stay will also be lifted and applied to any bifurcation  or conversion of this case from one chapter to another.

6. Parties also agree that the fourteen-day stay following entry of an Order Granting Relief, as provided by Bankruptcy Rule 4001(a)(3), should be waived.

7. Additionally,  Debtor hereby releases, waives and dismisses with prejudice his Emergency Motion for Sanctions, Injunctive Relief, and Expungement of Wrong Liens for Violations of the Automatic Stay, Bad Faith Conduct, Willful Interference with Property of the

Estate, and Abuse of Process, and any claims related thereto as to Gravity Capital, LLC,

its officers and agents including Dave Knudsen, Attorney Kenyon D. Dove, and Smith

Knowles, PLLC.

### END OF DOCUMENT

Agreed and approved as to form and substance:    21st Day May 2025

_S_ Max W. Barber

_____

Max Warren Barber, as Trustee and Individually
*Debtor/Co-Debtor*

Stipulation re: Motion for *in rem* Relief from the Automatic Stay
And the Co-Debtor Stay

In Re: Barber; Case No. 25-21749 Page **3** of 4

## CERTIFICATE OF SERVICE
## BY NOTICE OF ELECTRONIC FILING (CM/ECF)

    I hereby certify that on the __30th__ day of May, 2025, I electronically filed the foregoing,
**STIPULATION RE: MOTION FOR IN REM RELIEF FROM THE AUTOMATIC STAY
AND THE CO-DEBTOR STAY**, with the United States Bankruptcy Court for the District of
Utah by using the CM/ECF system. I further certify that the parties of record in this case, as
identified below, are registered CM/ECF users and will be served through the CM/ECF system:

· **Darwin H. Bingham** dbingham@scalleyreading.net, cat@scalleyreading.net ·
**Lon Jenkins tr** ecfmail@ch13ut.org, lneebling@ch13ut.org
· **Jonathan D. Kirk** ecf@kirklawutah.com, jonathan@kirklawutah.com ·
**United States Trustee** USTPRegion19.SK.ECF@usdoj.gov
· **Aaron M. Waite** aaronmwaite@agutah.gov

## CERTIFICATE OF SERVICE
## BY MAIL, OTHER

I hereby certify that on the  30th   day of May, 2025, I caused to be served a true and  correct
copy of the foregoing, **STIPULATION RE: MOTION FOR IN REM RELIEF  FROM
THE AUTOMATIC STAY AND THE CO-DEBTOR STAY**, as follows:

Mail Service – By regular first-class United States mail, postage fully pre-paid, addressed to:

1028 South 1900 East,  Salt
Lake City, UT 84108

*Debtor*
**Max    Warren    Barber**
1028   South   1900   East
Salt Lake City, UT 84108

*Co-Debtor/Borrowe*
*r* **Sara G. Navarra**
**Trustee of the MSB Trust**
1836 East Yale,
Salt Lake City, UT 84108

*Debtor*
**Max Warren Barber**
1836 E Yale Ave
Salt Lake City, UT 84108

*Co-Debtor/Borrowe*
*r* **Sara G. Navarra**
**Trustee of the MSB Trust**

/s/ Kenyon D. Dove
Attorney at Law

Stipulation re: Motion for *in rem* Relief from the Automatic Stay
And the Co-Debtor Stay

In Re: Barber; Case No. 25-21749 Page **4** of **4**

## Addendum to Stipulation Re: Motion for In Rem Relief from the Automatic Stay and the
## Co-Debtor Stay

The parties hereby agree to the terms of the original Stipulation, with the incorporation of the
following amendments as of this date:

1. **Lien Amendment and Automatic Stay:** The recorded lien shall be amended to reflect the
   correct principal and/or balance owed. The Automatic Stay shall remain in effect for all
   parties except for Gravity Capital, LLC to sell the properties, effective as of July 7, 2025.

2. **Debtor Identification:** The Debtor identified herein is Max W. Barber and the MSB Trust.

3. **Waiver of 14-Day Stay:** The fourteen-day stay following entry of an Order Granting Relief shall be lifted immediately upon the correction of the lien amount.

All other terms and conditions of the original Stipulation Re: Motion for In Rem Relief from the Automatic Stay and the Co-Debtor Stay remain in full force and effect.

Agreed and approved as to form and substance:

_s_Max Barber

_____
Max Warren Barber, as Trustee and Individually
*Debtor/Co-Debtor*