Andrew R. Welch, #14028
Andrew J. Schuman, # 20370
**LEWIS BRISBOIS BISGAARD & SMITH, LLP**
6550 S Millrock Dr., Ste. 200
Salt Lake City, Utah 84121
Telephone: (801) 251-7424
Email: andrew.welch@lewisbrisbois.com
Email: andrew.schuman@lewisbrisbois.com;

*Attorneys for Defendant Jared L. Anderson*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MAX WARREN BARBER, individually and as Trustee of the MSB TRUST, <br><br>          Plaintiff, <br><br> vs. <br><br> DAVID KNUDSON, an individual, et al. <br><br>          Defendants. | **MOTION TO DISMISS, OR ALTERNATIVELY, FOR SUMMARY JUDGMENT** <br><br> Case No.: 2:25-cv-00681-HCN <br><br> Judge: Hon. Howard C. Nielson, Jr. <br><br> Magistrate Judge: Hon. Dustin B. Pead |

Pursuant to Fed. R. Civ. P. 7, 8, 12 and 56, as well as DUCivR 7-1 and 56-1, Defendant Jared L. Anderson ("Anderson"), by and through his counsel of record Andrew R. Welch and Andrew J. Schuman of the law firm Lewis Brisbois Bisgaard & Smith, LLP, hereby submits this Motion to Dismiss, or Alternatively, for Summary Judgment (the "Motion").

### RELIEF REQUESTED AND GROUNDS

Anderson moves to dismiss with prejudice all claims asserted against him in Plaintiff's First Amended Complaint for Injunctive and Other Relief (the "FAC") under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. Plaintiff's FAC fails as a matter of law because (1) the subject Properties (defined, *infra*) were never part of the bankruptcy estate; (2) the foreclosure and Trustee's Deeds were authorized by a

recorded *in rem* stay-relief order and binding stipulations; and (3) each count asserted against Anderson rest exclusively on the failed premise of a wrongful foreclosure or is independently deficient as to required elements and fair notice pleading.

For ease of reference due to the numerous causes of action alleged and the large number of parties, a table is set forth below that identifies the causes of actions against Anderson, the parties included in the cause of action, and a brief dispositive response.

| (#) Cause of Action | Defendants Named | Brief Dispositive Response |
|---|---|---|
| II. Declaratory Judgment | All Defendants | Fails because the Properties were not estate property as of the petition date and the foreclosure was authorized by the *in rem* order. |
| III. Willful Violation of Automatic Stay | All Defendants | This Court lacks subject matter jurisdiction; core proceedings belong in bankruptcy court; alternatively fails on merits: Properties not estate property; *in rem* order terminated stay as to these Properties and was recorded; state-court rulings preclude contrary assertions. |
| IV. RICO Act (18 U.S.C. § 1962(c)) | Individual Defendants: David Knudson, Jamis Johnson, Adrian Johnson, Pace Johnson, Anderson, Salas, S.R. Johnson, S.S. Johnson, Jorgensen, D'O, Gardner, Short | Fails Rules 8 and 9(b) for collective pleading, lack of particularity, and lack of pled racketeering pattern/predicates; premised on authorized foreclosure |
| V. RICO Conspiracy (18 U.S.C. § 1962(d)) | All Defendants | Fails Rules 8 and 9(b) for collective pleading, lack of particularity, and for lack of pled racketeering pattern/predicates; premised on authorized-foreclosure |
| VIII. FDCPA | All Defendants | Fails as a matter of law as FDCPA is inapplicable, allegations as to Anderson are collective and conclusory |
| IX. Wrongful Foreclosure | Knudson, Gravity Entities, Anderson | Fails because foreclosure authorized under *in rem* order; Properties not estate property; state court confirmed purchaser's status and rejected "void ab initio" claim. |

| X. Quiet Title | All Defendants | Fails because Anderson claims no adverse interest; he acted solely as trustee and took no title or equity. |
|---|---|---|
| XI. Slander of Title | All Defendants | Fails for lack of falsity and malice; Anderson acted in good faith pursuant to order/stipulation and counsel confirmation; no evidence of malice. |
| XII. Civil Conspiracy | All Defendants | Fails Rules 8 and 9(b) for collective pleading, lack of particularity, no viable underlying tort. |
| XV. Tortious Interference | All Defendants | Fails because foreclosure was lawful; no independent wrongful conduct pled against Anderson. |
| XVII. Unjust Enrichment | All Defendants | Fails because Anderson received no title/equity or personal benefit; acted only as trustee; Trustee's Deeds show no retention by Anderson |

Because the FAC is meritless, improperly pled, and imposes unnecessary legal expenses, Mr. Anderson is entitled to dismissal with prejudice and an award of his attorney fees and costs under Utah Code Ann. § 78B-5-825 and the subject Trust Deed, as well as such other relief as the Court deems just and proper under the circumstances.

## STATEMENT OF FACTS

1.      Plaintiff filed his FAC in this matter on September 17, 2025. *See* Dkt. No. 17.

2.      The FAC purports to allege claims for relief against Mr. Anderson, as follows: (1) Count II: Declaratory Judgment; (2) Count III: Willful Violation of the Automatic Stay; (3) Count VI: Violation of the RICO Act; (4) Count V: Conspiracy to Violate RICO; (5) Count VIII: Violation of the FDCPA; (6) Count IX: Wrongful Foreclosure; (7) Count X: Quiet Title; (8) Count XI: Slander of Title; (9) Count XII: Civil Conspiracy; (10) Count XV: Tortious Interference with Economic Relations; and (11) Count XVII: Unjust Enrichment. *See generally id.*

3.      Of the 118 numbered allegations it contains, Plaintiff's FAC includes the following allegations directed to Mr. Anderson:

> 21.  Defendant JARED L. ANDERSON ("Anderson") is an individual residing in Utah who acted as successor trustee and knowingly conducted the foreclosure sale in violation of the automatic stay.
>
> 52.  On July 22, 2025, with full knowledge of the stay, Defendants willfully proceeded with the foreclosure sale. Defendants present at the auction (see Ex V), including Jamis Johnson and Adrian Johnson, were personally informed of the active automatic stay before the sale commenced. Despite this direct, contemporaneous notice, they and Defendant Anderson knowingly chose to proceed. This action was void ab initio and without legal effect.
>
> 57.  On July 23, 2025, Defendant Anderson knowingly used the U.S. Mail to cause the void Trustee's Deed to be recorded, creating a cloud on Plaintiffs title.

