# EXHIBIT C

**Declaration of Pace Johnson** (State Court Case No. 250906343)

I. I am over 21 and am competent to make this declaration and sate these things on personal knowledge.

2. I am the member of 1028 E. 1900 S., LLC which owns the home that is the subject of this action. When I refer to myself, it should also include a reference to the LLC.

3. On July 22, 2025, at a foreclosure sale, I , my brother, Adrian Johnson and his wife Stephanie, and my father, Jamis Johnson ("Johnsons") purchased at foreclosure two homes located at 1028 S. 1900 E. Salt Lake City, UT 84108 (1028 House) and 1836 E. Yale, Salt Lake City, UT 84108 ("Yale house").

4. The homes are two blocks apart and Adrian and Stephanie and his children are moving into the Yale home and my father and his wife who want to be near their grandchildren are moving into the 1028 Home.

5. Max Barber or his entities, including GSE Global, owned these homes before foreclosure.

6. Max Barber and his men, including Nathan Barren and others (Barber's 'agents") have physically confronted Adrian and Stephanie and my father to attempt to prevent them from occupying the homes.

7. Max Barber and his agents have deliberately clouded the title to the houses and have placed wrongful liens on the homes in violation of criminal code, Utah Code Anno. 76-6-503.5.

8. Max Barber has filed multiple frivolous pleadings in multiple cases to obstruct the Johnsons from entering, occupying, remodeling, refinancing the homes.

**MULTIPLE BANKRUPTCY FILINGS AND IN REM ORDER ALLOWING FORECLSOURE DESPITE AUTOMATIC STAY OR FURTHER BANKRUPCY FILINGS.**

9. Max Barber through his entities filed multiple bankruptcies. In bankruptcy case 25-21749, the judge entered an In Rem Order allowing foreclosures to proceed on both houses regardless of any bankruptcy and automatic stay. Attached as Exhibit is the In Rem Order.

10. In the motion to obtain the In Rem Order, lender's counsel outlines the extensive bad faith filings and multiple broken agreements and multiple attempts to stop foreclosure.

11. This motion is entitled

> TRUSTEE'S MOTION TO DISMISS UNDER 11 U.S.C. § 109(e) – EXCEEDING THE UNSECURED AND SECURED DEBT LIMIT AND MOTION TO DISMISS WITH PREJUDICE UNDER 11 U.S.C. § 105(a) and 109(g) – WILLFUL FAILURE TO APPEAR IN PROPER PROSECUTION OF THE CASE AND PARTICIPATION IN A SCHEME TO DELAY, HINDER OR DEFRAUD CREDITORS UNDER 11 U.S.C. § 362(d)(4) BY MULTIPLE FILINGS

12. Attached is the Motion outlining the extensive bad faith legal actions taken by Max Barber that resulted in the In Rem Order.

13. Also, before foreclosure, in 3rd District Judicial Court, Max Barber filed an action against lender Gravity Capital. See case no. 2 _____ where he sought a TRO to stop the foreclosures which was denied and the lender was awarded attorney fees and the bond that had been posted.

**LIS PENDENS FILED ON 1028 HOUSE AND YALE HOUSE AFTER FORECLSOURE**

14. After foreclosure and after the Johnsons purchased the two homes, Max Barber filed a lis pendens on each home. A copy of the Lis Pendens are attached as Exhibit.

15. The lis pendens state that the legal cases that affect title to the property are Federal Bankruptcy case 25-21749, the same case granting the In Rem Order. There Max Barber filed a Motion For Contempt and Sanctions for violating Automatic Stay.

16. The Bankruptcy Court Judge Kevin Anderson entered an order denying all Max Barber's claims. This Order is attached as an Exhibit ___ .

17. So there is no outstanding case that would support Max Barber's lis pendens on the two homes. There is no basis for the lis pendens.

**FURTHER BAD FAITH BANKRUPCY FILING POST FORECLSOURE.**

18. On July 2, 2025, two weeks before foreclosure, Max Barber filed a bankruptcy filing for MSB Trust. See Motion to Dismiss in this case.

19. When this new bankruptcy was filed, MSB Trust did not own the houses.

20. On July 21, the day before the foreclosures, Max had his entity, GSE Global, who owned the houses, deed them to the already bankrupt MSB Trust.

21. In this eviction proceeding, Barber claimed that MSB Trust owned the homes when it went into bankruptcy. However, he did not disclose to this court that the homes were only belatedly conveyed into a bankrupt debtor which cannot occur as a matter of law.

22. Barber argued that this bankruptcy filing imposed a further automatic stay.

**MULTIPLE FILINGS IN THIS EVICTION ACTION.**

23. As this court knows, Max Barber and Sarah Barber have repeatedly filed frivolous and multiple motions.

PHYSICAL THREATS OF MAX BARBER AND AGENTS.

24. Max Barber, and his partner, Nathan Barren went to the Yale home on multiple occasions and physically threatened Adrian and Stephanie Johnson.

25. The police were called on three occasions. Attached are the police reports lodged against Max Barber and Nathan Barren.

26. On one occasion, Max Barber came to the Yale home, took down a camera instualled by Adrian Johnson, broke into the house. On another occasion Nathan Barren broke into the house and when Adiran called 911, Nathan yelled so loud to stop the call that Adrian was advised to leave the home immediely and wait for the police. There are other indicents. See the two affidavits of Adrian and Stephanie Johnson.

27. At the 1028 House, on the day of the eviction, the police were called and were confronted by Nathan Barren and two black me who were confrontational and bellicose. Officer McBride who facilitated the eviction had to call for back up and can provide affidavits of the events of that day.

DATD this 8th day of October, 2025

/S/ Pace W. Johnson