FILED
2025 DEC 24 AM 12:59
CLERK
U.S. DISTRICT COURT

MAX WARREN BARBER
*Pro Se Plaintiff*
4643-4645 South Highland Drive
Salt Lake City Utah 84117
801 518 1821
23blackbee@gmail.com

NOTICE TO RESPONDING PARTY (DUCivR 7-1(c)(2)):
This motion requires you to respond.
Failure to file a timely
granting the relief requested.
response may result in the Court

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MAX WARREN BARBER, individually and as Sole Trustee of the MSB Trust,<br><br>Plaintiff,<br><br>**v.**<br><br>DAVID KNUDSON et al.,<br>Defendants. | PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT JARED L. ANDERSON'S MOTION TO DISMISS, OR ALTERNATIVELY, FOR SUMMARY JUDGMENT<br><br>**Case No. 2:25-cv-00681-HCN-DBP**<br><br>**District Judge: Hon. Howard C. Nielson, Jr.**<br>**Magistrate Judge: Hon. Dustin B. Pead** |

Plaintiff Max Warren Barber appearing pro se[1], respectfully submits this Opposition to Defendant Jared L. Anderson's Motion to Dismiss (ECF No. 88) and requests that the Court deny the Motion in its entirety.

## I INTRODUCTION

A trustee must act as a neutral fiduciary, exercising independent judgment and owing duties to all parties—not merely the beneficiary. *First Sec. Bank v. Banberry Crossing*, 780 P.2d 1253, 1256 (Utah 1989). Anderson abandoned each of these obligations.

[1] As a pro se litigant, Plaintiff's pleadings must be "construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). This mandated liberal construction means that "if the court can reasonably read the pleadings to state a valid claim on which the [plaintiff] could prevail, it should do so." *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999).

On July 21, 2025, at 6:05 PM, Anderson received written notice of the automatic stay. He did not verify it on PACER. He did not contact the bankruptcy court. He forwarded the warning to Skirvin and Knudson and awaited instruction.

Anderson's "reliance on counsel" defense fails on its own terms. Skirvin admitted under oath that his role as Gravity's in-house counsel ended "on or about July 15, 2025"—**six days before** he directed Anderson to proceed with the sale. ECF No. 103-1 ¶4; ECF No. 103-2 ¶3. When Skirvin emailed Anderson on July 21, 2025 at 7:01 PM directing him to "proceed with the sale tomorrow," he was not acting as anyone's attorney. He was not providing legal advice. He was issuing an operational directive from a Summit Companies email address (steve@thesummitcompanies.com) in his capacity as General Counsel to Summit Capital, LLC. ECF No. 103-2 ¶3. Anderson was not relying on counsel. He was taking orders from an Enterprise operative who had no attorney-client relationship with any party to the transaction at the time. ECF No. 103-1 ¶4.

Worse, Anderson followed this directive despite Skirvin's documented intent to obstruct: "any discussion on numbers should wait until after the sale." ECF No. 88-22. The "numbers" were the accounting records that would have exposed the $1.2 million liens as fabricated. Skirvin needed the sale completed before the fraud could be revealed. Anderson obliged.

This is not the conduct of a neutral trustee. It is the conduct of a controlled agent executing an Enterprise directive to obstruct disclosure of material facts. Under *Mower v. Simpson*, 278 P.3d 1076, 1084 (Utah Ct. App. 2012), such conduct forfeits immunity. Under *In re Johnson*, 575 F.3d 1079, 1083 (10th Cir. 2009), it constitutes willful violation. Under *Ellis*, 894 F.2d 371, 372 (10th Cir. 1990), the sale is void ab initio.

Moreover, Anderson's reliance on the in rem order fails because: (1) that order applied to a different bankruptcy case (Max Barber individually, Case No. 25-21749), not the MSB Trust's Chapter 11 (Case No. 25-23863); and (2) even as to Max Barber, the order was conditional upon Gravity Capital's performance of obligations—lien amendment and accounting—that Gravity never fulfilled. The hearing transcript establishes this conditionality on the record, and Skirvin's own email proves Gravity refused to provide even a "discussion on numbers."

**RELIEF REQUESTED:** For the foregoing reasons, Plaintiff respectfully requests that this Court:

1. **DENY** Defendant Anderson's Motion to Dismiss (ECF No. 88) in its entirety;
2. **DENY** any alternative motion for summary judgment as premature, absent jurisdictional discovery;
3. In the alternative, **GRANT** Plaintiff leave to amend and an opportunity for discovery under Fed. R. Civ. P. 56(d); and
4. **GRANT** such other relief as the Court deems just and proper.

**TABLE OF CONTENTS**

I. Introduction and Relief Requested ........................................................ 1
II. Preliminary Matter: Conversion to Summary Judgment ........................ 7
III. Response to Defendant's Statement of Undisputed Material Facts ...... 9
IV. Statement of Additional Material Facts .............................................. 20
V. Standard of Review: The Gatekeeper of Truth & Right to Discovery ... 22
VI. Argument ............................................................................................ 23
A. This Court Has Subject Matter Jurisdiction ...................................... 23
B. Anderson Willfully Violated the Automatic Stay .............................. 24
C. The In Rem Order Does Not Shield Anderson's Conduct .................. 26

D. Anderson Is Not a Neutral Trustee .................................................. 27

E. State Court Rulings Lack Preclusive Effect ..................................... 28

F. The Complaint States Viable Claims Against Anderson .................... 29

G. Defendants are Liable as "Debt Collectors" Under the FDCPA ........ 29

VII. Conclusion ........................................................................... 30

VIII. Certificate of Service ............................................................ 31

IX. Word Count Certification .......................................................... 32

X. Appendix of Evidence ............................................................... 33

***TABLE OF AUTHORITIES***

***Cases***


| **Case** | **Pages** |
|---|---|
| *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664 (10th Cir. 1998) | 23 |
| *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) | 22 |
| *Auto-Owners Ins. Co. v. Paskco Constr., Inc.*, 2024 WL 291130 (D. Utah 2024) | 23 |
| *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) | 22 |
| *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008) | 15 |
| *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231 (10th Cir. 2013) | 22 |
| *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009) | 27 |
| *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) | 8, 23 |
| *Coroles v. Sabey*, 79 P.3d 974 (Utah Ct. App. 2003) | 27 |
| *Ellis v. Consol. Diesel Elec. Corp.*, 894 F.2d 371 (10th Cir. 1990) | 2, 9, 19, 25,30 |
| *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005) | 27 |
| *First Sec. Bank v. Banberry Crossing*, 780 P.2d 1253 (Utah 1989) | 1, 26,27 |

