MAX WARREN BARBER
Pro Se Plaintiff
4643-4645 South Highland Drive
Salt Lake City Utah 84117
801 518 1821
23blackbee@gmail.com

FILED
2026 JAN 21 AM 5:42
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **MAX WARREN BARBER**, individually and as Sole Trustee of the MSB Trust,<br><br>Plaintiff,<br><br>v.<br><br>DAVID KNUDSON, *et al.*, *Defendants*.<br><br>Defendants | **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT MOTION TO DISMISS ECF [ 71 ]**<br><br>Case No. 2:25-cv-00681-HCN-DBP<br><br>Judge: Howard C. Nielson, Jr.<br>Magistrate Judge: Dustin B. Pead |

Plaintiff respectfully requests that this Court deny Defendants' Motion to Dismiss in its entirety. Defendants engaged in prearranged bidding—evidenced by direct sworn testimony—to foreclose on Plaintiff's home one day after receiving written notice of a bankruptcy automatic stay. Their own principal, David Knudson, publicly admitted this conduct "voids" a foreclosure sale.

**INTRODUCTION**

The economic reality is stark. Defendants inflated a $332,000 loan into $2.4 million in liens—a 623% lien inflation that operated as a clogging of the equity of redemption, preventing Plaintiff from refinancing or selling to satisfy the actual debt. They then seized a $3.1 million

home for $650,001—a 79% equity seizure representing a $2.45 million windfall for Defendants. This is not a garden-variety foreclosure dispute. It is systematic equity theft.

This Opposition demonstrates that Plaintiff has stated claims that are plausible on their face under the *Twombly/Iqbal* regime as applied in *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). The Court may consider the attached exhibits—including the Note, Deed of Trust, and Bankruptcy Notice—under *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516 (10th Cir. 2013), without converting this to a summary judgment motion. Plaintiff presents six independently sufficient claims: (1) willful automatic stay violation voiding the sale; (2) conditional stay relief that never vested; (3) RICO violations spanning a 41-year, 43-entity criminal enterprise; (4) per se Sherman Act bid rigging; (5) TILA violations on a consumer loan Knudson was permanently enjoined from mischaracterizing; and (6) impeachment of every declaration supporting Defendants' Motion.

The Court need find merit in only one to deny dismissal.

## I. LEGAL STANDARD

Dismissal under Rule 12(b)(6) is a "harsh remedy which must be cautiously studied."[1] To survive, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."[2] The Tenth Circuit applies a two-step process: first, identify and discard legal conclusions that are not entitled to the presumption of truth; second, determine whether the remaining factual allegations plausibly suggest liability.[3]

---

[1] *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).
[2] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[3] *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

The Court is generally limited to the four corners of the complaint. However, under the binding authority of *Toone v. Wells Fargo Bank, N.A.*, the Court may consider documents referred to in the complaint if they are "(1) referred to in the complaint, (2) central to the plaintiff's claim, and (3) the parties do not dispute the documents' authenticity."[4] This allows the Court to review the loan documents, recorded liens, and bankruptcy notices attached hereto without converting this motion into one for summary judgment.

Furthermore, while Utah state law may impose specific procedural barriers, the Supreme Court held in *Berk v. Choy*, 607 U.S. ___, No. 24-440, slip op. at 1 (Jan. 20, 2026), that Federal Rules of Civil Procedure 8 and 11 displace state procedural requirements that conflict with federal pleading standards.[5]

Finally, because Plaintiff proceeds pro se, his pleadings are held to "less stringent standards than formal pleadings drafted by lawyers."[6] However, even for pro se litigants, the Court "refuses to act as an advocate or supply missing factual elements"—which is why Plaintiff's Appendices provide the specific documentary support for each claim.[7]

## II. PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF FACTS

Plaintiff responds to each fact. Under *Khalik v. United Air Lines*, 671 F.3d at 1191, Plaintiff provides specific factual rebuttals to distinguish these disputes from mere legal conclusions and to ensure they are not discarded as "unadorned accusations."[8]

**FACT NO. 1 (ECF 71 at 3-4)**

---

[4]*Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 519-21 (10th Cir. 2013).
[5]*Berk v. Choy*, 607 U.S. ___, No. 24-440, slip op. at 1 (Jan. 20, 2026).
[6]*Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).
[7]*Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).
[8]*Iqbal*, 556 U.S. at 678.

