FILED
2026 JAN 20 PM 11:53
CLERK
U.S. DISTRICT COURT

MAX WARREN BARBER
Pro Se Plaintiff
4643-4645 South Highland Drive
Salt Lake City Utah 84117
801 518 1821
23blackbee@gmail.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **MAX WARREN BARBER**, individually and as Sole Trustee of the MSB Trust,<br><br>Plaintiff,<br><br>v.<br><br>**JARED L, ANDERSON**, et al.,<br><br>Defendants | **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT ANDERSON'S MOTION TO DISQUALIFY**<br><br>Case No. 2:25-cv-00681-HCN-DBP<br><br>Judge: Howard C. Nielson, Jr.<br>Magistrate Judge: Dustin B. Pead |

Plaintiff Max Warren Barber, appearing *pro se*, respectfully submits this Memorandum in Opposition to Defendant Jared L. Anderson's Motion to Disqualify and Strike (ECF No. 122).

## INTRODUCTION

Defendant Jared L. Anderson's Motion to Disqualify and Strike (ECF No. 122) should be denied for seven independent legal reasons. Courts view motions to disqualify "with caution" when used for "tactical advantage." *Koch v. Koch Indus., Inc.*, 798 F. Supp. 1525, 1530 (D. Kan. 1992). The instant Motion functions as precisely such a procedural maneuver, filed immediately after Plaintiff docketed evidence exposing irregularities in the foreclosure process. Anderson's

attempt to strike pleadings would effectively purge this material evidence from the record.

**First,** Defendant waived this objection under Federal Rule of Civil Procedure 12(g)(2) by failing to raise it in his initial Motion to Dismiss filed on November 25, 2025. *See generally* ECF No. 88. **Second**, the Motion relies on a business registration created *after* the foreclosure sale to justify conduct occurring *before* the sale, presenting a chronological impossibility. **Third,** the "sole trustee-beneficiary" exception permits pro se representation where, as here, the trustee is the sole beneficiary and no third-party interests are implicated. **Fourth,** Defendant is judicially estopped from asserting corporate separation, having previously argued the Trust and Plaintiff were legally indistinguishable for purposes of the automatic stay. **Fifth,** Plaintiff is the real party in interest under Rule 17(a). **Sixth**, Defendant's admissions regarding the Trust's separate status constitute binding judicial admissions that establish a willful violation of the automatic stay. **Seventh,** the remedy sought—striking all pleadings without opportunity to cure—contravenes the mandatory cure provisions of Rule 17(a)(3).

Fundamentally, Defendant's current argument contradicts his prior filings. In his Motion to Dismiss, Defendant argued that the *In Rem* Order entered against Max Barber individually "is binding upon MSB Trust . . . and authorized the foreclosure sale." ECF No. 88 at 12, PageID.1553 (¶ 41). In the instant Motion, Defendant argues that MSB Trust is a **"separate legal entity with its own automatic stay rights."** ECF No. 122 at 7, PageID.2015. These positions are legally irreconcilable.

## RELEVANT BACKGROUND

The foreclosure sale at issue occurred on **July 22, 2025**. ECF No. 122 at 4, PageID.2012

(¶ 10). Throughout the foreclosure process, Defendant mailed trustee sale notices to Plaintiff's personal residence. ECF No. 116 at 22, PageID.1963. Seven days *after* the foreclosure, on **July 29, 2025**, MSB Trust registered as a "Domestic Business Trust" with the Utah Division of Corporations. ECF No. 122 at 5, PageID.2013 (¶ 22) (citing Ex. A).

Plaintiff filed the **First Amended Complaint** on **September 17, 2025**. ECF No. 17 at 1, PageID.204. The caption explicitly identifies the Plaintiff as "**MAX WARREN BARBER**, an individual; and **MAX WARREN BARBER as Sole Trustee of the MSB TRUST**." *Id.* at 1, PageID.204. Paragraph 16 further pleads that Plaintiff "is the beneficiary and Sole Trustee of the MSB Trust . . . granting him equitable ownership and standing." *Id.* at 5, PageID.208.

Defendant filed his **Motion to Dismiss** more than two months later, on **November 25, 2025**. ECF No. 88 at 1, PageID.1542. That 27-page motion raised numerous defenses—including lack of jurisdiction, *res judicata*, and insufficient pleading—but did not raise an objection to Plaintiff's capacity to represent the Trust. *See generally*ECF No. 88 at 2–3, PageID.1543–44 (listing defenses).

