**EXHIBIT 15**

Max Barber, *Pro Se*
1028 South 1900 East
Salt Lake City, Utah 84108
Ph:1.801.518.1821
23blackbee@gmail.com

IN THE THIRD JUDICIAL DISTRICT COURT
IN AND FOR SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| 1028 S 1900 E LLC,<br>Plaintiffs,<br>V<br>MAX BARBER; AND SARAH NAVARRA aka SARAH G BARBER<br>Defendants | DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S COMPLAINT FOR UNLAWFUL DETAINER<br>Case No. 250906343<br>Judge: Richard Daynes |

## I. INTRODUCTION

Defendant Max Barbe, appearing pro se, opposes the Complaint for Unlawful Detainer filed by Plaintiff, 1028 S 100 E LLC. Plaintiff's action must be dismissed for lack of standing because its claim to possession derives from a trustee's sale that was void *ab initio*. The sale, and the resulting trustee's deed upon which Plaintiff relies, are a legal nullity for multiple, independent reasons rooted in both federal and state law. As this memorandum will demonstrate, the sale violated the federal automatic stay, was predicated on a void court order, failed to satisfy conditions precedent, and was part of a collusive transaction in which Plaintiff cannot claim bona fide purchaser status. Because Plaintiff acquired no valid title, it has no right to possession under Utah Code § 78B-6-802.5, and its complaint must be dismissed with prejudice.

## II. ARGUMENT

### A. This Dispute Stems from the Creditor's Sabotage of a Court-Endorsed Repayment Plan.

The Plaintiff's narrative omits the critical context of the bankruptcy case. Defendant did not file for bankruptcy to delay foreclosure, but rather to facilitate a pre-existing, bona fide sale of the properties that would have paid all creditors, as sworn in his Declaration.

Prior to the bankruptcy, Defendant had secured sales contracts for both properties, and Gravity Capital through its President and Founder David Knudson was collaborating with this plan. However, Gravity's predatory contract terms and refusal to provide a clear payoff amount (see Exhibit A) forced Defendant into a Chapter 13 bankruptcy for the sole purpose of effectuating these sales in an orderly manner. This repayment plan was presented to the Bankruptcy Court and was verbally endorsed by Judge Anderson, who called it a "good solution" to satisfy all creditors. (see Exhibit B). The stipulation for conditional in rem relief was agreed to in this context (Exhibit C)—as a tool to facilitate the court-endorsed sale, not as a green light for foreclosure. Gravity Capital then failed to comply with the conditions of that order, sabotaged the sale, and proceeded with the foreclosure in bad faith.

### B. The Trustee's Sale is Void Ab Initio, Depriving Plaintiff of Standing to Maintain this Unlawful Detainer Action

The statutory basis for Plaintiff's claim is Utah's unlawful detainer statute, specifically Utah Code § 78B-6-802.5, which provides a remedy for a purchaser at a trustee's sale to remove a previous

owner who remains in possession. While this is a summary proceeding intended to be expeditious, it is not a proceeding devoid of fundamental legal requirements. The plaintiff in any unlawful detainer action bears the burden of proving its right to possession. In a post-foreclosure context, this right is not abstract; it derives directly and exclusively from the title acquired at the trustee's sale. If the sale is legally void, the trustee's deed is a nullity, conveying no title and, consequently, no right to possession.

The Utah Supreme Court has drawn a critical distinction between foreclosure sales that are "void" and those that are merely "voidable." In *Bank of America v. Adamson*, the court clarified that defects that offend public policy or violate statutory schemes designed to protect the public render a sale void *ab initio*. In contrast, procedural irregularities that cause prejudice only to an individual, such as the trustor, may render a sale merely voidable, subject to equitable considerations.

The defects alleged in this case are not minor procedural missteps. The violation of a federal automatic stay, reliance on a jurisdictionally void court order, and the enforcement of a contract that contravenes a federal injunction are matters that offend fundamental public policies concerning the integrity of the federal bankruptcy system and the enforcement of consumer protection laws. These are not private grievances but violations of public-facing legal structures. As such, they render the trustee's sale on July 22, 2025, void from its inception.

Because the sale was void, Plaintiff "1028 S 1900 E LLC" never acquired legal title to the property. It is a legal stranger to the title. Consequently, it lacks standing to sue as an "owner" as defined under Utah Code § 78B-6-801(5). Without valid title, Plaintiff cannot establish the primary element of its claim, and this action must be dismissed as a matter of law.

