FILED
2026 JUL 9 PM 11:54
CLERK
U.S. DISTRICT COURT

MAX WARREN BARBER
4645 S. Highland Drive
Salt Lake City, UT 84117
Telephone: (801) 518-1820
Email: 23blackbee@gmail.com
*Pro Se Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MAX WARREN BARBER, and as Sole Trustee of the MSB TRUST<br>*Plaintiff,*<br><br>v<br><br>GRAVITY CAPITAL, LLC, et al.,<br>*Defendants.* | **PLAINTIFF'S OPPOSITION TO DEFENDANT KAREN SALAS MOTION TO QUASH SECOND SERVICE OF PROCESS AND VACATE DEFAULT JUDGMENT (ECF 233)**<br><br>Case No. 2:25-cv-00681-HCN-DBP<br><br>Judge Howard C. Nielson, Jr.<br>Magistrate Judge Dustin B. Pead |

Plaintiff Max Warren Barber, appearing *pro se,* respectfully submits this Opposition to Defendant Karen Salas's Motion to Quash Second Service of Process and Vacate Default (ECF 223), and states as follows:

**INTRODUCTION**

On January 24, 2026, a copy of the summons and amended complaint was left with Karen Salas's husband and co-resident, Jamis Johnson, at the family's dwelling, 1028 S. 1900 E. — exactly what Rule 4(e)(2)(B) authorizes. The Clerk reviewed the sworn return, found service

1

"properly and timely" effected, and entered Salas's default. ECF 203. Her motion fails at the threshold and again on the merits.

**First**, the motion is not properly before the Court. On March 24, 2026, the Court ordered that it "will not accept any new motions," subject only to two narrow exceptions Salas's motion does not meet. ECF 208. Filed three months later, it is exactly the kind of filing the order directs to be "lodged and will not be considered." *Id.* The Court may deny it on that basis alone.

**Second**, even reaching the merits, service was completed under Rule 4(e)(2)(B). The papers were left with a resident of suitable age and discretion — Salas's husband — at the dwelling. Salas's argument that Johnson was "not authorized" (ECF 223) addresses agent service under Rule 4(e)(2)(C), not substituted service under (B). And when Johnson and his son physically discarded the papers the server had placed within Johnson's reach (ECF 143 ¶¶ 18–19), that did not undo a completed service — a defendant cannot defeat service by evading or discarding it. The Clerk has already so held. ECF 203, PageID.3070 n.4.

**Third**, the record refutes her dwelling theory. She listed 357 S 200 E #303 as her "**Mailing Address**" (ECF 92), the photograph of that address shows a commercial "Executive Office Suites" (ECF 143), her husband resided at 1028 (he had been served there before, ECF 143 ¶ 12), and her co-defendant stepson swore the couple was "moving into the 1028 Home" (ECF 143 ¶ 8).

**Fourth**, no available remedy supports her request. Salas's own motion correctly asks to vacate "the Clerk's Entry of Default" — not a judgment — yet invokes a "void" theory that only governs relief from a final judgment under Rule 60(b)(4), not the "good cause" standard that

2

actually applies under Rule 55(c). And she asks the Court to bar service forever. Even assuming any defect, the remedy is to quash and permit re-service under Rule 4(m), *Pell v. Azar Nut Co.*, 711 F.2d 949, 950 n.2 (10th Cir. 1983) — trivial here, since Salas alleges she has resided at 1028 since May 1, 2026 (ECF 223).

One further point confirms the result: even under the correct "good cause" standard, the default should stand — Salas had over 150 days of documented ECF notice and never opposed it. The motion should be denied.

### <u>STATEMENT OF FACTS</u>

1. The Court extended Plaintiff's time to serve to February 3, 2026. ECF 133.

2. Server Julian Dotson made two attempts at 357 S 200 E #303 — the address Salas designated as her "Mailing Address" on her court-filed notification form. ECF 92, PageID.1734. On January 15, 2026, he found "a corporate office and not a residential address," no answer; Exhibit A is a photograph of the placard reading "Suite 303 — Executive Office Suites." ECF 143 ¶ 4, PageID.2160, 2165. On January 24, he returned and found it "locked and inaccessible." *Id.* ¶ 5.

