**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| **MAX WARREN BARBER,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**DAVID KNUDSON, JAMIS MELWOOD JOHNSON, JARED L. ANDERSON, GRAVITY CAPITAL LLC, a Utah limited liability company, GRAVITY FUNDING LLC, a Utah limited liability company, ADRIAN ISAAC JOHNSON, KAREN SALAS, STACY ROBERTS JOHNSON, PACE WILLIAM JOHNSON, STEPHANIE STRASNICK JOHNSON, TAYTUM JORGENSEN, DASTAN M. D'O, DAVID GARDNER, JEREMY SHORTS, GRAVITY SEGREGATION LLC, a Utah limited liability company, 1028 SOUTH 1900 EAST LLC, a Utah limited liability company, CR TRUE LLC, a Utah limited liability company and GRAVITY SEGREGATION II LLC,**<br><br>**Defendants.** | **REPORT & RECOMMENDATION**<br><br>**Case No: 2:25-cv-00681**<br><br>**District Judge Howard C. Nielson Jr.**<br><br>**Magistrate Judge Dustin B. Pead** |

## INTRODUCTION

The case is before the undersigned pursuant to a 28 U.S.C. § 636(b)(1)(B) referral from District Court Judge Howard C. Nielson.[1] In his First Amended Complaint, Plaintiff Max Barber ("Mr. Barber") brings claims for Breach of Contract (Count I), Declaratory Judgment (Count II), Willful Violation of Automatic Stay (Count III), Violation of the Racketeer Influenced and

[1] ECF No. 15, Order Referring Case.

Corrupt Organizations Act ("RICO") (Count IV), Conspiracy to Violate RICO (Count V), Violation of the Sherman Act (Count VI), Violation of the Truth In Lending Act ("TILA") (Count VII), Violation of the Fair Debt Collection Practices Act ("FDCPA") (Count VIII), Wrongful Foreclosure (Count IX), Quite Title (Count X), Slander of Title (Count XI), Civil Conspiracy (Count XII), Abuse of Process (Count XIII), Intentional Infliction of Emotional Distress ("IIED") (Count XIV), Tortious Interference With Economic Relations ("TIER") (Count XV), Trespass (Count XVI) and Unjust Enrichment (Count XVII), against Defendants David Knudson, Jamis Melwood Johnson, Jared L. Anderson, Gravity Capital LLC, Gravity Funding LLC, Adrian Isaac Johnson, Karen Salas, Stacy Roberts Johnson, Pace William Johnson, Stephanie Strasnick Johnson, Taytum Jorgensen, Dastan M. D'O, David Gardner, Jeremy Shorts, Gravity Segregation LLC, 1028 South 1900 East LLC, CR True LLC and Gravity Funding Gravity Segregation II LLC (collectively, "Defendants').[2]

The following table identifies the causes of action Mr. Barber raises against each named Defendant. Plaintiff asserts federal question jurisdiction over his federal claims and supplemental jurisdiction over the related state law claims.[3]

---

[2] ECF No. 17, Plaintiff's First Amended Complaint For Injunctive and Other Relief.

[3] *Id.* at ¶ 11; 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 1367 (supplemental jurisdiction).

| **CAUSE OF ACTION** | **DEFENDANTS NAMED** |
|---|---|
| Count I: Breach of Contract | Defendant Gravity Entities[4] |
| Count II: Declaratory Judgment, 28 U.S.C. § 2201 | All Defendants |
| Count III: Violation of Automatic Stay, 11 U.S.C. § 362(k) | All Defendants |
| Count IV: Violation of RICO, 18 U.S.C. § 1962(c) | Defendants David Knudson, Jamis Johnson, Adrian Isaac Johnson, Pace Johnson, Jared L. Anderson, Karen Salas, Stacy Roberts Johnson, Stephanie Strasnick Johnson, Taytum Jorgensen, Dastan M. D'O, David Gardner and Jeremy Short |
| Count V: Conspiracy to Violate RICO, 18 U.S.C. § 1962(d) | All Defendants |
| Count VI: Violation of Sherman Act, 15 U.S.C. § 1 | Defendants Gravity Entities, Jamis Johnson, Adrian Isaac Johnson, Stacy Roberts Johnson and 1028 S. 1900 E., LLC |
| Count VII: Violation of TILA, 15 U.S.C. § 1601 et seq. | Defendants Gravity Entities |
| Count VIII: Violation of FDCPA 15 U.S.C. § 1692f(6) | All Defendants |
| Count IX: Wrongful Foreclosure | Defendants Gravity Entities and Jared L. Anderson |
| Count X: Quiet Title, U.C.A. § 78B-6-1301 | All Defendants |
| Count XI: Slander of Title | All Defendants |
| Count XIII: Abuse of Power | Defendants Pace Johnson, Jamis Johnson, Dastan M. D'O, 1028 S. 1900 E. LLC, David Gardner and Jeremy Short |
| Count XIV: Intentional Infliction of Emotional Distress | Defendants Jamis Johnson, Karen Salas, Taytum Jorgensen and 1028 S. 1900 E., LLC |
| Count XV: Tortious Interference with Economic Relationships | All Defendants |

---

[4] The "Gravity Entities" include: David Knudson, Gravity Capital, LLC, Gravity Segregation, LLC and Gravity Segregation II, LLC. Defendant Gravity Funding, LLC was sued and purportedly served at Gravity Capital's place of business. Gravity Capital, however, indicates that no such entity is located at its place of business and there is no limited liability company with that name is registered with the State of Utah. *See* https://businessregistration.utah.gov/.

| | |
|---|---|
| Count XVI: Trespass | Defendants Jamis Johnson, Karen Salas, Taytum Jorgensen and 1028 S. 1900 E., LLC |
| Count XVII: Unjust Enrichment | All Defendants |

The motions currently pending before this Court, include: (1) Defendant Gravity Entities' Motion to Dismiss for Failure to State a Claim;[5] (2) Defendant Jared L. Anderson's Motion to Dismiss, or Alternatively, For Summary Judgment;[6] (3) Plaintiff's Motion for Judicial Notice of Adjudicative Facts;[7] (4) Defendant Tatym Jorgensen's Motion to Dismiss for Failure to Serve;[8] (4) Defendant Dastan M. D'O's Second Motion to Quash Service of Process;[9] (5) Defendant Jamis Melwood Johnson's Motion to Quash Service of Process;[10] (6) Plaintiff's Renewed Motion for Alternative Service and Motion for Extension of Time to Effect Service RE: Adrian Issac Johnson and Stephanie Strasnick Johnson;[11] (7) Plaintiff's Motion to Strike Defendant Anderson's Untimely Evidentiary Objections;[12] (8) Plaintiff's Motion for Review of Clerk's Order Denying Entry of Default Against Defendants CR True LLC and 1028 South 1900 East,

[5] ECF No. 71, Defendants' Gravity Capital, Gravity Segregation, David Knudson, Gravity Segregation II, LLC's Motion to Dismiss for Failure to State a Claim.

[6] ECF No. 88, Defendant Jared L. Anderson's Motion to Dismiss.

[7] ECF No. 137, Plaintiff's Motion for Judicial Notice of Adjudicative Facts.

[8] ECF No. 158, Defendant Tatum Jorgensen's Motion to Dismiss for Failure to Serve.

[9] ECF No. 159, Defendant Dastan M. D'O's Second Motion to Quash Service of Process.

[10] ECF No. 168, Defendant Jamis Melwood Johnson's Motion to Quash Service of Process.

[11] ECF No. 173, Plaintiff's Renewed Motion for Alternative Service and Motion for Extension of Time to Effect Service RE: Adrian Issac Johnson and Stephanie Strasnick Johnson.

[12] ECF No. 195, Defendant's Motion to Strike Defendant Anderson's Untimely Evidentiary Objections.

LLC;[13] (9) Defendants David Gardner and Jeremy Short's Motion to Dismiss;[14] and (10) Defendant Karen Salas' Motion to Quash Service of Process.[15]

For the reasons set forth herein, the court now recommends as follows to the District Court.

## BACKGROUND[16]

1. This matter arises from a foreclosure sale of two properties located at 1028 South 1900 East, Salt Lake City, Utah 84108 ("1028 Property") and 1836 Yale Ave S., Salt Lake City, Utah 84108 ("Yale Ave Property") (collectively the "Properties").[17]

2. On or around March 22, 2022, Max W. Barber and Sara G. Navarra, Trustees of the

---

[13] ECF No. 206, Plaintiff's Motion for Review of Clerk's Order Denying Entry of Default Against Defendants CR True LLC and 1028 South 1900 East, LLC.