FAC, ¶¶ 21, 52, & 57 [Dkt. No. 17].

4.  Although Mr. Anderson is mentiotned by name in only these three paragraphs, each of the claims enumerated above—Counts II, III, V, VIII, X, XI, XII, XV, and XVII—are asserted "against all Defendants." *Id.* ¶¶ 69 (Count II), 74 (Count III), 83 (Count V), 94 (Count VIII), 99 (Count X), 101 (Count XI), 104 (Count XII), 111 (Count XV), and 117 (Count XVII).

## STATEMENT OF UNDISPUTED MATERIAL FACTS

5.  This matter arises from a foreclosure sale of certain real properties located at 1028 South 1900 East, Salt Lake City, Utah 84108 ("1028 Property") and 1836 Yale Ave S., Salt Lake City, UT 84108 ("Yale Ave Property" and, together with the 1028 Property, the "Properties"). *See* Declaration of Jared L. Anderson ("Anderson Decl."), ¶¶ 1–3, filed concurrently herewith.

6.  On or around March 22, 2022, Max W. Barber and Sara G. Navarra, Trustees of the MSB Trust dated December 12, 2017 ("MSB Trust"), executed an Open-End Promissory Note ("Promissory Note") for a maximum principal balance of $1,200,000 in favor of Gravity Capital, LLC ("Gravity Capital"), with an initial advance amount of $332,000.00 (the "Loan"). Anderson Decl., ¶ 4.

7. The Loan was secured by the Properties, against which a Deed of Trust executed by the MSB Trust was recorded on March 23, 2022 as Entry No. 13917256 in Book 11320 at Page 2591 in the official records of the Salt Lake County Recorder's Office (the "Trust Deed"). MSB Trust is identified in the Trust Deed as the Trustor, Gravity Capital is the Beneficiary and Kyle Fielding was the Trustee. Anderson Decl., ¶ 5, Ex. "B".

8. MSB Trust defaulted on its obligations under the Promissory Note by failing to pay one or more regularly scheduled payments before its due date. *Id.* at ¶ 6.

9. On August 18, 2023, Mr. Anderson substituted for Mr. Fielding as Trustee under the Trust Deed, which substitution was recorded on August 21, 2023, as Entry No. 14143006, Book 11439, Page 6012 with the Salt Lake County Recorder's Office. *Id.* at ¶ 7, Ex. "C".

10. On August 21, 2023, Mr. Anderson, as Substituted Trustee, recorded that certain Notice of Default and Election to Sell Trust Property ("NOD"), giving notice of MSB Trust's default and trustee's election to sell the Properties to satisfy the obligations secured thereby. *Id.* at ¶ 8, Ex. "D".

11. Following the 90-day statutory period, Mr. Anderson served Notices of Trustee's Sale, setting the date and time for the foreclosure sale of the Properties as January 9, 2024, at 9:30 am. *Id.* at ¶ 9, Ex. "E".

12. In an apparent effort order to forestall the foreclosure, Mr. Barber filed multiple bankruptcy petitions in the United States Bankruptcy Court for the District of Utah, including on: December 14, 2023 (Case No. 2:2023bk25756 – closed on April 8, 2024), February 1, 2024 (2:2024bk20418 – closed on May 9, 2024), April 2, 2025 (Case No. 2:2025bk21749), and October 17, 2025 (Case No. 2:2025bk26244). *Id.* at ¶ 10, Ex. "F".

13.     Given the serial bankruptcy filings, Mr. Anderson prepared and served at least six (6) separate Notices of Trustee's Sale, the final notice dated June 16, 2025 which set the date and time of the foreclosure sale as July 22, 2025, at 9:30 am. Anderson Decl., ¶ 11, Ex. "G".

14.     Given the serial bankruptcy filings precipitated by Plaintiff, Gravity Capital, on the one hand, and Max Warren Barber, both individually and as Trustee of the MSB Trust, on the other hand, entered into a written stipulation dated May 21, 2025 in the Chapter 13 bankruptcy proceeding initiated on April 2, 2025 (Case No. 2:2025bk21749) (hereinafter the "April 2025 Chapter 13"), entitled "Stipulation Re: Motion for In Rem Relief from the Automatic Stay and the Co-Debtor Stay (Docket No. 47)" (hereafter, the "Stipulation"). Anderson Decl., ¶ 12, Ex. "H".

15.     In the Stipulation, Gravity Capital is identified as the "Creditor," the MSB Trust is identified as the "Debtor" and Max Warren Barber is identified as a "Co-Debtor." *Id.* at ¶ 13.

16.     Paragraph 1 of the parties' Stipulation establishes that "Creditor is a secured creditor of the Debtors, secured by real properties, in which the Debtor and Co-Debtor claim some interest," including the subject Properties. *Id.*

17.     Paragraph 2 of the parties' Stipulation provides that "Debtor stipulates to immediate in rem Relief from the Automatic Stay and Co-Debtor Stay in favor [of] Gravity Capital, LLC," and further provides that "any Trustee's Sale set hereafter will be held after July 7, 2025." *Id.* at ¶ 14.

18.     Paragraph 5 of the parties' Stipulation provides that "[t]he Automatic Stay and Co-Debtor Stay will also be lifted and applied to any bifurcation or conversion of this case from one chapter to another as to Gravity Capital, LLC." *Id.* at ¶ 15.