| | |
|---|---|
| *Gardner v. United States (In re Gardner)*, 913 F.2d 1515 (10th Cir. 1990) | 25 |
| *George v. Urban Settlement Servs.*, 833 F.3d 1242 (10th Cir. 2016) | 28 |
| *Hafen v. Adams (In re Hafen)*, 616 B.R. 570 (B.A.P. 10th Cir. 2020) | 18, 24 |
| *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229 (1989) | 28 |
| *In re Calder*, 907 F.2d 953 (10th Cir. 1990) | 25, 30 |
| *In re Hauck*, 489 B.R. 208 (D. Colo. 2013) | 25 |
| *In re Johnson*, 575 F.3d 1079 (10th Cir. 2009) | 2, 14, 16, 23, 24, 25 |
| *In re Owens Corning*, 419 F.3d 195 (3d Cir. 2005) | 16 |
| *Kalb v. Feuerstein*, 308 U.S. 433 (1940) | 25 |
| *Kuhar v. Thompson Mfg., Inc.*, 2024 UT 12 | 27, 28 |
| *Leachco, Inc. v. CPSC*, 103 F.4th 748 (10th Cir. 2024) | 8, 9 |
| *Livingston v. Finco Holdings Corp.*, 2022 UT App 71 | 12, 19, 26 |
| *Mathews v. Eldridge*, 424 U.S. 319 (1976) | 27 |
| *Mower v. Simpson*, 278 P.3d 1076 (Utah Ct. App. 2012) | 2, 26, 27 |
| *Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029 (2019) | 28, 29 |
| *Ortega v. Grisham*, 2025 WL 3939112 (10th Cir. 2025) | 22 |
| *Parks v. Dittmar (In re Dittmar)*, 618 F.3d 1199 (10th Cir. 2010) | 25 |
| *Parsons Steel, Inc. v. First Ala. Bank*, 474 U.S. 518 (1986) | 27 |
| *Perez v. Campbell*, 402 U.S. 637 (1971) | 19, 27, 29 |
| *Russell/Packard Dev., Inc. v. Carson*, 78 P.3d 616 (Utah Ct. App. 2003) | 27 |
| *Sanchez v. Guzman*, 105 F.4th 1285 (10th Cir. 2024) | 22, 23 |

| | |
|---|---|
| *Search Mkt. Direct, Inc. v. Jubber (In re Paige)*, 685 F.3d 1160 (10th Cir. 2012) | 24 |
| *Smith v. Juhan*, 311 F.2d 670 (10th Cir. 1962) | 25 |
| *Stern v. Marshall*, 564 U.S. 462 (2011) | 24 |
| *Taylor v. Sturgell*, 553 U.S. 880 (2008) | 17, 27 |
| *Tolan v. Cotton*, 572 U.S. 650 (2014) | 22, 23 |
| *Tumey v. Ohio*, 273 U.S. 510 (1927) | 15, 27 |
| *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966) | 24 |
| *United States ex rel. Reed v. KeyPoint Gov't Sols.*, 923 F.3d 729 (10th Cir. 2019) | 7, 8 |
| *United States v. Whiting Pools, Inc.*, 462 U.S. 198 (1983) | 24 |


***Constitutional Provisions***


| Provision | Pages |
|---|---|
| U.S. Const. art. VI, cl. 2 (Supremacy Clause) | 19, 27, 29 |
| U.S. Const. amend. V (Due Process Clause) | 27 |
| U.S. Const. amend. XIV (Due Process Clause) | 27 |


***Statutes***


| Statute | Pages |
|---|---|
| 11 U.S.C. § 362(a) (Automatic Stay) | 9, 25, 30 |
| 11 U.S.C. § 362(d)(4) (In Rem Relief) | 21, 26 |
| 11 U.S.C. § 362(k)(1) (Damages for Willful Violation) | 17, 25, 29 |
| 11 U.S.C. § 541(a)(1), (a)(7) (Property of the Estate) | 18, 20 |
| 15 U.S.C. § 1692f(6) (Limited FDCPA Debt Collector) | 29 |

| | |
|---|---|
| 18 U.S.C. § 1341 (Mail Fraud) | 15, 22 |
| 18 U.S.C. § 1343 (Wire Fraud) | 22 |
| 18 U.S.C. § 1961(5) (RICO Pattern Definition) | 28 |
| 18 U.S.C. § 1962(c), (d) (RICO Violations) | 17, 28 |
| 28 U.S.C. § 1334(b), (e) (Bankruptcy Jurisdiction) | 17, 18, 19, 20, 23, 24 |
| 28 U.S.C. § 1367(a) (Supplemental Jurisdiction) | 25 |
| Utah Code Ann. § 57-1-21 (Trustee Duties) | 26 |
| Utah Code Ann. § 57-3-106(10) (Scrivener's Affidavit) | 12, 13 |


***Rules***


| **Rule** | **Pages** |
|---|---|
| Utah Rule of Professional Conduct 1.7 | 26 |
| Fed. R. Civ. P. 8(a)(2), 8(d)(3), 12(b)(6), 12(d), 56 | 7, 8, 9, 22 |
| DUCivR 7-1(a)(4)(A)(i), 7-1(g), 56-1 | 9, 30 |


## II. PRELIMINARY MATTER: CONVERSION TO SUMMARY JUDGMENT

Anderson has styled his motion as one to dismiss "or, alternatively, for summary judgment" and submitted twenty-three exhibits, including a declaration. This invokes Federal Rule of Civil Procedure 12(d): "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).

Conversion carries procedural consequences. The Tenth Circuit has held that "[w]hen a district court relies on material outside the complaint to resolve a Rule 12(b)(6) motion, it

ordinarily must convert that motion 'into a motion for summary judgment.'" *United States ex rel. Reed v. KeyPoint Gov't Sols.*, 923 F.3d 729, 753 (10th Cir. 2019). Upon conversion, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

**Plaintiff has had no opportunity to conduct discovery.**
Critical questions remain:

1) Anderson's compensation arrangement with Gravity Capital;
2) The number of foreclosures Anderson has conducted for Gravity;
3) Anderson's communications with Skirvin beyond the single email chain;
4) Anderson's knowledge that Adrian Johnson (the sole bidder) was recruited by his father Jamis Johnson; and
5) Anderson's awareness of Gravity's failure to perform stipulation conditions.

Summary judgment without jurisdictional discovery would constitute reversible error. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A "reasonable opportunity" for discovery is mandatory before the Court can dispose of the case on converted grounds. *Leachco, Inc. v. CPSC*, 103 F.4th 748 (10th Cir. 2024).

**Authentication:** Pursuant to Fed. R. Civ. P. 56(c)(4) and *Leachco*, Plaintiff relies on the Declaration of Max Warren Barber (Ex. A), submitted concurrently, which provides specific facts based on personal knowledge rather than "threadbare recitals."

## III. RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to DUCivR 56-1(b)(2), Plaintiff responds to each of Defendant's numbered facts. Only disputed facts are restated verbatim and addressed below; undisputed facts (1–2, 6–7, 9–11, 13–16, 18, 22–23, 25, 31–33, 37) are deemed admitted.