Defendants' Statement: "On or about March 22, 2022, Plaintiff borrowed money from Gravity Capital under an Open-End Promissory Note ('Note'), a line of credit, in which the initial principal draw was $332,000.00 and the total credit line was $1,200,000.00."

**Response:** **Admit in part; deny in part.**

 Plaintiff admits that the initial principal disbursement was $332,000.00. Plaintiff denies the factual implication that a $1,200,000.00 credit line justified the recording of $2,400,000.00 in liens against Plaintiff's residence—representing 623% of the actual debt. Under the doctrine established in *Toone v. Wells Fargo Bank, N.A.* (2013), the Court may consider the accounting ledger attached at Appendix G-1, as it is central to the claim and its authenticity is not in dispute. The documentary record establishes that no additional funds were ever disbursed beyond the initial $332,000.00, rendering the $2.4 million lien a factual misrepresentation of the economic reality of the debt.

 This lien inflation constitutes a clogging of the equity of redemption—a scheme designed to prevent Plaintiff from refinancing or selling to satisfy the actual debt, thereby ensuring the property would proceed to foreclosure where Defendants could seize it at a fraction of its value.

**FACT NO. 2 (ECF 71 at 4)**

Defendants' Statement: "On April 1, 2025, Plaintiff filed an action in the Third District Court, Salt Lake County, Utah, Case No. 250902638."

**Response:** **Admit.**

**FACT NO. 3 (ECF 71 at 4)**

Defendants' Statement: "In the State Court Action, an ex parte temporary restraining order was granted, and then dissolved after a full hearing, allowing foreclosure to proceed."

**Response:** **Admit in part; deny in part.**

 Plaintiff admits the TRO was dissolved in state court in April 2025. Plaintiff denies that this dissolution "allowed foreclosure to proceed" as a matter of fact on July 22, 2025. This statement ignores the intervening factual event: the MSB Trust bankruptcy filing on July 8, 2025

(Case No. 25-23863). Under Tenth Circuit precedent, the federal automatic stay became the operative factual barrier to foreclosure, superseding state court procedural history. *In re Calder*, 907 F.2d 953, 956 (10th Cir. 1990) (automatic stay is "one of the fundamental debtor protections" and operates "immediately upon filing").

**FACT NO. 4 (ECF 71 at 4)**

Defendants' Statement: "On April 2, 2025, Plaintiff filed his most recent bankruptcy, Case No. 25-21749."

Response:     Admit.

**FACT NO. 5 (ECF 71 at 4-5**

Defendants' Statement: "The Bankruptcy Motion for TRO was denied by Judge Anderson without a hearing."

Response:     Admit; immaterial.

Plaintiff admits this fact but asserts it is immaterial to the claims at issue. Case No. 25-21749 is a different bankruptcy proceeding than MSB Trust's bankruptcy (Case No. 25-23863), which was filed on July 8, 2025, and which created the automatic stay violated by Defendants on July 22, 2025.

**FACT NO. 6 (ECF 71 at 5)**

Defendants' Statement: "A true and correct copy of the Stipulation Re: Motion for In Rem Relief from the Automatic Stay... is attached hereto as Exhibit '6'."

Response:     Admit in part; deny in part.

Plaintiff admits the document exists. Plaintiff denies the factual characterization that this document provided unconditional relief. Paragraphs 3-4 of the Stipulation (incorporated by reference under *Toone*) establish factual conditions precedent—specifically the requirement to "amend the recorded lien to reflect a lien amount of approximately $332,000.00"—that

Defendants failed to perform. This failure constitutes a breach of the very instrument Defendants rely upon for authority.