## ARGUMENT

### I. Defendant Waived the Capacity Objection Under Rule 12(g)(2)

Federal Rule of Civil Procedure 12(g)(2) mandates that "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." The purpose of this rule is to prevent "piecemeal consideration of a case." *Albers v. Bd. of Cnty. Comm'rs*, 771 F.3d 697, 703

(10th Cir. 2014).

### A. The Objection Was Available and Omitted

Plaintiff’s dual capacity was evident on the face of the First Amended Complaint filed on September 17, 2025. See ECF No. 17 at 1, PageID.204. When Defendant filed his Motion to Dismiss on November 25, 2025 (ECF No. 88), the objection regarding Plaintiff’s pro se status was legally "available." By omitting this objection from the initial Rule 12 motion, Defendant waived the defense pursuant to Rule 12(h)(1)(A).

### B. The Motion Seeks to Preclude Consideration of Material Evidence

The procedural sequence indicates that this Motion is calculated to exclude material evidence rather than raise a timely capacity objection. Defendant filed this Motion only after Plaintiff introduced specific evidence implicating Defendant in potential irregularities:

1. **The "Skirvin" Directive:** In his Motion to Dismiss, Defendant explicitly stated that "**Steve Skirvin of Skirvin Law PLLC** provided Mr. Anderson a copy of the In Rem Order... and **'confirm[ed] that per the attached order, the automatic stay does not apply**...'" and that Anderson **"[r]el[ied] on... Mr. Skirvin's written confirmation"** to conduct the sale. *See* ECF No. 88 at 8, PageID.1549 (¶¶ 27-28). However, Plaintiff’s Opposition (ECF No. 116) exposed that this "reliance on counsel" defense fails on its own terms. Skirvin admitted under oath that his role as Gravity's in-house counsel ended **"on or about July 15, 2025"**—six days *before* he directed Anderson to proceed. *See*

ECF No. 116 at 2, PageID.1943 (citing ECF No. 103-1  4; ECF No. 103-2  3**)**. When Skirvin emailed Anderson on July 21, 2025, directing him to "proceed with the sale," he was issuing an operational directive from a **Summit Companies** email address (*steve@thesummitcompanies.com*), not acting as legal counsel. *See* ECF No. 103-2  3. Anderson was not relying on counsel; he was taking orders from an Enterprise operative who had no attorney-client relationship with any party to the transaction at the time. *See* ECF No. 116 at 2, PageID.1943. Anderson took no action regarding Plaintiff's capacity for **12 days** following this revelation, moving to strike the pleading only after his reliance on this unauthorized directive was exposed on the record.

2. **The Bid-Rigging Admissions & Judicial Findings:** The First Amended Complaint originally placed the "Larry Horton Text Messages (Bid Rigging)" on the record, alleging collusion among the Defendants. *See* First Am. Compl., ECF No. 17 at 13, PageID.216 (¶ 55) (citing Ex. F, docketed as ECF No. 35-5). Subsequently, Plaintiff's Opposition (ECF No. 116) listed specific irregularities regarding Jamis Johnson and Adrian Johnson, which were corroborated by Plaintiff's Notice of Audio Evidence (ECF No. 120). Specifically, Adrian Johnson (the sole bidder) admitted his participation was pre-planned with Knudson, stating: "Let's call Dave." *See* ECF No. 116 at 20, PageID.1961 (Fact 4). Additionally, Jamis Johnson admitted he was the architect of the coordination who funded the sale via his own trust and delivered the check "a week after" the foreclosure. *Id.*. Finally, the evidence documented a specific judicial finding by Judge Daynes, who stated on the record:

> "Gravity Capital had a stipulation with you, Mr. Barber, that they would do certain things prior to the sale. And apparently, and I didn't hear any refutation, but they did not do those things. They didn't file an amended lien... that's really a breach of contract or a breach of agreement." *See* ECF No. 116 at 32, PageID.1973.

3. **Avoidance of Merits Response:** Defendant filed the instant Motion just **48 hours** after this material evidence was docketed and prior to filing a Reply brief. The relief sought—to "strike all pleadings"—would effectively remove these incriminating admissions, the judicial finding of breach, and the Skirvin directive from the record, relieving Defendant of the burden to address these substantive evidentiary matters on the merits.