**C. The Foreclosure Sale Violated the Automatic Stay of 11 U.S.C. § 362 and is Therefore Void**

The automatic stay, codified at 11 U.S.C. § 362(a), is one of the most fundamental protections in federal bankruptcy law. Upon the filing of a bankruptcy petition—in this instance, the petition filed by the MSB Trust—an automatic injunction immediately halts virtually all collection activities, including foreclosure sales. The stay is not a suggestion; it is a statutory command. Actions taken in violation of the automatic stay are not merely improper; they are void *ab initio* and without legal effect. This bright-line rule is strictly enforced by federal courts to preserve the status quo and protect the integrity of the bankruptcy estate.

Plaintiff's entire justification for proceeding with the foreclosure sale rests on an *in rem* order granting relief from stay, which was issued in a prior, separate bankruptcy case filed by Defendant Barber personally. However, this reliance is fatally misplaced for multiple independent and dispositive reasons.

**1. The Unrecorded In Rem Order is Ineffective as a Matter of Federal Law**

The provision of the Bankruptcy Code authorizing *in rem* relief, 11 U.S.C. § 362(d)(4), was enacted to combat abusive serial bankruptcy filings designed to delay foreclosure. However, Congress included a critical, non-discretionary condition for such an order to have prospective effect. The statute explicitly states that an *in rem* order is binding in a future bankruptcy case affecting the same property only "**if recorded in compliance with applicable State laws**

**governing notices of interests or liens in real property"**. This recording requirement is not a mere formality; it is a statutory condition precedent to the order's power to override the automatic stay in a subsequent case.

The purpose of this federal mandate is to provide constructive notice to the entire world, including a trustee in a future bankruptcy case involving a different debtor (such as the MSB Trust). This aligns perfectly with Utah's recording statutes, found in Utah Code Title 57, Chapter 3, which establish that recording an instrument in the county recorder's office imparts notice to all subsequent purchasers and creditors. By failing to record the *in rem* order, the creditor, Gravity Capital, failed to give the legally required notice that would make the order effective against the world.

As stated in Defendant's declaration, a search of the Salt Lake County Recorder's records confirms the *in rem* order was never recorded against the properties (See Exhibit G). The legal consequence of this failure to record is clear and absolute: the order was ineffective against the subsequent bankruptcy case filed by the MSB Trust. Because the creditor failed to comply with the mandatory recording requirement, the order had no prospective legal effect. Therefore, the filing of the MSB Trust bankruptcy triggered a new, fully effective automatic stay under § 362(a), and the foreclosure sale conducted in violation of that stay is void *ab initio*

**2. The In Rem Order is Void for Lack of Subject-Matter Jurisdiction**

Even if the order had been recorded, it would still be a legal nullity. A federal bankruptcy court is a court of limited jurisdiction. Its power, granted by Congress under 28 U.S.C. § 1334, extends to the debtor and to "property of the estate". A bankruptcy court has no subject-matter jurisdiction

to issue orders concerning property that is not, and never was, part of the bankruptcy estate it is administering. The Tenth Circuit Bankruptcy Appellate Panel has held that the bankruptcy court is the *only* court with jurisdiction to determine whether a cause of action is property of the estate, reinforcing the principle that its jurisdiction is tethered to the estate's assets. The fatal flaw in the *in rem* order is revealed by the Bankruptcy Court's own subsequent finding. In his order dated August 15, 2025, Judge Anderson himself made the dispositive factual finding that the properties "were never property of Barber's bankruptcy estate, being titled in the name of business entities" (see Exhibit D, p. 7). This is a conclusive judicial admission that the court, in its earlier order, acted upon property over which it had no jurisdiction in that specific case. The court cannot grant relief from a stay against assets that are not part of the estate the stay was protecting.

An order issued by a court that lacks subject-matter jurisdiction is void from the moment of its entry. It is a legal nullity that can be collaterally attacked at any time, in any court. Because the *in rem* order was void from its inception, any action taken in reliance upon it, including the trustee's sale, is likewise void *ab initio*. Plaintiff cannot build a valid claim to title upon the foundation of a void court order.