3. Having determined service at the mailing address was "impracticable," Dotson proceeded to Defendant's actual dwelling, 1028 S. 1900 E. *Id.* ¶ 6. He verified it by reviewing co-defendant Pace Johnson's sworn declaration, filed in *1028 S. 1900 E LLC v. Barber*, No. 250906343 (Utah Third Dist.), stating "my father [Jamis Johnson] and his wife . . .

are moving into the 1028 Home" — corroborated by Jamis's presence at the location during the attempt. *Id.* ¶¶ 8–9, PageID.2161.

4. On January 24, 2026, Dotson observed Jamis Johnson — whom he "personally effectuated service of process upon . . . at this exact address on a prior occasion" — and Pace Johnson walking from the 1028 house to a vehicle in the driveway. *Id.* ¶¶ 11–12, PageID.2161–62. Dotson announced he had service for Karen Salas. Johnson said he was "not authorized" to accept and pointed to Pace as "his attorney." *Id.* ¶¶ 13–14, PageID.2162.

5. Dotson approached "to effectuate service on Jamis Johnson (as co-resident)" and "informed them that because they were over the age of 18, [he] was leaving the documents with them." *Id.* ¶ 16, PageID.2162. He then placed the papers inside the vehicle "within the immediate reach, view, and control of the passenger, Jamis Johnson"; Jamis and Pace then "grabbed the documents and threw them out of the moving vehicle." *Id.* ¶¶ 18–19, PageID.2162–63. Dotson attested he effected substituted service on Jamis Johnson as Salas's resident husband under Rule 4(e)(2)(B). *Id.* ¶ 20, PageID.2163.

6. On March 19, 2026, the Clerk found service "properly and timely" effected and entered Salas's default under Rule 55(a) and DUCivR 55-1, citing authority that refusal does not defeat service. ECF 203, PageID.3069–70 & n.4.

7. Salas filed this motion on June 25, 2026 — 151 days after Dotson's return disclosing the service she now challenges was filed (Jan. 25, 2026), 98 days after entry of default, and after the Court's March 24, 2026 order restricting filings (ECF 208). By her own account,

she has resided at 1028 since May 1, 2026. ECF 223, PageID.3289; ECF 223-1 ¶ 3,

PageID.3296.

## LEGAL STANDARD

On a service challenge decided on the papers, "the plaintiff need only make a prima facie

showing," and "factual disputes at this initial stage must be resolved in the plaintiff's favor when

the parties present conflicting affidavits." *FDIC v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th

Cir. 1992). The sworn Dotson return makes that showing.

A Clerk's entry of default is set aside "for good cause." Fed. R. Civ. P. 55(c). Salas's own

motion correctly asks to "vacate the Clerk's Entry of Default" (ECF 223, PageID.3287) — not a

judgment — yet argues it is "void," a theory Rule 60(b)(4) confines to relief from a final

*judgment*, which does not exist here. *Id.*; *cf.* Fed. R. Civ. P. 55(a).

## ARGUMENT

### I. The motion is an unauthorized new filing under ECF 208.

On March 24, 2026, to allow the Court "to resolve these multiple pending motions and

objections," the Court ordered that "the court will not accept any new motions as of the date of

this order." ECF 208, PageID.3115. The order recites only two exceptions: "(1) . . . motions for

extensions of time relating to the briefing of existing motions; or (2) . . . matters for which the

court specifically requests additional briefing." *Id.* Any other new motion "will be lodged and

will not be considered." *Id.* The ban lifts only "[o]nce the existing motions have been decided." *Id.*

Salas's motion, filed June 25, 2026 — three months after the order — is a new, affirmative request to quash service and vacate a default; it fits neither exception and falls squarely within the category the order directs to be "lodged" and not considered. Nor has the precondition for lifting the ban occurred: the motions the order was entered to resolve remain undecided. The Court may deny the motion on this threshold basis alone. Plaintiff nonetheless addresses the merits below, on which the motion also fails.

**II. Service was completed under Rule 4(e)(2)(B), and Salas's refusal did not defeat it.**

Rule 4(e)(2) authorizes three methods: (A) personal delivery; (B) "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there"; or (C) "delivering a copy of each to an agent authorized by appointment or by law . . . ." The Dotson return invoked method (B). ECF 143 ¶ 20, PageID.2163.