[14] ECF No. 209, Defendants' David Gardner and Jeremy Short's Motion to Dismiss.

[15] ECF No. 223, Defendant Karen Salas' Motion to Quash Service of Process.

[16] In the context of the pending motions, the Court takes judicial notice of the parties' documents that are attached to, or referenced in, the complaint and not subject to reasonable dispute. *See infra* at 16-17. Judicial notice is appropriate because these documents "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Civ. P. 201(b). Indeed, it is well-established that courts may take judicial notice of public records and government documents of the type presented and relied upon here, especially where they are central to the claims in the complaint.[16] Importantly, where the judicially noticed public records and government documents contradict the complaint, it is the documents that control. *See Fuqua v. Santa Fe County Sheriff's Office,* 157 F.4th 1288, 1297-98 (10th Cir. 2025).

[17] ECF No. 17 at ¶ 2; ECF No. 88-2 at ¶¶ 1–3, Declaration of Jared L. Anderson ("Anderson Decl."); *see also* ECF No. 209-1, Exhibit A.

MSB Trust dated December 12, 2017 ("MSB Trust"), executed an Open-End Promissory Note ("Promissory Note") for a maximum principal balance of $1,200,000 in favor of Gravity Capital, LLC ("Gravity Capital"), with an initial advance amount of $332,000.00 (the "Loan").[18]

3. The Loan was secured by the Properties, against which a Deed of Trust executed by the MSB Trust was recorded on March 23, 2022 as Entry No. 13917256 in Book 11320 at Page 2591 in the official records of the Salt Lake County Recorder's Office (the "Trust Deed").[19] In the Trust Deed, MSB Trust is identified as the Trustor, Gravity Capital as the Beneficiary and Kyle Fielding as the Trustee.[20]

4. MSB Trust defaulted on its obligations under the Promissory Note by failing to pay one or more regularly scheduled payments before its due date.[21]

5. On August 18, 2023, Jared Anderson ("Mr. Anderson")substituted for Kyle Fielding as Trustee under The Trust Deed, which substitution was recorded on August 21, 2023, as Entry No. 14143006, Book 11439, Page 6012 with the Salt Lake County Recorder's Office.[22]

6. On August 21, 2023, Mr. Anderson, as Substituted Trustee, recorded a Notice of Default and Election to Sell Trust Property, giving notice of default and trustee's election to sell the Properties to satisfy the obligations secured thereby.[23]

7. Following the 90-day statutory period, Mr. Anderson served a Notices of Trustee's

[18] *Id.* at ¶ 4; ECF No. 71-3, Exhibit 1, Proof of Claim.

[19] ECF No. 88 at ¶ 7; ECF No. 209-1, ¶¶ 4-5, Exhibit A.

[20] *Id.* at ¶ 5; ECF No. 88-8, Deed of Trust (Recorded).

[21] *Id.* at ¶ 6.

[22] *Id.* at ¶ 7; ECF No. 88-9, Exhibit C, Substitution of Trustee (Recorded).

[23] *Id.* at ¶ 8; ECF No. 88-10, Exhibit D, Notice of Default and Election to Sell Trust Property (Recorded).

Sale, setting the date and time for the foreclosure sale of the Properties as January 9, 2024, at 9:30 am.[24]

8. Thereafter, Mr. Barber filed multiple bankruptcy petitions in the United States Bankruptcy Court for the District of Utah, including: December 14, 2023 (Case No. 2:2023bk25756 – closed on April 8, 2024), February 1, 2024 (2:2024bk20418 – closed on May 9, 2024), April 2, 2025 (Case No. 2:2025bk21749—closed on May 26, 2026), and October 17, 2025 (Case No. 2:2025bk26244---closed December 30, 2025).[25]

9. As a result of the numerous bankruptcy filings, Mr. Anderson prepared and served at least six separate Notices of Trustee's Sale, the final notice dated June 16, 2025 which set the date and time of the foreclosure sale as July 22, 2025, at 9:30 a.m.[26]

10. On May 21, 2025, in the Chapter 13 bankruptcy proceeding initiated on April 2, 2025 (Case No. 2:2025bk21749) (hereinafter the "April 2025 Chapter 13"), Mr. Barber, both individually and as Trustee of the MSB Trust, entered into a written stipulation entitled "Stipulation Re: Motion for In Rem Relief from the Automatic Stay and the Co-Debtor Stay" ("Stipulation").[27]

11. In the Stipulation, Gravity Capital is identified as the "Creditor," and Mr. Barber and the MSB Trust are identified as the "Debtors".[28]

---

[24] *Id.* at ¶ 9; ECF No. 88-11, Exhibit E, Notice of Trustee's Sale.

[25] *Id.* at ¶ 10, Exhibit F, PACER Bankruptcy filings.

[26] *Id.* at ¶ 11; ECF No. 88-13, Exhibit G, Notices of Trustee's Sales.

[27] *Id.* at ¶ 12; ECF No. 88-14, Exhibit H, Stipulation RE: Motion For *In Rem* Relief From The Automatic Stay And The Co-Debtor Stay, In Re Max Waren Barber, Bankruptcy No. 25-21749. Stipulation.

[28] *Id.* at ¶ 13; *id.*

12. In relevant part, the Stipulation states as follows:

> 1. Creditor is a secured creditor of the Debtors, secured by real properties, in which the Debtor[s] . . . claim some interest, located at 1028 South 1900 East, Salt Lake City, Utah and 1836 East Yale, Salt Lake City, Utah 84108 . . . .
>
> 2. Debtor stipulates to immediate in rem Relief from the Automatic Stay … in favor of Gravity Capital, LLC.
>
> 3. Gravity Capital, LLC agrees that any Trustee's Sale set hereafter will be held after July 7, 2025.
>
> 4. Parties agree to discuss in good faith the final payoff amount due prior to July 7, 2025.
>
> 5. The Automatic Stay and Co-Debtor Stay will also be lifted and applied to any bifurcation or conversion of this case from one chapter to another as to Gravity Capital, LLC . . . . [29]

13. On June 11, 2025 Bankruptcy Court Judge Kevin R. Anderson entered an Order Approving the Stipulation ("In Rem Order") and granting Gravity Capital limited relief from the automatic stay.[30]

14. In conjunction with their Stipulation, the parties submitted a proposed order, which was ultimately not entered by the Court, but which provided that "[t]he recorded lien [an apparent reference to the Trust Deed] shall be amended to reflect the correct principal and/or balance owed." The proposed order further states that "[t]he Automatic Stay shall remain in effect for all parties except Gravity Capital, LLC to sell the properties, effective as of July 7, 2025."[31]

15. On June 10, 2025, David Knudson, President of Gravity Capital, executed and, on June 17, 2025, recorded, with the Salt Lake County Recorder's Office as Entry No. 14398969,

[29] ECF No. 88-14 at 3.

[30] ECF No. 88-2 at ¶ 16; ECF No. 88-15, Exhibit I, In Rem Order.

[31] *Id.* at ¶ 17; ECF No. 88-16, Exhibit J, Proposed Order.

Book 11579, Page 5965 a Scrivener's Affidavit, wherein Gravity Capital clarified that "the Deed of Trust secures a revolving line of credit (an open-end loan) with a maximum loan amount of $1,200,000" and that there was an "initial advance under the Note . . . in the amount of $332,000.00."[32] The Scrivener's Affidavit purports to amend the definition of "Loan" as set forth in Paragraph 1.3 of the Trust Deed, consistent with the parties' unsigned proposed order.[33]

16. On June 17, 2025, Gravity Capital recorded the In Rem Order against the Properties by filing it with the Salt Lake County Recorder's Office as Entry No. 14398970, Book 11579, Page 5967.[34]

17. On July 8, 2025, Mr. Barber filed a bankruptcy petition for the MSB Trust (Case No. 2:2025bk23863) (hereafter, the "Subject Bankruptcy").[35]

18. At the time the Subject Bankruptcy was initiated, both Properties were titled in GSE Global LLC, a separate non-debtor entity.[36]

19. On July 21, 2025, Mr. Barber caused a Warrante [sic] Deed to be executed, purporting to convey the Properties from GSE Global LLC to Max W. Barber, as Trustee of the MSB Trust.[37]

---

[32] *Id.* at ¶ 18; ECF No. 88-17, Exhibit K, Affidavit RE: Scrivener's Error (Recorded).

[33] *Id.*

[34] *Id.* at ¶ 19; ECF No. 88-18, Exhibit L, In Rem Order (Recorded).

[35] *Id.* at ¶ 21; ECF No. 88-19, Exhibit M, Voluntary Petition For Individuals Filing For Bankruptcy (April 2, 2025).