19.     On June 11, 2025, the Court in the April 2025 Chapter 13 entered its Order Approving Stipulation Re: Motion for In Rem Relief from the Automatic Stay and the Co-Debtor Stay (Docket No. 47) (the "In Rem Order"), wherein it approved the parties' stipulation in full. *Id.* at ¶ 16, Ex. "I".

20.     In conjunction with their Stipulation, the parties submitted a proposed order, which was ultimately not entered by the Court, but which provided that "[t]he recorded lien [an apparent reference to the Trust Deed] shall be amended to reflect the correct principal and/or balance owed." The proposed order further states that "[t]he Automatic Stay shall remain in effect for all parties except Gravity Capital, LLC to sell the properties, effective as of July 7, 2025." Anderson Decl., ¶ 17, Ex. "J".

21.     On June 10, 2025, David Knudson, President of Gravity Capital, executed and, on June 17, 2025, recorded with the Salt Lake County Recorder's Office as Entry No. 14398969, Book 11579, Page 5965 a Scrivener's Affidavit, wherein Gravity Capital clarified that "the Deed of Trust secures a resolving line of credit (an open-end loan) with a **maximum loan amount of $1,200,000**" and that there was an "initial advance under the Note . . . in the amount of $332,000.00." The Scrivener's Affidavit purports to amend the definition of "Loan" as set forth in Paragraph 1.3 of the Trust Deed, consistent with the parties' unsigned proposed order. *Id.* at ¶ 18, Ex. "K".

22.     On June 17, 2025, Gravity Capital caused the In Rem Order to be recorded against the Properties by filing it with the Salt Lake County Recorder's Office as Entry No. 14398970, Book 11579, Page 5967. *Id.* at ¶ 19, Ex. "L".

23.    On July 8, 2025, Mr. Barber caused a bankruptcy petition to be filed for the MSB Trust (Case No. 2:2025bk23863) (hereafter, the "Subject Bankruptcy"). *Id.* at ¶ 20, Ex. "M".

24.    At the time the Subject Bankruptcy was initiated, both Properties were titled in GSE Global LLC, a separate non-debtor entity. *Id.* at ¶ 21, Ex. "N".

25.    On July 21, 2025, Mr. Barber caused a Warrante [sic] Deed to be executed, purporting to convey the Properties from GSE Global LLC to Max W. Barber, as Trustee of the MSB Trust. Anderson Decl., ¶ 22, Ex. "O".

26.    Consistent with the June 16, 2025, Notice of Trustee's Sale, the Properties were sold at public auction at the stairs of the entrance of the Third Judicial District Court on July 22, 2025 at 9:30 am. *Id.* at ¶ 23.

27.    The day before the trustee's sale, Steve Skirvin of Skirvin Law PLLC provided Mr. Anderson a copy of the In Rem Order via email and "confirm[ed] that per the attached order, the automatic stay does not apply to [MSB Trust or Mr. Barber's] properties regardless of this new bankruptcy filing," a reference to the Subject Bankruptcy. *Id.* at ¶ 24, Ex. "P".

28.    Relying on the language of the In Rem Order and Mr. Skirvin's written confirmation, Mr. Anderson conducted the trustee's sale of the Properties on July 22, 2025. *Id.* at ¶ 25.

29.    On July 23, 2025, Mr. Anderson executed two Trustee's Deeds, conveying the Properties to the successful bidders at the public auction. Mr. Anderson did not mail the Trustee's Deeds to the Salt Lake County Recorder's Office for recordation, but rather hand delivered them to Dave Knudson, a principal of Gravity Capital. *Id.* at ¶ 26, Ex. "Q".

30.     As demonstrated by the Trustee's Deeds, Mr. Anderson did not receive, acquire, or retain any ownership title, or equity in the Properties, and at no time did he accept or retain the same. *Id.* at ¶ 27.

**A.     Post-Foreclosure Eviction Suit.**

31.     On August 1, 2025, 1028 S 1900 E LLC initiated an eviction action against Mr. Barber, seeking to remove him from the 1028 Property. The action was commenced in the Third Judicial District Court, styled *1028 S 1900 E LLC v. Max Barber et al.*, Civil No. 250906343, before the Honorable Richard Daynes (the "Eviction Suit"). A true and correct copy of the Docket in the Eviction Suit is attached hereto as **Exhibit "A"**.[1]

32.     On September 5, 2025, Mr. Barber filed Defendant's Emergency Motion to Stay Enforcement of Judgment and Motion to Set Aside Default Judgment (hearing requested) in the Eviction Suit. *Id.* at p. 2 of 5.

33.     An occupancy hearing was held on September 19, 2025, that resulted in the court issuing an Amended Order of Restitution Following Hearing wherein Mr. Barber and the other defendant were ordered to "remove your unsecured and exempt personal property, and restore possession of the premises to" 1028 S 1900 E LLC.  Attached hereto **Exhibit "A.1".**

---

[1] Anderson respectfully requests the Court to take judicial notice of the adjudicative facts of the Eviction Suit because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). The Court "must take judicial notice if a party requests it and the court is supplied with the necessary information."  *Id.* at 201(c)(2). The adjudicative facts of the Eviction Suit can be accurately and readily determined by accessing Utah State Court records at https://pubapps.utcourts.gov/XchangeWEB/login.

34.    On September 26, 2025, Mr. Barber then filed a second motion to stay the reinstated/amended order of restitution, which was denied with the following minute-entry ruling entered on September 29, 2025:

> Max Barber and co-defendant Sarah Barber have filed a second motion requesting relief and asserting the exact arguments that were previously briefed and in which oral argument was held on September 19, 2025. Based on the reasons as set forth below, the motion to stay enforcement of the Order of Restitution is Denied.
>
> **This Court found in its oral ruling that the bankruptcy court previously granted relief from the Automatic Stay of defendant's original bankruptcy filing in order to allow for the sale of the property at 1028 S 1900 E in Salt Lake City, Utah. The relief from the stay applied to any subsequent or bifurcated bankruptcy petitions. The sale took place and received a trust deed on July 23, 2025. Plaintiff as a bona fide purchaser from the sale of the property has sought possession of the property. While there has been a subsequent bankruptcy filing in the name of the trust which was previously listed as the owner of the property, this newer bankruptcy filing did not change the status of the real property in question or its relief from bankruptcy.**
>
> The second bankruptcy filing by the trust did not alter the previous order of relief from the stay or change the status of plaintiff as a bona fide purchaser. Therefore, for the reasons as set forth in the Plaintiff's Opposition to the Notice of Stay, and for the reasons as set forth in the Court's oral ruling on September 19, 2025, this second Motion to Stay Enforcement of the Order of Restitution is hereby Denied.