**FACT 5:** "This matter arises from a foreclosure sale of certain real properties located at 1028 South 1900 East, Salt Lake City, Utah 84108 ('1028 Property') and 1836 Yale Ave S., Salt Lake City, UT 84108 ('Yale Ave Property' and, together with the 1028 Property, the 'Properties')." ECF No. 88 at 4.

**RESPONSE: DISPUTED.** The foreclosure sale was conducted in willful violation of the automatic stay in Case No. 25-23863, rendering it "void ab initio." *Ellis v. Consol. Diesel Elec. Corp.*, 894 F.2d 371, 372 (10th Cir. 1990).

*Record Citation:* Barber Decl. 3 (filed herewith); ECF No. 17 ¶¶ 45–48 (First Am. Compl. alleging void sale).

**FACT 8:** "MSB Trust defaulted on its obligations under the Promissory Note by failing to pay one or more regularly scheduled payments before its due date." ECF No. 88 at 5.

**RESPONSE: DISPUTED.** The alleged "default" was manufactured by Gravity's refusal to provide the required accounting and systematic failure to apply Plaintiff's payments correctly. The Stipulation required Gravity to provide accounting before exercising any remedies.

*Record Citation:* Barber Decl. 5 (filed herewith); ECF No. 35-2 (Notice of Default).

| Date | What Happened | Evidence |
|---|---|---|
| May 21, 2025, 3:25 PM | Dove promised: "I've requested a current more detailed payoff from my clients that I will forward to you." | ECF No.36-9 at PageID.767 |
| May 29, 2025 | Plaintiff confirmed terms: amend lien to $322,000 and provide accounting. | ECF No. 36-9 at PageID.768 |

| | | |
|---|---|---|
| May 30, 2025 | Gravity's paralegal admitted: "we will contact Gravity regarding a clear accounting." | ECF No. 36-9 at PageID.768 |
| June 13, 2025 | Plaintiff served Notice of Default for failure to provide accounting. | ECF No. 35-2 |
| June 13–July 21 | No response. No accounting provided. | Barber Decl. 5 |
| July 21, 2025, 7:01 PM | Skirvin instructed Anderson: "any discussion on numbers should wait until after the sale." | ECF No. 88-22 at PageID.1700 |

**FACT 12:** "In an apparent effort order to forestall the foreclosure, Mr. Barber filed multiple bankruptcy petitions in the United States Bankruptcy Court for the District of Utah, including on: December 14, 2023 (Case No. 2:2023bk25756 – closed on April 8, 2024), February 1, 2024 (2:2024bk20418 – closed on May 9, 2024), April 2, 2025 (Case No. 2:2025bk21749), and October 17, 2025 (Case No. 2:2025bk26244)." ECF No. 88 at 5.

**RESPONSE: DISPUTED.** Anderson's characterization as "serial filings" is misleading. The MSB Trust's July 8, 2025 filing (Case No. 25-23863) was an independent action by a **separate legal entity**—the Trust—necessitated by Gravity's breach of the June 11 Stipulation. The MSB Trust had never previously filed bankruptcy.

*Record Citation:* Barber Decl. 6 (filed herewith); ECF No. 35-1 (Stipulation Re: In Rem Relief).

**FACT 17:** "Paragraph 2 of the parties' Stipulation provides that 'Debtor stipulates to immediate in rem Relief from the Automatic Stay and Co-Debtor Stay in favor [of] Gravity Capital, LLC,' and further provides that 'any Trustee's Sale set hereafter will be held after July 7, 2025.'" ECF No. 88 at 6.

**RESPONSE: DISPUTED IN PART.** Anderson omits that the Stipulation was **conditional**. On the record, the parties agreed:

"[U]pon the creditor performing his obligations, everything would go forward. If he didn't perform his obligations, then the rem relief would not be granted."

*Record Citation:* **ECF No.** 36-9 at PageID..717-718 (Hearing Tr., conditional terms quoted); Barber Decl. 8 (filed herewith).

**FACT 19:** "On June 11, 2025, the Court in the April 2025 Chapter 13 entered its Order Approving Stipulation Re: Motion for In Rem Relief from the Automatic Stay and the Co-Debtor Stay (Docket No. 47) (the 'In Rem Order'), wherein it approved the parties' stipulation in full." ECF No. 88 at 7.

**RESPONSE: DISPUTED IN PART.** The Order explicitly states it was entered "**pursuant to the terms and conditions of the Stipulation**," incorporating those conditions. Unconditional relief was not granted.

*Record Citation:* ECF No. 36-9 at PageID.770 (Hearing Tr., "pursuant to terms and conditions"); Barber Decl. 9 (filed herewith).

**FACT 20:** "In conjunction with their Stipulation, the parties submitted a proposed order, which was ultimately not entered by the Court, but which provided that '[t]he recorded lien [an apparent reference to the Trust Deed] shall be amended to reflect the correct principal and/or balance owed.' The proposed order further states that '[t]he Automatic Stay shall remain in effect for all parties except Gravity Capital, LLC to sell the properties, effective as of July 7, 2025.'" ECF No. 88 at 7.

**RESPONSE: DISPUTED.** The lien amendment and accounting were not merely proposed—they were **conditions precedent incorporated into the In Rem Order pursuant to the stipulation at Docket No. 47**. On the record, Judge Anderson stated the order was entered "pursuant to the terms and conditions of the stipulation." ECF No. 36-9 at PageID.722. Under *Livingston v. Finco Holdings Corp.*, 2022 UT App 71,  18, 513 P.3d 94, conditional rights do not vest until conditions are met. Gravity **never** amended the liens or provided accounting. The $1.2 million fraudulent liens remained on record as of the July 22, 2025 sale, rendering the In Rem relief inoperative.

*Record Citation:* ECF No. 35-1(In Rem Order);  ECF No. 35-3 (County Records showing $1.2M liens unreleased); ECF No. 36-9 at PageID.722 (Hearing Tr., Judge: "pursuant to the terms and conditions of the stipulation"); Exhibit H (Approved Stipulation Docket No. 47)

**FACT 21:** "On June 10, 2025, David Knudson, President of Gravity Capital, executed and, on June 17, 2025, recorded with the Salt Lake County Recorder's Office as Entry No. 14398969, Book 11579, Page 5965 a Scrivener's Affidavit, wherein Gravity Capital clarified that 'the Deed of Trust secures a revolving line of credit (an open-end loan) with a maximum loan amount of $1,200,000' and that there was an 'initial advance under the Note . . . in the amount of $332,000.00.'" ECF No. 88 at 7.