**FACT NO. 7 (ECF 71 at 5)**

Defendants' Statement: "On June 11, 2025, in bankruptcy Case No. 25-21749, Judge Anderson entered the 'Order Granting In Rem Relief Pursuant to Stipulation.'"

**Response:     Admit in part; deny in part**.

Plaintiff admits that Judge Anderson entered the Order on June 11, 2025. Plaintiff denies that the Order granted unconditional relief. The Order's operative language states relief was granted "under the terms and conditions of the stipulation." FAC Ex. S at PageID.722. Because Defendants failed to satisfy the Stipulation's conditions—as acknowledged by state court Judge Daynes, who found that "Gravity did not do those things... that's really a breach of contract"—the conditional stay relief never vested as a matter of law.

**FACT NO. 8 (ECF 71 at 5-6)**

Defendants' Statement: "To comply with the Stipulation, on June 17, 2025, Gravity Capital recorded a Scrivener's Affidavit... stating 'The initial principal draw of this Loan is $332,000.00.'"

**Response:     Deny.**

Plaintiff denies that the Scrivener's Affidavit factually or legally complied with the Stipulation. The Stipulation's plain language required Defendants to "amend the recorded lien to reflect a lien amount of approximately $332,000.00." Stipulation ¶ 3. Under *Toone* (2013), the Court may take judicial notice of the Salt Lake County Recorder's records (Appendix G-3), which confirm that the $2,400,000.00 in liens remain unreleased. A Scrivener's Affidavit is a unilateral statement of alleged clerical error; it is not a lien amendment, release, or reconveyance.

Because substantial compliance is insufficient where a specific condition precedent governs performance, the relief from the stay never factually vested.

**FACT NOS. 9-12 (ECF 71 at 6-7**
Defendants' Statement: Exhibits 9-12 attached as "true and correct copies."

Response: Admit authenticity; deny factual accuracy.

Plaintiff admits the authenticity of the attached documents pursuant to Fed. R. Evid. 901(b)(1).

Plaintiff denies the truth of the information contained therein under the specificity requirement of *Khalik*, 671 F.3d at 1191:

    **Regarding Exhibit 9 (the "Aug 15th" text message)**: The text message providing an "Aug 15th" sale date was factually false—the actual foreclosure occurred on July 22, 2025. This misinformation prevented Plaintiff from attending the sale, evidencing fraudulent intent.

    **Regarding Exhibits 10-12 (the "Business Loan" designation):** The "Business Loan" label is a factual mischaracterization. Under 12 C.F.R. § 1026.3(a)(3) and the substance-over-form doctrine, the Court must look to the verified fact of Plaintiff's 365-day-per-year occupancy (Appendix G-4), which exceeds the 14-day consumer threshold by a factor of 26.

### III. ARGUMENT

    A.    The Foreclosure Sale Is Void: Willful Automatic Stay Violation

The foreclosure sale is void *ab initio*.

Defendants foreclosed on July 22, 2025—one day after receiving written notice of the automatic stay. Their own principal publicly admitted this conduct voids a sale. Under binding Tenth Circuit precedent, this is textbook willful violation mandating actual and punitive damages.

The "New Case" Argument: Under 11 U.S.C. § 362(a), the filing of a new bankruptcy petition creates a new automatic stay. MSB Trust—the entity that owns the subject property—filed bankruptcy on July 8, 2025 (Case No. 25-23863). Any stay relief granted in Plaintiff's personal bankruptcy (Case No. 25-21749) does not automatically travel to the Trust's separate bankruptcy proceeding. The Trust's filing triggered a new, independent stay that Defendants violated.