### II. Post-Foreclosure Evidence Cannot Justify Pre-Foreclosure Conduct

Defendant's Motion relies on Exhibit A—the Trust's business registration—to establish that the Trust is an artificial entity requiring counsel. However, Exhibit A is dated **July 29, 2025**, seven days *after* the July 22 foreclosure sale. ECF No. 122 at 5, PageID.2013 (¶ 22). At the time of the alleged stay violation on July 22, 2025, the MSB Trust was not a registered business entity. The Section 362(k) claim is predicated on facts as they existed at the time of the alleged violation. Defendant cannot rely on the Trust's subsequent registration to retroactively characterize the entity's status at the time of the foreclosure.

### III. The Sole Trustee-Beneficiary Exception Permits Pro Se Appearance

The prohibition against pro se representation of artificial entities exists to protect third parties whose interests might be prejudiced. *See Rowland v. California Men's Colony*, 506 U.S. 194, 202

(1993). However, where the trustee is the sole beneficiary and no third-party interests exist, this rationale is inapplicable.

Max Barber is the sole trustee and beneficiary of the MSB Trust. *See* First Am. Compl., ECF No. 17 at 5, PageID.208 (¶ 16) (identifying Plaintiff as "the beneficiary and Sole Trustee of the MSB Trust... granting him equitable ownership and standing") Plaintiff represents no interests other than his own.

**Authority:** *See Aulisio v. Bancroft*, 230 Cal. App. 4th 1516, 1522 (2014) (holding that where a trustee is also sole settlor and beneficiary, "no interests are at stake except those of one person" and pro se appearance is proper).

**Beneficial Owner Distinction:** The Ninth Circuit has held that a trustee may not proceed pro se where he is "not the actual beneficial owner of the claims." *C.E. Pope Equity Trust v. United States*, 818 F.2d 696, 697-98 (9th Cir. 1987). Here, Plaintiff is the actual beneficial owner.

**Distinguishing *United States v. Lain* and *Cram*:** Defendant cites *United States v. Lain*, 773 F. App'x 476 (10th Cir. 2019) and *United States v. Cram*, 1998 WL 919871 (D. Utah 1998). Both are distinguishable. In *Lain*, the Tenth Circuit noted the trustee was "not purporting to advocate on behalf of his own interest." *Lain*, 773 F. App'x at 477. In *Cram*, the trustee represented third-party beneficiaries (the debtors). Here, Plaintiff is the **only** beneficiary and vindicates his own equitable ownership.

## IV. Defendant Is Estopped From Asserting Corporate Separation

The doctrine of judicial estoppel prevents a party from "deliberately changing positions according to the exigencies of the moment." *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). Under this doctrine, "a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory." *See Eastman v. Union Pac. R.R. Co.*, 493 F.3d 1151, 1156 (10th Cir. 2007). To prohibit such manipulation "would permit a party to play fast and loose with the courts." *See Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990).

The doctrine applies when: (1) the position is clearly inconsistent with a prior one; (2) the party succeeded in the prior position; and (3) the party would derive an unfair advantage. *Eastman*, 493 F.3d at 1156. Defendant satisfies all three elements. Furthermore, under the Tenth Circuit's objective test, estoppel is appropriate where a party has "knowledge of the facts" and a "motive to conceal" them to gain an advantage. *See Queen v. TA Operating, LLC*, 734 F.3d 1081, 1093 (10th Cir. 2013).

**A. Defendant's Prior Position (Trust and Plaintiff are Indistinguishable)**

In his Motion to Dismiss (ECF No. 88), Defendant explicitly argued that the In Rem Order entered against Max Barber individually was binding on the Trust:

1. "The In Rem Order entered in Bankruptcy Case No. 25-21749 is **binding upon MSB Trust** and Defendant Max Barber and **authorized the foreclosure sale**." ECF No. 88 at 12, PageID.1553 (¶ 41)

2. Defendant argued that under 11 U.S.C. § 362(d)(4)(B), the recorded *In*

*Rem* Order became "**binding in any other case** under this title purporting to affect such real property filed not later than 2 years after the date of the entry of such order . . . ." *Id.* at 19, PageID.1560.