**D. The Foreclosure is Void for Failure to Satisfy Express Conditions Precedent and Proper Parties**

The stipulation for conditional *in rem* relief, which was endorsed by the Bankruptcy Court, functioned as a binding contract between the creditor and the Defendant (Exhibit C). Under established principles of Utah contract law, when a party's right to performance is subject to a condition precedent, that right does not accrue until the condition has been satisfied. As the Utah

Supreme Court's decision in *Quealy v. Anderson* illustrates, the failure to satisfy a condition precedent can discharge a party's obligations under an agreement.The record in the bankruptcy proceeding demonstrates that the relief from stay was not absolute; it was explicitly conditional. The hearing transcript confirms the relief was contingent upon the creditor, Gravity Capital, performing its prerequisite obligations under the stipulation, namely "the lien correction and give an accounting of the pay-off" (see Exhibit E).These were not trivial administrative tasks but were central to the court-endorsed plan to facilitate an orderly sale of the properties that would satisfy all creditors.

Defendant asserts that Gravity Capital failed to perform these conditions precedent before the foreclosure sale (see Exhibit F and F.1). This failure constituted a material breach of the stipulation. Because these mandatory conditions were not met, the legal basis for the relief from stay was never perfected, rendering the subsequent foreclosure sale legally void.

Furthermore, the *in rem* order granted relief specifically and solely to "Gravity Capital, LLC". The Plaintiff in this case is "1028 S 1900 E LLC," a completely different legal entity. Plaintiff cannot claim rights or benefits from a court order to which it was never a party.

This failure also represents a breach of the implied covenant of good faith and fair dealing, which is inherent in every Utah contract. The Utah Court of Appeals in *Five F v. Heritage Savings Bank* recognized that a trustee and beneficiary in a foreclosure context owe a duty to act with reasonable diligence and good faith. Here, Gravity Capital sought to reap the benefit of the stipulation (relief from stay) while ignoring its corresponding obligations, thereby frustrating the core purpose of the agreement. Such conduct is the essence of bad faith and provides a powerful equitable defense against the enforcement of any rights derived from that stipulation.

**E. Plaintiff Lacks the Standing of a "Bona Fide Purchaser" Due to Actual Notice and a Pattern of Collusive Dealings**

Plaintiff will likely argue that, even if there were defects in the sale, it is protected as a bona fide purchaser (BFP). This defense fails both legally and factually. In Utah, a BFP is one who pays valuable consideration for property *without notice* of prior claims or defects in title. It is an equitable defense designed to protect innocent purchasers, not those with notice or those who participate in a collusive transaction. While Utah Code § 57-1-24.3(13) offers some protection to a BFP against a servicer's procedural failures, it does not salvage a sale that is void *ab initio*, nor does it shield a purchaser who is not, in fact, "bona fide". The facts demonstrate that Plaintiff is not an innocent, good-faith purchaser entitled to the Court's relief.

**1. Actual, Inquiry, and Constructive Notice of Defects**

A purchaser cannot claim BFP status by simply closing their eyes to red flags. More importantly, Defendant personally informed the Plaintiff of the active automatic stay on the day of the foreclosure sale, giving them *actual notice* that the sale was illegal. Furthermore, the deeply intertwined personal and financial relationship between David Knudson (President of Gravity Capital LLC) and Jamis Johnson (the true controller of the Plaintiff entity) placed a heightened duty of inquiry on the Plaintiff (see Exhibit H). A reasonable purchaser in these circumstances, aware of the contentious history, would have meticulously investigated the validity of the bankruptcy orders and the status of the automatic stay. To fail to do so constitutes willful

blindness, which negates the good faith required for BFP status. Plaintiff had, at minimum, actual, constructive, and inquiry notice of the fatal defects in the title it was purchasing.

**2. A Grossly Inadequate Price Combined with Collusion Voids the Sale**

Under established Utah law, a foreclosure sale can be invalidated for a "gross inadequacy of price together with slight circumstances of unfairness." This principle, articulated by the Utah Supreme Court in cases like *Pyper v. Bond*, is designed to protect against inequitable outcomes and gives rise to a presumption of fraud. Here, the circumstances far exceed "slight unfairness" and point directly to a collusive, bad-faith transaction tantamount to bid-rigging.

The price was grossly inadequate. The properties were under contract for a combined $2.9 million (see Exhibit P) but were acquired by Plaintiff for only $650,000—less than 23% of their market value. This fire-sale price is a hallmark of an equity-stripping scheme, not a legitimate commercial transaction.