**A.    The papers were left with a qualifying co-resident at the dwelling.**

Substituted service under (B) requires three things: a dwelling, a resident of suitable age and discretion, and leaving the papers there. All three are satisfied. Jamis Johnson is Salas's husband and resided at 1028 — the server had personally served him "at this exact address on a prior occasion" (ECF 143 ¶ 12, PageID.2162), and Pace Johnson swore the couple was "moving

into the 1028 Home" (¶ 8, PageID.2161). The encounter occurred at the dwelling — in the driveway, as Johnson walked from the house. *Id.* ¶ 11, PageID.2161.

### B.       "Authorization" is irrelevant to method (B).

Salas's lead argument — that Johnson said he was "not authorized" (ECF 223, PageID.3288–89, 3290–91) — attacks method (C), which alone requires an "agent authorized by appointment or by law . . . ." Salas is a natural person, not a business entity requiring service on a registered agent, Fed. R. Civ. P. 4(h); the authorization concept she invokes has no home in method (B) at all. Under (B), the resident does not "accept," "agree," or "authorize"; the server leaves the papers with a qualifying co-resident, and service is complete. Johnson's disclaimer of *agent* authority is beside the point, because no one served him as an agent.

### C.       Refusal and discarding did not defeat the completed service.

Dotson approached "to effectuate service on Jamis Johnson (as co-resident)" and "informed them that because they were over the age of 18, [he] was leaving the documents with them" (ECF 143 ¶ 16, PageID.2162) before placing the papers "within the immediate reach, view, and control" of Johnson (¶ 18, PageID.2162); Johnson and his son then "grabbed the documents and threw them out of the moving vehicle" (¶ 19, PageID.2163). A recipient cannot defeat service by discarding papers placed within his immediate proximity after the server announces them. "If the defendant attempts to evade service or refuses to accept delivery after being informed by the process server of the nature of the papers, it usually is sufficient for the

process server to . . . leave them in the defendant's physical proximity. It is not crucial . . . that the defendant does not take the papers into his or her possession." *Travelers Cas. & Sur. Co. of Am. v. Brenneke*, 551 F.3d 1132, 1135 (9th Cir. 2009) (quoting 4A Wright & Miller, Federal Practice and Procedure § 1095 (3d ed. 2002)).

The Clerk applied exactly this principle in entering default, citing *Novak v. World Bank*, 703 F.2d 1305, 1310 n.14 (D.C. Cir. 1983), and related authority. ECF 203, PageID.3070 n.4. Salas's own declaration (ECF 223-1, PageID.3295–99) does not dispute any of this — she says nothing about the driveway encounter or the discarded papers. Salas asks the Court to disturb the Clerk's reasoned conclusion; the record does not support doing so.

### D.      Salas's Utah-law fallback fails for the identical reason.

Salas argues in the alternative that service also fails under Utah Rule of Civil Procedure 4(d)(1)(A), while conceding that rule "tracks" and is "materially identical" to Rule 4(e)(2)(B). ECF 223 § IV.B, PageID.3291. Because the two standards rise and fall together by her own admission, the analysis above disposes of the Utah-law theory as well.

### III. The record refutes the dwelling theory.

### A.      Salas's own filing forecloses the "357 was my dwelling" theory.

Salas certified 357 S 200 E #303 as her "**Mailing Address**" — not her residence — on her notification form. ECF 92, PageID.1734. The photograph of record shows that address is "Executive Office Suites," a commercial facility. ECF 143, PageID.2165. A designated mailing

address at a commercial suite is not a "dwelling or usual place of abode." Salas offers no competing *residential* address of record for January 24, 2026, and neither her motion (ECF 223) nor her declaration (ECF 223-1, PageID.3295–97) ever mentions the Exhibit A photograph or attempts to reconcile it with her claimed 2018 lease.