[36] *Id.*; ECF No. 88-20, Exhibit N, Warranty Deed (September 22, 2022) (Recorded).

[37] *Id.* at ¶ 22; ECF No. 88-21, Exhibit O, Warrante [sic] Deed (July 21, 2025) (Recorded).

20. Consistent with the June 16, 2025, Notice of Trustee's Sale, the Properties were sold at a public auction held at the Third Judicial District Court on July 22, 2025 at 9:30 a.m.[38]

21. The day before the trustee's sale, attorney Steve Skirvin provided Mr. Anderson with a copy of the In Rem Order via email and "confirm[ed] that per the attached order, the automatic stay does not apply to [MSB Trust or Mr. Barber's] properties regardless of this new bankruptcy filing," a reference to the Subject Bankruptcy.[39]

22. Relying on the language of the In Rem Order and Steve Skirvin's written confirmation, Mr. Anderson conducted the trustee's sale of the Properties on July 22, 2025.[40]

23. On July 23, 2025, Mr. Anderson executed two Trustee's Deeds, conveying the Properties to the successful bidders at the public auction. Mr. Anderson did not mail the Trustee's Deeds to the Salt Lake County Recorder's Office for recordation, but rather hand delivered them to Dave Knudson, a principal of Gravity Capital.[41]

24. As demonstrated by the Trustee's Deeds, Mr. Anderson did not receive, acquire, or retain any ownership title, or equity in the Properties, and at no time did he accept or retain the same.[42]

**Post-Foreclosure Eviction Suit**

25. On August 1, 2025, 1028 S 1900 E LLC initiated an eviction action against Mr. Barber,

[38] *Id.* at ¶ 23.

[39] *Id.* at ¶ 24; ECF No. 88-22, Exhibit P, E-mail from Steve Skirvin and Kenyon Dove to Jared Anderson (July 21, 2025).

[40] *Id.* at ¶ 25; ECF No. 17 at ¶ 7.

[41] *Id.* at ¶ 26; ECF No. 88-23, Exhibit Q, Trustee's Deeds.

[42] *Id.* at ¶ 27.

seeking to remove him from the 1028 Property. The action was commenced in the Third Judicial District Court, *1028 S 1900 E LLC v. Max Barber et al.*, Civil No. 250906343, before the Honorable Richard Daynes (the "Eviction Suit").[43]

26. On September 5, 2025, Mr. Barber filed Defendant's Emergency Motion to Stay Enforcement of Judgment and Motion to Set Aside Default Judgment in the Eviction Suit.[44]

27. An occupancy hearing was held on September 19, 2025, that resulted in the court issuing an Amended Order of Restitution wherein Mr. Barber was ordered to "remove your unsecured and exempt personal property, and restore possession of the premises to" 1028 South 1900 East LLC.[45]

28. On September 26, 2025, Mr. Barber filed a second motion to stay the reinstated order of restitution, which was denied with the following minute-entry ruling entered on September 29, 2025:

> Max Barber and co-defendant Sarah Barber have filed a second motion requesting relief and asserting the exact arguments that were previously briefed and in which oral argument was held on September 19, 2025. Based on the reasons as set forth below, the motion to stay enforcement of the Order of Restitution is Denied.
>
> **This Court found in its oral ruling that the bankruptcy court previously granted relief from the Automatic Stay of defendant's original bankruptcy filing in order to allow for the sale of the property at 1028 S 1900 E in Salt Lake City, Utah. The relief from the stay applied to any subsequent or bifurcated bankruptcy petitions. The sale took place and received a trust deed on July 23, 2025. Plaintiff as a bona fide purchaser from the sale of the property has sought possession of the property. While there has been a subsequent bankruptcy filing in the name of the trust which was**

---

[43] ECF No. 88-3, Exhibit A, Eviction Suit Docket. The court takes judicial notice of the adjudicative facts of the Eviction Suit.

[44] *Id.* at 2.

[45] ECF No. 88-4, Exhibit A.1, Amended Order of Restitution Following Hearing (September 22, 2025).

> **previously listed as the owner of the property, this newer bankruptcy filing did not change the status of the real property in question or its relief from bankruptcy.**
>
> The second bankruptcy filing by the trust did not alter the previous order of relief from the stay or change the status of plaintiff as a bona fide purchaser. Therefore, for the reasons as set forth in the Plaintiff's Opposition to the Notice of Stay, and for the reasons as set forth in the Court's oral ruling on September 19, 2025, this second Motion to Stay Enforcement of the Order of Restitution is hereby Denied.[46]

29. On September 30, 2025, Mr. Barber filed an emergency motion for reconsideration and to quash the amended order of restitution.[47]

30. An evidentiary hearing was held on October 14, 2025, to consider the emergency motion, which resulted in the following findings, as reflected by contemporaneous minute entry:

> 4:43 The Court finds no evidence of collusion with regard to the sale. The Court finds no evidence of any unclean hands with regard to the sale. The Court finds no evidence of notice for the bankruptcy of the purchaser at the sale. The Court finds that the Plaintiff is/was a bona-fide purchaser.
>
> **4:46 The Court does not find that the sale was void ab initio.**
>
> 4:52 The motion to stay is denied.[48]

31. On October 28, 2025, the court in the Eviction Suit entered its Findings of Fact and Conclusions of Law as to the Order Denying Defendant's Emergency Motions […].[49]

32. The court's Findings of Fact and Conclusions of Law made several findings and conclusions with respect to the facts and circumstances surrounding the Subject Bankruptcy, as follows:

---

[46] ECF No. 88-5, Exhibit A.2**,** Order (September 29, 2025) (emphasis added).

[47] ECF No. 88-3 at 2, Exhibit A, Eviction Suit Docket.

[48] ECF No. 88-6, Exhibit A.6, Order (October 14, 2025) (emphasis added).

[49] ECF No. 88-7, Exhibit A.4, Findings of Fact And Conclusions Of Law (October 28, 2025).

> 13. On July 8, 2025, the MSB Trust filed (again) for bankruptcy in case no. 25-23863.
>
> **14. At the time MSB Trust filed its bankruptcy petition on July 8, 2025, it did not own either of the Properties. Mr. Barber's testimony given at the Hearing confirmed this.**
>
> 15. On July 21, 2025, at 3:17 p.m.—the afternoon before the 9:00 a.m. foreclosure sale the next morning—GSE Global, LLC, deeded the properties to the MSB Trust by warranty deed, recorded as Entry no. 14413121 in the Salt Lake County Recorder's Office. (Exhibit E).
>
> 16. During Barber's cross-examination at the October 10th evidentiary Hearing in this case, he admitted to owning an interest in GSE Global, LLC, and directing its manager to draft and execute the warranty deed to MSB Trust. Id. He also admitted that the handwriting on the warranty deed belonged to him.
>
> 17. The foreclosure sale occurred on July 22, 2025.
>
> 18. Under 11 U.S.C. § 541(a)(1), properties subject to an automatic stay are "all legal or equitable interests of the debtor in property as of the commencement of the case."
>
> 19. Title reports for both Properties, Barber's own testimony, and the July 21, 2025, warranty deed from GSE Global, LLC, to MSB Trust, **indisputably show the Properties were not owned by MSB Trust or Barber "as of the commencement" of its bankruptcy case.**[50]

39. The court in the Eviction Suit further ordered that "[t]he transfer of property from GSE Global, LLC to MSB Trust on July 21, 2025, is declared VOID as a fraudulent conveyance."[51]

40. The court in the Eviction Suit further concluded that "The foreclosure sale conducted on July 22, 2025, is VALID and ENFORCEABLE."[52]

41. The court in the Eviction Suit also determined that "The In Rem Order entered in

[50] *Id.* at ¶¶ 13-19 (emphasis added).

[51] *Id.* at ¶ 5.

[52] *Id.* at ¶ 3.

Bankruptcy Case No. 25-21749 is binding upon MSB Trust and . . . Max Barber and authorized the foreclosure sale."[53]

42. The court in the Eviction Suit ordered that "The Automatic stay in Bankruptcy Case No. 25-23863 had no effect on the foreclosure sale as the property was not property of the bankruptcy estate at the time of filing."[54]

## STANDARDS OF REVIEW

### I. Federal Rule of Civil Procedure 12(b)(1)

Federal court are courts of limited jurisdiction and may exercise jurisdiction only when authorized to do so.[55] A court lacking jurisdiction must immediately dismiss the matter as soon as it becomes apparent that the court does not have jurisdiction.[56] In general, there is a presumption against federal jurisdiction[57] and the party who is seeking to invoke federal jurisdiction is the party that bears the burden of establishing jurisdiction.[58] While a plaintiff's "failure [to] set forth clear and particularized jurisdiction allegations is not fatal to a case," the court will not create jurisdiction where there is none.[59]

---

[53] *Id.* at ¶ 6.