Attached hereto **Exhibit "A.2"** (emphasis added).

35.    On September 30, 2025, Mr. Barber filed an emergency motion for reconsideration and to quash the amended order of restitution. Exhibit A, p. 2 of 5.

36.    An evidentiary hearing was held on October 14, 2025, to consider the emergency motion, which resulted in the following findings, as reflected by contemporaneous minute entry:

> 4:43 The Court finds no evidence of collusion with regard to the sale.
>
> The Court finds no evidence of any unclean hands with regard to the sale.
>
> The Court finds no evidence of notice for the bankruptcy of the purchaser at the sale.
>
> The Court finds that the Plaintiff is/was a bona-fide purchaser.

167608471.2

10

**4:46 The Court does not find that the sale was void ab initio.**

4:52 The motion to stay is denied.

Attached hereto as **Exhibit "A.3"** (emphasis added).

37.    On October 28, 2025, the court in the Eviction Suit entered its Findings of Fact and Conclusions of Law as to the Order Denying Defendant's Emergency Motions […] ("FOF & COL"). A true and correct copy of the FOF & COL is attached hereto as **Exhibit "A.4"**.

38.    The court's Findings of Fact and Conclusions of Law made several findings and conclusions with respect to the facts and circumstances surrounding the Subject Bankruptcy, as follows:

> 13. On July 8, 2025, the MSB Trust filed (again) for bankruptcy in case no. 25-23863.
>
> **14. At the time MSB Trust filed its bankruptcy petition on July 8, 2025, it did not own either of the Properties. Mr. Barber's testimony given at the Hearing confirmed this.**
>
> 15. On July 21, 2025, at 3:17 p.m.—the afternoon before the 9:00 a.m. foreclosure sale the next morning—GSE Global, LLC, deeded the properties to the MSB Trust by warranty deed, recorded as Entry no. 14413121 in the Salt Lake County Recorder's Office. (Exhibit E).
>
> 16. During Barber's cross-examination at the October 10th evidentiary Hearing in this case, he admitted to owning an interest in GSE Global, LLC, and directing its manager to draft and execute the warranty deed to MSB Trust. Id. He also admitted that the handwriting on the warranty deed belonged to him.
>
> 17. The foreclosure sale occurred on July 22, 2025.
>
> 18. Under 11 U.S.C. § 541(a)(1), properties subject to an automatic stay are "all legal or equitable interests of the debtor in property as of the commencement of the case."
>
> 19. Title reports for both Properties, Barber's own testimony, and the July 21, 2025, warranty deed from GSE Global, LLC, to MSB Trust, **indisputably show the Properties were not owned by MSB Trust or Barber "as of the commencement" of its bankruptcy case.**

*Id.* at ¶¶ 13-19 (emphasis added).

39.    The court in the Eviction Suit further ordered, adjudged and decreed that "[t]he transfer of property from GSE Global, LLC to MSB Trust on July 21, 2025, is declared VOID as a fraudulent conveyance." *Id.* at ¶ 5.

40.    The court in the Eviction Suit further ordered, adjudged and decreed that "The foreclosure sale conducted on July 22, 2025, is VALID and ENFORCEABLE." *Id.* at ¶ 3.

41.    The court in the Eviction Suit further ordered, adjudged and decreed that "The In Rem Order entered in Bankruptcy Case No. 25-21749 is binding upon MSB Trust and Defendant Max Barber and authorized the foreclosure sale." *Id.* at ¶ 6.

42.    The court in the Eviction Suit further ordered, adjudged and decreed that "The automatic stay in Bankruptcy Case No. 25-23863 had no effect on the foreclosure sale as the property was not property of the bankruptcy estate at the time of filing." *Id.* at ¶ 7.

## ARGUMENT

### I.    STANDARD OF REVIEW, MOTION TO DISMISS.

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although "detailed factual allegations" are not required, the Rule demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678. A claim is facially plausible only when the factual content alleged "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Two working principles govern the plausibility inquiry. First, the rule that courts must accept all factual allegations as true is inapplicable to "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ." *Id.* at 678–79 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Second, determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The court should first identify and disregard allegations that are conclusory or formulaic, because they "are not entitled to the assumption of truth." *Id.* When the remaining well-pleaded factual allegations are taken as true, the court must then determine whether those facts "plausibly give rise to an entitlement to relief." *Id.*

Dismissal under Rule 12(b)(6) is therefore appropriate where the complaint fails to provide "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 547. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

While the Court can justify dismissal of this matter without considering evidence outside of the pleadings, such evidence provides further support for dismissal. *See generally* Declaration of Jared L. Anderson, filed concurrently herewith. Should the Court consider Mr. Anderson's testimony and supporting exhibits, it may convert this Motion to one for summary judgment under Fed. R. Civ. P. 56 and all parties should be given a reasonable opportunity to present evidence pertinent thereto. *United States ex rel. Reed v. KeyPoint Gov't Sols.*, 923 F.3d 729, 753 (10th Cir. 2019) ("When a district court relies on material outside the complaint to resolve a Rule 12(b)(6)

motion, it ordinarily must convert that motion 'into a motion for summary judgment.'"); *but see Robison v. 7PN, LLC*, 569 F. Supp. 3d 1175, 1179 (D. Utah 2021) ("[I]t is clear that 'a court may take judicial notice of matters of public record outside the pleadings without converting a motion to dismiss' into a motion for summary judgment."); *see also Brown v. City of Tulsa*, 124 F.4th 1251, 1264 (10th Cir. 2025) (noting three exceptions to the rule, including "(1) documents attached to the complaint as exhibits, (2) documents referenced in the complaint that are central to the plaintiff's claims, provided their authenticity is undisputed, and (3) matters subject to judicial notice.").