**RESPONSE: DISPUTED.** Under **Utah Code § 57-3-106(10)**, a scrivener's affidavit "may not be used to . . . alter an interest in real property." Converting a fixed $332,000 deed of trust into a $1.2 million revolving line of credit is a **material alteration** requiring formal re-recording—not a scrivener's correction. This affidavit was a legal nullity. The $2.4 million in fraudulent encumbrances ($1.2M × 2 parcels) remained on title, directly blocking Plaintiff's $3.3

million sale.

*Record Citation:* Utah Code § 57-3-106(10); ECF No. 35-3 (County Records showing $2.4M in unaltered fraudulent liens); ECF No. 35-2 (Notice of Default).

**FACT 26:** "Consistent with the June 16, 2025, Notice of Trustee's Sale, the Properties were sold at public auction at the stairs of the entrance of the Third Judicial District Court on July 22, 2025 at 9:30 am." ECF No. 88 at 8.

**RESPONSE: DISPUTED.** The sale was not a legitimate "public auction"—it was a **rigged sale with a sole insider bidder**:

1. The **only bidder** was Adrian Johnson—son of Jamis Johnson (disbarred attorney, convicted felon);
2. Adrian testified his participation was pre-arranged: "**Let's call Dave**";
3. Jamis Johnson admitted he **funded the purchase through his own trust**;
4. Potential bidders received **false sale dates**—Larry Horton was told by Knudson the sale would be "August 15, 2025," not July 22;
5. The check was delivered "**a week after**" the foreclosure—inconsistent with a legitimate auction.

*Record Citation: Barber Decl. ¶¶ 27-28* (sworn transcriptions from Oct. 14, 2025 Hr'g Audio); Ex. H (Official Audio Recording, Third District Court, File: wjcrtd34_20251014-1245_01dc3d086d9d72a0.mp3 at 01:06:00–01:10:00, Adrian: "Let's call Dave"); ECF No. 35-5 (Horton Texts showing false date).

**FACT 27:** "The day before the trustee's sale, Steve Skirvin of Skirvin Law PLLC provided Mr. Anderson a copy of the In Rem Order via email and 'confirm[ed] that per the attached order, the

automatic stay does not apply to [MSB Trust or Mr. Barber's] properties regardless of this new bankruptcy filing,' a reference to the Subject Bankruptcy." ECF No. 88 at 8.

**RESPONSE: DISPUTED.** This fact omits critical context:

1. **Adam Ford first emailed Anderson at 6:05 PM** warning of the MSB Trust's automatic stay;
2. Anderson **forwarded that warning** to Skirvin and Knudson with "FYI";
3. Skirvin replied from a **Summit Companies email address** (steve@thesummitcompanies.com), not a law firm address;
4. Anderson did **not independently verify** the stay on PACER, nor did he verify whether the conditions precedent to the In Rem Order (lien amendment and accounting) had been satisfied.

Under *In re Johnson*, 575 F.3d 1079, 1083 (10th Cir. 2009), knowledge plus intentional action equals willful violation.

*Record Citation:* ECF No. 88-22 at PageID.1701–1703 (July 21 Email Chain: Ford warning → Anderson FYI forward → Skirvin "proceed").

**FACT 28:** "Relying on the language of the In Rem Order and Mr. Skirvin's written confirmation, Mr. Anderson conducted the trustee's sale of the Properties on July 22, 2025." ECF No. 88 at 8.

**RESPONSE: DISPUTED.** Anderson's own Notices of Trustee's Sale stated that a bankruptcy filing would make the sale "**null and void**." ECF No. 88-13 at PageID.1642. Anderson received actual notice of the MSB Trust stay and proceeded anyway—the definition of willful violation under Tenth Circuit law.

*Record Citation:* ECF No. 88-22 at PageID.1701 (Ford email warning); ECF No. 88-13 at PageID.1642 (Notice of Trustee's Sale: "null and void" language).

**FACT 29:** "On July 23, 2025, Mr. Anderson executed two Trustee's Deeds, conveying the Properties to the successful bidders at the public auction. Mr. Anderson did not mail the Trustee's Deeds to the Salt Lake County Recorder's Office for recordation, but rather hand delivered them to Dave Knudson, a principal of Gravity Capital." ECF No. 88 at 8.

**RESPONSE: DISPUTED IN PART.** Anderson's claim that he did not use the U.S. Mail is contradicted by the record. Anderson utilized the U.S. Mail to transmit **six separate Notices of Trustee's Sale** between 2023 and 2025. Each mailing constitutes a distinct predicate act of mail fraud under 18 U.S.C. § 1341. *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647 (2008). *Record Citation:* ECF No. 37 (Schedule of RICO Predicate Acts: 6 mailed Notices of Trustee's Sale, 2023–2025).

**FACT 30:** "As demonstrated by the Trustee's Deeds, Mr. Anderson did not receive, acquire, or retain any ownership title, or equity in the Properties, and at no time did he accept or retain the same." ECF No. 88 at 8.

**RESPONSE: DISPUTED.** Anderson participated in the RICO Enterprise as an "associate" by executing void deeds to facilitate the enterprise's "loan-to-own" scheme. He received substantial trustee fees while simultaneously representing Gravity Capital in state court litigation—a conflict that violated his fiduciary duty. *Tumey v. Ohio*, 273 U.S. 510, 523 (1927).

*Record Citation:* Barber Decl.  15 (filed herewith); ECF No. 17 ¶¶ 79–81 (First Am. Compl., RICO Enterprise allegations).

**FACT 34:** "On September 26, 2025, Mr. Barber then filed a second motion to stay the reinstated/amended order of restitution, which was denied with the following minute-entry ruling entered on September 29, 2025: 'This Court found in its oral ruling that the bankruptcy court previously granted relief from the Automatic Stay of defendant's original bankruptcy filing in order to allow for the sale of the property... The relief from the stay applied to any subsequent or bifurcated bankruptcy petitions... this newer bankruptcy filing did not change the status of the real property in question or its relief from bankruptcy.'" ECF No. 88 at 10.

**RESPONSE: DISPUTED.** The state court misapplied the In Rem Order. That order applied to **Max Barber's individual bankruptcy (Case No. 25-21749)**—not the MSB Trust's bankruptcy (Case No. 25-23863). The Trust is a **separate legal entity** that filed its own independent petition. Under *In re Johnson*, 575 F.3d 1079, 1083 (10th Cir. 2009), a court must analyze each debtor's automatic stay separately.

*Record Citation:* ECF No. 36-9 at PageID.722 (In Rem Order limited to Barber's case); Case No. 25-23863 (MSB Trust separate filing).

**FACT 35:** "On September 30, 2025, Mr. Barber filed an emergency motion for reconsideration and to quash the amended order of restitution." ECF No. 88 at 10.

**RESPONSE: UNDISPUTED AS TO PROCEDURAL HISTORY; DISPUTED AS TO RELEVANCE.** This procedural fact does not establish the validity of the foreclosure or negate the federal automatic stay violation.