The Law: A bankruptcy filing triggers an automatic stay "effective immediately" that "voids" all subsequent creditor actions.[9] A violation is "willful" if the creditor "knew of the bankruptcy and intentionally committed the act"—no specific intent required.[10]

| Element | Evidence |
|---|---|
| New Stay Triggered | MSB Trust bankruptcy filed July 8, 2025 (separate case) |
| Property Ownership | MSB Trust owns the subject property |
| Written Notice | Attorney Ford notified Defendants July 21, 2025 (ECF 88-22) |
| Willful Act | Foreclosure conducted July 22, 2025—one day later |
| Defendants' Admission | Knudson's 2018 video: bankruptcy "stops the foreclosure sale" and stay "goes into effect immediately" (ECF 129-1 at 1:31) |

---

[9] *In re Calder*, 907 F.2d 953, 956 (10th Cir. 1990).
[10] *In re Johnson*, 501 F.3d 1163, 1172 (10th Cir. 2007).

Application: Defendants received notice of the Trust's bankruptcy. Defendants foreclosed anyway. Defendants' own video proves they understood the consequence. This satisfies willfulness as a matter of law.

Punitive Damages Warranted: The 1999 FTC permanent injunction against Knudson for consumer loan fraud demonstrates a pattern of conscious disregard for the law. Violating a federal automatic stay—after being permanently enjoined for the exact same type of predatory lending conduct—satisfies the high threshold for punitive damages under 11 U.S.C. § 362(k)(1)[11]

Damages: 11 U.S.C. § 362(k)(1) mandates actual damages, costs, attorneys' fees, and punitive damages. *See* Appendix H at H-1.

B.      Defendants' "Stay Relief" Defense Fails: Conditions Never Satisfied

The stay relief never vested.

Defendants claim a June 11 Order authorized foreclosure. It did not. The Order granted relief "under the terms and conditions of the stipulation"—and Defendants breached those conditions. A state court judge already found: "Gravity did not do those things... that's really a breach of contract."

The Law: Conditional stay relief does not vest until conditions are satisfied.[12] Actions taken without vested authority are void from inception—"void, not merely voidable."[13]

---

[11] *See In re Knaus*, 889 F.2d 773, 775 (8th Cir. 1989) (punitive damages appropriate where creditor acts with "reckless disregard" for the law).
[12] *In re Skinner*, 917 F.2d 444, 447 (10th Cir. 1990).
[13] *In re Calder*, 907 F.2d at 956.

| Element | Evidence |
|---|---|
| Conditional Language | Order: "under the terms and conditions of the stipulation" (FAC Ex. S) |
| Required Condition | "Gravity shall amend the recorded lien... approximately $332,000" (Stipulation ¶ 3) |
| Breach | $2,400,000 liens remain unreleased (Salt Lake County Records, App. G-3) |
| Judicial Finding | Judge Daynes: "Gravity did not do those things... that's really a breach of contract" |

Application: The Stipulation required lien amendment. No liens were amended. A "Scrivener's Affidavit" stating clerical error is not a lien release. The condition precedent was never satisfied. The relief never vested.

Result: Foreclosure conducted without authority is void. *See* Appendix G at G-2, G-3.

  C. RICO Claim Survives: 41-Year Enterprise with Convicted Associates

The RICO claim survives under binding Tenth Circuit precedent. In *George v. Urban Settlement Services*, the Tenth Circuit reversed the dismissal of RICO claims against a foreclosure fraud enterprise that operated through multiple affiliated entities—facts that are materially identical to the present case.[14] Here, Plaintiff's complaint provides the specific "who, what, where, and when" required by *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008), to move beyond mere legal conclusions.

  The Enterprise: Plaintiff alleges an association-in-fact enterprise consisting of 43 corporate entities co-governed by Knudson and Johnson over 39 years. Under 2026 Tenth Circuit

---

[14]*George v. Urban Settlement Servs.*, 833 F.3d 1242, 1253 (10th Cir. 2016).

standards, the enterprise must have "an existence separate from the pattern of racketeering."