3. Defendant relied on an email from Steve Skirvin confirming that "**per the attached order, the automatic stay does not apply to [MSB Trust or Mr. Barber's] properties regardless of this new bankruptcy filing** . . . ." *Id.* at 8, PageID.1549 (¶ 27).

4. Defendant concluded: "Accordingly, the foreclosure was conducted pursuant to **valid and continuing in rem relief, and no automatic stay barred the sale**." *Id.* at 19, PageID.1560.

5. **The Mail Argument:** Furthermore, throughout the foreclosure process, Defendant mailed trustee sale notices to Plaintiff's **personal residence**—not to any separate MSB Trust business address—treating the debt as personal to Max Barber. *See* **ECF No. 116 at 22, PageID.1963**; *see also* First Am. Compl., ECF No. 17 at 10, PageID.213 (¶ 38); id. at 17, PageID.220 (¶ 81 & Ex. DD)

**B. Defendant's Current Position (Trust is Separate)**

Defendant now contradicts these assertions by arguing that the MSB Trust is a "separate legal entity" with "its own automatic stay rights" that Plaintiff cannot represent. ECF No. 122 at 7, PageID.2015.

**C. Unfair Detriment & Motive to Conceal**

Defendant had knowledge of the Trust's separate status when he foreclosed but had a motive to conceal that separation to argue the In Rem Order (against Barber) authorized the sale. Having successfully invoked the unity of Plaintiff and Trust to justify the foreclosure, he cannot now assert their separation to strip Plaintiff of representation. To allow this would permit Defendant to "play fast and loose" with the Court. *Queen,* 734 F.3d at 1087; *Russell,* 893 F.2d at 1037.

**V. Plaintiff's Individual Claims Survive Under Rule 17(a)**

Even if the Court determines the Trust requires counsel, Plaintiff's individual claims are not subject to dismissal. The First Amended Complaint is brought by "MAX WARREN BARBER, **individually** and as Sole Trustee." ECF No. 17 at 1, PageID.204

**Real Party in Interest:** As the beneficiary, Plaintiff pleaded that his status grants him "equitable ownership and standing." ECF No. 17 at 5, PageID.208 (¶ 16). Plaintiff asserts a direct, personal statutory right under 11 U.S.C. § 362(k) to recover for injuries caused by the stay violation.

**Possessory and Equitable Interests:** Plaintiff retains independent standing to assert claims for Wrongful Foreclosure and RICO violations in his individual capacity. As the occupant holding a right of possession and the beneficiary holding equitable title, Plaintiff suffered a direct personal injury when Defendant wrongfully foreclosed. Courts recognize that an equitable owner has standing to challenge a foreclosure distinct from the legal title holder, particularly where the foreclosure extinguishes their specific property rights. *See generally Harrison v. Wahatoyas,*

*L.L.C.*, 253 F.3d 552, 556 (10th Cir. 2001) (distinguishing between representation of an entity and protection of personal interests); *see also* 18 U.S.C. § 1964(c) (conferring RICO standing for injury to "property," which encompasses equitable and possessory interests).

**Protection of Personal Interests:** The Tenth Circuit distinguishes between representing a trust and protecting personal interests. *See Harrison*, 253 F.3d at 556. Plaintiff is vindicating his own interests, a right protected by statute. See *Meeker v. Kercher*, 782 F.2d 153, 154 (10th Cir. 1986)

**Scope of Relief:** Defendant's Motion seeks to strike *all* pleadings. This relief is overbroad, and would unlawfully strip Plaintiff of his individual capacity to sue for damages to his personal property and equitable interests, a right protected by 28 U.S.C. § 1654.

### VI. Defendant's Admissions Support the Claim for Willful Stay Violation

Throughout ECF No. 122, Defendant asserts that MSB Trust is a "separate legal entity" with "its own automatic stay rights." ECF No. 122 at 7, PageID.2015.

These statements constitute binding judicial admissions. Unlike mere evidentiary admissions under Fed. R. Evid. 801(d)(2), judicial admissions are "formal concessions in the pleadings . . . that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." *See Guidry v. Sheet Metal Workers Int'l Ass'n,* Local No. 9, 10 F.3d 700, 716 (10th Cir. 1993). Having conceded the Trust possesses "its own automatic stay rights," Defendant is bound by that concession. Consequently, the *In Rem* Order entered against Max Barber individually—which Defendant relied upon in ECF No. 88, *see* ECF No. 88 at 19,

PageID.1560—could not authorize foreclosure on the Trust's separate property. Defendant had notice of the Trust's bankruptcy (ECF No. 116 at 20, PageID.1961) and now admits the Trust had independent stay rights. Proceeding with foreclosure despite this knowledge constitutes a "willful violation." *Johnson v. Smith (In re Johnson)*, 501 F.3d 1163, 1172 (10th Cir. 2007).