This grossly inadequate price was achieved through intentional misconduct that surpasses the threshold of a "slight irregularity." The collusive nature of the sale is evidenced by numerous "badges of fraud":

- **Insider Relationship and Pattern of Collusion:** This transaction is not an arm's-length deal but a continuation of a long-standing and deeply intertwined personal and financial relationship between David Knudson and Jamis Johnson that extends to their families. As detailed in Defendant's declaration and the public records attached as Exhibit H, this network included their wives acting as respective business partners and numerous questionable property transfers occurring between the families while both Knudson and

Johnson were facing federal litigation. This pattern of deeply commingled and suspect financial dealings demonstrates that the current transaction is not a simple foreclosure purchase but is part of a larger, ongoing scheme.

- **Absence of Competitive Bidding:** As stated in Defendant's declaration, he was present at the trustee's sale. Despite the properties being in the highly sought-after Yalecrest neighborhood, the Johnson family were the only bidders present. The complete absence of competitive bidding is a significant indicator of a collusive sale designed to suppress the price.
- **Special-Purpose Shell Entity:** The Plaintiff LLC was formed on or about the date of the foreclosure sale, suggesting it was created for this transaction, and is controlled by a disbarred attorney convicted of financial misconduct. This combination of a grossly inadequate price with deliberate, collusive acts constitutes a wrongful foreclosure under Utah law. Such intentional fraud to manipulate a sale for the benefit of insiders is the antithesis of good faith and strips the Plaintiff of any claim to BFP status.

**F. The Foreclosure Stems from an Unenforceable Contract that Violates Public Policy**

The invalidity of this foreclosure extends to the very contract that created the debt. It is a fundamental tenet of Utah law that a contract whose purpose is illegal or that contravenes clear and substantial public policy is void and unenforceable.The underlying loan contract with Gravity Capital (see Exhibit K) contains numerous terms that are explicitly prohibited by a permanent Federal Trade Commission (FTC) injunction against the creditor's principal, David Knudson, for predatory lending (See Exhibit J). An FTC injunction represents a powerful

declaration of federal public policy against deceptive and unfair lending practices. A contract knowingly structured to violate such an order is contrary to public policy and unenforceable in a court of law. As the Utah Supreme Court held in *Peterson v. Browning*, clear expressions of federal law and policy can form the basis for Utah's public policy exception to contract enforcement. The contract terms that violate the injunction (see Exhibit L) include:

- Imposing a punitive default interest rate, which is an "increased interest rate" provision forbidden by Section I.G of the injunction.
- Forcing the borrower to falsely declare the loan is for a "business purpose" to circumvent consumer protection laws, a tactic explicitly prohibited by Section III.C of the injunction.
- Levying excessive and layered late fees, which constitutes a misrepresentation of credit costs forbidden by the injunction.
- Structuring the loan as a deceptive "Open-End" note to avoid stricter closed-end mortgage disclosures, despite it being a single, closed transaction, a practice forbidden by Section III.A.5 of the injunction.

Furthermore, the creditor's conduct throughout this dispute constitutes a profound breach of the implied covenant of good faith and fair dealing. This covenant, implied in every Utah contract, prohibits either party from acting in a way that injures the other party's right to receive the benefits of their agreement. The creditor's actions—refusing to provide a clear payoff amount to facilitate a sale (see Exhibit A), thereby forcing a bankruptcy, and then actively sabotaging the court-endorsed plan to sell the properties to pay all creditors in full—are the epitome of bad faith. The creditor's actions were designed to frustrate the very purpose of the court-supervised process, which was to achieve an orderly repayment for the benefit of all parties, a plan verbally

endorsed by Chief Bankruptcy Judge Kevin R. Anderson as a "good solution" (see Exhibit B).

**G. Plaintiff's Submissions to this Court Contain Material Falsehoods and Improper Arguments**

Parties and their counsel owe a duty of candor to the tribunal. Utah Rule of Civil Procedure 11 authorizes sanctions against any party who presents a pleading, motion, or affidavit containing factual contentions that lack evidentiary support or are presented for an improper purpose. Plaintiff's submissions are replete with material misrepresentations and improper arguments calculated to mislead this Court.

**1. Material Misrepresentations in Sworn Declarations**

The declaration of Adrian Johnson is replete with material falsehoods that fail to substantiate its central claim of ongoing, irreparable harm, calling the declarant's credibility and the Plaintiff's good faith into question.

1. **Plaintiff Falsely States He is Being Prevented from "Safely Occupying the Home."** Plaintiff's central claim—that he and his family, including a 3-year-old child, are being prevented from "safely occupying their home"—is a material misrepresentation to this Court. The property at 1836 E. Yale Ave is, and has been since the date of the foreclosure, an active construction site. The narrative of a family being displaced from their residence is a fabrication designed to invoke the Court's sympathy and manufacture a false sense of urgency where none exists.