### B.      The record places her household at 1028.

Salas now swears the opposite: "Neither I nor Jamis Johnson resided at 1028 S. 1900 E. ... on January 24, 2026. The 1028 House was not my dwelling." ECF 223-1 ¶ 4, PageID.3296. That creates a genuine conflict, but *Oaklawn* resolves it in Plaintiff's favor at this stage. The dwelling determination rests on more than the single encounter addressed in Part II.A above: Dotson had already found Jamis at 1028 "on a prior occasion" before January 24 (¶ 12, PageID.2162), and concluded Jamis's residency there was "further confirmed by the presence of her husband ... at the location during the service attempt" (¶ 9, PageID.2161).

Two independent, documented encounters is the pattern that distinguishes a "usual place of abode" from a place someone happened to be once — none of it mentioned or reconciled in Salas's declaration, which also never explains why Jamis was physically at 1028, walking to a car in the driveway, that same day. *Id.* ¶ 11, PageID.2161.

Plaintiff acknowledges the precise move-in date is contested and that "are moving into" is forward-looking. But Salas may have more than one usual place of abode, and substituted service is valid at a residence of sufficient connection even if she kept another. *Nat'l Dev. Co. v. Triad*

9

*Holding Corp.*, 930 F.2d 253, 257–58 (2d Cir. 1991) (service valid at a residence used only part-time). On this record, 1028 was a place of abode at which substituted service was proper.

### IV. The remedy Salas seeks is unavailable; any defect yields re-service, not a permanent bar.

Salas argues the February 3 window closed and she "may not be served again." ECF 223, PageID.3288. That is not the law. "[W]hen a court finds that service is insufficient but curable, it generally should quash the service and give the plaintiff an opportunity to re-serve the defendant." *Pell*, 711 F.2d at 950 n.2. The same footnote notes the court "retains broad discretion to dismiss the action if it appears unlikely that proper service can or will be instituted," *id.* — a caveat with no application here, since re-service is not unlikely. Rule 4(m) confirms the options are dismissal *without prejudice* or an order extending time, and makes extension mandatory on good cause. Fed. R. Civ. P. 4(m).

This is dispositive even if the Court has any doubt about service: re-service is not "unlikely" — it is trivial, since Salas alleges she has lived at 1028 since May 1, 2026 (ECF 223, PageID.3289), so the dwelling is now undisputed. The Court should deny the motion; at most, it should quash and order re-service. It should not dismiss or bar service.

### V. The discretionary good-cause factors favor denial.

Because service was valid, the Court has personal jurisdiction, and there is no defect — and thus no good cause — to disturb the entry. Were the Court to reach the discretionary factors under Rule 55(c) anyway, the dispositive one is whether the default resulted from causes outside

the movant's control; here it followed valid service the recipients discarded, and Salas identifies no meritorious defense to the amended complaint. *See United States v. Timbers Preserve*, 999 F.2d 452, 454 (10th Cir. 1993).[1]

Nor was Salas in the dark at any point: she had ECF notice during the 54 days between service (January 24, 2026) and entry of default (March 19, 2026), during the 98 days between default and this motion (filed June 25, 2026), and thus for the full 152 days from service to her motion. The Clerk's own order so found: "Defendants Karan Salas, Pace William Johnson, and Stacy Roberts Johnson are receiving electronic notification of filings in this case. . . . [T]hey have received a copy of docket no. 190 and did not oppose it." ECF 203, PageID.3070 n.4 (citing ECF 92). That notice necessarily included the Dotson return (ECF 143) itself — the very document she now disputes — filed January 25, 2026, the day after service.

### VI. Salas's own authorities require service, which occurred.

Salas cites *Omni Capital* and *Murphy Bros.* for the principle that personal jurisdiction requires valid service and that actual notice is no substitute. Plaintiff agrees. "Before a . . . court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). "Service of process . . . is fundamental to any procedural imposition on a named defendant." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999).

---

[1] *Timbers Preserve*'s factors arise under Rule 60(b) (default judgment); Rule 55(c)'s "good cause" standard for an *entry* of default is more lenient, but the same considerations guide the inquiry. Plaintiff does not contend Salas waived her service defense — she preserved it (ECF 93) — only that the defense fails on the merits.