[54] *Id.* at ¶ 7.

[55] *Castaneda v. I.N.S.,* 23 F.3d 1576, 1580 (10th Cir. 1994).

[56] *Laughlin v. Kmart Corporation,* 50 F.3d 871, 873 (10th Cir. 1995).

[57] *Marcus v. Kansas Department of Revenue,* 170 F.3d 1305, 1309 (10th Cir. 1999).

[58] *Montoya v. Chao,* 296 F.3d 952, 055 (10th Cir. 2002).

[59] *Pfuetze v. Kansas,* 2010 U.S. Dist. LEXIS 103384, at *12 (D. Kan. Sept. 29, 2010) (citing *Sears v. Equal Employment Opportunity Commission,* 1987 U.S. Dist. LEXIS 17050, at * 2 (D.D.C. Jan. 14, 1981)).

## II. Federal Rule of Civil Procedure 8(a)(2) and 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[60] A complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements" fails this standard.[61] Although "detailed factual allegations" are not required, the Rule demands more than "an unadorned, the-defendant-unlawfully-harmed-me-accusation."[62]

A party who is moving for dismissal under Federal Rule 12(b)(6) asserts the defense of "failure to state a claim upon which relief can be granted."[63] To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[64] To state a claim, "[t]he allegations must be enough that, if assumed to be true, the plaintiff plausibly, not merely speculatively, has a claim for relief."[65] A claim is facially plausible when the factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[66] When reviewing a Rule 12(b)(6) motion, a court should "assume the factual allegations are true and ask whether it is plausible that the plaintiff is entitled to relief."[67]

---

[60] Fed. R. Civ. P. 8(a)(2).

[61] *Id.*

[62] *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

[63] Fed. R. Civ. P. 12(b)(6).

[64] *Iqbal,* 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

[65] *Pfuetze*, at *13 (citing *Robbins v. Oklahoma,* 519 F.3d 1242, 1247-48 (10th Cir. 2008)).

[66] *Id.*

[67] *Gallagher v. Shelton,* 587 F.3d 1063, 1068 (10th Cir. Nov. 24, 2009).

Two main principles govern the court's plausibility inquiry. First, while courts must accept all factual allegations as true, then need not accept "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ."[68] Second, determination of whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[69] Allegations that are conclusory or formulaic are not entitled to the assumption of truth and are "insufficient to state a claim on which relief can be based."[70]

## DISCUSSION

### I. The Court Takes Judicial Notice Of Court Documents, Public Records, Government Orders and Other Legally Indisputable Official Documents That Are Central To Plaintiff's Claims

Under Federal Rule of Evidence 201(b), courts may judicially notice facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."[71] A court "must take judicial notice if a party requests it and the court is supplied with the necessary information."[72]

When evaluating a motion to dismiss under 12(b)(6), a court may consider exhibits that are attached to the complaint as well as documents incorporated by reference "without

---

[68] *Iqbal,* 556 U.S. at 678-79 (citing *Twombly,* 550 U.S. at 544).

[69] *Id.*

[70] *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991); *see also Miller v. Glanz,* 948 F.2d 1562, 1565 (10th Cir. 1991).

[71] Fed. R. Civ. P. 201(b).

[72] *Id.* at (c)(2).

converting the motion to dismiss into a motion for summary judgment."[73] A court may consider documents outside the complaint when those documents are: (1) subject to judicial notice, such as court documents and other matters of public record; [74] or (2) when the documents are central to a plaintiff's claims.[75] Typically, court dockets, government orders and other official records are properly subject to judicial notice.[76]

The court applies this standard to the legal documents and official records attached to the parties' Motions to Dismiss[77] and to some of the documents referenced in Mr. Barber's Motion for Judicial Notice of Adjudicative Facts.[78]Accordingly, the court recommends granting Plaintiff's Motion for Judicial Notice in part and denying the motion is part. The court recommends granting the motion as to those recorded instruments, court orders and court dockets

---

[73] *Commonwealth Property Advocates, LLC v. Mortgage Elec. Registration System Incorporated,* 680 F.3d 1194, 1201 (10th Cir. 2011); *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009); *Tal v. Hogan,* 453 F.3d 1244, 1265 (10th Cir. 2006).

[74] *Id.* at *2, ft. 1 (citing *Tal,* 453 F.3d at 1265 n. 24).

[75] *Id.* (citing *GFF Corporation v. Associated Wholesale Grocers, Incorporated,* 130 F. 3d 1381, 1384 (10th Cir. 1997)); *see also Wright v. University of Utah,* 2026 U.S. Dist. LEXIS 103911, at *4 (D. Utah May 11, 2026) (citing *Slater v. A.G. Edwards & Sons,* 719 F.3d 1190, 1196 (10th Cir. 2013) ("The court can consider documents incorporated by reference into the complaint even if they are not attached to the complaint.") (internal quotation omitted)).

[76] *See Sexton v. Evergreen Village Community, MHC, LLC,* 2020 U.S. Dist. LEXIS 257701, at *2 (D. Utah July 20, 2020); *see also United States v. Henson,* 9 F.4th 1258, 1267 (10th Cir. 2021); *Koenig v. Bank of America N.A.,* 2016 U.S. Dist. LEXIS 35526, at *7 (E.D. Cal. Mar. 18, 2016) (internal quotation omitted) (unpublished) ("[C]ourts may take judicial notice of the dates, parties, and legally operative language of [a deed of trust and an assignment] because they are not subject to reasonable dispute.").

[77] ECF No. 71; ECF No. 88, ECF No. 209.

[78] ECF No. 137, Plaintiff's Motion for Judicial Notice of Adjudicative Facts.

referenced by Plaintiff and Defendants.[79] The court recommends denying the motion as to those documents that do not fall within the scope of the judicial notice requirements, including Plaintiff's "party admissions from this case," and "video testimony admissions."[80]

### II. Plaintiff's Claims Should Be Dismissed Because The Court Lacks Jurisdiction Over Plaintiff's Claim For Violation Of Automatic Stay And Because The State Court's Ruling Has Preclusive Effect

Federal courts have an "independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party."[81] As a threshold matter, "[t]he party invoking federal jurisdiction bears the burden of establishing" that jurisdiction exists."[82]

Mr. Barber alleges all named Defendants willfully violated the Bankruptcy Court's July 9, 2025 order by proceeding with the foreclosure sale in violation of 11 U.S.C. § 362(k)(1), the automatic stay provision.[83] Yet because claims brought under the bankruptcy's automatic stay

---

[79] *Id.*

[80] ECF No. 137 at 4-5.

[81] *1mage Software Inc. v. Reynolds & Reynolds Co.,* 459 F.3d 1044, 1048 (10th Cir. 2006) (quoting *Arbaugh v. Y&H Corporation,* 546 U.S. 500, 126 S. Ct. 1235, 1240, 1244, 163 L. Ed. 2d 1097 (2006)).

[82] *Radil v. Sanborn West Camps Incorporated,* 384 F. 3d 1220, 1224 (10th Cir. 2004).

[83] ECF No. 17 at ¶¶ 7, 50-52; 74-77; *see also* 11 U.S.C. § 362(a)(1) (upon initiation of a bankruptcy proceeding, the stay prohibits all entities from "the commencement or continuation . . . of a judicial . . . action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title . . . ."); *id.* at (k)(1) (" . . . an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.").

provision are considered to be "core" bankruptcy proceedings, this court lacks subject matter jurisdiction.

When a debtor files for bankruptcy, Section 362 implements an automatic stay that "prevents creditors from taking further action against [the debtor] except through the bankruptcy court."[84] A Section 362(k)(1) proceeding is considered "a core proceeding because 'it derive[s] directly from the Bankruptcy Code and can only be brought in [bankruptcy court in] the context of a bankruptcy case.'"[85] This is true even where the underlying bankruptcy case has been dismissed or is closed.[86] Under the law, Mr. Barber's claim for violation of the bankruptcy court's automatic stay provision is a core proceeding that does not confer federal subject matter jurisdiction over this court. Absent jurisdiction, the court recommends dismissal of Mr. Barber's claim for violation of the automatic stay provision.[87]

In the alternative, even assuming this court has jurisdiction to entertain Plaintiff's claim for violation of the automatic stay, this matter was previously addressed in Mr. Barber's state court eviction case before Judge Richard Daynes.[88] In that case, the state court determined that when the MSB Trust filed bankruptcy on July 9, 2025, the Properties were titled in GSE Global

---

[84] *Price v. Rochford,* 947 F.2d 829, 831 (7th Cir. 1991).