## II.    THIS COURT LACKS JURISDICTION OVER ALLEGED VIOLATION OF THE AUTOMATIC BANKRUPTCY STAY

Before determining whether there was a violation of the automatic bankruptcy stay, this Court must address the threshold issue of subject matter jurisdiction. *Mocek v. City of Albuquerque*, 813 F.3d 912, 934 (10th Cir. 2015) (The court has "an independent obligation to determine whether subject-matter jurisdiction exists . . ."). Federal courts have repeatedly held that claims under 11 U.S.C. § 362(k) are "core" bankruptcy proceedings that "can be brought *only in the context of a bankruptcy case.*" *In re Johnson*, 575 F.3d 1079, 1083 (10th Cir. 2009) (emphasis added; quoting *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 109 (2d Cir. 2006)).

Thus, this Court lacks jurisdiction to adjudicate or determine whether the automatic stay was violated in the first instance and should dismiss this claim against Mr. Anderson with prejudice.

III.    **THE AUTOMATIC STAY WAS NEVER IN EFFECT AS TO THE SUBJECT PROPERTIES, AND THE FORECLOSURE WAS LAWFUL.**

Even assuming, *arguendo,* the Court has jurisdiction to entertain Plaintiffs' claim for violation of the automatic stay, no violation of the automatic stay could have occurred on the undisputable facts of this matter because the subject Properties were not "property of the estate."

> To sustain cause of action for violating automatic stay by acting to obtain possession of, or exercise control over, property of the estate, plaintiff must establish three elements: (1) that property interest is involved; (2) that this property interest is estate property; and (3) that there occurred an act either to obtain possession of, or to exercise control over, estate property. 11 U.S.C.A. § 362(a)(3).

*In re Harchar*, 393 B.R. 160 (Bankr. N.D. Ohio 2008) (emphasis added; subsequent history omitted). Under 11 U.S.C. § 541(a)(1), properties subject to an automatic stay are "all legal or equitable interests of the debtor in property *as of the commencement of the case*." *Id.* (emphasis added).

Plaintiff claims that "Defendants" willfully violated the automatic stay by "[1] conducting the foreclosure sales despite notice, [2] recording the void Trustee's Deed, [3] forcibly entering the Properties, and [4] prosecuting a fraudulent eviction action with concealed stay facts." FAC, ¶ 76. However, there are <u>no</u> facts to support the claim that Anderson forcibly entered the Properties (or ever entered them), nor are there any facts that he prosecuted the referenced eviction action or had anything to do with those proceedings. To the contrary, the Eviction Suit Docket shows that he never appeared as counsel in that matter, nor is there any evidence that any eviction notices were prepared or sent from his office. Thus, there is no evidence to support the third and fourth allegations of the FAC, above. (The undersigned presumes those allegations were directed towards other Defendants and not Mr. Anderson, who acted solely in his capacity as the foreclosing trustee.)

While, true, Mr. Anderson conducted the foreclosure sale and hand delivered the Trustee's Deeds to Mr. Knudson, neither was done in violation of the automatic stay as the Properties were not property of the bankruptcy estate. When the MSB Trust filed bankruptcy on July 8, 2025, both Properties were titled in GSE Global LLC, a separate non-debtor entity. The last-minute deed Mr. Barber executed on July 21, 2025—mere hours before the trustee's sale—was a post-petition transfer that could not bring the Properties into the bankruptcy estate or retroactively extend stay protection. Because the MSB Trust had no interest in the Properties as of the petition date, the Properties were not part of the bankruptcy estate and therefore not protected by the automatic stay.

Further, Mr. Barber cannot appeal to this Court for a contrary ruling or declaration, as this matter is *res judicata* and, more specifically, barred by issue preclusion. The elements of issue preclusion are as follows:

> (1) the issue decided in the prior adjudication is identical to the one presented in the instant action; (2) the party against whom issue preclusion is asserted was a party, or in privity with a party, to the prior adjudication; (3) the issue in the first action was completely, fully, and fairly litigated; and (4) the first suit resulted in a final judgment on the merits.

*Kuhar v. Thompson Mfg., Inc.*, 2024 UT 12, ¶ 12, 552 P.3d 174, 178, reh'g denied (June 21, 2024).

Here, Mr. Barber raised the issue of the automatic stay and his claim that the trustee's sale was void *ab initio* in the Eviction Suit. Those issues were not decided in his favor. On September 29, 2025, Judge Daynes ruled as follows:

> This Court found in its oral ruling that the bankruptcy court previously granted relief from the Automatic Stay of defendant's original bankruptcy filing in order to allow for the sale of the property at 1028 S 1900 E in Salt Lake City, Utah. The relief from the stay applied to any subsequent or bifurcated bankruptcy petitions. The sale took place and received a trust deed on July 23, 2025.
> . . .
> The second bankruptcy filing by the trust did not alter the previous order of relief from the stay or change the status of plaintiff as a bona fide purchaser.

Ex. A.2.

Further, the court in the Eviction Suit held an evidentiary hearing on October 14, 2024, to consider both issues and ruled that the trustee's sale was not void *ab initio*. Ex. A.3, p. 3 of 3.  It further held that "[t]he transfer of property from GSE Global, LLC to MSB Trust on July 21, 2025, is declared VOID as a fraudulent conveyance." Ex. A.4 at ¶ 5.