**FACT 36:** "An evidentiary hearing was held on October 14, 2025, to consider the emergency motion, which resulted in the following findings, as reflected by contemporaneous minute entry: '4:43 The Court finds no evidence of collusion with regard to the sale. The Court finds no

evidence of any unclean hands with regard to the sale... 4:46 The Court does not find that the sale was void ab initio. 4:52 The motion to stay is denied.'" ECF No. 88 at 10–11.

**RESPONSE: DISPUTED.** The state court's findings are:

1. **Not preclusive** as to federal claims—issue preclusion requires the issue to have been "actually litigated" and "essential to the judgment." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008);
2. **Jurisdictionally void** as to automatic stay determinations—28 U.S.C. § 1334(e) grants **exclusive federal jurisdiction** over bankruptcy estate property;
3. **Factually wrong**—the state court never considered the Ford email warning (ECF No. 88-22), the conditional nature of the In Rem Order (ECF No. 36-9), or the rigged auction evidence.

**Issues NOT adjudicated by the state court:**

1) Willful violation of 11 U.S.C. § 362(k);
2) RICO liability (18 U.S.C. § 1962);
3) The rigged auction with sole insider bidder;
4) Anderson's receipt of Ford's email warning;
5) The conditional nature of the In Rem Order;
6) Gravity's failure to perform stipulation conditions.

*Record Citation:* ECF No. 88-22 at PageID.1701 (Ford warning not presented to state court);

**FACT 38:** "The court's Findings of Fact and Conclusions of Law made several findings and conclusions with respect to the facts and circumstances surrounding the Subject Bankruptcy, as follows: '13. On July 8, 2025, the MSB Trust filed (again) for bankruptcy in case no. 25-23863.

14. At the time MSB Trust filed its bankruptcy petition on July 8, 2025, it did not own either of the Properties...'" ECF No. 88 at 11.

**RESPONSE: DISPUTED.** The state court's finding that the MSB Trust "did not own" the Properties is **legally irrelevant** to the automatic stay analysis. Under 11 U.S.C. § 541(a)(7), property acquired **after** the petition date becomes property of the estate. When the Properties were deeded to the Trust on July 21, 2025, they became estate property protected by the July 8, 2025 stay.

*Record Citation:* 11 U.S.C. § 541(a)(7); ECF No. 17 ¶¶ 45–48 (First Am. Compl.).

**FACT 39:** "The court in the Eviction Suit further ordered, adjudged and decreed that '[t]he transfer of property from GSE Global, LLC to MSB Trust on July 21, 2025, is declared VOID as a fraudulent conveyance.'" ECF No. 88 at 12.

**RESPONSE: DISPUTED.** A state court **lacks jurisdiction** to adjudicate fraudulent transfer claims involving bankruptcy estate property. Under 28 U.S.C. § 1334(e), the bankruptcy court has **exclusive** jurisdiction over such determinations. The state court's "fraudulent conveyance" ruling is **void for lack of subject-matter jurisdiction**.

*Record Citation:* 28 U.S.C. § 1334(e); *In re Hafen*, 616 B.R. 570 (B.A.P. 10th Cir. 2020).

**FACT 40:** "The court in the Eviction Suit further ordered, adjudged and decreed that 'The foreclosure sale conducted on July 22, 2025, is VALID and ENFORCEABLE.'" ECF No. 88 at 12.

**RESPONSE: DISPUTED.** A state court **cannot validate** a sale conducted in violation of the federal automatic stay. Under the Supremacy Clause, state court orders that conflict with federal law are preempted: "any state law... which interferes with or is contrary to federal law,

**must yield**." *Perez v. Campbell*, 402 U.S. 637, 651 (1971). The sale remains **void ab initio** under Tenth Circuit law. *Ellis v. Consol. Diesel Elec. Corp.*, 894 F.2d 371, 372 (10th Cir. 1990).

*Record Citation:* ECF No. 88-22 at PageID.1701–1703 (evidence of willful stay violation not before state court).

**FACT 41:** "The court in the Eviction Suit further ordered, adjudged and decreed that 'The In Rem Order entered in Bankruptcy Case No. 25-21749 is binding upon MSB Trust and Defendant Max Barber and authorized the foreclosure sale.'" ECF No. 88 at 12.

**RESPONSE: DISPUTED.** The In Rem Order was entered in **Case No. 25-21749 (Barber's individual case)**—not Case No. 25-23863 (MSB Trust's case). The Trust is a **separate legal entity** with its own automatic stay rights. Moreover, the In Rem Order was **conditional**, requiring Gravity to amend the liens and provide accounting—conditions that were **never satisfied**. *Livingston v. Finco Holdings Corp.*, 2022 UT App 71, 18.

*Record Citation:* ECF No. 36-9 at PageID.722(conditional terms); Ex. G (Docket No.47 Stipulation);ECF No. 35-3 (liens never amended).

**FACT 42:** "The court in the Eviction Suit further ordered, adjudged and decreed that 'The automatic stay in Bankruptcy Case No. 25-23863 had no effect on the foreclosure sale as the property was not property of the bankruptcy estate at the time of filing.'" ECF No. 88 at 12.

**RESPONSE: DISPUTED.** The state court's conclusion is **legally erroneous** under 11 U.S.C. § 541(a)(7), which provides that after-acquired property becomes estate property. More critically, the state court **exceeded its jurisdictional competence** by ruling on the scope of the federal automatic stay. Under 28 U.S.C. § 1334(e), only federal bankruptcy courts can make such determinations. The state court's ruling is **void** and entitled to no preclusive effect.

*Record Citation:* 28 U.S.C. § 1334(e); 11 U.S.C. § 541(a)(7); ECF No. 88-22 (stay violation evidence).

## IV. STATEMENT OF ADDITIONAL MATERIAL FACTS

Pursuant to DUCivR 56-1(b)(2):

**1.** **The Willful Blindness Email Chain:** On July 21, 2025 (6:06 PM), Adam Ford (MSB Trust counsel) emailed Anderson warning of the automatic stay in Case No. 25-23863. Anderson did not call; instead, he forwarded the warning to Knudson and Skirvin with "FYI." Skirvin (using steve@thesummitcompanies.com) ordered: "please proceed with the sale tomorrow." ECF No. No. 88-22.

**2.** **Skirvin's Dual Role:** Although Skirvin claims his in-house role at Gravity "ended" on July 15, 2025 (ECF No. 103-1 ¶4), he was still directing Anderson on July 21. His use of a Summit Companies email demonstrates an ongoing operational "Manager" role in the Enterprise.

**3.** **Breach of the Stipulation:** When Ford requested a payoff accounting, Skirvin refused: "any discussion on numbers should wait until after the sale." ECF No. 88-22. This violated the June 11 Stipulation, which the Bankruptcy Court approved "pursuant to the terms and conditions" of the payoff accounting. Hearing Tr. at 6:9–12. Anderson's own Notices of Sale warned that a bankruptcy filing would make the sale "null and void." ECF No. 88-13.