Here, the enterprise satisfies this requirement through:

First, centralized management. David Knudson serves as the controlling principal across all entities, with Shelly Skirvin providing consistent administrative support. FAC ¶¶ 8-12.

Second, shared infrastructure. The entities share common addresses, officers, bank accounts, and operational methodology. *See* Appendix A.

Third, the "Sonknud" evidence. The entity "Sonknud, Inc."—a portmanteau combining "Johnson" and "Knudson"—demonstrates a long-term, unified partnership predating the current fraud by decades. This is not a loose collection of shell companies; it is a structured criminal organization with a shared identity.[15] This satisfies the "conduct of an enterprise" requirement under 18 U.S.C. § 1962(c).[16]

The Pattern and Continuity:

Duration: The enterprise has operated for 41 years, vastly exceeding the 7-18 months found sufficient for closed-ended continuity in *Resolution Trust*.[17]

Open-Ended Threat: Defendant Knudson admitted on video to conducting "hundreds and hundreds" of these transactions (ECF 129-3 at 5:49), establishing a plausible threat of continued racketeering activity.

Predicate Acts: The complaint details a decades-long pattern including:

| Year | Predicate Act |
|------|---------------|
| 1999 | FTC permanently enjoins Knudson for consumer loan fraud |

---

[15] *See* Appendix A (Corporate Network Chart showing Sonknud, Inc. formation and relationship).
[16] *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).
[17] *Resol. Tr. Corp. v. Stone*, 998 F.2d 1534, 1544 (10th Cir. 1993).

| Year | Predicate Act |
|------|---------------|
| 2003 | $3.5M fraud judgment against enterprise |
| 2009 | Johnson convicted on 27 federal counts (co-defendants Haycock and Schwenke subsequently serve in Knudson entities) |
| 2022 | Colliers $215K judgment—identical scheme |
| 2025 | Barber foreclosure fraud |

The 2009 Conviction Link: The identical methodology used against Plaintiff—lien inflation, false characterization of loans, prearranged foreclosure sales—mirrors the conduct that resulted in Adrian Johnson's 27 federal convictions in 2009. Co-defendants Haycock and Schwenke from that prosecution now serve in Knudson-controlled entities, demonstrating institutional continuity of the criminal enterprise.

This demonstrates that the current fraud against Plaintiff is not an isolated incident but part of the enterprise's regular way of doing business.

Proximate Causation: Plaintiff was the "primary and intended victim"—not derivative. The void foreclosure directly caused a $2.45 million loss (79% equity seizure) and homelessness.[18] See Appendices A, B, C, H at H-4.

D.     Per Se Sherman Act Violation: "Calling Dave" Proves Bid Rigging

Defendants rigged the auction.

Direct evidence of prearranged bidding is a per se antitrust violation that requires no proof of market power or anticompetitive effect. Adrian Johnson—the sole bidder—provided sworn

---

[18] *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 9 (2010).

testimony that "the auctioneer knew I was the only one coming" and that he was "calling Dave" because "David Knudson was directing everything."

Bid rigging is per se illegal under the Sherman Act.[19] Under *United States v. Metro. Enters.*, 728 F.2d 444, 451 (10th Cir. 1984), "prearranged bidding" constitutes "direct evidence of an illegal combination."[20] Under *Robbins v. Oklahoma*, 519 F.3d at 1250, this testimony provides the requisite "who, what, where, and when" to survive a motion to dismiss.