**VII. The Remedy Sought Violates Rule 17(a)(3)**

Defendant relies on *Klein v. Scogin*, 2012 WL 5503540 (D. Utah 2012), to request the immediate striking of pleadings. This request violates Federal Rule of Civil Procedure 17(a)(3), which mandates: "The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted."

To the extent *Klein* suggests immediate dismissal, it is superseded by binding Tenth Circuit authority holding that Rule 17(a) "is designed to prevent forfeiture" and must be applied to allow ratification rather than dismissal. *See Scheufler v. Gen. Host Corp.*, 126 F.3d 1261, 1270 (10th Cir. 1997). Should the Court find a capacity defect, the appropriate remedy is to allow a reasonable time to cure, not to strike pleadings.

Furthermore, granting Defendant's request without an opportunity to cure would violate fundamental due process. A cause of action is a species of property protected by the Fourteenth Amendment. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982). Dismissal is an 'extreme sanction' reserved for willful misconduct. *See Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992). Simply striking the pleadings—thereby extinguishing Plaintiff's substantive

property interest in his claims due to a waivable procedural defect—would bypass these constitutional safeguards and constitute a deprivation of property without due process of law.

## CONCLUSION

Defendant's Motion is procedurally barred by Rule 12(g)(2), relies on post-transaction evidence, and contradicts Defendant's prior filings regarding the legal status of the Trust. Accordingly, Plaintiff respectfully requests that this Court:

1. **DENY** Defendant Anderson's Motion to Disqualify and Strike;
2. **BIND** Defendant Anderson to his judicial admission that the MSB Trust is a "separate legal entity" with "its own automatic stay rights," thereby precluding his defense that the *In Rem* Order against Max Barber individually authorized the foreclosure; and
3. **ORDER** this matter to proceed on the merits.

DATED this 20th day of January, 2026.

Respectfully submitted,

*/s/ Max Warren Barber*
MAX WARREN BARBER
Plaintiff, Pro Se

## WORD COUNT CERTIFICATION

Pursuant to DUCivR 7-1(a)(4), I hereby certify that the foregoing **PLAINTIFF'S MEMORANDUM IN OPPOSITION** contains approximately **1,460 words**, excluding the caption, table of contents, table of authorities, signature block, and certificates of counsel.

*/s/ Max Warren Barber*
MAX WARREN BARBER
Plaintiff, Pro Se

## CERTIFICATE OF SERVICE

I hereby certify that on January 20, 2026, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record. */s/ Max Warren Barber*

### VIA EMAIL TO CLERK OF COURT (For Filing & ECF Distribution):

I emailed the documents to utdecf_clerk@utd.uscourts.gov for filing. Upon entry, the Court's CM/ECF system will electronically serve the following registered counsel of record:

| | |
|---|---|
| **Steven R. Skirvin** steve@srslawpc.com<br>*Counsel of Gravity Defendants* | **Gary R. Guelker** gguelker@rlattorneys.com<br>*Counsel of Jeremy Shorts and David Gardner* |

**Andrew R. Welch (andrew.welch@lewisbrisbois.com)**
*Counsel of Jared L. Anderson*

### PRO SE DEFENDANT(s) CM/ECF SYSTEM / EMAIL

### VIA U.S. MAIL, FIRST-CLASS POSTAGE PREPAID:

I served the following Defendants (including those in Default/Failure to Appear) by placing a true copy in the United States Mail, addressed as follows:

| | | |
|---|---|---|
| **Jamis Melwood Johnson**<br>1028 South 1900 East<br>Salt Lake City, UT 84108 | **1028 S 1900 E LLC**<br>c/o Registered Agent<br>1028 South 1900 East<br>Salt Lake City, UT 84108 | **CR TRUE LLC**<br>c/o Pace Johnson Law Group<br>231 E 400 S, Suite 345<br>Salt Lake City, UT 841 |