2. **The Claim of "Ongoing" Harm is Contradicted by the Lack of Evidence.** Plaintiff's claims of ongoing threats and fear are entirely unsubstantiated by the factual record. The police reports attached to Plaintiff's own filings document incidents only on July 23 and July 26, 2025. In the more than two months that have elapsed since, Plaintiff has not filed a single police report alleging any further contact, threats, stalking, or harassment by Defendant or his associates. This extended period of no contact directly contradicts the declaration's assertion of being "unable to safely occupy" the home and fearing for his family's safety. The "harm" described is historical, not ongoing, and the request for immediate judicial intervention is based on falsehoods and not facts.
3. **The Declaration's Most Dramatic Claim is Not Corroborated by Plaintiff's Own Evidence.** Adrian Johnson makes a sworn allegation that an associate of the Defendant "forcibly entered behind me and deliberately shouted to prevent communication with the dispatcher". However, the responding officer's detailed report (GO# SL 2025-168227), which Plaintiff himself submitted, makes no mention of any such interference with a 911 call. The omission of such a critical criminal act from an official police report is significant and undermines the credibility of the entire declaration. Instead of a crime, the police officially classified the event as a "PUB ORD-CIVIL CASES" matter. Submitting such false statements under oath is not only a violation of Rule 11 but may also constitute a second-degree felony under Utah Code § 76-8-502 (Making a false or inconsistent material statement).

**2. Misrepresentation of the Bankruptcy Court Record**

Plaintiff repeatedly misrepresents the bankruptcy court's rulings. Counsel claims Judge Anderson "entered an order denying all Max Barber's claims," which is a misleading half-truth; the order was on jurisdictional grounds and explicitly acknowledged the substance of Defendant's state-law claims.[9] Plaintiff also implies that bankruptcy case No. 25-21749 was dismissed for bad faith, but the actual Order of Dismissal (see Exhibit M) clearly states the dismissal was a procedural matter pursuant to 11 U.S.C. § 521(i).Similarly, Plaintiff's allegation that the transfer of the properties into the MSB Trust was an improper "belated transfer" is false; the record shows this was the stated intent from the outset, and Defendant clearly stated on the record during the May 12, 2025, hearing that the formal title transfer was in process (see Exhibit N).

**3. Improper Use of Character Evidence**

Plaintiff has attached an "irrelevant, dated mugshot" of the Defendant to its filings. This has no evidentiary purpose related to property title or the right to possession. Its sole purpose is to attack the Defendant's character and prejudice the Court, a tactic expressly forbidden by Utah Rule of Evidence 404(a). This resort to an improper *ad hominem* attack demonstrates the fundamental weakness of Plaintiff's legal position.

## III. CONCLUSION

Plaintiff's action for unlawful detainer must fail because its claim to possession is based on a trustee's deed that is a legal nullity. The foreclosure sale was void for multiple, independent

reasons. It was conducted in direct violation of the automatic stay of 11 U.S.C. § 362, as the prior *in rem* order was rendered ineffective by the creditor's failure to record it as required by federal statute. That same *in rem* order was also void from its inception for lack of subject-matter jurisdiction. The sale was further voided by the creditor's failure to meet express, court-ordered conditions precedent.

Moreover, Plaintiff cannot seek refuge in the equitable status of a bona fide purchaser. The overwhelming evidence of a collusive, insider transaction, combined with clear inquiry and constructive notice of the fatal defects in title, strips Plaintiff of any claim to good faith. Finally, the entire transaction is tainted by its origin in a loan contract that is unenforceable as a violation of public policy and a federal injunction.

For these reasons, Plaintiff lacks the standing necessary to maintain this action. Defendant respectfully requests that the Court deny Plaintiff any relief and dismiss the Complaint for Unlawful Detainer with prejudice.

Dated: October 13, 2025

Respectfully submitted,

/s/ Max Warren Barber
Max Warren Barber, Pro Se

CERTIFICATE OF SERVICE

I certify that on October 13, 2025, a copy of this DEFENDANT'S OPPOSITION TO PLAINTIFFS' DECLARATIONS AND MEMORANDUM OF POINTS AND AUTHORITIES was served on Plaintiff's counsel by email and filed with the Court via ECF:

David Gardner, davidg@utahevictionlaw.com

Utah Eviction Law, info@utahevictionlaw.com

Dástan D'o, dastan@pacejohnson.com

/ s/ Max Barber
Max Barber, *Pro Se*