Those requirements were met by completed substituted service under Rule 4(e)(2)(B). Plaintiff does not rely on Salas's notice for jurisdiction; the Clerk's reference to it (ECF 203, PageID.3070) was corroboration, not the basis of service. Neither case holds that substituted service on a resident spouse is invalid.[2] *Omni Capital* is further distinguishable on its own terms: the Court there addressed only "amenability to service" — whether any rule authorized reaching foreign defendants at all — expressly noting "[t]here is no objection to the method of service in this litigation; the objection is only to amenability to service." *Omni Capital*, 484 U.S. at 103 n.6. Here, nobody disputes that Rule 4(e)(2)(B) authorizes service on Salas, a U.S. individual defendant; the only dispute is over execution of an admittedly available method.

**CONCLUSION**

The motion is independently barred as an unauthorized filing under ECF 208. Even reaching the merits, service was completed under Rule 4(e)(2)(B), the Clerk correctly entered default, and Salas offers no competent evidence, applies the wrong legal standard, and seeks a remedy the law does not allow. The Court should DENY the motion. Should the Court find any defect in service, the appropriate relief is to quash and permit re-service under Rule 4(m) — not to vacate the action or bar service.

---

[2] To the extent Salas's "void" theory invokes the principle that actual notice does not cure defective service, Plaintiff agrees and does not depend on notice. *Hukill v. Okla. Native Am. Domestic Violence Coal.,* 542 F.3d 794, 796–97 (10th Cir. 2008), illustrates the correct use of the "void" theory Salas borrows from Rule 60(b)(4) and misapplies to an entry of default: the Tenth Circuit there vacated a default judgment because certified-mail service was signed for by a person not authorized to accept service on the defendants' behalf, so no qualifying person ever received process. Hukill worked because an actual judgment existed to vacate. Here, a qualifying resident — Salas's husband — received the papers, and Salas faces only a Rule 55(a) entry of default, not a Rule 60(b)(4) judgment.

DATED this 9th  day of June, 2026.

Respectfully submitted,

*/s/ Max Warren Barber*
MAX WARREN BARBER,
Pro Se Plaintiff

## CERTIFICATE OF COMPLIANCE

I, Max Warren Barber, certify that this Opposition contains 3,030 words, excluding the caption, signature block, this certificate, and the certificate of service, and complies with the word limit of DUCivR 7-1(a)(4)(D).

*/s/ Max Warren Barber*

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of July 2026, I caused a true and correct copy of the foregoing **PLAINTIFF'S OPPOSITION TO DEFENDANT KAREN SALAS MOTION TO QUASH SECOND SERVICE OF PROCESS AND VACATE DEFAULT JUDGMENT (ECF 233)** to be served via the Court's CM/ECF system on all counsel of record and via email on all pro se parties registered for electronic notification.

| | |
|---|---|
| **Steven R. Skirvin** | **Gary R. Guelker** |
| steve@srslawpc.com | gguelker@rlattorneys.com |
| *Counsel of Gravity Defendants* | *Counsel of Jeremy Shorts & David Gardner* |
| | |
| **Andrew R. Welch** | |
| (andrew.welch@lewisbrisbois.com) | |
| *Counsel of Jared L. Anderson* | |
| **Adrian Isaac Johnson:** | **Dastan M. D'O:** |
| adrian.isaac.johnson@gmail.com | D_0001@icloud.com |
| **Karen Salas:** | **Stacy Roberts Johnson** |
| Karensalasutah@gmail.com | stacyjrob@gmail.com |
| **Stephanie Strasnick Johnson:** | **Taytum Jorgensen** |
| stephanie.anne.strasnick@gmail.com | taytumannjorge@gmail.com |
| **Pace William Johnson** | **Jamis Melwood Johnson** |
| pace@pacejohnson.com | jamis@pacejohnson |
| Jamisjohnson@gmail.com | |

### VIA U.S. MAIL, FIRST-CLASS POSTAGE PREPAID:

I served the following Defendants (including those in Default/Failure to Appear) by placing a true copy in the United States Mail, addressed as follows:

**CR TRUE LLC**
℅ Pace Johnson Law Group
231 E. 400 S. Suite 345
Salt Lake City, UT 84111

**1028 S. 1900 E. LLC**
℅ Pace Johnson Law Group
231 E. 400 S. Suite 345
Salt Lake City, UT 84111

*/s/ Max Warren Barber*

14