[85] *Johnson v. Smith (In re Johnson),* 575 F.3d 1079, 1083 (10th Cir. 2009) (citing *MBNA American Bank v. Hill,* 436 F.3d 104, 109 (2d Cir. 2006)).

[86] *Id.* at 1084 (holding that a § 362(k)(12) proceeding remains viable after termination of the underlying bankruptcy case).

[87] *Id.; see also Barnes-Mohammed v. Storage,* 2026 U.S. Dist. LEXIS 70561, at *7 (D. Utah March 11, 2026) (the Bankruptcy Court, and not the District Court, has jurisdiction over Plaintiff's claims for damages arising from an alleged violation of the automatic stay provision).

[88] *See 1028 South 1900 East, LLC v. Barber,* 250906343-EV.

LLC, a separate non-debtor entity.[89] The state court further concluded that Mr. Barber's deed executed shortly before the trustee's sale on July 21, 2025, was a post-petition transfer and it did not bring the Properties into the bankruptcy estate or retroactively extend stay protection.[90] Specifically, in its October 28, 2025 order, the state court concluded that "the foreclosure sale conducted on July 22, 2025 is VALID and ENFORCEABLE" and Mr. Barber's last minute "transfer of property from GSE Global, LLC to MSB Trust on July 21, 2025, is declared VOID as a fraudulent conveyance."[91] Thus, because the Properties were not part of the bankruptcy estate they were not protected by the automatic stay.

The final judgment entered in the state court eviction suit precludes relitigating the possessory rights, title issues and related conduct that now form the basis of Plaintiff's federal claims against the Defendants. Mr. Barber had an opportunity to raise the issues he now asserts in this litigation---including challenges to the validity of the foreclosure sale, the Trustee's Deed, the eviction process, and any alleged concealment of the bankruptcy stay---as defenses, counterclaims, or post-judgment challenges in the state forum. The state court has already resolved those issues on the merits and those rulings are entitled to preclusive effect.[92] As a

---

[89] ECF No. 88-3, Exhibit A; ECF No. 88-4, Exhibit A.1; ECF No. 88-5, Exhibit A.2; ECF No. 88-6, ECF No. 88-7.

[90] *Id.*

[91] ECF No. 88-7 at ¶¶ 3-5, Findings of Fact and Conclusions of Law.

[92] *Id.* The elements of issue preclusion, also referred to as collateral estoppel, include: "(1) the party against who issue preclusion is asserted [Plaintiff] was a party to or in privity with a party to the prior adjudication; (2) the issue decided in the prior adjudication was identical to the one presented in the instant action; (3) the issue in the first action was completely, fully, and fairly litigated; and (4) the first suit resulted in a final judgment on the merits." *Yudin v. Jordan School District,* 2019 U.S. Dist. LEXIS 224546, at *10-11 (D. Utah Dec. 13, 2019) (citing *Moss v. Parr*

result, the court recommends dismissal of Mr. Barber's cause of action for violation of the automatic stay.

### III. Plaintiff Fails To State A Claim For His Remaining Federal Causes Of Action

Mr. Barber's remaining federal based claims are premised on the alleged invalidity of the underlying foreclosure sale and the Trustee's Deeds. Yet to reach those claims, the court would need to find a violation of the automatic stay---an issue over which, as set forth above, the court lacks jurisdiction or, in the alternative, is res judicata based on the state court's determination that the automatic stay never applied to the Properties. For this reason alone the court recommends dismissing all of Mr. Barber's remaining federal claims.

Nonetheless, even assuming for purposes of argument that the court has jurisdiction over Mr. Barber's remaining federal claims and that the issues raised here are not precluded by the state court's prior rulings, each of Plaintiff's federal claims also independently fail to state a claim. Accordingly, for the reasons set forth below, the court recommends dismissing Plaintiff's

---

*Waddoups Brown Gee & Loveless,* 2021 UT 42, 285 P.3d 1157, 1163). Here, each of the four elements is satisfied. Mr. Barber raised the issue of the automatic stay and his claim that the trustee's sale was void in his eviction suit where both of the issues were not decided in his favor. Specifically, on September 29, 2025, the state court ruled as follows:

> This Court found in its oral ruling that the bankruptcy court previously granted relief from the Automatic Stay of defendant's original bankruptcy filing in order to allow for the sale of the property at 1028 S 1900 E in Salt Lake City, Utah. The relief from the stay applied to any subsequent or bifurcated bankruptcy petitions. The sale took place and received a trust deed on July 23, 2025.
> The second bankruptcy filing by the trust did not alter the previous order of relief from the stay or change the status of plaintiff as a bond fide purchaser.

ECF No. 88-5, Exhibit A. 2, Ruling & Order Denying Motion to Stay Order of Restitution; ECF No. 209-4, Exhibit D.

remaining federal claims for Violation of Racketeer Influenced and Corrupt Organizations Act, Conspiracy to Violate the Racketeer Influenced and Corrupt Organizations Act, Violation of the Sherman Act, Violation of the Truth In Lending Act and Violation of the Federal Debt Collection Practices Act, for failure to state a claim upon which relief could be granted.

**i. RICO**

In federal court, RICO provides a private right of action for "individuals injured in their business or property through fraudulent conduct."[93] Under RICO:

> It shall be unlawful for any person employed by or associate with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.[94]

Mr. Barber asserts two RICO Claims: (1) Count IV for Violation of RICO pursuant to 18 U.S.C. § 1962(c); and (2) Count V for Conspiracy to Violate RICO pursuant to 19 U.S.C. § 1962(d).[95] To state a civil RICO claim, a plaintiff must plausibly allege that Defendants "(1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two predicate acts of racketeering, which (5) caused (6) injury to the business or property of the plaintiff."[96] To meet the elements requiring a pattern of racketeering activity,

---

[93] *Robert L. Kroenlein Trust ex. rel. Alden v. Kirchherfer,* 764 F.3d 1268, 1274 (10th Cir. 2014) (internal quotation marks and citation omitted).

[94] 18 U.S.C. § 1962(c).

[95] ECF No. 17 at ¶¶ 78-84; *see* 18 U.S.C. § 1962(c); 18 U.S.C. § 1962(d).

[96] *Cisneros v. Petland, Incorporated,* 972 F.3d 1204, 1211 (11th Cir. 2020); *see also The Preserve v. Kamas City,* 2026 U.S. Dist. LEXIS 101535, at *6 (D. Utah May 6, 2026) (quoting *George v. Urban Settlement Services,* 833 F.3d 1242, 1248 (10th Cir. 2016)).

there must be at least two predicate acts.[97] Thus, to sustain a RICO claim a plaintiff must "plead that each defendant engaged in a pattern of racketeering activity by committing at least two predicate acts."[98] Additionally, because civil RICO claims are based in fraud RICO claims must be pled with an increased level of specificity as required under Federal Rule of Civil Procedure 9(b).[99] In cases involving multiple defendants, the complaint must inform the court and each defendants "of the nature of his [or her] alleged participation in the fraud."[100]

Construing Plaintiff's claims liberally, Mr. Barber fails to allege sufficient facts to support his racketeering claims, let alone meet the heightened particularity requirements of Rule

---

[97] *Johnson v. Heath,* 56 F.4th 851, 858 (10th Cir. 2002) (citing 18 U.S.C. § 1961(5)); *George v. Urban Settlement Services,* 833 F, 3d 1242, 1254 (10th Cir. 2016) ("To establish a pattern of racketeering activity, the plaintiffs must allege at least two predicate acts.").

[98] *In re HomeAdvisor Incorporated Litigation,* 491 F. Supp. 3d 879, 893 (D. Colo. 2020) (emphasis in original); *see also Lillard v. Stockton,* 267 F. Supp.2d 1081, 1094 (N.D. Okla. 2003) ("[W]here fraud is alleged against multiple defendants, blanket allegations of fraud couched in language such as 'by the defendants' are insufficient. Instead, the specifics of the alleged fraudulent activity or each defendant must be set forth.").

[99] Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *Sorensen v. Polukoff,* 784 F. App'x 572, 578-79 (10th Cir. 2019) (unpublished) ("Under Rule 9(b), plaintiffs must sufficiently allege each element of a RICO violation and its predicate acts of racketeering with particularity."); *see also Ambrosia Coal & Construction Company v. Pages Morales,* 482 F.3d 1309, 1316-17 (11th Cir. 2007) (citations omitted).

[100] *Id.* at 1317 (citation omitted).