Mr. Barber is bound by these determinations. The only "void" act arising from these circumstances is Mr. Barber's eleventh-hour attempt to manufacture stay protection by transferring the Properties from GSE Global to the MSB Trust after the Subject Bankruptcy was filed. Such a post-petition transfer was a nullity and could not expand the scope of the automatic stay or retroactively bring the Properties into the bankruptcy estate. His claim of a violation of the automatic stay is baseless and entirely contrived, resting solely on his own last-minute, ineffective maneuver to create stay protection where none existed.

Moreover, even if the automatic stay had nominally attached (it did not), it had already been terminated by the In Rem Order entered in the prior April 2025 Chapter 13 Bankruptcy.[2] That order approved a written stipulation between Gravity Capital, Mr. Barber, and the MSB Trust, wherein "[Mr. Barber and MSB Trust] stipulate[ ] to immediate in rem Relief from the Automatic Stay and Co-Debtor Stay in favor [of] Gravity Capital, LLC," and further provided that "any Trustee's Sale set hereafter will be held after July 7, 2025."

A stipulation is "binding in a subsequent action between the parties if the parties have manifested an intention to that effect." *In re Hauck*, 466 B.R. 151, 167 (Bankr. D. Colo. 2012),

---

[2] This determination, entered by the Eviction Suit court in its Findings of Fact and Conclusions of Law, is also *res judicata*.

*aff'd*, 489 B.R. 208 (D. Colo. 2013), *aff'd*, 541 F. App'x 898 (10th Cir. 2013). Here, the MSB Trust unambiguously consented to lift the automatic stay and expressly agreed that the stipulation "applie[s] to any bifurcation or conversion of this case from one chapter to another as to Gravity Capital, LLC." If binding intent is not inferred from the stipulation itself, this language evidences the parties' intent that the relief remain effective beyond the original case, irrespective of any later bifurcation or conversion.

It should also be noted that Mr. Barber's FAC, ¶¶ 45–49, alleges that the In Rem Order was "materially breached," and that amendment of the Trust Deed was a "condition precedent." This argument fails for a number of reasons, including—significantly—that the language constituting the supposed condition precedent was included in a proposed order that was <u>not</u> ultimately adopted by the court in the April 25 Chapter 13 case. As demonstrated above (*see* Statement of Undisputed Material Facts[3] No. 20), the following language was part of a *proposed* stipulated order (and is not mentioned in the parties' stipulation) that did not form part of the court's resultant order. The In Rem Order, singed by Judge Kevin Anderson, does <u>not</u> contain any requirement that "[t]he recorded lien shall be amended to reflect the correct principal and/or balance owed." It states only that "[t]he Stipulation between Gravity Capital, LLC and Max Warrant Barber (Docket No. 47) is approved." Again, nowhere in the text of the Stipulation is the supposed "condition precedent" found.

But, even if it were somehow binding, Gravity Capital complied with this language on June 10, 2025, when David Knudson, President of Gravity Capital, executed and recorded with the Salt Lake County Recorder's Office a Scrivener's Affidavit, wherein Gravity Capital clarified that "the

---

[3] Hereinafter "SUMF."

Deed of Trust secures a revolving line of credit (an open-end loan) with a maximum loan amount of $1,200,000" and that there was an "initial advance under the Note . . . in the amount of $332,000.00." Thus, the Scrivener's Affidavit purports to amend the definition of "Loan" as set forth in Paragraph 1.3 of the Trust Deed, consistent with the parties' unsigned proposed order. Anderson Decl., ¶ 18, Ex. "K".

Further, even if the unsigned proposed order were binding, it is not a condition precedent to the enforceability of the Court's In Rem Order. In Utah, "'[a] simple statement ... in a contract is not necessarily a condition to a party's duty of performance. The intention to create a condition in a contract must appear *expressly or by clear implication*.'" *Livingston v. Finco Holdings Corp.*, 2022 UT App 71, ¶ 18, 513 P.3d 94, 100 (emphasis added; quoting *Cheever v. Schramm*, 577 P.2d 951, 953 (Utah 1978)). There is nothing in the unsigned proposed order that expressly states that the stipulation was conditional on the Trust Deed being amended. Nor would an alleged violation of the unsigned proposed order invalidate the In Rem Order or its relief regarding the automatic stay.

Finally, 11 U.S.C. § 362(d)(4)(B) expressly authorizes such in rem orders where multiple bankruptcy filings affect the same real property. Once recorded with the Salt Lake County Recorder's Office, the In Rem Order became "binding *in any other case under this title* purporting to affect such real property filed not later than 2 years after the date of the entry of such order by the court." *Id.* (emphasis added). Accordingly, the foreclosure was conducted pursuant to valid and continuing in rem relief, and no automatic stay barred the sale. For all of the foregoing reasons, Count III fails and must be dismissed.

IV.    **ALL REMAINING CLAIMS FAIL AS A MATTER OF LAW.**

All remaining claims in the FAC against Mr. Anderson—including Counts II, IV, V, VIII, IX, X, XI, XII, XV, and XVII—are premised entirely on the alleged invalidity of the underlying foreclosure sale and Trustee's Deeds. As demonstrated in Section II, above, the automatic stay never applied to the Properties, and the foreclosure and related transfers were conducted pursuant to valid in rem relief (the In Rem Order), confirmed by a binding stipulation.   Because the underlying premise of these claims is legally and factually invalid, each claim independently fails and must be dismissed.

V.    **COUNTS IV, V, VIII, XI, XII, XV AND XVII CONSTITUTE IMPROPER COLLECTIVE PLEADING AND DO NOT GIVE MR. ANDERSON FAIR NOTICE OF THE GROUNDS UPON WHICH THEY REST.**

Plaintiff's FAC is a model of improper "collective pleading," which this Court has stated "does not meet the requirements of Rule 8." *Silver v. Fairbank*, No. 2:22-CV-00140, 2022 WL 2657225, at *2 (D. Utah July 8, 2022). Indeed, at the motion to dismiss phase, "[t]he court must be able to draw a reasonable inference that the individual defendant is liable for the alleged misconduct. The allegations *must show 'which defendant is alleged to have done what' to whom and 'what the misconduct is.*'" *Fucci v. Bowser*, No. 2:20-CV-00004, 2022 WL 2529548, at *2 (D. Utah July 7, 2022) (emphasis added; noting that the defendant in question was simply "lumped together with others" improperly); *see also Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1240 (10th Cir. 2013) (holding that collective pleading "allegations are too conclusory, vague and confusing to give each 'defendant fair notice of what the . . . claim is and the grounds upon which it rests.'").