**4.** **The Rigged Auction Admissions:** Adrian Johnson (sole bidder) admitted his participation was pre-planned with Knudson: "Let's call Dave." Barber Decl. 27 (sworn transcription); **Ex. H** (Audio File: wjcrtd34_20251014-1245_01dc3d086d9d72a0.mp3 at 01:06:00). Jamis Johnson (disbarred attorney/felon) admitted he was the architect of the

coordination, funded the sale via his own trust, and delivered the check "a week after" the foreclosure. Barber Decl. 28 (sworn transcriptions); **Ex. H** (Audio File: wjcrtd34_20251014-1513_01dc3d1d24a6f660.mp3 at 00:19:00). Potential bidders were misled with an "August 15th" date while the Enterprise fast-tracked the secret July 22nd auction. ECF No. 35-5.

**5.** **Systemic Conflict:** Anderson simultaneously represents Gravity Capital in state court (Case No. 250902638) while acting as the "neutral" trustee. ECF No. 103.

**6.** **Continued Enterprise Overt Acts:** On November 7, 2025, Defendants registered a new shell entity (Summit 11 Inc., No. 14628478-0142) to facilitate Enterprise objectives and obstruct discovery.

**7.** **Failure to Record In Rem Order Against MSB Trust:** The June 11, 2025 In Rem order (entered in Case No. 25-21749, Max Barber individually) was never recorded in the Salt Lake County Recorder's Office against the MSB Trust (Case No. 25-23863) prior to the July 22, 2025 sale. Under 11 U.S.C. § 362(d)(4)(B), an In Rem order only "shall be binding in any other case... filed... if... recorded in compliance with applicable State laws governing notices of interests or liens in real property." Utah Code § 57-3-102. Because Defendants failed to record the order against the MSB Trust prior to its July 8 filing, the order has no legal effect against the MSB Trust estate.

**8.** **Heightened RICO Particularity (Fed. R. Civ. P. 9(b)—Schedule of Predicate Acts):** Plaintiff's RICO claims are pled with the particularity required by Rule 9(b). The following mailings constitute predicate acts of mail fraud (18 U.S.C. § 1341):

| # | Date | Document | Sender | Recipient | Fraudulent Content |
|---|---|---|---|---|---|

| | | | | | |
|---|---|---|---|---|---|
| 1 | Oct 15, 2023 | Notice of Default | Jared Anderson | Max Barber, 1028 S 1900 E, SLC | Falsely stated $1.2M owed; actual debt ~$200k |
| 2 | Nov 20, 2023 | Notice of Trustee's Sale #1 | Jared Anderson | Max Barber | Scheduled sale based on manufactured default |
| 3 | Mar 15, 2024 | Notice of Trustee's Sale #2 | Jared Anderson | Max Barber | Rescheduled sale; same fraudulent debt amount |
| 4 | Sep 10, 2024 | Notice of Trustee's Sale #3 | Jared Anderson | Max Barber | Third attempt; fraudulent lien amount persisted |
| 5 | Apr 25, 2025 | Notice of Trustee's Sale #4 | Jared Anderson | Max Barber | Sale based on $2.4M fraudulent liens |
| 6 | Jun 30, 2025 | Notice of Trustee's Sale #5 | Jared Anderson | Max Barber | July 22 sale notice; fraudulent consideration |

Each mailing was transmitted via U.S. Postal Service to Plaintiff's address in furtherance of the scheme to defraud Plaintiff of his equity. ECF No. 36-14.

## V. STANDARD OF REVIEW: THE GATEKEEPER OF TRUTH & RIGHT TO DISCOVERY

### A. STANDARD OF REVIEW (RULES 12(B)(6), 12(D), AND 56)

Under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations" and view them favorably. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Burnett*, 706 F.3d at 1235. Anderson's motion relies on factual denials which must be disregarded at this stage.

Under the foundational *Adler* framework, the Court must filter the record to identify only those facts that are "essential to the resolution of the legal claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). If the Court converts this to summary judgment, the burden-shifting protocol of the *Adler* framework applies. Where the record allows for "multiple

reasonable interpretations," the Court must adopt the non-movant's version of the facts. *Sanchez v. Guzman*, 105 F.4th 1285, 1290 (10th Cir. 2024); *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014). Summary judgment is inappropriate where "genuine disputes" exist as to every material element. *Celotex*, 477 U.S. at 323.

## VI. ARGUMENT

A. This Court Has Subject Matter Jurisdiction

Defendant Anderson incorrectly asserts that this Court lacks jurisdiction because stay-violation claims are "core" bankruptcy proceedings that "can be brought only in the context of a bankruptcy case." ECF No. 88 at 14 (quoting *In re Johnson*, 575 F.3d 1079, 1083 (10th Cir. 2009)). This argument fundamentally misreads both the statute and the case law.

**Syllogism:**

**Major Premise:** Under 28 U.S.C. § 1334(b), federal district courts possess "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."

**Minor Premise:** Plaintiff's § 362(k) claim "arises under title 11" and is "related to" the MSB Trust bankruptcy, Case No. 25-23863; Plaintiff's RICO claims provide an independent basis for federal question jurisdiction under 28 U.S.C. § 1331.

**Conclusion:** This Court has subject matter jurisdiction to adjudicate both the bankruptcy-related and racketeering claims.

**1. Statutory Framework Vests Exclusive Jurisdiction in District Court**

The jurisdictional grant runs to the district court, and it is exclusive as to the property:

**28 U.S.C. § 1334(e)(1):** "The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate."

This "jurisdictional wall" is absolute. Under the Tenth Circuit's "Federal Gatekeeper" rule, a state court lacks the subject-matter jurisdiction even to decide whether a cause of action or a property interest belongs to the estate or a third party. *Hafen v. Adams (In re Hafen)*, 616 B.R. 570, 576-78 (B.A.P. 10th Cir. 2020).

**2. Anderson's Reliance on In re Johnson Is Misplaced**

Anderson quotes *In re Johnson* for the proposition that § 362(k) claims "can be brought only in the context of a bankruptcy case." 575 F.3d at 1083. But Anderson omits what *In re Johnson* actually held:

> "Section 362(k) proceedings are core proceedings over which bankruptcy courts have jurisdiction." [2]

Saying bankruptcy courts *have* jurisdiction is not the same as saying they have *exclusive* jurisdiction. The Supreme Court has confirmed that district courts possess concurrent jurisdiction over core proceedings and may adjudicate them directly. *See Stern v. Marshall*, 564 U.S. 462, 473–74 (2011).

**3. Supplemental Jurisdiction**

Under 28 U.S.C. § 1367(a), this Court possesses supplemental jurisdiction over all claims that are so related to the federal RICO action that they form "part of the same case or controversy". The willful stay violation was the "terminal act" of the racketeering enterprise.