The Facts (Adrian Johnson's Sworn Testimony):

| Statement | Factual Significance |
| --- | --- |
| "I was the only bidder" (Ex. G, ECF 35-6 ¶ 3) | Establishes the lack of a competitive market. |
| "The auctioneer knew I was the only one coming" (Ex. G, ECF 35-6 ¶ 4) | Direct evidence of prearrangement between the auctioneer and bidder. |
| "Jamis told me I was 'calling Dave'—David Knudson was directing everything" (Ex. G, ECF 35-6 ¶ 5) | Identifies the specific orchestrator of the bid-rigging scheme. |
| Text to Plaintiff stated "Aug 15th" (actual sale: July 22) (FAC Ex. F) | Demonstrates the exclusionary tactic used to prevent competitive bidding. |

Application: This is not circumstantial evidence; it is direct testimony of a prearranged auction. This is precisely the type of "illegal combination" identified in *Metro. Enters.*. By misleading the Plaintiff with a false sale date, Defendants ensured that the prearranged bidder would face no competition, resulting in a $3.1 million home being seized for just $650,001 (approximately 21% of its value).

---

[19] *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 223-24 & n.59 (1940).
[20] *United States v. Metro. Enters.*, 728 F.2d 444, 451 (10th Cir. 1984).

Because this constitutes a per se violation, Plaintiff is entitled to seek treble damages of $7,349,997 ($2,449,999 × 3) plus costs and attorneys' fees. *See* Appendix E; Appendix D at D-4.

E.   TILA Applies: Knudson Cannot Use an Exemption He Was Enjoined From Using

The loan is a consumer loan as a matter of law. Defendants' primary defense—that the loan was for a "business purpose"—is a legal label that the Court must identify and discard under *Khalik*, 671 F.3d at 1191, if it contradicts the economic reality of the transaction.

The "Economic Reality" of Occupancy: Federal Threshold: Under 12 C.F.R. § 1026.3(a)(3), the dispositive test for TILA applicability is owner occupancy exceeding 14 days per year.

Factual Specificity: Plaintiff occupied the subject property 365 days per year as his primary residence. FAC ¶ 22. This fact alone—exceeding the federal threshold by a factor of 26—renders the "Business Loan" label a factual nullity.

Federal Preemption: Federal pleading standards govern in this Court, and TILA's statutory protections displace state-law contract labels or "business purpose" characterizations that conflict with the actual occupancy of the borrower. *See Berk v. Choy*, 607 U.S. ___, No. 24-440, slip op. at 7-8 (Jan. 20, 2026) (federal rules displace conflicting state procedural requirements).[21]

The Injunction Factor: Defendant Knudson was permanently enjoined in 1999 from "falsely characterizing consumer loans as business loans." FTC Final Order (1999); FAC ¶ 15. Under the substance-over-form doctrine established in *Sender v. Simon*, the Court must look past

---

[21]*Berk v. Choy*, 607 U.S. ___, No. 24-440, slip op. at 7-8 (Jan. 20, 2026).

the self-serving labels used by a lender who is legally forbidden from using that exact mischaracterization.[22]

Punitive Damages and Willfulness: The violation of a permanent federal injunction for the exact same conduct—mischaracterizing consumer loans as business loans—proves a conscious disregard for the law. This satisfies the heightened threshold for punitive damages and demonstrates that Defendants' conduct was not merely negligent but deliberately unlawful.

| Element | Evidence |
|---|---|
| Occupancy | 365 days/year (FAC ¶ 22) |
| Threshold | 14 days (12 C.F.R. § 1026.3(a)(3)) |
| Lender Knowledge | Pre-closing email: "I live in the 1028 S 1900 E" (FAC Ex. N) |
| Appraisal Form | URAR/Fannie Mae 1004—used only for consumer residential loans (FAC Ex. D) |
| Injunction | Knudson enjoined from "falsely characterizing consumer loans as business loans" (FTC Final Order, 1999) |

Because the loan is factually a consumer transaction, Plaintiff retains the right to rescind, and the foreclosure sale—conducted in violation of TILA and the automatic stay—is void. *See* Appendix I; Appendix H at H-2.

F.  Defendants' Declarations Are Impeached: Seven Statements Contradicted by Documents The Motion fails without its declarations—and every declaration is impeached.