9(b).[101] Plaintiff asserts predicates of mail fraud, wire fraud and money laundering.[102] However, Plaintiff only provides formulaic recitations of the elements of a RICO claim and identifies the predicate acts through single phrases, screen shots and references to exhibits absent further explanation or context.[103] The court need not accept these conclusory and convoluted allegations.[104] Similarly, with respect to the substance of the RICO claims themselves, Mr. Barber fails to identify a clear pattern of racketeering activity by identifying a "series of related predicates that together demonstrate the existence or threat of continued criminal activity."[105] Plaintiff does not state factual allegations that allege either an "association" between the individual Defendants or the formation of an "enterprise".[106] Finally, Mr. Barber fails in any way to differentiate between the eighteen separate defendants he raises RICO claims against or to

---

[101] Fed. R. Civ. P. 9(b) (a party alleging fraud or mistake must state their claim "with particularity"); *see Cayman Exploration Corporation. v. United Gas Pipe Line Company,* 873 F. 2d 1357, 1392 (10th Cir. 1989) (holding that Rule 9(b) applies to claims arising under RICO by requiring predicate acts based on fraud to be pleaded with specificity to provide clear notice of the factual basis for the predicate acts).

[102] ECF No. 17 at ¶ 81. To support wire or mail fraud, Plaintiff must allege "the existence of a scheme or artifice to defraud or obtain money or property by false pretenses, representations or promises." *Clinton v. Secretary Benefit Life Insurance Company,* 63 F.4th 1264, 1281-82 (10th Cir. 2023).

[103] ECF No. 36-13, Exhibit CC; ECF No. 36-14, Exhibit DD.

[104] *Moffet v. Halliburton Energy Servicers Incorporated,* 291 F. 3d 1227, 1232 (10th Cir. 2002).

[105] *RJR Nabisco Incorporated v. European Community,* 579 U.S. 325, 329-30, 136 S. Ct. 2090, 2096-97, 195 L. Ed. 2d 476 (2016) (internal quotation and citation omitted).

[106] RICO defines an "enterprise as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *See* 18 U.S.C. § 1961(4).

identify what conduct by each defendant gives rise to RICO liability.[107] Lumping all Defendants together under generalized, non-specific statements is insufficient under standard Rule 8 pleading requirements as well as the heightened pleading standards of Rule 9(b).

For these reasons, Mr. Barber fails to state RICO claims under 18 U.S.C. §§ 1962(c) and 1962(d) and this court recommends dismissal.

**ii. Sherman Act**

Mr. Barber's amended complaint alleges violations of the Sherman Act against Defendants Knudson, Gravity Entities, Jamis Johnson, Adrian Isaac Johnson, Stacy Roberts Johnson and 1028 South 1900 East, LLC for "bid-rigging" in violation of 15 U.S.C. §1.[108] As the basis for his Sherman Act claim, Mr. Barber alleges the Defendants entered into a conspiracy to suppress competition at the July 22, 2025 foreclosure sale and to acquire the Properties at an amount below market value.[109] Plaintiff claims injury through the "loss of his surplus equity" in the Properties.[110]

The Sherman Act sets out substantive rules of antitrust law and provides private

[107] Mr. Barber brings Count V of his pleading, for Conspiracy to Violate RICO in violation of 18 U.S.C. § 1962(d), against all Defendants. Plaintiff brings Count IV, for Violation of RICO under 18 U.S.C. § 1962(c), against Defendants David Knudson, Jamis Johnson, Adrian Isaac Johnson, Pace Jonson, Jared L. Anderson, Karen Salas, Stacy Roberts Johnson, Stephanie Strasnick Johnson, Taytum Jorgensen, Dasta M. D'O, David Gardner and Jeremy Short.

[108] ECF No. 17 at ¶¶ 53-56, ¶¶ 85-88. Mr. Barber claims a violation under 15 U.S.C. § 1. Section 1 of the Sherman Act is a criminal statute. However, a private party may enforce Section 1 via application of § 4 of the Clayton Act. *See* 15 U.S.C. § 15.

[109] *Id.* at ¶ 55.

[110] *Id.* at ¶ 56.

parties with relief for violation of these laws.[111] To allege a violation under Section 1, a plaintiff must allege a conspiracy or agreement: (1) among two or more independent actors; and (2) that unreasonably retrains trade in commerce.[112] When reviewing a § 1 claim, "[t]he essence" of a violation "is the agreement itself."[113] To state a viable claim, the plaintiff must allege "not only an injury to himself, but an injury to the market as well."[114]

Upon review, Mr. Barber fails to plead facts that plausibly support a violation of § 1 of the Sherman Act. While Mr. Barber asserts his allegations of "bid rigging" constitute a *per se* violation of the statute, Plaintiff cannot simply insert the term "bid rigging" into his pleading and

---

[111] *See North Brevard County Hospital District v. C.R. Bard Incorporated,* 162 F. 4th 1268, 1273 (10th Cir. Dec. 31, 2025); *see also* 15 U.S.C. § 1 ("[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations is declared to be illegal.").

[112] *See TV Communications Network Incorporated v. Turner Network Television Incorporated,* 964 F.2d 1022, 1027 (10th Cir. 1992).

[113] *Champagne Metals v. Ken-Mac Metals, Incorporated,* 458 F.3d 1073, 1082 (10th Cir. 2006).

[114] *Agnew v. National Collegiate Athletic Association,* 683 F.3d 328, 335 (7th Cir. 2012); *see also Bey v. City of Dotha,* 2025 U.S. Dist. LEXIS 197303, at *14 (M.D. Ala. Oct. 6, 2025) (citing *Brunswick Corporation v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 488, 97 S, Ct. 690, 50 L. Ed. 2d 701 (1977) ("antitrust laws . . . were enacted for the protection of competition not competitors" and a plaintiff must "must show that there was a harm to competition in the aggregate, not simply to one competitor.") (internal quotation and citation omitted)). Allegations supporting an inference of "group boycott" can establish a per se violation of Section 1 and do not require an injury to the market. *See NYNEX Corporation v. Discon Incorporated,* 525 U.S. 128, 135, 119 S. Ct. 493, 142 L. Ed. 2d 510 (1998) (a group boycott exists where "[a] group of competitors threaten[ ] to withhold business from third parties unless those third parties would help them injure their directly competing rivals."). No "group boycott" is alleged in Plaintiff's amended pleading.

assume it will pass muster.[115] In reviewing Plaintiff's allegations, his conclusory claim of a "conspiracy to suppress competition" does not suffice and his reference to circumstantial facts of parallel behavior without additional factual enhancement does not establish a plausible claim.[116] Second, Mr. Barber alleges personal harm through the loss of his surplus equity. In doing so, Plaintiff fails to allege the requisite harm to consumers or make the necessary connection between his injury and the market in general.[117] For these reasons, Mr. Barber fails to plead facts

---

[115] Mr. Barber attempts to circumvent the competition requirement by alleging a *per se* violation of Section 1, which presumes an unreasonable restraint of trade, as opposed to the rule of reason analysis. *See Northern Pacific Ry. Co. v. U.S.* 356 U.S. 1, 6, 78 S. Ct. 514, 2 L. Ed. 2d 545 (1958) (violations are *per se* illegal when their "pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have cause or the business excuse for their use."). Yet Plaintiff's inclusion of the words "*per se*" and "bid rigging" in the pleading is not enough. The *per se* analysis applies to only a limited number of cases and not all horizontal restraints of trade (as Mr. Barber asserts here) should be considered under the *per se* standard. *See Northwest Wholesale Stationers, Inc. v. Pacific Stationery & Printing Co.,* 472 U.S. 284, 289, 105 S. Ct. 2613, 86 L. Ed. 2d 202 (1985). While bid rigging may be a per se violation, *see U.S. v. Reicher,* 983 F. 2d 168, 170 (10th Cir. 1992), *cert. denied* 511 U.S. 1071, 114 S. Ct. 1648, 128 L. Ed. 2d 367 (1994), Mr. Barber does not plead sufficient facts to plausibly state a bid-rigging claim. Instead, Plaintiff simply makes improper conclusory statements and legal conclusions.

[116] ECF No. 17 at ¶¶ 53-56. *See Twombly,* at 557 ("conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."); *see also Llacua v. West Range Association,* 930 F. 3d 1161, 1175 (10th Cir. 2019) ("[W]hen the antitrust claim relies solely on circumstantial facts of parallel behavior, the conspiracy is not plausible if in light of common economic experience the alleged conduct is equally likely to result from independent action.").