For example, while the FAC alleges Mr. Anderson associated with other individual Defendants and that their association "constitutes an 'Enterprise' affecting interstate commerce," FAC, ¶ 79, there are no *factual allegations* establishing either an "association" between the individual Defendants or the formation of an "Enterprise" thereon. This method of pleading—asserting multiple causes of action "against all defendants" without differentiating between them or identifying what conduct by each defendant gives rise to liability—fails to satisfy the basic pleading requirements of Rule 8(a).

Plaintiff's FAC contains only <u>three</u> factual allegations referencing Mr. Anderson by name and otherwise recites identical claims "Against All Defendants." Such collective allegations are insufficient to state any plausible claim for relief against Mr. Anderson individually and warrant dismissal of the FAC as to the collective "Against-All-Defendants" claims.

## VI.    INCORPORATION OF CO-DEFENDANTS' ARGUMENTS.

Anderson hereby incorporates by this reference all relevant arguments made by co-Defendants David Knudson, Gravity Segregation II, LLC, and Gravity Segregation dba Gravity Capital, LLC in their Motion to Dismiss the First Amended Complaint Under Rules 12(b)(1) and 12(b)(6) [Docket No. 71], including, without limitation:

1.    Argument § I.B. – The Court should decline to exercise supplemental jurisdiction over any surviving state law claims;

2.    Argument § I.C. – arguing that the heightened pleading standard of Fed. R. Civ. P. 9(b) should apply to Plaintiff's pleading, including Counts I, III, IV, V, VII, VIII, and X.

3.    Argument § II. – arguing Plaintiff's Count I is not facially plausible, given the lack of well-pled facts;

4.    Argument § III. – including the Bankruptcy Court's determination that Plaintiff's allegations concerning violations of the automatic stay (Exhibit B) are either not violations or, if they were, would be claims properly adjudicated in Utah state court; and

5.      Argument § V. –The inapplicability of the FDCPA to commercial debt and the absence of debt collector status (Count VIII).

To the extent the reasoning, evidence, or authorities cited by Mr. Anderson's Co-Defendants further support dismissal, Mr. Anderson adopts them as if fully set forth herein.

## VII.    PLAINTIFFS' CLAIMS FAIL AS A MATTER OF LAW ON OTHER GROUNDS.

Even without a finding that the automatic stay was not violated, Plaintiff's claims suffer from numerous critical defects, which independently support dismissal, as follows:

### A.      Plaintiffs' RICO Claims Fail (Counts IV and V).

RICO is founded on the concept of racketeering activity. The statute defines "racketeering activity" to encompass dozens of state and federal offenses, known in RICO parlance as predicates. These predicates include any act "indictable" under specified federal statutes, §§ 1961(1) (B)-(C), (E)-(G), as well as certain crimes "chargeable" under state law, § 1961(1)(A), and any offense involving bankruptcy or securities fraud or drug-related activity that is "punishable" under federal law, § 1961(1)(D). A predicate offense implicates RICO when it is part of a "pattern of racketeering activity"—**a series of related predicates that together demonstrate the existence or threat of continued criminal activity.** *H.J . Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); see § 1961(5) (specifying that a "pattern of racketeering activity" requires at least two predicates committed within 10 years of each other).

*RJR Nabisco v. Eur. Cmty.*, 579 U.S. 325, 329–30, 136 S. Ct. 2090, 2096–97, 195 L. Ed. 2d 476 (2016) (emphasis added).

A civil RICO "pattern" requires at least two predicate acts, but two acts alone do not automatically satisfy the "pattern" requirement. As expressed by the United States Supreme Court,

In our view, Congress had a more natural and commonsense approach to RICO's pattern element in mind, *intending a more stringent requirement than proof simply of two predicates*, but also envisioning a concept of sufficient breadth that it might encompass multiple predicates within a single scheme that were related and that amounted to, or threatened the likelihood of, continued criminal activity.

*H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237, 109 S. Ct. 2893, 2899, 106 L. Ed. 2d 195 (1989) (emphasis added).

Even if the Court construes the trustee's sale (a singular act) as two predicate acts because it involved two Properties, "a pattern is [not] established merely by proving two predicate acts . . . ." *Id.* Thus, the claims fail a necessary element and must be dismissed.

**B.        Plaintiffs' Quiet Title Claim Fails (Count X).**

A quiet title action "is a suit brought 'to quiet an existing title **against an adverse or hostile claim of another**' and 'the effect of a decree quieting title is not to vest title but rather is to perfect an existing title **as against other claimants**.'"

*Haynes Land & Livestock Co. v. Jacob Fam. Chalk Creek, LLC*, 2010 UT App 112, ¶ 19, 233 P.3d 529, 535 (emphasis added).

Mr. Anderson does not claim any ownership or other interest in the Properties. He acted solely in his capacity as the foreclosing trustee under the subject Deed of Trust. Accordingly, Plaintiff's quiet title claim is inapposite as to Mr. Anderson, because he is not asserting, and has never asserted, a competing or adverse claim to the Properties.

**C.        Plaintiffs' Slander of Title Claim Fails (Count XI).**

Plaintiff claims the recordation of the Trustee's Deeds constitute a slander of title.

To prove slander of title, a claimant must prove that (1) there was a publication of a slanderous statement disparaging claimant's title, (2) the statement was false, (3) the statement was made with malice, and (4) the statement caused actual or special damages.