---

[2] *Id.* at 1082 (emphasis added).

### B. Anderson Willfully Violated the Automatic Stay

The automatic stay arises instantaneously upon filing. 11 U.S.C. § 362(a). Actions violating the stay are "void ab initio." *Ellis*, 894 F.2d at 372–73.

#### 1. The Legal Standard for Willful Violation

Section 362(k)(1) provides: "[A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees."

**The Tenth Circuit has defined "willful":**

> "A 'willful violation' does not require a specific intent to violate the automatic stay. Rather, the standard is met if there is knowledge of the stay and the defendant intended the actions which constituted the violation." [3]

#### 2. Undisputed Facts Establish Willfulness

The email chain at ECF No. 88-22 proves both elements:

- **Knowledge:** On July 21, 2025, at 6:06 PM, Adam Ford wrote Anderson: "These properties are covered by the automatic stay in the case [MSB Trust, Case No. 25-23863]."
- **Intentional Action:** Anderson proceeded with the sale the next morning.

Anderson did not independently verify. He forwarded Ford's warning to Skirvin and Knudson with "FYI," received Skirvin's instruction to proceed, and complied.

#### 3. Anderson's Own Documents Condemn Him

[3] *In re Johnson*, 575 F.3d at 1083.

His Notices of Trustee's Sale explicitly stated:

"This Trustee's Sale is subject to a bankruptcy filing... If any of these conditions exist, this sale will be null and void." ECF No. 88-13 at PageID.1642. Anderson knew a bankruptcy filing would void the sale.

He proceeded anyway.

### C. The In Rem Order Does Not Shield Anderson's Conduct

The In Rem Order was:

1. Entered in **Case No. 25-21749** (Max Barber individually)—not Case No. 25-23863 (MSB Trust);

2. **Conditional** upon Gravity's performance of stipulation obligations that Gravity never fulfilled. [4]

The Utah state court acknowledged this breach: "Gravity Capital had a stipulation with you, Mr. Barber, that they would do certain things prior to the sale. And apparently, and I didn't hear any refutation, but they did not do those things. They didn't file an amended lien... that's really a breach of contract or a breach of agreement." (Barber Decl. 34(e); Ex. H (Audio File: wjcrtd34_20251014-1513_01dc3d1d24a6f660.mp3 at 00:37:00)). See Ex. H.

### D. Anderson Is Not a Neutral Trustee

A Utah foreclosure trustee owes fiduciary duties to all parties. *First Sec. Bank v. Banberry Crossing*, 780 P.2d 1253, 1256 (Utah 1989). Anderson breached these duties by:

---

[4] *See* Under *Livingston v. Finco Holdings Corp.*, 2022 UT App 71, 18, conditional rights do not vest until conditions are met. The conditions precedent were **never satisfied**. ***See*** **Ex. G** (Order Granting In Rem Relief, Docket No. 47, establishing conditional terms).

1. **Conflict of Interest:** Simultaneously representing Gravity Capital in state court while acting as "neutral" trustee.

2. **Surrendered Independence to a Non-Attorney:** Anderson outsourced his fiduciary judgment to Skirvin. But Skirvin was not acting as an attorney when he directed Anderson to proceed. By his own sworn admission, Skirvin's role as Gravity's in-house counsel ended on July 15, 2025. ECF No. 103-1 ¶4. Six days later, Skirvin issued his directive to proceed—not from a law firm, but from a Summit Companies email address, in his capacity as Summit Capital's General Counsel. ECF No. 103-2 ¶3. Anderson did ot rely on counsel; he followed a business directive from an Enterprise operative who had no attorney-client relationship with any party to the foreclosure.

3. **Rigged Auction:** Facilitating a pre-planned sale to Adrian Johnson while potential bidders were misled.

Under *Mower v. Simpson*, 278 P.3d 1076, 1084 (Utah Ct. App. 2012), such conduct forfeits immunity.

**E. Defendants' Sworn Statements are Binding Judicial Admissions**

The statements in ECF No. 103 regarding Skirvin's termination date and Summit Capital role are binding **judicial admissions**. Defendants cannot now claim Skirvin was providing "legal advice" on July 21 when they have sworn under oath that his attorney role ended on July 15 ECF No. 103-1 ¶4. *See American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) (statements in briefs are judicial admissions); Fed. R. Evid. 801(d)(2)(A).

Furthermore, Knudson's admission that he is the "person most knowledgeable regarding... loan accounting" (ECF No. 103-1 ¶3) proves that Gravity possessed the means to comply with the Stipulation's accounting requirement but willfully chose to obstruct ("any discussion on numbers should wait until after the sale").

**F. The "Same Building" Admission Supports the Enterprise Theory**

Knudson and Skirvin admit that Summit Capital and Gravity Capital are "located in the same building." ECF No. 103 at 4; ECF No. 103-1 ¶5. This confirms the Properties were not sold in an arm's-length transaction but were shuffled between interconnected entities sharing physical space, personnel (Skirvin), and leadership (Knudson).

**E. State Court Rulings Lack Preclusive Effect**

Issue preclusion requires:

1. The issue decided in the prior adjudication is identical;
2. The issue was completely, fully, and fairly litigated;
3. Final judgment on the merits.

*Kuhar v. Thompson Mfg., Inc.*, 2024 UT 12, 12, 552 P.3d 174, 178.

The state eviction court **did not adjudicate**:

- Willful violation of § 362(k);
- Anderson's receipt of Ford's email warning;
- The conditional nature of the In Rem order;
- The rigged auction; or
- RICO liability.

**The state court explicitly declined to adjudicate damages against Gravity, stating:** "for whatever reason, you may have damages against them for failing to do that if it caused you harm."Barber Decl. 34(e); Ex. H (Audio at 00:37:00)). **No preclusive effect attaches to claims the state court directed Plaintiff to pursue elsewhere.**

Under the Supremacy Clause, state court orders that conflict with federal law are preempted. *Perez v. Campbell*, 402 U.S. 637, 651 (1971).

**F. The Complaint States Viable Claims Against Anderson**

The FAC alleges:

- 21: Anderson "knowingly conducted the foreclosure sale on July 22, 2025."
- 52: Anderson "knowingly chose to proceed" despite actual notice.
- 57: Anderson "received written notice from MSB Trust's counsel."

These allegations satisfy Rule 8. Anderson's role was specific and essential: he conducted the sale, executed the deeds, and handed them to Knudson.

G. Defendants are Liable as "Debt Collectors" Under the FDCPA [5]

Because the automatic stay was in effect, Anderson had **no present right to possession** on July 22, 2025. By proceeding with a void sale, Anderson violated § 1692f(6).

## VII. CONCLUSION

[5] *See* In *Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029 (2019), the Supreme Court held that foreclosure trustees ARE considered "debt collectors" for the limited purpose of 15 U.S.C. § 1692f(6).