Seven sworn statements are contradicted by documentary evidence. These are not memory lapses; they are factual contradictions with the recorded record. Credibility is for the

---

[22]*Sender v. Simon*, 84 F.3d 1299, 1305 (10th Cir. 1996) ("label attached by the parties... is not dispositive").

jury.[23]  Under *Toone v. Wells Fargo* (2013), the Court may consider the documentary rebuttals listed below because they are central to Plaintiff's claims and their authenticity is not disputed:

The Impeachment:

| Declaration | Documentary Rebuttal | Appendix |
|---|---|---|
| "Never received payoff request" | Gravity counsel confirmed receipt; demand increased $622K→$733K (FAC Ex. P) | App. F-1 |
| "Business purpose loan" | Enjoined from this characterization in 1999 (FTC Order) | App. F-2 |
| "No Summit relationship" | Summit holds $400K secured loan on Knudson (Public Records) | App. F-3 |
| "Complied with Stipulation" | $2.4M liens unreleased (County Records) | App. G-3 |
| "No knowledge of consumer purpose" | Email: "I live in the 1028 S 1900 E" (FAC Ex. N) | App. F-4 |
| "Arm's-length transaction" | Video: "totally know them very well" (ECF 129-2) | App. F-5 |
| "Innocent purchaser" | Adrian: "I knew there was some kind of dispute" (FAC Ex. G   6) | App. F-6 |

When "never received" meets written confirmation, that is a factual contradiction. When "no relationship" meets a $400K secured loan, that is factual contradiction. When "arm's-length" meets "totally know them very well," that is factual contradiction.

The Court should not consider these declarations at the 12(b)(6) stage. If the Court considers matters outside the pleadings, it must also consider Plaintiff's documentary rebuttals under Rule 12(d). Without these declarations, the Motion has no factual basis. *See* Appendix F.

---

[23]*Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000).

## IV. ROOKER-FELDMAN DOES NOT APPLY
Jurisdiction is proper.

Rooker-Feldman is "narrow" and applies only to claims "inextricably intertwined" with state court judgments.[24] Plaintiff's federal claims are independent—no state court adjudicated bankruptcy stay violations, RICO patterns, Sherman Act bid rigging, or TILA classification. Plaintiff does not ask this Court to review any state judgment; he brings federal statutory claims no state court could adjudicate.

## V. CONCLUSION AND PRAYER FOR RELIEF

For the reasons set forth above, Plaintiff has met the plausibility threshold mandated by *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012), by providing specific factual allegations that go beyond mere legal conclusions. The documentary evidence, incorporated herein by reference under *Toone v. Wells Fargo* (2013), establishes a willful violation of the automatic stay, a breached conditional stay order, a long-standing RICO enterprise, and a per se illegal bid-rigging scheme.

Plaintiff has further demonstrated "actual injury" under *Gee v. Pacheco* by pleading the specific loss of a $3.1 million primary residence and the resulting homelessness caused by Defendants' unlawful foreclosure.[25] Under the 2026 operative binding law, Plaintiff is entitled to offer evidence to support these claims.

WHEREFORE, Plaintiff Max Warren Barber respectfully requests that this Court:

1. Deny Defendants' Motion to Dismiss (ECF 71) in its entirety;

---

[24]*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).
[25]*Gee v. Pacheco*, 627 F.3d 1178, 1187 (10th Cir. 2010).

2. Declare the foreclosure sale conducted on July 22, 2025 void *ab initio* as a willful violation of the automatic stay under 11 U.S.C. § 362(a);

3. Award Plaintiff damages as follows:

    - Automatic Stay Violation (11 U.S.C. § 362(k)): Actual damages for the loss of property value, costs, attorneys' fees, and punitive damages;

    - RICO (18 U.S.C. § 1964(c)): Treble damages, for the $3.1 million loss, costs, and attorneys' fees;

    - Sherman Act (15 U.S.C. § 15): Treble damages totaling $7,349,997, representing the difference between the fair market value and the rigged sale price ($2,449,999) tripled;

    - TILA (15 U.S.C. § 1635, 1640): Rescission of the security interest, return of all payments made, and statutory damages;

    - **Grant Leave to Amend:** In the event the Court finds any portion of the Complaint technically deficient under the *Twombly/Iqbal* standard, Plaintiff—proceeding *pro se*—respectfully requests leave to amend pursuant to **Fed. R. Civ. P. 15(a)(2)**. Plaintiff is currently preparing a **Second Amended Complaint** to provide greater factual specificity regarding the 41-year, 43-entity criminal enterprise and to formally join additional enterprise defendants.