[117] *Vesom v. Atchison Hospital Association,* 279 Fed. Appx. 624, 638 (10th Cir. 2008) (injury must be examined "From the consumer's viewpoint" to ascertain whether the alleged conduct

that plausibly support a claim for violation of § 1 of the Sherman Act and his claim should be dismissed.

### iii. Truth In Lending Act

Mr. Barber alleges he informed Defendants Gravity Entities that the March 22, 2022 loan was a consumer transaction with the funds to be used for "personal, family or household purposes, including renovating his primary residence."[118] Yet, to evade Truth In Lending Act ("TILA") disclosure requirements, Mr. Barber contends the Defendants purposefully and "knowingly mischaracterized the transaction as a 'business purpose' loan" and failed to provide him with the required accurate payoff statements.[119]

As a consumer protection statute, TILA establishes a uniform set of disclosures and standardized terminology for consumer credit transactions.[120] Importantly, TILA applies only to consumer credit transactions, and does not apply to commercial transactions.[121] Under TILA

---

"affected the prices, quantity, quality of goods or services, not just [the plaintiff's] own welfare."); *SCFC ILC, Incorporated v. Visa USA Incorporated*, 36 F. 3d 958, 963, 972 (10th Cir. Sept. 23, 1994) (antitrust law "protect competition, not a competitor.")

[118] ECF No. 17 at ¶ 37.

[119] *Id.* at ¶¶ 89-93; *see* 15 U.S.C. §§ 1601, 1639g. TILA was passed by Congress in 1968 with the intent of promoting "the informed use of credit" through enforcement of meaningful disclosures to consumers. *See Mourning v. Family Publications Service Incorporated,* 411 U.S. 356, 363-64, 93 S. Ct. 1652, 36 L. Ed. 2d 318 (1973).

[120] 15 U.S.C. § 1604 *et. seq*; *see also Beach v. Ocwen Federal Bank,* 523 U.S. 410, 412, 118 S. Ct. 1408, 140 L. Ed. 2d 566 (1998) (TILA requires creditors to provide borrowers with "clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest and the borrower's rights.").

[121] *Goff v. Utah Funding Commercial Incorporated,* 2009 U.S. Dist. LEXIS 112098, at *5 (D. Utah Nov. 30, 2009).

consumer transactions are defined as transactions made "primarily for personal, family or household purposes."[122] The definition specifically excludes "[c]redit transactions involving extensions of credit primarily for business, commercial, or agricultural purposes."[123] To determine whether a particular transaction falls under TILA, the court must examine the transaction as a whole and analyze the purpose for which the credit was extended.[124]

Despite Mr. Barber's claims to the contrary, the judicially noticed documents show that Plaintiff represented that the loan was acquired for business and that the transaction was undertaken for commercial purpose.[125] Because "[c]redit transactions secured by real or personal property used for . . . commercial rental property fall outside the scope of TILA's coverage," Mr. Barber fails to state a claim for a violation of TILA.[126] Further, Mr. Barber's attempt to

---

[122] 15 U.S.C. § 1602(i).

[123] *Id*. § 1603(1).

[124] *Gallegos v. Stokes,* 593 F.2d 372, 375 (10th Cir. 1979); *see also Roberts v. FNB South of Alma,* 716 F. App'x 854, 856 (11th Cir. 2017) (unpublished); *cert denied,* 138 S. Ct. 2659, 201 L. Ed. 2d 1052, 2018 U.S. LEXIS 3827 (2018) ("To determine whether a particular transaction falls within the TILA exemption of credit transactions for business or commercial purposes, the purpose of the transaction or extension of credit is controlling, and not the property on which a security interest is retained").

[125] ECF No. 71-14, Exhibit 12, Schedule A/B: Assets—Real and Personal Property; *see also GFF Corporation v. Association Wholesale Grocers Incorporated,* 130 F.3d 1381, 1385 (10th Cir. 1997) ("[F]actual allegations that contradict . . . a properly considered document are not well-pleaded facts that the court must accept as true."). Of note, under the Business Loan Agreement authorized by Mr. Barber, failure to use the loan proceeds for authorized uses amounts to a default pursuant to the Agreement.

[126] *Goff*, at *6 (D. Utah Nov. 30, 2009) (citing *Antanuos v. First National Bank of Arizona,* 508 F. Supp. 2d 466, 466 (E.D. Va. 2007)); *see also* 15 U.S.C. § 1603(a) (TILA does not apply to "[c]redit transactions involving extensions of credit primarily for business, commercial, or

circumvent the business purpose limitation by arguing that one of the liened properties was his personal residence also fails to place him within the scope of the statute. Courts are "virtually unanimous in finding that the mere fact that the loan was secured by the family home does not itself bring the transaction under TILA."[127]

For these reasons alone, the court recommends dismissal of Mr. Barber's TILA claim. Yet even assuming Mr. Barber's loan was, as he now claims, not for business purposes, dismissal is also appropriate because the statute of limitations bars his cause of action and equitable tolling does not apply.[128]

For most claims under TILA, the statute of limitations period is "one year from the date of the occurrence of the violation . . . ."[129] A violation occurs and the statute of limitations begins to run when credit is extended without the required disclosures being made.[130] Typically, this is the date of closing or the date on which the borrower signs the promissory note.[131] For violations involving the right to recission, the statute of limitations period is three years from the date of the consummation of the transaction.[132]

---

agricultural purposes, or to government or governmental agencies or instrumentalities, or to organizations.").

[127] *Sherlock v. Herdelin,* 2008 U.S. Dist. LEXIS 21794, at *11-12 (E.D. Pa. 2008), *aff'd* 2011 U.S. App. LEXIS 13410 (3d Cir. 2011) (unpublished).

[128] ECF No. 17 at ¶ 92 (alleging the statute of limitations "is equitably tolled due to Defendants' active and fraudulent concealment.").

[129] 15 U.S.C. § 1640(e).

[130] *Betancourt v. Countrywide Home Loans Incorporated,* 344 F. Supp .2d 1253, 1257 (D. Colo. 2004).

[131] *Id.* (citations omitted).

[132] *Id.* at 1260 (citing 15 U.S.C. § 1635(f)).

In this case, the relevant Note was signed and the transaction was consummated on March 22, 2022.[133] Thereafter, Mr. Barber's original complaint was filed on August 15, 2025.[134] Plaintiff does not allege that he made any attempts to rescind the Note or to return the borrowed funds. Regardless, under application of either the one year statute or the three year limitations period, Mr. Barber's TILA claim is time barred. Additionally, despite Mr. Barber's assertion to the contrary, equitable tolling does not apply.[135] The plain language of the loan documents directly contradict Plaintiff's claim that he did not know the amount of the lien when he signed the March 2022 Deed of Trust.[136] Further, the December 2024 Proof of Claim provided Mr. Barber with all the information he needed to pay off the loan.[137]

For all these reasons, the court recommends dismissal of Plaintiff's TILA claims against Defendant Gravity Entities.

**iv. Fair Debt Collection Practices Act**

To prevail on a Federal Debt Collection Practices Act claim Mr. Barber must establish, among other things, that he has been the "object of collection activity arising from a consumer debt."[138] Plaintiff alleges all Defendants violated the FDCPA when they took "non judicial

---

[133] ECF No. 71-3; ECF No. 88-8.

[134] ECF No. 1, Complaint.

[135] ECF No. 71 at ¶ 92.

[136] ECF No. 71-3; ECF No. 88-8.

[137] *Id.*

[138] *Heintz v. Jenkins,* 514 U.S. 291, 293, 115 S. Ct. 1489, 131 L. Ed. 2d 395 (1995) (stating the FDCPA "limits 'debt' to consumer debt, *i.e.,* debts 'arising out of . . . transaction[s]' that "are primarily for personal, family, or household purposes." (quoting 15 U.S.C. § 1692a(5)).

action" and forcibly entered and re-keyed his property without the legal right to possession of the Properties.[139]

Section 1692a(5) defines a debt as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."[140] As discussed above, the debt at issue here is a business loan and the Note and Business Loan Agreement contain clear representations from Mr. Barber attesting to the business related purpose of the loan. As a business loan, the transaction does not meet the definition of a "debt" under the FDCPA and Mr. Barber's claim fails.

Additionally, under the FDCPA, not all individuals engaged in debt collection activities qualify as "debt collectors". Rather, the Act defines a "debt collector" as a "person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects . . . debts . . . owed or due another."[141] Specifically, the term does not include creditors who seek to collect their own debts,

---

[139] *Id.* at ¶¶ 94-96; *see* 15 U.S.C. § 1692f(6). The FDCPA was enacted by Congress with the purpose of eliminating "abusive debt collection practices by debt collectors, to insure that those debt collectors who refrains from using abusive debt collection practices are not competitively disadvantages, and to promote consistent State action to protect consumers against debt collection abuses." *James v. Wadas,* 724 F. 3d 1312, 1315 (10th Cir. 2013) (quoting 15 U.S.C. § 1692(e) (internal quotation marks omitted)).