*First Sec. Bank of Utah, N.A. v. Banberry Crossing*, 780 P.2d 1253, 1256–57 (Utah 1989). The requirement of malice demands affirmative proof and "a showing that the wrong was done with an intent to injure, vex, or annoy." *Id.*

There is no evidence of any malicious intent on the part of Mr. Anderson. Indeed, to the contrary, prior to the foreclosure sale, Mr. Anderson confirmed with other counsel involved in the bankruptcies that the "automatic stay does not apply to [MSB Trust or Mr. Barber's] properties

regardless of this new bankruptcy filing . . . ." Anderson Decl., ¶ 24, Ex. "P". The foregoing demonstrates that, far from attempting to injury, vex or annoy, Mr. Anderson acted in good faith and in his role as the foreclosing trustee. He delivered the Trustee's Deeds pursuant to his statutory and contractual authority under the Trust Deed, and there is no evidence that he made any false statements or acted with malice. Accordingly, Plaintiff's slander of title claim fails as a matter of law.

### D.    Plaintiffs' Civil Conspiracy Claim Fails (Count XII).

> [I]n order to 'sufficiently plead' a claim for civil conspiracy, a plaintiff is 'obligated to adequately plead the existence of [an underlying] tort.' *Id.* (quoting *Coroles,* 2003 UT App 339, ¶ 36, 79 P.3d 974). 'Where plaintiffs have 'not adequately pleaded *any* of the basic torts they allege . . . dismissal of their civil conspiracy claim' is appropriate.' *Id.*

*Estrada v. Mendoza*, 2012 UT App 82, ¶ 13, 275 P.3d 1024, 1029.

While Plaintiff's FAC alleges "numerous unlawful, overt acts," FAC, ¶ 105, it fails to identify *any* underlying tortious conduct committed by Mr. Anderson. As a matter of law, a civil conspiracy claim cannot survive absent a well-pled underlying tort. Accordingly, Count XII fails to state a claim and should be dismissed.

### E.    Plaintiffs' Unjust Enrichment Claim Fails (Count XVII).

Plaintiff alleges counterfactually (and, again, as part of Plaintiff's practice of collective pleading) that Mr. Anderson conferred upon himself "the benefit of title to and equity in Plaintiff's Properties." FAC, ¶ 118.

> To state a claim for unjust enrichment, a plaintiff must allege facts supporting three elements: "(1) a benefit conferred on one person by another; (2) an appreciation or knowledge by the conferee of the benefit; and (3) the acceptance or retention of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value."

*Hess v. Johnston*, 2007 UT App 213, ¶ 20, 163 P.3d 747, 754.

Setting aside for the moment the allegation that "Defendants conferred upon themselves" the alleged benefit (which is itself fatal to the claim), the FAC fails to allege facts supporting each of the necessary elements for the claim. Indeed, neither title to nor equity in the Properties were conferred upon Mr. Anderson, neither did he ever accept or retain the same. Anderson Decl., ¶ 27, Ex. "Q". Thus, Plaintiff's unjust enrichment claim is inappropriate to Mr. Anderson. His role was strictly as the foreclosing trustee, carrying out the sale pursuant to the recorded Trust Deed and applicable law. At no point did he personally receive, retain, or benefit from title or equity in the Properties. Accordingly, Count XVII fails to state a claim and must be dismissed as to Mr. Anderson.

## VIII.   THE COURT SHOULD AWARD MR. ANDERSON HIS ATTORNEY FEES AND COSTS ASSOCIATED WITH THIS ACTION.

Mr. Anderson respectfully requests that the Court award him his reasonable attorney fees and costs incurred in defending against Plaintiff's FAC. Under Utah law, a prevailing party is entitled to recover attorney fees where a claim is found to be without merit and not brought or asserted in good faith. *See* Utah Code Ann. § 78B-5-825; *Bresee v. Barton*, 2016 UT App 220, ¶¶ 44-47, 387 P.3d 536, 550–51, *cert. denied*, 393 P.3d 283 (Utah 2017).

Plaintiff's FAC is *precisely* the type of pleading that warrants such an award. As set forth above, all claims against Mr. Anderson fail as a matter of law, are premised on an incorrect and misleading factual or legal premise, improperly lump him with Co-Defendants, and attempt to impose liability on him despite his purely ministerial role as foreclosing trustee. The FAC unnecessarily multiplies this litigation, forcing Mr. Anderson to incur legal expenses defending

claims that were frivolous on their face. Thus, attorney fees should be awarded, as will be established by separate declaration of counsel.

In addition, the Trust Deed under which Mr. Anderson served as trustee authorizes the recovery of attorney fees in connection with enforcement of the trustee's powers and obligations. *See* Ex. "B" to Anderson Decl., Trust Deed, § 18. As such, Mr. Anderson is entitled to recover all reasonable attorney fees and costs associated with responding to Plaintiff's FAC.

## CONCLUSION

For all of the foregoing reasons, the Court should dismiss Plaintiff's FAC in its entirety with prejudice and award Mr. Anderson his reasonable attorney fees and costs incurred herein.

DATED this 25th day of November, 2025.

**LEWIS BRISBOIS BISGAARD & SMITH LLP**

By: /s/ Andrew R. Welch
    ANDREW R. WELCH
    ANDREW J. SCHUMAN
    *Attorneys for Defendant Jared L. Anderson*

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of November, 2025, I electronically filed the foregoing MOTION TO DISMISS, OR ALTERNATIVELY, FOR SUMMARY JUDGMENT with the Clerk of the Court using the CM/ECF system, which sent notice of such filing to the following:

**Via CM/ECF:**
Steven R. Skirvin
SKIRVIN LAW PLLC
3450 N Triumph Blvd., Suite 102
Lehi, Utah 84043
Email: steve@srslawpc.com
*Attorney for Defendant David Knudson*

**Via Email and U.S. Mail:**
Max Warren Barber
1028 S 1900 E
Salt Lake City, Utah 84108
Email: 23blackbee@gmail.com
*Pro Se Plaintiff*

/s/ *Cynthia Worne*
Cynthia Worne, Legal Assistant

167608471.2