The automatic stay is "one of the fundamental debtor protections provided by the bankruptcy laws." *In re Calder*, 907 F.2d at 956. Actions violating it are "void ab initio." *Ellis*, 894 F.2d at 372.

> **Anderson knew:** Adam Ford's email told him the properties were protected.
>
> **Anderson acted:** He conducted the foreclosure anyway.
>
> **Anderson did not verify:** He relied on the beneficiary's inside counsel instead of PACER.

**That is willful violation.**

**Plaintiff respectfully requests that this Court:**

1. **DENY** Anderson's Motion to Dismiss in its entirety.
2. If the Court considers matters outside the pleadings, **CONVERT** to summary judgment under Fed. R. Civ. P. 12(d) and **GRANT** Plaintiff a discovery period under Fed. R. Civ. P. 56(d).
3. **FIND** that the foreclosure sale was void ab initio under *Ellis* and § 362(a).
4. **AWARD** Plaintiff actual damages under 11 U.S.C. § 362(k)(1), including attorney's fees and costs.
5. **DENY** Anderson's fee request and instead **AWARD** fees to Plaintiff as the prevailing party.
6. **GRANT** leave to amend under Fed. R. Civ. P. 15(a) if any claim is found insufficiently pled.

**Plaintiff requests oral argument pursuant to DUCivR 7-1(g).**

**DATED:** December 23, 2025

Respectfully submitted,

/s/ Max Warren Barber
**MAX WARREN BARBER**

## VIII. CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2025, I caused a true and correct copy of the foregoing PLAINTIFF'S MEMORANDUM IN OPPOSITION ECF No. 88 to be served upon all counsel of record via the Court's CM/ECF No. electronic filing system:

/s/ Max Warren Barber

**Steven R. Skirvin** **steve@srslawpc.com**
*Counsel of Gravity Defendants*

**Gary R. Guelker** **gguelker@rlattorneys.com**
*Counsel of Jeremy Shorts and David Gardner*

**Andrew R. Welch (andrew.welch@lewisbrisbois.com)**
*Counsel of Jared L. Anderson*

### PRO SE DEFENDANT(s) CM/ECF No. SYSTEM / EMAIL

**Adrian Isaac Johnson:**
adrian.isaac.johnson@gmail.com

**Dastan M. D'O:**
D_0001@icloud.com

**Karen Salas:**
Karensalasutah@gmail.com

**Stacy Roberts Johnson**
stacyjrob@gmail.com

**Stephanie Strasnick Johnson:**
stephanie.anne.strasnick@gmail.com

**Taytum Jorgensen**
taytumannjorge@gmail.com

**Pace William Johnson**
pace@pacejohnson.com

### VIA U.S. MAIL, FIRST-CLASS POSTAGE PREPAID:

I served the following Defendants (including those in Default/Failure to Appear) by placing a true copy in the United States Mail, addressed as follows:

**Jamis Melwood Johnson**
1028 South 1900 East
Salt Lake City, UT 84108

**1028 S 1900 E LLC**
c/o Registered Agent
1028 South 1900 East
Salt Lake City, UT 84108

**CR TRUE LLC**
c/o Pace Johnson Law Group
231 E 400 S, Suite 345
Salt Lake City, UT 84111

## IX. WORD COUNT CERTIFICATION

Pursuant to DUCivR 7-1(a)(4)(A)(i), I certify this Memorandum contains approximately **7,650 words**, excluding the caption, table of contents, table of authorities, signature block, certificates, and this certification, and complies with the 7,750-word limit.
/s/ Max Warren Barber

## NOTICE REGARDING ADDITIONAL EXHIBITS

Pursuant to DUCivR 7-1(b)(3) and Fed. R. Civ. P. 56(c)(1)(A), Plaintiff submits the following additional exhibits in direct response to new arguments raised by Defendant Anderson in ECF No. 88:

**Exhibit G** — ORDER GRANTING IN REM RELIEF PURSUANT TO STIPULATION (Bankruptcy Case No. 25-21749, Docket No. 47): Submitted to directly rebut Defendant's assertion in ECF No. 88 Fact 20 that the parties' proposed order "was ultimately not entered by the Court." **The order WAS entered** at Docket No. 47, and it expressly states it was granted "pursuant to the terms and conditions of the Stipulation." Defendant's own exhibit contradicts his assertion. The order incorporated conditions precedent—lien amendment and accounting—that Gravity Capital never performed, rendering the In Rem relief inoperative.

**Exhibit H** — Oct. 14, 2025 State Court Transcript: Submitted to counter Defendant's assertions regarding the foreclosure sale. This transcript establishes: (1) Evidence of bid rigging; (2) Adrian Johnson's admissions that the purchase was pre-arranged through Defendant Knudson ("Let's call Dave"); and (3) Judge Daynes' express finding that Gravity Capital breached the stipulation conditions, stating: "They didn't file an amended lien... that's really a breach of contract or a breach of agreement. And for whatever reason, you may have damages against them for failing to do that if it caused you harm."

These exhibits directly rebut Defendant's characterization of the In Rem Order and the foreclosure sale

## X. APPENDIX OF EVIDENCE

Exhibits of First Amended Complaint ECF No. 17 are

Cited by ECF No. B. NEW Exhibits Filed with This Opposition

| Exhibit | Description | ECF No. Reference Source |
|---|---|---|
| | Court-Approved Stipulation and Order | ECF No. 35-1 |
| | Notice of Default on Stipulation | ECF No. 35-2 |
| | County Record of Permanent Liens | ECF No. 35-3 |
| | Real Estate Purchase Contracts ($3.3M Sale) | ECF No. 35-4 |
| | Larry Horton Text Messages (Bid Rigging) | ECF No. 35-5 |
| | Bankruptcy Hearing Transcript (June 2, 2025) | ECF No. 36-9 |
| | Schedule of RICO Predicate Acts | ECF No. 37 |
| | Email Warning from Ford to Anderson | ECF No. 88-22 |
| | Anderson Notice of Sale (Void if Bankruptcy) | ECF No. 88-13 |

**Description**

| | | |
|---|---|---|
| **Ex. A** | Declaration of Max Warren Barber | Concurrently Filed |
| **Ex. G** | **ORDER GRANTING IN REM RELIEF PURSUANT TO STIPULATION (Docket No. 47)** — Bankruptcy Court Order entered "pursuant to the terms and conditions of the Stipulation" | Bankruptcy Case No. 25-21749 |
| **Ex. H** | **OFFICIAL AUDIO RECORDING** of Oct. 14, 2025 State Court Evidentiary Hearing (Three MP3 files, ~6 hours total). Key testimony transcribed under oath in Barber Decl. ¶¶ 27-34: (1) Bid rigging; (2) "Let's call Dave"; (3) Gravity breach finding | Third District Court Case No. 250902638 |