    - **Strictly Adhere to Rule 12(d):** Should the Court consider matters outside the pleadings (such as Defendants' declarations), Plaintiff requests that the Court exclude such materials or, in the alternative, provide the formal notice and "reasonable opportunity" to present all pertinent material required for conversion to summary judgment.

    - **Stay Summary Judgment under Rule 56(d):** Should the Court convert this motion to one for summary judgment, Plaintiff requests a stay of proceedings to allow for essential discovery, as Plaintiff cannot currently present facts essential to justify this opposition without access to documents and testimony in Defendants' sole possession.

4. Order such other and further relief as the Court deems just and proper.

---

DATED: January 20, 2026                                    Respectfully submitted,
                                                           /s/ Max Warren Barber
                                                           MAX WARREN BARBER

APPENDICES (Filed as Unified Attachments)

| Appendix | Title | Primary Use |
|---|---|---|
| A | 43-Entity Corporate Network | RICO Enterprise |
| B | 41-Year Enterprise Timeline | RICO Continuity |
| C | Peña Pattern Evidence | Nationwide Scheme |
| D | Knudson Party Admissions | Defendants' Own Words |
| E | RAM Evidence: Bid Rigging | Sherman Act |
| F | Contentions vs. Record | Point-by-Point Rebuttal (F-1 through F-6) |
| G | Statement of Facts Evidence | Response to ECF 71 (G-1 through G-4) |
| H | Six Legal Syllogisms | RAM Analysis |
| I | TILA/FDCPA Analysis | Consumer Loan Proof |

CERTIFICATE OF COMPLIANCE

I certify that this memorandum complies with the word count limits of DUCivR 7-1(a)(4). This document contains approximately 4,200 words, excluding the face sheet, table of contents, table of authorities, signature block, certificate of service, and exhibits—well within the 6,500-word limit.

/s/ Max Warren Barber

## CERTIFICATE OF SERVICE

I hereby certify that on January 20, 2026, I caused a true and correct copy of the foregoing **PLAINTIFF MEMORANDUM IN OPPOSITION ECF 71t**o be served as follows:

/s/ Max Warren Barber

### VIA EMAIL TO CLERK OF COURT (For Filing & ECF Distribution):

I emailed the documents to utdecf_clerk@utd.uscourts.gov for filing. Upon entry, the Court's CM/ECF system will electronically serve the following registered counsel of record:

| | |
|---|---|
| **Steven R. Skirvin** steve@srslawpc.com | **Gary R. Guelker** gguelker@rlattorneys.com |
| *Counsel of Gravity Defendants* | *Counsel of Jeremy Shorts and David Gardner* |

**Andrew R. Welch (**andrew.welch@lewisbrisbois.com**)**
*Counsel of Jared L. Anderson*

### VIA U.S. MAIL, FIRST-CLASS POSTAGE PREPAID:

I served the following Defendants (including those in Default/Failure to Appear) by placing a true copy in the United States Mail, addressed as follows:

| | | |
|---|---|---|
| **Jamis Melwood Johnson** | **1028 S 1900 E LLC** | **CR TRUE LLC** |
| 1028 South 1900 East | c/o Registered Agent | c/o Pace Johnson Law Group |
| Salt Lake City, UT 84108 | 1028 South 1900 East | 231 E 400 S, Suite 345 |
| | Salt Lake City, UT 84108 | Salt Lake City, UT 84111 |