[140] 15 U.S.C. § 1692a(5).

[141] *Id.* § 1692a(6).

unless they use an alias and indicate a third person is collecting the debt.[142] It is Plaintiff's burden to provide Defendants status as debt collectors for purposes of inclusion in the FDCPA.[143] Here, Defendants indicate they attempted to collect the debt in their own names and Mr. Barber does not make any allegation to the contrary. As a result, the loan does not qualify as a debt and Defendants are not debt collectors. For these reasons, Mr. Barber's cause of action for violation of the FDCPA against Defendants should be dismissed.

**v. Declaratory Judgment**

Mr. Barber brings a claim against all Defendants under the Declaratory Judgment Act pursuant to 28 U.S.C. § 2201.[144] The federal Declaratory Judgment Act does not create an independent, substantive cause of action.[145] Rather, it is a form of relief for which a plaintiff must succeed on the merits of the underlying claim.[146] While recognizing that Mr. Barber may

---

[142] *See* 15 U.S.C. § 1692(a)(6)(A); *see also Henson v. Santander Consumer USA Incorporated,* 582 U.S. 79, 83, 137 S. Ct. 1718, 198 L. Ed. 2d 177 (2017) (the Act's focuses on "third party collection agents working for a debt owner---not on a debt owner seeking to collect debts for itself."); *McCoy v. Deutsche Bank National Trust Company,* 2016 U.S. Dist. LEXIS 33290, at *18 (D. Colo. Feb. 23, 2016) ("according to its terms, the FDCPA is limited in its application to those collecting the debts 'of another' and does not apply to the activities of creditors seeking to collect their own debts.").

[143] *See Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti,* 374 F.3d 56, 60 (2nd Cir. 2004).

[144] 28 U.S.C. § 2201(a); *see also* Fed. R. Civ. P. 57 ("These rules govern the procedure for obtaining declaratory judgment under 28 U.S.C. § 2201).

[145] *Fletcher v. City of Hildale,* 2026 U.S. Dist. LEXIS 24047, at *6 (D. Utah Feb. 4, 2026) (citing *Nero v. Oklahoma,* U.S. App. LEXIS 29772, at *2 (10th Cir. Oct. 25, 2022) (unpublished)).

[146] *See Custodia Bank Incorporated v. Federal Reserve Board of Governors,* 2023 U.S. Dist. LEXIS 237452, at *25 (D. Wyo. June 8, 2023) (citing *Nero,* at *2) ("The Declaratory Judgment

seek declaratory relief, the court recommends dismissal of this claim as an independent cause of action.

### IV. The Court Declines Supplemental Jurisdiction Over Plaintiff's State Law Claims

As courts of limited jurisdiction, federal courts may exercise supplemental jurisdiction over those state law claims "which arise out of the same case or controversy as claims for which the court has original jurisdiction."[147] Nonetheless, in circumstances such as here, where the district court has dismissed all claims over which it has original jurisdiction, the federal district court may, and typically should, decline to exercise supplemental jurisdiction over the remaining state law claims.[148]

Because the court recommends all of Mr. Barber's federal claims should be dismissed, relinquishing jurisdiction over Plaintiff's remaining state law claims for breach of contract (Count I), wrongful foreclosure (Court IX), quiet title (Count X), slander of title (Count XI), civil conspiracy (Count XII), abuse of process (Count XIII), intentional infliction of emotional distress (Count XIV), tortious interference with economic relations (Count XV), trespass (Count

---

Act provides a remedy for valid federal causes of action and does not offer a separate cause of action.").

[147] *The Preserve,* at *12.

[148] *Koch v. City of Del City,* 660 F.3d 1228, 1248 (10th Cir. 2011) (quoting *Smith v. City of Enid ex rel. Enid City Commission,* 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.")); *see also Muller v. Culbertson,* 408 F. Appx. 194, 197 (10th Cir. 2011) (unpublished) (internal quotation marks omitted) (recognizing the district court does not "abuse [its] discretion" when it declines to exercise supplement jurisdiction over a claim "under 28 U.S.C. § 1367(c)(3) . . . where it has dismissed all claims over which it has original jurisdiction.").

XVI) and unjust enrichment (Count XVII)) is appropriate. For these reasons, the court also recommends that the District Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims and to dismiss Mr. Barber's state claims without prejudice.

## RECOMMENDATION

As a core bankruptcy proceeding, this court lacks jurisdiction over Mr. Barber's claim for willful violation of the Bankruptcy Court's own automatic stay provision and, in the alternative, the state court's rulings on these issues is preclusive. All Plaintiff's remaining federal claims are premised on this court finding a violation of the automatic stay, and even so all Mr. Barber's federal claims fail under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For these reasons, as set forth in detail above, the Court RECOMMENDS that the District Court dismiss Plaintiff's federal claims in this action with prejudice and FURTHER RECOMMENDS that the District Court decline supplemental jurisdiction over Plaintiff's state based claims. Consistent therewith:

1. Defendant Gravity Entities' Motion to Dismiss be GRANTED;[149]
2. Jared Anderson's Motion to Dismiss be GRANTED;[150]
3. Plaintiff's Motion for Judicial Notice of Adjudicative Facts be GRANTED IN PART and DENIED IN PART;[151]
4. Defendant Taytum Jorgensen's Motion to Dismiss for Failure to Serve be DENIED as MOOT;[152]

---

[149] ECF No. 71, Defendant Gravity Entities' Motion to Dismiss.

[150] ECF No. 88, Defendant Jared L. Anderson's Motion to Dismiss.

[151] ECF No. 137, Plaintiff's Motion for Judicial Notice of Adjudicative Facts.

[152] ECF No. 158, Defendant Taytum Jorgensen's Motion to Dismiss for Failure to Serve.

5. Defendant Dastan M. D'O's Second Motion to Quash Service of Process be DENIED as MOOT;[153]
6. Defendant Jamis Melwood Johnson's Motion to Quash Service of Process be DENIED as MOOT;[154]
7. Plaintiff's Renewed Motion for Alternative Service and Motion for Extension of Time to Effect Service both be DENIED as MOOT;[155]
8. Plaintiff's Motion to Strike Defendant Anderson's Untimely Evidentiary Objections be DENIED as MOOT;[156]
9. Defendants David Gardner and Jeremey Shorts' Motion to Dismiss be GRANTED;[157]
10. Plaintiff's Motion for Review of Clerk's Order Denying Default Against Defendants CR True LLC and 1028 South 1900 East, LLC be DENIED as MOOT;[158] and

---

[153] ECF No. 159, Defendant Dastan M. D'O's Second Motion to Quash Service of Process.

[154] ECF No. 168, Defendant Jamis Melwood Johnson's Motion to Quash Service of Process.

[155] ECF No. 173, Plaintiff's Renewed Motion for Alternative Service and Motion for Extension of Time to Effect Service.

[156] ECF No. 195, Plaintiff's Motion to Strike Defendant Anderson's Untimely Evidentiary Objections. Mr. Barber moves to strike Defendant Anderson's "facially untimely" objections filed on March 2, 2026. *See* ECF No. 189, Defendant Jared Anderson's Evidentiary Objections to Plaintiff's Supplement Request for Judicial Notice. Plaintiff's motion is denied as moot because the underlying matter to which Defendant Anderson filed his objection was a "request" that was untethered to a motion. *See* ECF No. 157, Plaintiff's Supplemental Request for Judicial Notice; *see also* DUCivR 7-1(a)(8).

[157] ECF No. 209, Defendants David Gardner and Jeremy Short's Motion to Dismiss.

[158] ECF No. 206, Plaintiff's Motion for Review of Clerk's Order Denying Entry of Default Against Defendants CR True LLC and 1028 South 1900 East LLC.

11. Defendant Karen Salas' Motion to Quash Service of Process and Motion to Vacate Clerk's Entry of Default Certification be DENIED as MOOT.[159]

Copies of this Report and Recommendation are being sent to Plaintiff who is hereby notified of his right to object. Within fourteen (14) days of being served with a copy, any party may serve and file written objections.[160] Failure to object may constitute a waiver of objections upon subsequent review.

DATED this 10 August 2026.

Dustin B. Pead
United States Magistrate Judge

[159] ECF No. 223, Defendant Karen Salas' Motion to Quash Service of Process and Motion to Vacate Clerk's Entry of Default Certificate.

[160] *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).